THOMAS P. O'BRIEN
United States Attorney
GEORGE S. CARDONA
Chief Assistant United States Attorney
DOUGLAS A. AXEL (Cal. Bar # 173814)
Assistant United States Attorney
Chief, Major Frauds Section
RICHARD E. ROBINSON (Cal. Bar # 090640)
Assistant United States Attorney
Major Frauds Section
        1100 United States Courthouse
        312 North Spring Street
        Los Angeles, California 90012
        Telephone: (213) 894-0689/0713
        Facsimile: (213) 894-6269
        E-mail: Doug.Axel@usdoj.gov
                Richard.Robinson@usdoj.gov

Attorneys for Plaintiff
United States of America

                    UNITED STATES DISTRICT COURT

              FOR THE CENTRAL DISTRICT OF CALIFORNIA


UNITED STATES OF AMERICA,    )    No. CR 05-587(E)-JFW
                             )
          Plaintiff,         )    **GOVERNMENT'S SENTENCING MEMORANDUM**
                             )    **RE: DEFENDANT MELVYN I. WEISS;**
     v.                      )    **EXHIBIT A**
                             )
MILBERG WEISS LLP;           )
MELVYN I. WEISS; and         )
PAUL T. SELZER,              )
                             )    Sentencing Date: June 2, 2008
          Defendants.        )    Sentencing Time: 10:00 a.m.
                             )

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . ii

MEMORANDUM OF POINTS AND AUTHORITIES. . . . . . . . . . . . . 1

I.    INTRODUCTION.. . . . . . . . . . . . . . . . . . . . . 1

II.   THE PRESENTENCE REPORT.. . . . . . . . . . . . . . . . 2

III.  A THIRTY-THREE MONTH SENTENCE IS REASONABLE
      AND APPROPRIATE. . . . . . . . . . . . . . . . . . . . 3

      A.    A Thirty-Three Month Sentence is Necessary. . . . . . 4

      B.    A Thirty-Three Month Sentence is Sufficient.. . . . 12

IV.   CONCLUSION.. . . . . . . . . . . . . . . . . . . . . 15

**TABLE OF AUTHORITIES**

**FEDERAL CASES:**                                          **PAGE(S)**

United States v. Carty,
        520 F.3d 984 (9th Cir. 2008). . . . . . . . . . . 3, 11, 12

United States v. Rita,. ,
        127 S. Ct. 2456 (2007). . . . . . . . . . . . . . 3, 12

**STATUTES:**

18 U.S.C. § 1503. . . . . . . . . . . . . . . . . . . . . 1, 3

18 U.S.C. § 1962. . . . . . . . . . . . . . . . . . . . . 1, 3

18 U.S.C. § 3553. . . . . . . . . . . . . . . . . . . . . passim

ii

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

On April 2, 2008, defendant Melvyn I. Weiss pled guilty to a one-count information charging him with conspiring to conduct the affairs of the law firm Milberg Weiss LLP (now known simply as "Milberg LLP") through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962.  The charged racketeering activity consisted "of multiple acts indictable under [] Title 18, United States Code, Section 1503 (Obstruction of Justice)."  Fourth Superseding Information at 4 ¶ 7.  Weiss's guilty plea, pursuant to an agreement with the government, resulted from his participation in a conspiracy involving the most senior partners of Milberg Weiss over a period of approximately twenty-five years to secretly pay kickbacks to named plaintiffs in class action cases litigated throughout the United States.

The Probation Office has prepared a Presentence Investigation Report ("PSR") that calculates Weiss's total Sentencing Guidelines offense level to be 20 and his criminal history category to be I; determines his sentencing range to be 33-41 months imprisonment; and recommends that Weiss be sentenced to a term of 33 months imprisonment, which falls at the low-end of the determined range.

The government agrees with the Probation Office as to Weiss's determined offense level, criminal history category, and sentencing guideline range.  For the reasons described below, the government also concurs with the Probation Office that a sentence of 33 months imprisonment is the appropriate sentence under 18 U.S.C. § 3553(a), a sentence that is "sufficient, but not greater

than necessary, to comply with the purposes" of sentencing set forth in that statute.  Weiss should be sentenced to a term of imprisonment of 33-months, a fine of $250,000, a period of two years supervised release, and a special assessment of $100.  He should also be ordered to criminally forfeit to the United States the sum of $9,750,000, to be paid in accordance with the schedule provided in the parties' plea agreement.

## II.   THE PRESENTENCE REPORT

The PSR, which was disclosed to the parties on May 2, 2008, accurately describes the relevant offense conduct (see PSR ¶¶ 10-56); correctly calculates the relevant offense level under the advisory United States Sentencing Guidelines (see PSR ¶¶ 59-73); appropriately determines the applicable Guideline range to be 33-41 months imprisonment (see PSR ¶ 131); and, for the reasons described in Part III below, properly recommends that defendant Weiss be sentenced at the low-end of the Guideline range, namely, 33 months imprisonment.

The PSR, applying the November 1, 2007 version of the Guidelines (see PSR ¶ 59), calculates the Guidelines offense level as follows:

/ / /

/ / /

/ / /

Base Offense Level :    14    [U.S.S.G. § 2J1.2][1]

Substantial interference
with administration of
justice            :    + 3    [U.S.S.G. § 2J1.2(b)(2)]

Obstruction extensive
in scope           :    + 2    [U.S.S.G. § 2B1.1(b)(3)]

Abuse of trust     :    + 2    [U.S.S.G. § 3B1.3]

Obstruction of criminal
investigation      :    + 2    [U.S.S.G. § 3C1.1]

Acceptance of resp. :    - 3    [U.S.S.G. § 3E1.1(a), (b)(2)]

Total Offense Level :    20 (sentencing range 33-41 months)

## III. A THIRTY-THREE MONTH SENTENCE IS REASONABLE AND APPROPRIATE

A district court at sentencing is to "'impose a sentence sufficient, but not greater than necessary,' to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence; to protect the public; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment." United States v. Carty, 520 F.3d 984, 991 (9th Cir. 2008) (en banc) (quoting 18 U.S.C. § 3553(a)).  For the reasons described below, a 33-month sentence of imprisonment -- which is within the applicable Sentencing Guidelines, see id. at 994 ("a Guidelines sentence "'will usually be reasonable'")

---

[1] Defendant Weiss pled guilty to racketeering conspiracy, in violation of 18 U.S.C. § 1962(d), with the charged predicate offenses being "multiple acts indictable under Title 18, United States Code, Section 1503 (Obstruction of Justice)."  Fourth Superseding Information at 4 ¶ 7.  Under U.S.S.G. § 2E1.1, applicable to racketeering offenses, the base offense level is the greater of 19 or the offense level applicable to the underlying racketeering activity.  Here, the underlying racketeering activity, obstruction of justice, also results in an offense level (prior to Chapter 3 adjustments) of 19.

1  (quoting <u>United States v. Rita</u>,. 127 S.Ct. 2456, 2465 (2007)) --
2  fully comports with these requirements.

3      **A.   A Thirty-Three Month Sentence is Necessary**

4      The Court has commented at length about the seriousness of
5  this offense.  At the sentencing of William Lerach -- defendant
6  Weiss's law partner and co-conspirator for roughly 25 years --
7  the Court expressed its view that the conduct goes "to the core
8  of the judicial system" and corrupted the Milberg Weiss law firm
9  in "the most evil way." (2/11/08 RT 54, 55).  When explaining
10 the basis for the 24-month sentence imposed on Lerach, the Court
11 cogently explained the seriousness of the pervasive and
12 systematic fraud perpetrated on Federal judges who presided over
13 class-action cases:

14         What Lerach and others did goes to the core of our
           judicial system.  The most egregious wrong that a lawyer can
15         commit is first to commit a fraud on his clients; the second
           is to commit a fraud on the court. [Both of these wrongs
16         were] done in this case.  Because the judges presiding over
           these cases have a duty or obligation to protect the
17         interest of the absent class members, they require the
           parties and the attorneys to make various disclosures to
18         allow the Court to scrutinize the fairness of the
           settlement, approve payments to class plaintiffs, and award
19         fees.

20         In order for our system of justice to work properly,
           those disclosures must be truthful.  However, in these cases
21         the disclosures were false because the paid plaintiffs, with
           the knowledge and consent of the lawyers involved in the
22         conspiracy, made false or misleading statements to the
           courts which were designed to and did effectively conceal
23         the existence of these secret payments which, in turn,
           prevented the courts from carrying out their crucial role in
24         protecting the interest of the absent class members.

25                              * * *

26         Of course, we all know why they lied.  The lies were
           absolutely crucial to the continued success of this scheme
27         to conceal these payments from the courts because, as
           Mr. Lerach knew and admitted in his plea colloquy, the
28         discovery of these secret payment arrangements would have

                                   4

resulted in the courts disqualifying the named plaintiffs from serving as class representatives, and would have resulted in the immediate disqualification of the Milberg Weiss firm from serving as class counsel.[2]  More importantly, the disclosures would have ultimately ended the firm's extremely lucrative business which resulted, according to the government's estimate, in the recovery of over $250 million in fees in those tainted cases.

* * *

[G]iven the fraudulent and corrupt nature of this scheme and the steps that the parties took to conceal this scheme from the courts, it's painfully evident that the paid plaintiffs were motivated to abandon their fiduciary duties to the absent class members and take actions or make decisions in these cases in order to maximize the award of attorneys' fees, all at the expense of the absent class. . . .  In effect, the absent class members were at the mercy of the unscrupulous paid plaintiffs and their corrupt attorneys and their invidious scheme effectively foreclosed any meaningful judicial scrutiny of their conduct in those cases.

(2/11/08 RT 74-77).

In connection with Lerach's sentencing, the Court concluded that the nature and seriousness of the offense, the need to provide adequate deterrence to criminal conduct, the need to promote respect for the law, and the need to provide just punishment all supported a sentence of 24 months.  (Id. at 77-82).  The Court strongly suggested that it would have considered a sentence "substantially in excess" of 24 months, had the plea agreement with Lerach not been a binding agreement entered into pursuant to Rule 11(c)(1)(C).  (Id. at 82).  The Court ultimately deferred to the parties and to the Court's judicial colleague, who assisted the parties in reaching their agreement.  (Id. at

---

[2]  Weiss similarly admitted in his plea colloquy that the discovery of the secret payment arrangement with a named plaintiff in a class action could have resulted in the disqualification of the named plaintiff and of Milberg Weiss.  See Weiss Plea Agreement, Ex. B, at 2-3 ¶ 9.

5

82-84).

As with respect to Lerach, the parties here have entered into a "binding" plea agreement pursuant to Rule 11(c)(1)(C). Unlike Lerach's agreement, which provided for a sentence of between 12 and 24 months imprisonment, see Plea Agreement, United States v. Lerach, CR 07-964-JFW, Weiss and the government here have "agree[d] that an appropriate disposition of this case is that the court impose [] a sentence of imprisonment within the range of 18-33 months imprisonment, with the court retaining discretion to substitute community confinement or home detention for no more than one-half of the term of imprisonment imposed." Weiss Plea Agreement at 6 ¶ 15.  For several reasons, the government believes that a 33-month sentence is necessary and appropriate for defendant Weiss, and does not amount to an "unwarranted sentence disparit[y]" among Weiss and Lerach.  Cf. 18 U.S.C. § 3553(a)(6).

**First**, unlike Lerach, whom the government could not prove to have actively furthered the conspiracy after becoming aware of the government's criminal investigation, Weiss met with "Vogel Intermediary A" in November 2003 and "confirmed that Milberg Weiss would pay Vogel a share of its attorneys' fees in connection with Oxford Health and the lawsuit In re the BAAN Co. Securities Litigation."  (PSR ¶¶ 46-47).  Weiss demanded to meet with Vogel Intermediary A in person, rather than discuss the kickback payment over the telephone, given the then-pending criminal investigation.  (Id. ¶ 46).  After the meeting, on December 18, 2003, Weiss and his co-conspirator Steven Schulman paid to Vogel, through Vogel Intermediary A, two checks totaling

6

$1.22 million.  (<u>Id.</u> ¶¶ 48-50).  The checks were accompanied by cover letters, signed by Schulman, containing the standard misrepresentations that the payments were to Vogel Intermediary A for <u>his</u> "work, services, and joint representation" of the classes in <u>Oxford Health</u> and <u>BAAN</u>.  (<u>Id.</u>).

Weiss's decision in 2003 to negotiate and pay to Vogel $1.22 million in kickbacks, on federal class action lawsuits that were filed well after the effective date of the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), and while Weiss and his law firm were then under criminal investigation for making precisely such illegal kickback payments, reflects a criminal arrogance that makes Weiss significantly more culpable, and hence deserving of significantly more punishment, than Lerach.

**Second**, unlike Lerach, whom the government could not prove to have obstructed the government's criminal investigation, Weiss did in fact obstruct the investigation.  As described in the Government's Opposition to Defendant Milberg Weiss's Motion to Dismiss Count 18 (filed February 4, 2008), and as set forth in the PSR, Weiss obstructed the criminal investigation by first concealing from the Grand Jury, and then causing his then-criminal defense attorney to make false statements concerning, a key November 15, 1990 telefax from Steven Cooperman to David Bershad.  (see PSR ¶¶ 52-56).

By 2001, Cooperman had been extensively debriefed by the government.  Among the information Cooperman had disclosed to the government was information concerning Weiss's sham art option payment and Milberg Weiss's efforts to recycle the $175,000 kickback back to Weiss through Cooperman's brother-in-law.

7

Cooperman had provided the government with his copies of, among other documents, his November 15, 1990 telefax to Bershad.[3]  (PSR ¶ 52).  The government viewed this document as a critical piece of evidence because: (1) it established that Milberg Weiss's payments to Cooperman's brother-in-law were being cycled back to Weiss as Cooperman's purported repayment of the art option; and (2) it strongly supported the conclusion that all three senior Milberg Weiss partners at the time – Weiss, Lerach, and Bershad – knew that Milberg Weiss's payments to Cooperman's brother-in-law were being cycled back to Weiss.  Without obtaining Milberg Weiss's copy of this document, however, the government had no proof, other than Cooperman's word, that the document had ever been sent to Bershad.

Thus, a grand jury subpoena served on Milberg Weiss on January 8, 2002 called for the production of, among other things, Cooperman's November 15, 1990 telefax from Milberg Weiss's files. (PSR ¶ 53).  At the time the subpoena was served on Milberg Weiss, the document was in its files, in one of Bershad's

---

[3]  The telefax provided:

Dear David [Bershad]:
    This is what I've found so far.  I faxed Bill [Lerach] copies of 3 checks in 12/89 but so far have not been able to find my copy of these copies – I think he sent them on to you –
    My accountant is going thru his files for the 3rd check, in case you don't have those 12/89 copies.  According to my records, after 12/89, Mel [Weiss] sent Bruce [Cooperman's brother-in-law] another 35,000, & I think I may still owe that to Mel [Weiss].  Let me know if this agrees with our records –
                              Regards,
                                   Steve
See Ex. A at MIW 00002-00003.

desk drawers.  (Id.).  Yet, prior to August 8, 2007, Milberg Weiss never produced this document in response to the grand jury subpoena.  Instead, the following events occurred:

- Unbeknownst to the government, Bershad found the November 15, 1990 telefax, along with other documents relating to the phony art option, in his desk drawer when searching for documents responsive to the January 8, 2002 grand jury subpoena.  (Id.).

- Although Bershad knew that the documents were responsive to the grand jury subpoena, he did not turn them over to Milberg Weiss's records custodian or outside counsel.  Instead, he called Weiss into his office and showed Weiss the documents.  Weiss took them from Bershad and put them in his safe.  (Id.).

- In August 2003, Weiss's lawyer at the time, Stephen E. Kaufman, met with the United States Attorney's Office ("USAO").  During the meeting, Kaufman provided to the USAO the documents that Weiss had taken from Bershad, but only after first requiring an agreement from the USAO that imposed certain restrictions on the evidentiary use the USAO could make of the documents, including an agreement not to use them as evidence against Weiss or Milberg Weiss.  (PSR ¶ 54; Ex. A at 1 ¶ 3).  Kaufman, with the authorization of Weiss, was able to extract such a concession only by falsely representing to the USAO that the documents "did not have to be produced pursuant to [the January 2002 grand jury subpoena] because they were personal records of Weiss and were not records of Milberg Weiss."  (Id. at 2 ¶ 4(d)).

- In a follow-up call two days later, Weiss caused Kaufman's false representation that the documents were personal to Weiss to be bolstered with additional false and misleading information provided to the USAO, namely that they were found in Weiss's safe "in which he keeps personal items," and that "Weiss had found the [d]ocuments in his safe only a couple of months before, and had forgotten the documents were there."  (PSR ¶¶ 54-55; Ex. A at 2 ¶ 5).

Weiss's obstructive conduct towards the government's criminal investigation further supports a sentence that is more severe than the 24-month sentence imposed on Lerach.

**Third**, the foregoing factors -- Weiss's negotiation of and payment to Vogel in November and December 2003 and his

obstruction of the government's criminal investigation --
appropriately result in a Guidelines calculation that is six-
levels higher for Weiss than for Lerach.  Prior to January 2003,
the Guidelines applicable to obstruction of justice (§ 2J1.2), as
applied to the conduct at issue here, resulted in an offense
level of 15, calculated as follows:

    Base Offense Level: 12    [U.S.S.G. § 2J1.2(a)]

    Substantial interference
    with administration of
    justice            : + 3  [U.S.S.G. § 2J1.2(b)(2)][4]

Effective January 25, 2003, the Guideline was amended to increase
the punishment for the obstructive conduct at issue here in two
ways.  First, the base offense level was increased from 12 to 14.
See U.S.S.G. Appendix C, amendment 647.  Second, an additional 2-
level upward adjustment was added for obstruction offenses, such
as the one at issue here, that are "extensive in scope, planning,
or preparation."  Id.; see U.S.S.G. § 2J1.2(b)(3) (Jan. 25,
2003).

    Because Lerach had not personally acted to further the
conspiracy after the January 25, 2003 amendments, the Court,
noting its "concern[] that there is a potential ex post facto
issue in applying the January 25, 2003 amendments to this case,"
applied the pre-January 2003 Guidelines to determine that
Lerach's applicable sentencing range was 15-21 months, as
follows:

/ / /

---

    [4]  Prior to 2003, the same calculation resulted from the
application of the Guideline applicable to perjury offenses,
U.S.S.G. § 2J1.3.  See 2/11/08 RT 11.

```
Base Offense Level  :    12 [§§ 2J1.2, 2J1.3]

Substantial interference
with administration of
justice           :    + 3  [§§ 2J1.2(b)(2), 2J1.3(b)(2)]

Abuse of trust      :    + 2  [U.S.S.G. § 3B1.3]

Acceptance of resp. :    - 3  [U.S.S.G. § 3E1.1(a), (b)(2)]

Total Offense Level :    14 (sentencing range 15-21 months)
```

(2/11/08 RT 11-12, 35).

Here, Weiss's personal conduct in negotiating and paying kickbacks to Vogel in November and December 2003 eliminates any ex post facto concern and compels application of the current Guidelines, which result in the same offense level as the Guidelines effective January 25, 2003.  When a two-level adjustment for Weiss's obstruction of the criminal investigation also is added pursuant to U.S.S.G. § 3C1.1, the application of the Sentencing Guidelines to Weiss results in a total offense level of 20, and a sentencing range of 33-41 months, as calculated in Weiss's PSR and summarized in Part II above.

Although a within-Guidelines sentence is no longer required, the Guidelines "are to be respectfully considered" and "kept in mind throughout the [sentencing] process."  Carty, 520 F.3d at 991.  That the Guidelines here result in a 33-41 months sentencing range for Weiss, as compared with a 15-21 months sentencing range for Lerach, supports the conclusion that a 33-month sentence for Weiss would not create an unwarranted sentence disparity among Weiss and Lerach.

For the reasons set forth above, as well as those stated by the Court at Lerach's sentencing on February 1, 2008, the government firmly believes that a 33-month sentence not only

accords with the low-end of the Guidelines, but is necessary to satisfy all of the sentencing factors under 18 U.S.C. § 3553(a).

### B.   A Thirty-Three Month Sentence is Sufficient

A sentence greater than 33-months is not necessary to satisfy the § 3553(a) sentencing factors with respect to Weiss, for several reasons.

**First**, a 33-month sentence is within the range prescribed by the applicable Guidelines which, after January 25, 2003, appropriately capture both (a) the "substantial interference with the administration of justice" that the conspiracy had in each of the corrupted class action lawsuits, see U.S.S.G. § 2J1.2(b)(2) & Application Note 1, and (b) the extensive scope of the conspiracy given the number of lawsuits in which it operated.  See id. § 2J1.2(b)(3).  Although this does not make a 33-month sentence per se sufficient, it does suggest that the Sentencing Commission, at least, viewed such a sentence to comport with "the appropriate application of § 3553(a) in the mine run of cases" involving facts and circumstances similar to those presented here.  Carty, 520 F.3d at 994 (quoting Rita, 127 S.Ct. at 2465).

**Second**, the collateral consequences of Weiss's conviction in this case have resulted and will result in substantial punishment of Weiss in addition to any term of imprisonment the Court imposes.  As the Court recognized with respect to Lerach:

> [T]he loss of his license to practice law, the loss of being able to go to his law office every day and practice in a profession that he loves so dearly, and the embarrassment and disgrace that this plea of guilty has had on him and his family, constitutes a significant punishment and will probably hurt more than the loss of his liberty.

(2/11/08 RT at 78; see also id. at 57-58 (same)).  So too here,

Weiss's conviction will result not only in the loss of his
ability to practice law, but the removal of his name from the
firm he co-founded and built over the past forty years, a firm
that was at one point the undisputed leader of the plaintiffs'
securities class-action industry.  Rather than retire as the
undisputed and highly respected dean of the plaintiffs'
securities bar, Weiss will retire in disgrace as a disbarred
lawyer and a convicted felon.  The significant punishment of
Weiss resulting from the collateral effects of his conviction
weighs against the imposition of a sentence greater than 33
months.

**Third**, as recognized by the Probation Officer, Weiss's age
weighs against a sentence greater than 33 months.  Weiss will be
73 when he begins serving his sentence this summer.  He is
roughly eleven years older than Lerach.  Although Weiss's
physical ailments are not atypical for someone Weiss's age, his
age and health are relevant to the conclusion that a sentence
greater than 33 months is here unnecessary to satisfy the
§ 3553(a) factors.

**Fourth**, as part of his sentence, Weiss will be required to
pay a fine and forfeiture totaling $10 million, which is $2
million more than that paid by Lerach and a significant amount of
money for an individual by any measure.  Additionally, the
government expects that Weiss will suffer adverse financial
consequences from any financial punishment imposed on the Milberg
firm, whether as part of a resolution of the charges against the
firm or as a consequence of the firm's conviction.

/ / /

**Fifth**, a sentence of 33 months is nine months greater than the 24-month sentence imposed on Lerach.  For the reasons described above, this nine-month difference is warranted by Weiss's conduct and does not create an unwarranted disparity. However, a sentence that is greater than 33 months would tend to create an unwarranted and impermissible disparity, particularly given Weiss's more advanced age and more substantial philanthropic activities as compared with Lerach.

/ / /

/ / /

/ / /

**IV.   CONCLUSION**

        For the foregoing reasons, the court should: (1) determine

the applicable Sentencing Guidelines range to be 33-41 months,

based on an offense level 20 and a criminal history category I;

(2) accept and agree to be bound by the parties' plea agreement

pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C);

(3) sentence defendant Weiss to a term of imprisonment of 33-

months, a fine of $250,000, a period of two years supervised

release, and a special assessment of $100; and (4) order

defendant Weiss to criminally forfeit to the United States the

sum of $9,750,000, to be paid in accordance with the schedule set

forth in the parties' plea agreement.

DATED: May 22, 2008          Respectfully submitted,

                             THOMAS P. O'BRIEN
                             United States Attorney

                             GEORGE S. CARDONA
                             Chief Assistant United States Attorney


                             _/s Douglas A. Axel_____
                             DOUGLAS A. AXEL
                             RICHARD E. ROBINSON
                             Assistant United States Attorneys
                             Major Frauds Section

                              Attorneys for Plaintiff
                              UNITED STATES OF AMERICA