1    BENJAMIN BRAFMAN
2    BRAFMAN & ASSOCIATES, P.C.
     767 Third Avenue, 26th Floor
3    New York, New York 10017
4    Telephone: 212-750-7800
     Facsimile: 212-750-3906
5    Bbrafman@braflaw.com

6
     Admitted Pro Hac Vice as Attorneys for
7    Defendant MELVYN I. WEISS

8    THOMAS M. BROWN (Cal. Bar No. 117449)
9    BROWN & WHITE LLP
     333 South Hope Street, 36th Floor
10   Los Angeles, CA 90071
11   Telephone: 213-613-0500
     Facsimile: 213-613-0550
12   Tbrown@brownwhitelaw.com

13
14   Attorneys for Defendant
     MELVYN I. WEISS
15
16              UNITED STATES DISTRICT COURT
17        CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

18   UNITED STATES OF AMERICA,          Case No. CR 05-587(E) -JFW
19              Plaintiff,
                                        **DEFENDANT MELVYN I. WEISS'S**
20        v.                            **SENTENCING MEMORANDUM**
21   MELVYN I. WEISS,
                                        **(VOLUME 2 OF 4: EXHS. 1-55)**
22              Defendant.
23                                      Date:       June 2, 2008
                                        Time:       10:00 a.m.
24
25
26
27
28

**EXHIBIT 1**

THOMAS P. O'BRIEN
United States Attorney
GEORGE S. CARDONA (Cal. Bar #135439)
Chief Assistant United States Attorney
DOUGLAS A. AXEL (Cal. Bar #173814)
Chief, Major Frauds Section
RICHARD E. ROBINSON (Cal. Bar #090840)
Assistant United States Attorneys
Major Frauds Section
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone:  (213) 894-8323/0689/0713
    Facsimile:  (213) 894-6269
    E-mail: George.S.Cardona@usdoj.gov
            Doug.Axel@usdoj.gov
            Richard.Robinson@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR 05-587(E)-JFW |
| | ) | |
| Plaintiff, | ) | **PLEA AGREEMENT FOR DEFENDANT** |
| | ) | **MELVYN I. WEISS** |
| v. | ) | |
| | ) | |
| MELVYN I. WEISS, | ) | |
| | ) | |
| Defendant. | ) | |

    1.   This constitutes the binding plea agreement between

MELVYN I. WEISS ("defendant") and the United States Attorney's

Office for the Central District of California (the "USAO").

Except as provided in paragraph 21(b) below, this agreement is

limited to the USAO and cannot bind any other federal, state, or

local prosecuting, administrative or regulatory authorities.

/ / /

/ / /

**106**

PLEA

2.   Defendant gives up the right to indictment by a grand jury and agrees to plead guilty to a one-count information in the form attached to this agreement as Exhibit A or a substantially similar form.

NATURE OF THE OFFENSE

3.   In order for defendant to be guilty of count one of the information, which charges a violation of Title 18, United States Code, Section 1962(d), the following must be true:

(a)   The New York law firm partnership Milberg Weiss LLP, formerly known as "Milberg Weiss Bershad & Schulman LLP," "Milberg Weiss Bershad Hynes & Lerach LLP" and "Milberg Weiss Bershad Specthrie & Lerach" ("Milberg Weiss"), constituted an enterprise, that is, a partnership or group of individuals associated in fact;

(b)   Milberg Weiss was engaged in interstate commerce;

(c)   Beginning in or before 1979, and continuing through at least in or about 2005, there was an agreement between two or more persons employed by or associated with Milberg Weiss to conduct Milberg Weiss's affairs through a "pattern of racketeering activity" as defined by Title 18, United States Code, Section 1961(a) & (5), namely, multiple acts indictable under Title 18, United States Code, Section 1503, the last of which was to occur within ten years after the commission of a prior such act;

(d)   Defendant was employed by or associated with Milberg Weiss; and

/ / /

2

1          (e)  Defendant joined in the illegal agreement
2  referenced in subparagraph (c) above, knowing of its object and
3  intending to help accomplish it.
4          4.   Defendant admits that defendant is, in fact, guilty of
5  this offense, as described in count one of the information.
6                              <u>PENALTIES</u>
7          5.   The statutory maximum sentence that the Court can
8  impose for a violation of Title 18, United States Code,
9  Section 1962(d), is twenty years imprisonment; a three-year
10 period of supervised release; a fine of $250,000 or twice the
11 gross gain or gross loss resulting from the offense, whichever is
12 greatest; and a mandatory special assessment of $100.
13         6.   Supervised release is a period of time following
14 imprisonment during which defendant will be subject to various
15 restrictions and requirements.  Defendant understands that if
16 defendant violates one or more of the conditions of any
17 supervised release imposed, defendant may be returned to prison
18 for all or part of the term of supervised release, which could
19 result in defendant serving a total term of imprisonment greater
20 than the statutory maximum stated above.
21         7.   Defendant also understands that, by pleading guilty,
22 defendant may be giving up valuable government benefits and
23 valuable civic rights, such as the right to vote, the right to
24 possess a firearm, the right to hold office, and the right to
25 serve on a jury.
26         8.   Defendant further understands that the conviction in
27 this case may subject defendant to various collateral
28 consequences, including revocation or suspension of his license

                                  3

1  to practice law.  Defendant understands that unanticipated

2  collateral consequences will not serve as grounds to withdraw

3  defendant's plea of guilty.

4      9.   The parties agree and stipulate that, in accordance

5  with United States Sentencing Guidelines § 5E1.1(b)(2),

6  determining complex issues of fact concerning restitution, if

7  any, that should be awarded would complicate or prolong the

8  sentencing process to a degree that the need to provide

9  restitution to any victim is outweighed by the burden on the

10  sentencing process.

11                 FACTUAL BASIS

12     10.   Defendant and the USAO agree and stipulate to the

13  statement of facts set forth in Exhibit B hereto.  This statement

14  of facts includes facts sufficient to support a plea of guilty to

15  the charge described in this agreement.  It is not meant to be a

16  complete recitation of all facts relevant to the underlying

17  criminal conduct or all facts known to either party that relate

18  to that conduct.

19       WAIVER OF CONSTITUTIONAL AND OTHER RIGHTS

20     11.   By pleading guilty, defendant gives up the following

21  rights:

22         (a)   The right to persist in a plea of not guilty.

23         (b)   The right to a speedy and public trial by jury.

24         (c)   The right to the assistance of legal counsel at

25  trial, including the right to have the Court appoint counsel for

26  defendant for the purpose of representation at trial.  (In this

27  regard, defendant understands that, despite his plea of guilty,

28  he retains the right to be represented by counsel -- and, if

4

1  necessary, to have the Court appoint counsel if defendant cannot

2  afford counsel -- at every other stage of the proceeding.)

3          (d)   The right to be presumed innocent and to have the

4  burden of proof placed on the government to prove defendant

5  guilty beyond a reasonable doubt.

6          (e)   The right to confront and cross-examine witnesses

7  against defendant.

8          (f)   The right, if defendant wished, to testify on

9  defendant's own behalf and present evidence in opposition to the

10 charges, including the right to call witnesses and to subpoena

11 those witnesses to testify.

12         (g)   The right not to be compelled to testify, and, if

13 defendant chose not to testify or present evidence, to have that

14 choice not be used against defendant.

15    12.   By pleading guilty, defendant gives up any and all

16 rights to pursue any affirmative defenses, Fourth Amendment or

17 Fifth Amendment claims, and other pretrial motions that could be

18 filed on his behalf, including assertion of any defense based on

19 statute of limitations or venue.

20                    SENTENCING FACTORS

21    13.   Defendant understands that the Court is required to

22 consider the factors set forth in 18 U.S.C. § 3553(a)(1)-(7),

23 including the kinds of sentence and sentencing range established

24 under the United States Sentencing Guidelines ("U.S.S.G." or

25 "Sentencing Guidelines") in determining defendant's sentence.

26    14.   Defendant and the USAO have no agreement concerning

27 the applicable Sentencing Guidelines or Sentencing Guidelines

28 factors.

5

**110**

15.  As part of this binding plea agreement, defendant and the USAO agree that an appropriate disposition of this case is that the court impose: a sentence of imprisonment within the range of 18-33 months imprisonment, with the court retaining discretion to substitute community confinement or home detention for no more than one-half of the term of imprisonment imposed; a fine of $250,000; a three-year period of supervised release; and a special assessment of $100.

16.  There is no agreement as to defendant's criminal history or Criminal History Category.

17.  The Court will determine the facts and advisory Sentencing Guideline calculations relevant to sentencing and decide whether to agree to be bound by this agreement.  Both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation Office and the Court, and (b) correct any and all factual misstatements relating to the calculation of the sentence.

18.  Defendant understands and agrees that this agreement is entered into pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C).  So long as defendant does not breach the agreement, defendant may withdraw from this agreement and render it null and void if the Court refuses to be bound by this agreement.  The USAO may also withdraw from this agreement and render it null and void if the Court refuses to be bound by this agreement.

/ / /

/ / /

/ / /

6

<u>DEFENDANT'S OBLIGATIONS</u>

19.  Defendant agrees that he will:

(a)  Plead guilty as set forth in this agreement.

(b)  Not knowingly and willfully fail to abide by all sentencing stipulations contained in this agreement.

(c)  Not knowingly and willfully fail to: (i) appear for all court appearances, (ii) surrender as ordered for service of sentence, (iii) obey all conditions of any bond, and (iv) obey any other ongoing court order in this matter.

(d)  Not commit any crime; however, offenses which would be excluded for sentencing purposes under U.S.S.G. § 4A1.2(c) are not within the scope of this agreement.

(e)  Not knowingly and willfully fail to be truthful at all times with Pretrial Services, the United States Probation Office, and the Court.

(f)  Pay the applicable special assessment at or before the time of sentencing.

(g)  Within seven days of sentencing, pay the fine imposed by the Court, up to a maximum of $250,000. In this regard, defendant agrees that consideration of the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2)(A)-(C), and (a)(3), justifies a fine amount of $250,000.

20.  Defendant further agrees to forfeit to the United States the amount of $9,750,000 (the "Forfeitable Currency"), which defendant agrees shall be forfeited through administrative, judicial criminal or judicial civil forfeiture (at the sole election of the United States), pursuant to 28 U.S.C. § 2461(c), 18 U.S.C. § 981(a)(1)(C), 18 U.S.C. § 981(a)(1)(A) and/or 18

7

U.S.C. § 1963. Defendant further agrees:

(a)   That the Forfeitable Currency constitutes or is derived from net proceeds of the racketeering conspiracy in violation of 18 U.S.C. § 1962(d) described in count one of the information;

(b)   That said conspiracy resulted in net proceeds in excess of $9,750,000;

(c)   That in the event the Forfeitable Currency is criminally forfeited, the USAO may elect, at the sole and absolute discretion of the USAO, to cause to be entered (i) a money judgment of forfeiture in the amount of the Forfeitable Currency and apply the Forfeitable Currency toward satisfaction of the judgment and/or (ii) a preliminary and final order of forfeiture of the Forfeitable Currency;

(d)   That the Forfeitable Currency shall be paid to the United States in the following manner and by the following means: Within seven calendar days of sentencing, defendant shall pay to the United States the amount of $5,000,000 by electronic funds transfer.  Within 180 days of sentencing, defendant shall also pay to the United States an additional $4,750,000 by electronic funds transfer.  Both transfers of funds shall be made to the Federal Reserve Bank of New York, 33 Liberty Street, New York, New York, 10045, pursuant to instructions to be provided by the USAO.  The government will hold the funds in the Seized Asset Deposit Funds Account until the funds are applied to satisfy any money judgment and/or are forfeited pursuant to any final criminal order of forfeiture or a civil order/judgment of forfeiture.

1        (e)  That defendant will have clear and sole title to

2  the Forfeitable Currency he promises to deliver to the USAO when

3  it is transferred;

4        (f)  Not to contest the forfeiture of the Forfeitable

5  Currency in any administrative or judicial proceeding;

6        (g)  To abandon, relinquish, and waive, and by

7  executing this agreement defendant hereby abandon, relinquish and

8  waive any and all rights in the Forfeitable Currency in favor of

9  the United States;

10        (h)  To waive, and by executing this agreement

11  defendant does waive, all constitutional and statutory challenges

12  to forfeiture of the Forfeitable Currency on any grounds,

13  including any statutes of limitations and the Excessive Fines

14  Clause;

15        (i)  To take all steps as requested by the USAO that

16  are reasonable to pass to the United States clear title to the

17  Forfeitable Currency, including, without limitation, the

18  execution of a consent decree of forfeiture, the completing of

19  any other legal documents required for the transfer of title to

20  the United States, and causing defendant's spouse to execute a

21  consent to decree of forfeiture in the form attached hereto as

22  Exhibit C, all such documents to be delivered to the United

23  States along with the electronic funds transfers described in

24  paragraph 20(d) above;

25        (j)  Not to assist any other person in any effort

26  falsely to contest the forfeiture of the Forfeitable Currency;

27        (k)  That forfeiture of the Forfeitable Currency shall

28  not be counted toward satisfaction of any special assessment,

1  fine, restitution, or any other penalty the Court may impose, nor

2  shall it be counted toward satisfaction of any taxes, penalties,

3  or interest owed to the Internal Revenue Service or any other

4  taxing authority; and

5          (l)  With respect to any forfeiture of the Forfeitable

6  Currency, to waive and relinquish, and by executing this

7  agreement defendant does waive and relinquish the requirements

8  of: (i) Federal Rules of Criminal Procedure 32.2 and 43(a)

9  regarding notice of the forfeiture in the charging instrument,

10  announcement of the forfeiture at the sentencing, and

11  incorporation of the forfeiture in the judgment; and (ii) 21

12  U.S.C. § 853(p)(1) regarding due diligence, transfer to third

13  party, placement beyond the jurisdiction of the Court,

14  substantial diminution of value and commingling.

15                    THE USAO'S OBLIGATIONS

16   21.  If defendant complies fully with all defendant's

17  obligations under this agreement, the USAO agrees:

18          (a)  At the time of sentencing to move to dismiss the

19  underlying second superseding indictment against defendant only.

20          (b)  Not to further prosecute defendant for violations

21  of federal law occurring prior to the execution of this agreement

22  and arising out of: (i) the conduct charged in the second

23  superseding indictment in United States v. Milberg Weiss Bershad

24  & Schulman LLP, et al., Cr. No. 05-587(D)-JFW and/or described in

25  Exhibit B hereto; (ii) payments to or for the benefit of

26  stockbrokers, non-lawyers, and/or lawyers for serving as

27  plaintiffs and/or for referring other persons and/or entities to

28  serve as plaintiffs; (iii) requests to courts for reimbursement

                              10

1  of fees and costs of a damages expert witness and/or his
2  relatives and/or his associated entities based in Princeton, New
3  Jersey, and Hilton Head, South Carolina (collectively the
4  "Princeton Expert"); (iv) any payments to, or on behalf of, the
5  Princeton Expert; (v) the Princeton Expert's participation as an
6  expert witness or consultant in cases litigated by Milberg Weiss
7  (as defined in Exhibit B hereto); (vi) the Princeton Expert's
8  financial relationship with PNC Bank; (vii) election, campaign,
9  or other political contributions using funds generated by the
10 conduct described in (i) - (v) above; and (viii) defendant's
11 investment in, or relationship with, the Acorn Technology Fund
12 (collectively, "the non-prosecution conduct").  The non-
13 prosecution provisions of this paragraph are binding on the USAO,
14 the United States Attorney's Offices for each of the other 93
15 judicial districts of the United States ("the other USAOs"), and
16 the United States Department of Justice ("DOJ").  Defendant
17 understands and agrees that the USAO, the other USAOs, and DOJ
18 are free to prosecute defendant for any other unlawful past
19 conduct not specifically exempted by this agreement or any
20 illegal conduct that occurs after the date of this agreement.
21        (c)  Not to pursue any additional civil or criminal
22 forfeiture claims against defendant based on conduct occurring
23 prior to the execution of this agreement and arising out of the
24 non-prosecution conduct.
25        (d)  To recommend to the Court that a fine of $250,000
26 is reasonable and that no other fine amount should be imposed.
27 / / /
28 / / /

## BREACH OF AGREEMENT

22.   If defendant, at any time after the execution of this agreement knowingly and willfully violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached.  If the USAO declares the agreement breached and the Court finds such a breach to have occurred, defendant will not be able to withdraw defendant's guilty plea (if, at the time of the breach, he had previously entered his guilty plea), the USAO will be relieved of all its obligations under this agreement, and the USAO, the other USAOs, and DOJ will no longer be bound by the non-prosecution provisions of paragraph 21(b) above.

23.   Following a knowing and willful breach of this agreement by defendant, should the USAO, the other USAOs, or DOJ elect to pursue any charge that was dismissed or that it would have been obligated to dismiss or that was not filed as a result of this agreement, then:

(a)   Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the commencement of any such prosecution or action.

(b)   Defendant gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such prosecution, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

(c)   Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if there was

1   such a hearing); (ii) the stipulated factual basis statement in

2   Exhibit B to this agreement; and (iii) any evidence derived from

3   such statements, are admissible against defendant in any

4   prosecution of defendant by the USAO, the other USAOs, or DOJ,

5   and defendant shall assert no claim under the United States

6   Constitution, any statute, Rule 410 of the Federal Rules of

7   Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure,

8   or any other federal rule, that the statements or evidence

9   derived from any statements should be suppressed or are

10  inadmissible.

11       LIMITED MUTUAL WAIVER OF APPEAL AND COLLATERAL ATTACK

12       24.   Defendant gives up the right to appeal any sentence

13  imposed by the Court and the manner in which the sentence is

14  determined, provided that the sentence is within the range set

15  forth in paragraph 15 and is constitutional. Defendant also gives

16  up any right to bring a post-conviction collateral attack on the

17  conviction or sentence.  Notwithstanding the foregoing, defendant

18  retains any ability defendant has to appeal the amount or terms

19  of any restitution order; any fine imposed by the Court in excess

20  of $250,000; and the conditions of supervised release imposed by

21  the Court, with the exception of the following: conditions set

22  forth in General Orders 318, 01-05, and/or 05-02 of this Court;

23  the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5)

24  and 3583(b)(7); and the alcohol and drug use conditions

25  authorized by 18 U.S.C. § 3563(b)(7).

26       25.   The USAO gives up its right to appeal the sentence,

27  provided that the Court imposes a sentence within the range set

28  forth in paragraph 15.

## SCOPE OF AGREEMENT

26.  Except as specified in paragraph 21(b) above, which makes the non-prosecution provisions of this agreement binding on the USAO, the other USAOs, and DOJ, this agreement is binding only on defendant and the USAO, and does not bind any federal, state, or local agency or prosecuting authority, or any federal, state, or local administrative or regulatory authority.

## NO ADDITIONAL AGREEMENTS

27.  Except as set forth herein, there are no promises, understandings or agreements between the USAO, the other USAOs, or DOJ and defendant or defendant's counsel.  Nor may any additional agreement, understanding or condition be entered into unless in a writing signed by all parties or on the record in court.

## PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

28.  The parties agree and stipulate that this agreement will be considered part of the record of defendant's guilty plea hearing as if this entire agreement had been read into the record of such proceedings.

29.  This agreement is effective upon signature by defendant, defendant's attorney, and the Chief Assistant United States Attorney.

AGREED AND ACCEPTED

UNITED STATES DEPARTMENT OF JUSTICE:

_____                    3/17/2008
GEORGE S. CARDONA                            Date
Chief Assistant United States Attorney

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF CALIFORNIA:

_____          3/17/2008
GEORGE S. CARDONA                         Date
Chief Assistant United States Attorney

_____          3/17/08
DOUGLAS A. AXEL                           Date
Assistant United States Attorney
Chief, Major Frauds Section

_____          3/17/08
RICHARD E. ROBINSON                       Date
Assistant United States Attorney
Major Frauds Section

    I, MELVYN I. WEISS, have read this agreement and carefully

discussed every part of it with my attorney.  I understand the

terms of this agreement, and I voluntarily agree to those terms.

My attorneys have advised me of my rights, of possible defenses,

of the Sentencing Guideline provisions, and of the consequences

of entering into this agreement.  No promises or inducements have

been made to me other than those contained in this agreement.  No

one has threatened or forced me in any way to enter into this

agreement.  Finally, I am satisfied with the representation of my

attorney in this matter.


_____          _____
MELVYN I. WEISS                           Date
Defendant


    I am MELVYN I. WEISS's attorney.  I have carefully discussed

every part of this agreement with my client.  Further, I have

fully advised my client of his rights, of possible defenses, of

Mar 17'08 03:03p                                                    p.1
08/17/2008  15:15  2127503906          BRAFMAN ASSOCIATES      PAGE  16

1  UNITED STATES ATTORNEY'S OFFICE
   FOR THE CENTRAL DISTRICT OF CALIFORNIA:
2

3
                 _____          _____
4  GEORGE S. CARDONA                           Date
   Chief Assistant United States Attorney
5

6  _____                         _____
   DOUGLAS A. AXEL                              Date
   Assistant United States Attorney
7  Chief, Major Frauds Section

8
                 _____          _____
9  RICHARD E. ROBINSON                          Date
   Assistant United States Attorney
10 Major Frauds Section

11      I, MELVYN I. WEISS, have read this agreement and carefully

12 discussed every part of it with my attorney.  I understand the

13 terms of this agreement, and I voluntarily agree to those terms.

14 My attorneys have advised me of my rights, of possible defenses,

15 of the Sentencing Guideline provisions, and of the consequences

16 of entering into this agreement.  No promises or inducements have

17 been made to me other than those contained in this agreement.  No

18 one has threatened or forced me in any way to enter into this

19 agreement.  Finally, I am satisfied with the representation of my

20 attorney in this matter.

21

22  _____          3-17-08
23  MELVYN I. WEISS                   Date
    Defendant

24

25      I am MELVYN I. WEISS's attorney.  I have carefully discussed

26 every part of this agreement with my client.  Further, I have

27 fully advised my client of his rights, of possible defenses, of

28
                                15

                                                            **121**

1  the sentencing factors set forth in 18 U.S.C. § 3553(c),

2  including the relevant Sentencing Guidelines provisions, and of

3  the consequences of entering into this agreement.  To my

4  knowledge, my client's decision to enter into this agreement is

5  an informed and voluntary one.

6

7  _____      MARCH 17, 2008

    BENJAMIN BRAFMAN, ESQ.          Date

8  Counsel for Defendant

9  MELVYN I. WEISS

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

16

<u>EXHIBIT A</u>

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR 05-587(E)-JFW |
| Plaintiff, | ) | <u>F O U R T H</u> |
| | ) | <u>S U P E R S E D I N G</u> |
| v. | ) | <u>I N F O R M A T I O N</u> |
| MELVYN I. WEISS, | ) | [18 U.S.C. § 1962(d): |
| Defendant. | ) | Racketeering Conspiracy] |
| | ) | |

The United States Attorney charges:

COUNT ONE

[18 U.S.C. § 1962]

[Racketeering Conspiracy]

1.   At all times relevant to this Information, the New York law firm partnership Milberg Weiss LLP, formerly known as "Milberg Weiss Bershad & Schulman LLP," "Milberg Weiss Bershad Hynes & Lerach LLP," and "Milberg Weiss Bershad Specthrie & Lerach," ("Milberg Weiss"), constituted an "enterprise" as defined by Title 18, United States Code, Section 1961(4), which was engaged in, and the activities of which affected, interstate commerce.

GSC:DAA:RER

2.   Defendant MELVYN I. WEISS ("WEISS"), William S. Lerach ("Lerach"), David J. Bershad ("Bershad"), Steven G. Schulman ("Schulman"), and others were employed by and associated with the enterprise.

3.   Defendant WEISS, together with Lerach, Bershad, Schulman, and others, entered and caused Milberg Weiss to enter into secret payment arrangements with individuals who served, and caused relatives to serve, as representative plaintiffs in class action and shareholder derivative action lawsuits brought and caused to be brought by Milberg Weiss. Pursuant to such an arrangement, Milberg Weiss agreed to and did pay the plaintiff a portion of the attorneys' fees that Milberg Weiss obtained in class actions in which the plaintiff served, or caused a relative or an entity that he or she controlled to serve, as a representative plaintiff.

4.   The plaintiffs who entered into such a secret payment arrangement with Milberg Weiss included Howard J. Vogel, Seymour M. Lazar, Steven G. Cooperman, and three individuals who resided, at times, in Florida (the "Florida Plaintiffs").  These individuals are referred to collectively herein as the "Paid Plaintiffs."

5.   At all relevant times herein, defendant WEISS, Lerach, Bershad, Schulman, and others knew that their payment arrangements with the Paid Plaintiffs had to be concealed from the federal and state courts presiding over their class actions. Defendant WEISS, Lerach, Bershad, Schulman, and others also understood that, to the extent necessary, they would make and cause to be made false and/or misleading statements in documents

2

**124**

1  filed in federal and state class actions (including complaints,

2  motions, and under-oath certifications) and in under-oath

3  testimony and other discovery in such actions in order to conceal

4  the existence of their secret payment arrangements.

5      6.    The purposes of the racketeering conspiracy included

6  the following:

7          a.    to provide Milberg Weiss and its partners,

8  including defendant WEISS, with a stable of persons who were

9  ready, willing, and able to serve, and whom the courts would

10  likely approve to serve, as named plaintiffs representing absent

11  class members in class actions;

12          b.    to enable Milberg Weiss and its partners,

13  including defendant WEISS, to file and maintain class actions;

14          c.    to assist Milberg Weiss and its partners,

15  including defendant WEISS, in securing lead counsel status in

16  class actions; and

17          d.    to enrich defendant WEISS and the other members

18  and associates of the enterprise.

19      7.    Beginning on a date unknown but at least as early as in

20  or about 1979, and continuing through at least in or about 2005,

21  within the Central District of California and elsewhere,

22  defendant WEISS, together with Lerach, Bershad, Schulman, and

23  other persons known and unknown, being persons employed by and

24  associated with Milberg Weiss, which was engaged in, and the

25  activities of which affected, interstate and foreign commerce,

26  knowingly and intentionally conspired to violate 18 U.S.C.

27  § 1962(c), that is, to conduct and participate, directly and

28  indirectly, in the conduct of the affairs of Milberg Weiss

3

125

1  through a pattern of racketeering activity, as that term is

2  defined in Sections 1961(1) and 1961(5) of Title 18, United

3  States Code, consisting of multiple acts indictable under the

4  Title 18, United States Code, Section 1503 (Obstruction of

5  Justice).

6      8.   It was a further part of the conspiracy that WEISS

7  agreed that a conspirator would commit at least two acts of

8  racketeering activity in the conduct of the affairs of the

9  enterprise.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4

**126**

COUNT TWO

[18 U.S.C. § 1963]

[Criminal Forfeiture]

9.    The allegations contained in Count One of this Information are hereby repeated, realleged, and incorporated by reference herein as though fully set forth at length for the purpose of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Section 1963.  Pursuant to Federal Rule of Criminal Procedure 32.2, notice is hereby given to defendant WEISS that the United States will seek forfeiture as part of any sentence in accordance with Title 18, United States Code, Section 1963 in the event of defendant's conviction under Count One of this Information.

10.    Defendant WEISS has property constituting and derived from proceeds obtained, directly and indirectly, from the conspiracy described in Count One, which property is subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(3).

11.    The property of Defendant WEISS subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963 is the sum of money equal to the total amount of proceeds defendant obtained, directly and indirectly, from the conspiracy, which sum the government, for the purpose of this Information only, fixes at $9,750,000.

12.    If the property described in the preceding paragraph as being subject to forfeiture, as a result of any act or omission of defendant WEISS or any of his co-conspirators:

5

**127**

1       a.   cannot be located upon the exercise of due

2           diligence;

3       b.   has been transferred or sold to, or deposited

4           with, a third party;

5       c.   has been placed beyond the jurisdiction of the

6           court;

7       d.   has been substantially diminished in value; or

8       e.   has been commingled with other property which

9           cannot be divided without difficulty;

10  it is the intention of the United States, pursuant to Title 18,

11  United States Code, Section 1963(m), to seek forfeiture of any

12  other property of said defendant up to the value of the

13  forfeitable property.

14

15  THOMAS P. O'BRIEN
United States Attorney

16

17

18  GEORGE S. CARDONA
Chief Assistant United States Attorney

19  DOUGLAS A. AXEL
Assistant United States Attorney

20  Chief, Major Frauds Section

21  RICHARD E. ROBINSON
Assistant United States Attorney

22  Major Frauds Section

23

24

25

26

27

28

6

EXHIBIT B

STATEMENT OF FACTS IN SUPPORT OF MELVYN I. WEISS
PLEA AGREEMENT AND INFORMATION

Defendant MELVYN I. WEISS ("WEISS") represents and admits
that the following facts are true.  Pseudonyms, capitalized
terms, and case names herein have the same meanings as are
ascribed to them in the second superseding indictment in United
States v. Milberg Weiss LLP, et al., CR 05-587(D)-JFW (the
"SSI").

Introduction

1.  WEISS co-founded the firm later known as "Milberg Weiss"
before 1972.  At all relevant times, WEISS was a name partner in
the firm, which was known at various times as "Milberg Weiss
Bershad Spechthrie & Lerach," "Milberg Weiss Bershad Hynes &
Lerach," "Milberg Weiss Bershad & Schulman," and "Milberg Weiss
LLP" (hereinafter "Milberg Weiss").

2.  At all relevant times, Milberg Weiss was a law firm
partnership specializing in serving as plaintiff's counsel in
class actions and shareholder derivative actions (collectively
"Class Actions") brought in federal and state courts throughout
the United States, including in the Central District of
California.  Milberg Weiss was engaged in, and the activities of
Milberg Weiss affected, interstate commerce.

3.  At all relevant times, WEISS possessed substantial
control over the management and conduct of Milberg Weiss's
business affairs.  Prior to on or about January 1, 1999, WEISS,
as an original managing partner, possessed the authority to veto
any proposed action or decision affecting the operation or
management of Milberg Weiss, including deciding who became a
partner in Milberg Weiss and how much they earned.  Between on or
about January 1, 1999 and May 1, 2004, WEISS, as Co-Chair of
Milberg Weiss's Executive Committee, shared final decision-making
authority over actions affecting partner compensation at the
firm.  After on or about June 16, 2004, WEISS again possessed the
authority to veto any action or decision affecting Milberg Weiss.

4.  As counsel representing class members or shareholders
not before the courts (collectively "absent class members"),
Milberg Weiss and its attorneys, including WEISS, had fiduciary
duties of loyalty, honesty, and trust to absent class members.
Individuals who served as representative plaintiffs on behalf of
absent class members (hereinafter "named plaintiffs") likewise
had fiduciary duties of loyalty, honesty, and trust to those

**129**

absent class members.

### Overview of Secret Payment Arrangement

5.  Beginning in or about the 1970s and continuing at least into 2005, in order to facilitate the recruitment and retention of named plaintiffs, certain senior Milberg Weiss partners agreed with various individuals that Milberg Weiss would secretly pay those individuals a portion of the attorneys' fees that Milberg Weiss obtained in Class Actions in which such individuals served, or caused a relative, associate, or entity they controlled to serve, as a named plaintiff.

6.  The Milberg Weiss partners who agreed during the relevant times to secretly pay certain named plaintiffs (collectively, the "Conspiring Partners") included, among others, WEISS, William S. Lerach ("Lerach"), David J. Bershad ("Bershad"), and Steven G. Schulman ("Schulman").

7.  The individuals who agreed to serve as named plaintiffs in Class Actions pursuant to a secret payment arrangement with Milberg Weiss included Howard J. Vogel ("Vogel"), Seymour M. Lazar ("Lazar"), Steven G. Cooperman ("Cooperman"), and three individuals who resided, at times, in Florida (the "Florida plaintiffs").  These individuals are referred to collectively herein as the "Paid Plaintiffs."  Generally, these individuals were promised that they would be paid approximately 10% of the net attorneys' fees that Milberg Weiss obtained in their respective Class Actions.  They were also told that the amount would be lower if they were paid in cash or if Milberg Weiss had payment obligations on the same case to others.

8.  By entering into such payment arrangements, the Conspiring Partners were able to secure a reliable source of individuals who were ready, willing, and able to serve as named plaintiffs in Class Actions that Milberg Weiss wanted to bring.  In addition, some of these individuals would investigate and propose to Milberg Weiss lucrative potential Class Actions for Milberg Weiss to bring.  Such payment arrangements generally enabled Milberg Weiss to file more Class Actions and to file them more quickly than would be possible absent such arrangements.

9.  WEISS believed that discovery in a Class Action of the secret payment arrangement with a named plaintiff could have resulted in, among other things: (a) the disqualification of the named plaintiff from serving as a class representative in that action and other Class Actions; and (b) the disqualification of

2

Milberg Weiss, including the Conspiring Partners, from serving as class counsel in that action and other Class Actions.

10.  The Conspiring Partners concealed the payments to named plaintiffs.  Among other things, they had the Paid Plaintiffs select intermediary law firms, lawyers, and other professionals through whom they would be paid their payments.  The Conspiring Partners would cause Milberg Weiss checks to be issued to these intermediaries, with the understanding and intent that the money would be distributed to or used for the benefit of the Paid Plaintiffs.  WEISS and the other Conspiring Partners knew that although these payments were variously documented and described as, among other things, "referral fees" and "professional fees" owed by Milberg Weiss to the intermediaries, they were actually disguised payments to the Paid Plaintiffs.

11.  Among other things, WEISS: (a) agreed to the payment arrangement between Milberg Weiss and Lazar; (b) was aware of the payment arrangements between Milberg Weiss and the Florida plaintiffs and personally made a cash payment to a Florida plaintiff in the late 1980s; and (c) was aware of the payment arrangement between Milberg Weiss and Cooperman and personally made at least one payment by check to Cooperman.

12.  At all relevant times, WEISS, the other Conspiring Partners, and the Paid Plaintiffs understood that, to the extent necessary, Conspiring Partners and/or Paid Plaintiffs would make and cause to be made false and/or misleading statements in documents filed in federal Class Actions (including complaints, motions, and under-oath certifications) and in under-oath testimony and other discovery in such actions in order to conceal the existence of their secret payment arrangements.

13.  Among the false and/or misleading statements the Conspiring Partners and the Paid Plaintiffs made and caused to be made in order to conceal their secret payment arrangements were the following, made in connection with the following class actions:

a.  On or about November 6, 1996, one or more of the Conspiring Partners caused to be submitted to the court in the class action Steven Cooperman v. Individual, Inc., et al., 96-CV-12272, (United States District Court, District of Maine), a certification signed by Cooperman under penalty of perjury, in which Cooperman falsely stated that he would "not accept any payment for serving as a representative party on behalf of a class beyond plaintiff's pro rata share of any recovery, except

3

**131**

such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court."

      b.   On or about October 31, 1997, one or more of the Conspiring Partners caused to be submitted to the court in the class action Howard Vogel Retirement Plan v. Oxford Health Plans, Inc., et al., 97 CV 02325 (United States District Court, District of Connecticut), D. Ct.), a certification signed by Vogel under penalty of perjury, in which Vogel falsely stated that the Howard Vogel Retirement Plan would "not accept any payment for serving as a representative party on behalf of a class beyond plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court."

      c.   On or about December 13, 1999, one or more of the Conspiring Partners caused to be submitted to the court in the class action Helene Giarputo and Seymour Lazar v. Xerox Corp. et al., 99 CV 2374 (United States District Court, District of Connecticut), a certification signed by Lazar under penalty of perjury, in which Lazar falsely stated that he would "not accept any payment for serving as a representative party on behalf of a class beyond plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court."

      d.   On or about July 26, 2004, one or more of the Conspiring Partners caused to be submitted to the Court in the class action Howard Vogel v. KVH Industries Inc., et al., 04-CV-320-ML (United States District Court, District of Rhode Island), a certification signed by Vogel under penalty of perjury, in which Vogel falsely stated, among other things, that he would "not accept any payment for serving as a representative party beyond my pro rata share of any recovery, except reasonable costs and expenses, such as lost wages and travel expenses, directly related to the class representation, as ordered or approved by the court pursuant to law."

      14.  No later than 1979, and continuing through at least in or about 2005, there was an agreement between WEISS and other persons employed by or associated with Milberg Weiss, including Lerach, Bershad, Schulman, and others, to conduct the affairs of Milberg Weiss through a "pattern of racketeering activity" as

4

defined by Title 18, United States Code, Section 1961(a) & (5),
namely, multiple acts indictable under Title 18, United States
Code, Section 1503, the last of which was to occur within ten
years after the commission of a prior such act.  Four such
racketeering acts are described in paragraph 13 above.

5

## EXHIBIT C

## CONSENT TO FORFEITURE

I, _____, hereby consent to criminal, civil and/or administrative forfeiture of $9,750,000, which funds defendant Melvin I. Weiss is obligated to pay to the United States pursuant to his plea agreement in U.S. v. Melvin I. Weiss, CR 05-587(E)-JFW (hereinafter, the "Forfeited Funds").

I hereby knowingly, voluntarily, and intelligently abandon, relinquish, transfer and waive:

    (i)  any and all rights in the Forfeited Funds to and in favor of the United States;

    (ii) all notice of any forfeiture proceedings relating to any of the Forfeited Funds;

    (iii)all defenses to any forfeiture proceedings relating to any of the Forfeited Funds (including, without limitation, statutes of limitation, failure to provide timely notice of forfeiture, and defenses based on or arising out of the doctrine of community or marital property); and

    (iv) all rights to judicial review of the forfeiture of the Forfeited Funds.

I admit, and do not and will not dispute, that the Forfeited Funds:

    (i)  constitute or are derived from net proceeds of the racketeering conspiracy in violation of 18 U.S.C. § 1962(d) described in count one of the information in U.S. v. Melvin I. Weiss, CR 05-587(E)-JFW ;  and

**134**

1        (ii)  are therefore subject to civil and/or criminal

2              forfeiture pursuant to 28 U.S.C. § 2461(c), 18

3              U.S.C. § 981(a)(1)(C), 18 U.S.C. § 981(a)(1)(A)

4              and 18 U.S.C. § 1963.

5

6    DATED: _____, 2008

7                                        (Print name)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

**EXHIBIT 2**



**New York University**
*A private university in the public service*

School of Law

40 Washington Square South, Room 409D
New York, NY 10012-1099
Telephone: (212) 992-8147
Fax:          (212) 995-4590
Email:     arthur.r.miller@nyu.edu
**Arthur R. Miller**
*University Professor*

April 28, 2008

Honorable John F. Walter
United States District Court
Central District of California
312 N Spring Street
Room 176, Courtroom 16
Los Angeles, CA 90012

<u>Re: UNITED STATES v. MELVYN I. WEISS</u>
<u>NO. CR 05-587 (E) - JFW</u>

Dear Judge Walter:

I first met Melvyn I. Weiss approximately twenty-five years ago when I was moderating an "all star" panel of lawyers and judges at the National Center for State Courts. It was a highly intensive dialogue that went on for almost three hours.  It was then that I first learned how extraordinarily powerful Mel's mind is in working through litigation issues, what a warm and giving heart he has, and what an incredible status he had with fellow members of the Bench and Bar.

Life brought us together again some time thereafter when he asked me to represent his firm on certain matters in the Washington Public Power Supply System Litigation before the District Court and then in the Ninth Circuit. Thereafter our social and professional relationship grew more and more intense and for the past twenty years or so I have considered him one of my closest personal friends, a great mentor for me as I sought to understand the practical dimensions of the litigation courses I teach and do scholarly writing on, and a professional colleague on a wide range of legal matters relative to Federal Court cases on which I consult.

Over the years – even when I was still a member of the Harvard Law School faculty – I interacted with Mel on a weekly, and during some periods daily, basis. During this time I have been with him and his wife of almost fifty years, his three wonderful children and grandchildren, Holocaust Survivors, lawyers in his office, members of the Bench and Bar, my students at Harvard and New York University Law schools, victims of an oil spill, and members of various philanthropic groups. His ability to relate to people with

**136**

love and compassion and often to inspire and comfort them has been amazing to me. This is someone with a true generosity of spirit that often transcends legal representation, as with Ellie Gross, a very senior Holocaust Survivor whose poems Mel had published because it meant so much to her. In matters of the human spirit, Mel has had a great effect on others and been a model for me.

In my fifty years as a practitioner and academic I have encountered very few people who conduct themselves with a deeper commitment to the best interests of their clients or show a greater tenacity in securing the most effective and appropriate results for them than Mel Weiss. His extraordinary skills at plumbing the depths of the most complicated legal situations and transactions, whether, for example, they involve the mysteries of the initial public offering market place, as in the IPO Securities Litigation, the difficulties created by a terrible toxic spill in California, as was true in the Stringfellow Acid Pits Litigation, or some of the horrible consequences emanating from the Holocaust, as in the Swiss Banks and German Industry Slave Labor Cases, truly is remarkable. On many occasions he had to master the intricacies of the esoteric governing substantive law and negotiate inventive and sensible solutions that provided compensation and other forms of relief for the groups of people he represented.

In each of the many contexts in which I have observed his work, the beneficiaries of Mel's efforts have been people – countless in numbers – who have been unable, either economically, intellectually, or by virtue of age or infirmity to pursue their grievances on their own and for whom alternative legal representation was unavailable. Simply put, these people would have been unable to secure access to our justice system, let alone any legal redress they might be entitled to, without his assistance. He has a deep and genuine concern about people; his are not "lawyers'" cases; he doesn't just represent classes; he represents people and I have watched him – on innumerable occasions – care about them as individuals in need of help.

In many, many instances Mel has been willing to assume significant financial risks and invest enormous amounts of personal time when others would not step forward. A perfect exemplar is the Slave Labor Cases. I was present when an intricate legal theory was presented to him for pursuing quantum merit and international law claims for the slave laborers who were taken from the concentration camps and forced to work (usually to death) for German industry during World War II – sixty years earlier. No one else was willing to undertake such a venture. Mel had the vision – and the humanity – to see the possibilities and he devoted enormous energy and resources to that effort for years before it bore fruit for the Survivors. He also understood that what was important for most of the Survivors was public recognition of what they had suffered. That is why he funded a structure of paralegals who were available to empathize and confer with Survivors, not simply in connection with the Slave Labor cases but about their experiences as well as German so-called exacerbation claims and pensions. He did that knowing the costs would not be reimbursed. The Slave Labor Cases were only secondarily about monetary compensation. Indeed much of what Mel has done in the years I have been with him has not been about money but about accountability. The tremendous loyalty and gratitude so

**137**

many of the beneficiaries of Mel's professional and charitable work feel toward him is a testament to his efforts.

Of the many situations I could describe that demonstrated Mel's commitment to the use of the law to help people, one – perhaps a touch parochial – stands out in my mind. In 2000 the American Bar Association asked me to moderate a panel at the millennium annual meeting in London. My panel was an extraordinary one, including Justice Kennedy of our Supreme Court, the Chief Judge of the New York Court of Appeals, Judith Kaye, three of the English Law Lords, and several other notables from both sides of the Atlantic. Mel had been selected to reflect the views of the plaintiff side of the American practicing profession. It was a wonderful philosophical and attitudinal discussion set in a beautiful London venue. At various points, Mel spoke from his heart and his experience about his deeply held belief in the social value of citizen access to the American courts, the importance of a level litigation field, and the need to provide those damaged by some of life's misadventures with effective relief. Watching the faces of the other panelists and those in the audience it was clear to me that his words had a deep resonance throughout the hall. Indeed, many of the other panelists' comments sought to echo his.

Melvyn I. Weiss is a man who has had a meaningful career and has had a significant and positive affect on the lives of many, many people. I mourn, from the bottom of my heart, his present situation. It is like watching a brother in continuing pain – the end of his professional career, lost stature and dignity, the deprivation of certain philanthropic activities, and now the prospect of incarceration. I hope that in the exercise of your discretion you are able to afford him leniency in recognition of his years of meaningful professional and community service, productivity, and commitment to others, knowing that he plans to continue those endeavors in the future. It would be a shame if the people who could benefit from his talents and willingness to engage in good works were deprived of his help any longer than was absolutely necessary.


Sincerely yours,

Arthur R. Miller

138

**EXHIBIT 3**



**Barrack, Rodos & Bacine**
*A Professional Corporation*
**Attorneys At Law**
www.barrack.com

Leonard Barrack
Gerald J. Rodos
Daniel E. Bacine
William J. Ban†
Jeffrey A. Barrack
Stephen R. Basser*
Regina M. Calcaterra†
Chad A. Carder**
A. Arnold Gershon††
Jeffrey B. Gittleman**‡
Jeffrey W. Golan
John L. Haeussler*
Robert A. Hoffman**
M. Richard Komins
Gloria Kui†††
Lisa M. Lamb
Leslie Bornstein Molder
Mark R. Rosen***
Beth R. Targan**
Samuel M. Ward*

Of Counsel:
*Frances Vilella-Vélez*††††

Admitted in PA, except:
* Admitted in CA
** Also admitted in NJ
*** Also admitted in CA & NJ
† Admitted in NY
†† Admitted in NY
††† Admitted in NY & NJ
†††† Also admitted in Puerto Rico

Main Office
Two Commerce Square
2001 Market Street
Suite 3300
Philadelphia, PA 19103
215.963.0600
215.963.0838 Fax

California Office
402 West Broadway
Suite 850
San Diego, CA 92101
619.230.0800
619.230.1874 Fax

New Jersey Office
49 Bridge Street
Lambertville, NJ 08530
609.773.0104
609.773.0219 Fax

New York Office
1350 Broadway
Suite 1001
New York, NY 10018
212.688.0782
212.688.0783 Fax

May 1, 2008

Honorable John F. Walter
United States District Court
Central District of California
312 N. Spring Street
Room 176, Courtroom 16
Los Angeles, CA 90012

Re: United States v. Melvyn I. Weiss
    No. CR 05-587(E)-JFW

Dear Judge Walter:

I am writing to request that in connection with the sentencing of Melvyn I. Weiss, Your Honor consider Mr. Weiss' great accomplishments in his professional life, including the extraordinary help he has offered for more than forty years to innocent victims of fraud and deceit to whom he has returned literally billions of dollars unlawfully taken from them.

I am an attorney in Philadelphia and have practiced in the field of securities litigation for most of my career. I first met Mr. Weiss almost forty years ago as I was just beginning my practice, when he was involved in a lawsuit along with my then firm. Even at that time, Mr. Weiss, while still a young lawyer himself, already exhibited incredible tenacity and brilliance and an overarching desire to help people who have been wronged, no matter how large or powerful the wrongdoer was.

Over the years, I have worked with, and at times, against Mr. Weiss, and I have seen his tenacity and desire to help innocent victims only grow stronger. Mr. Weiss is personally responsible for a good part of the development of the law relating to securities litigation, and particularly class action aspects. He is universally recognized as one of the pre-eminent figures in class action securities litigation and is truly a titan in the field. It always seemed to me that the one thing that he has kept uppermost in his mind is to

**139**



*Barrack, Rodos & Bacine*

Honorable John F. Walter
May 1, 2008
Page Two

protect those that need protection the most.  The tens of thousands of innocent victims he has helped can attest to that.

Mr. Weiss was exceedingly kind to me in my early years of practice, meeting with me and helping me to develop as a lawyer.  This is not always the case with how young lawyers are treated by those lawyers with more experience.  I have seen this same kindness and generosity by Mr. Weiss over the years directed to others.  He never was too "important" to confer and give advice.

I understand that Mr. Weiss has pled guilty to certain illegal conduct and I know that he has true remorse for his actions.  I still have great respect for Mr. Weiss in light of all the goodness he has exhibited throughout his life, including trying to restore financial well-being to those so severely harmed by the unlawful acts of others.  I sincerely request the Court to take all Mr. Weiss' accomplishments into consideration along with the crime he has pled guilty to and ask the Court for mercy and leniency in its sentence.  Mr. Weiss could be extremely helpful in offering Community Service and I urge the Court to consider such a sentence.

Thank you for your consideration.

Respectfully,

Leonard Barrack

LB:dsk

140

# EXHIBIT 4

**SEEGER WEISS LLP**
ATTORNEYS AT LAW
ONE WILLIAM STREET
NEW YORK, NEW YORK 10004-2502
(212) 584-0700
FAX (212) 584-0799
www.seegerweiss.com

CHRISTOPHER A. SEEGER NJ NY
STEPHEN A. WEISS NY
DAVID R. BUCHANAN NJ NY
DIOGENES P. KEKATOS NY
ERIC T. CHAFFIN NY PA VA
MOSHE HORN NJ NY
JONATHAN SHUB CA PA

MICHAEL L. ROSENBERG NJ NY
MARC S. ALBERT NJ NY
DONALD R. BRADFORD CO IL
JAMES A. O'BRIEN III A NM NY

Δ COUNSEL
Attorneys admitted in
states as denoted.

RICK BARRECA NJ NY
TERRIANNE BENEDETTO NJ PA
KEVIN G. BOISVERT NJ NI
PATRICIA D. CODEY NJ
SINDHU S. DANIEL MI NJ
DENNIS M. GEIER NJ NY
SCOTT A. GEORGE NJ PA
JEFFREY S. GRAND NY
ROOPAL P. LUHANA NJ NY
LAURENCE V. NASSIF NJ NY
ANDREA M. PI-SUNYER NY
DENISE K. STEWART NJ
CHRISTOPHER M. VAN DE KIEFT NY
RICHARD C. WILLIAMS, JR. NJ

April 30, 2008

Honorable John F. Walter
United States District Court
 Central District of California
312 N. Spring Street
Room 176, Courtroom 16
Los Angeles, CA  90012

Re:  *United States v. Melvyn I. Weiss*
*No. CR 05-587(E)-JFW*

Dear Judge Walter:

My name is David Buchanan.  I am a partner in the law firm of Seeger Weiss LLP.  Prior to that time, I practiced with Fried, Frank, Harris, Shriver & Jacobson.  Over the last fifteen years, I have practiced closely with Mel Weiss—initially against him and thereafter with him—in his efforts to represent the interests of aggrieved consumers and shareholders.  Over that time, Mel and I have likewise developed a close personal relationship, as I have with Mel's son, Stephen, with whom I became a partner in 2000.

Professionally, I have worked closely with Mel on numerous cases.  In so doing, I observed not only the end results, but also the decisions, paths, and actions that led to them.  At all times, Mel exhibited the highest level of integrity, professionalism, and, ultimately, respect for the legal process in leveling the playing field for so many.  I have had the privilege of working alongside some of the finest lawyers in the country in both the defense and plaintiff bars, and can without question count Mel as one of the finest among them in every measure of quality and character that matters.

The hundreds of thousands of individuals whose interests he has represented and who have benefited greatly from his commitment have been well described.  But a box score in this setting doesn't tell the whole story.  Mel has often been the lawyer to represent those who others would not represent.  He has been the lawyer to take on the case or client that others thought was too fraught with challenge that the wrong could not

**141**

Honorable John F. Walter                    2                         April 30, 2008

be righted.  I have seen him assume representations with little prospect of compensation (though at great cost to him and his firm) because it was simply the right thing to do and something needed to be done.  Those are often the cases that don't make headlines or yield fees.  But they do make a difference.  They provide recourse to someone wronged in some manner personal to them.  Mel understands that fact fundamentally and assumes that responsibility proudly.

     I understand that Mel has pleaded guilty to certain serious crimes.  During the course of this prosecution, I have seen him suffer as much that he has worked to build— his firm, his reputation, his ability to represent those who need it most—has fallen from him.  He has already lost so much that was central to his being through this painful process.  I would urge the Court to consider this and be lenient in Mel's sentencing.  Indeed, the punishment than the system has already exacted upon him, perhaps uniquely given his stature and nature of his profession, is greater than that which would be imposed by any period of incarceration.

     In considering an appropriate sentence, it is my hope that the Court will also consider, more basically, the person that Mel is.  There is no shortage of colleagues, clients, or even adversaries that can attest to his efforts to represent the under-represented.  However, divorced of the law and all of his professional achievements, at his core, Mel is a uniquely special man—a person who has used the success flowing from his accomplishments to give back.  He has made a tremendous difference in the lives of so many people touched directly or indirectly by his substantial charitable causes and personal generosity.  He has the will and ability to make a difference, to make things better.  I am deeply saddened at the possibility of his absence for the many people his actions touch so regularly.

     I finally ask for leniency for Mel and his dear family.  I know their bond with him is resilient.  Yet, his remaining years are precious.  I have had the fortunate opportunity to know him outside of work.  Always the staunch advocate in court, Mel is a dear, kind man to those who know him as husband, father, grandfather, and friend.  I have seen his kindness.  I have seen his goodness.  I have seen his generosity.  So many benefit from his presence and his concern.  It is hard to understand how any period of incarceration would do more than deprive those in need of his kindness and concern of that opportunity.

                                        Respectfully,

                                        David R. Buchanan

**142**

# EXHIBIT 5

# BURGSIMPSON

**BURG I SIMPSON I ELDREDGE I HERSH I JARDINE PC**

ATTORNEYS & COUNSELORS AT LAW

**COLORADO** 40 Inverness Drive East Englewood, CO 80112
P: 303.792.5595 F: 303.708.0527

**WYOMING**
1135 14th Street
P.O. Box 490
Cody, WY 82414
P: 307.527.7891
F: 307.527.7897

**TEXAS**
7920 Belt Line Road
Suite 650
Dallas, TX 75254
P: 972.934.1313
F: 972.231.3983

**WASHINGTON D.C.**
227 Massachusetts Ave., NE
Suite 1
Washington D.C 20002
P: 202.544.7600

**ARIZONA**
2415 E. Camelback Road
Suite 700
Phoenix, AZ 85016
P: 602.508.6110

**OHIO**
312 Walnut St.
Suite 2090
Cincinnati, OH 45202
P: 513.852.5600
F: 513.852.5611

www.burgsimpson.com

April 21, 2008

Honorable John F. Walter
United States District Court
Central District of California
312 N. Spring Street
Room 176, Courtroom 16
Los Angeles, CA 90012

Dear Judge Walter:

I am writing on behalf of my mentor and dear friend, Melvyn Weiss, who is scheduled to be sentenced on June 2 2008 for certain crimes he has pled guilty to and for which he is preparing to "take his medicine".

I am an attorney working in Englewood, Colorado. Prior to my 16 years of practicing at the law I practiced surgery of the foot and ankle for 10 years and this May I graduate from the Johns Hopkins School of Public Health with a MPH in Epidemiology. I have dedicated my entire professional life to helping and serving others.

When I first began at the practice of law I was fortunate enough to begin working on several 'mass tort litigations' including the Diet Pill Multi-District Litigation (MDL), the Rezulin MDL, the Propulsid MDL, the Phenylpropanolamine MDL, the Baycol MDL, the Ortho-Evra MDL, the Vioxx MDL and, just recently, the Gadolinium-based Contrast Agents MDL. As a result of my medical background and interests I was assigned to be either chair or co-chair of the Science and Expert Witness Committee for each of these MDLs.

In that capacity, especially in the earlier years, I had the great fortune of working with Mel Weiss and learning from him. Foremost amongst all of my memories in that regard was Mel constantly reminding the attorneys involved, and me specifically, to never lose sight of the plight of the clients

| | | | | | | |
|---|---|---|---|---|---|---|
| Michael S. Burg | Holly Baer Kammerer | David K. TeSelle | Steven D. Laman | Lisa A. Klein | Milward L. Simpson 1897-1993 | **OF COUNSEL** |
| Peter W. Burg | William L. Simpson* | Michael J. Heydt | Larry Jones* | Daniel R. Coombe | Joseph J. Branney 1936-2001 | Dale J. Coplan, P.C. |
| Hon. Alan K. Simpson* | Colin M. Simpson* | Seth A. Katz | Jeffrey Pederson | Jennifer L. Thompson | | Charles G. Kepler* |
| Scott J. Eldredge | Rosemary Orsini | Janet G. Abaray † | Sarah Van Arsdale Berry | Lauren M. DeLong † | Irwin L. Sandler 1945-2006 | Perry L. Goorman |
| David P. Hersh | Chris Edwards* | John M. Restaino, Jr. * | Stephen M. Johnson | Andrea Joslin | | |
| Kerry N. Jardine | Kieth Van Doren | Brian K. Matise | Max Yefimenko | Daniel E. McKenzie ▪ | | **SPECIAL COUNSEL** |
| Thomas W. Henderson | Diane Vaksdal Smith | Calvin S. Tregre, Jr.† | Melanie S. Bailey* | James W. Hart | | Richard A Lewins† |
| | | | | | | Steven G. Greenlee |

*"Firmly Committed to Excellence"*

**143**

**STATE LICENSES:** Arizona, California, Colorado, District of Columbia, Florida, Illinois, Maryland, Minnesota, Nebraska, New Mexico, New York, Texas, Wyoming.
*LICENSED only in Wyoming ▪LICENSED only in Texas †LICENSED only in Ohio ▪LICENSED in Ohio and Kentucky ▪ LICENSED only in California ▪LICENSED only in Illinois

April 21, 2008
Page 2

for whom we labored; that our 'goal' in each litigation was *not* a large settlement from which one could derive a large fee and Common Benefit allotment but, instead, our goal was a fair and equitable resolution of the case in order to effectuate as much a recovery for our clients as possible. Mel would share with me the circumstances under which he would *reduce* his fees and/or costs to assure that the clients received a fair amount of the money to be distributed.

I have never forgotten that advice from Mr. Weiss and it continues to guide my custom and practice as I continue at the practice of law.

I write this letter fully aware of those crimes Mr. Weiss has pled guilty to and to share with you that, just two weeks ago, while together in New York City, Mr. Weiss shared with me, and a small group of attorneys out to dinner together, his extreme remorse and regret in this regard and that he was prepared to take that "medicine" 'prescribed to him' by his honor.

I ask his honor to take into consideration the many, many years during which Mr. Weiss fought hard for the 'little man', reducing his fee and costs when and where appropriate and teaching a generation of lawyers currently practicing law these guiding principles.

I beg his honor to look at the totality of the circumstances of the life of this giant of the legal profession and to consider his past generousness to his clients and teachings to legions of lawyers that follow in his footsteps. We are all in debt to this great man who, admittedly, in his later life, stumbled so and brought such shame upon himself and his family.

If it pleases the court, I beg of you to consider a 'novel' sentence for Mr. Weiss, perhaps one involving a period of home confinement and mandatory teaching at one of the law schools nearby Mr. Weiss, e.g. the City University of New York or Columbia. So much more 'good' would come out of such a 'sentencing', *not* for Mr. Weiss himself but for the future attorneys for whom he can share so much positive knowledge and information.

I thank the court for its time in reading this missive and considering my plea herein.

Respectfully,

John M. Restaino
BURG SIMPSON ELDREDGE HERSH
& JARDINE, P.C.

**144**

**EXHIBIT 6**

# BOIES,   SCHILLER   &   FLEXNER   LLP

333 MAIN STREET • ARMONK, NY 10504 • PH. 914.749.8200 • FAX 914.749.8300

May 5, 2008

Honorable John F. Walter
United States District Court
Central District of California
312 North Spring Street
Room 176, Courtroom 16
Los Angeles, CA 90012

RE: United States v. Melvyn I. Weiss
No: CR 05-587(E)-JRW

Dear Judge Walter:

I have been practicing law for 42 years, first at Cravath, Swaine and Moore, LLP and later (since 1997) at Boies, Schiller, and Flexner, LLP. I have known Mel Weiss well for more than 20 years--professionally, personally, and in connection with some of his charitable work.

As a trial lawyer, I am particularly conscious of the serious nature of Mr. Weiss's criminal conduct. However, in sentencing him I hope you will grant whatever leniency you can both in terms of the duration of the sentence you impose and in permitting a period of home confinement or community service to be included as part of any sentence. I am sure that it is common in letters like this to describe the defendant in glowing terms. However, in this case it is really true that, despite Mr. Weiss' crimes, he is a man of extraordinary warmth, integrity, and accomplishment who has made many important contributions to our justice system and our country.

Professionally, Mr. Weiss was, of course, a tough and fearsome adversary. However, except for the crimes for which he is to be sentenced, I have never known him to mislead me or a court. His word was always good whether it related to a discovery dispute or a settlement involving hundreds of millions of dollars. Many of the cases that he brought compensated real victims and stimulated important changes in corporate behavior; he, and under his leadership his firm, also devoted an unusual amount of time and money to pro bono cases.

On a personal level, Mr. Weiss is also the real deal. I cannot imagine how many times you must hear that a convicted criminal is a devoted spouse and parent, a good and loyal friend, and a valued mentor. All I can say, for what it is

**145**

BOIES, SCHILLER & FLEXNER LLP

worth, is that this time it is true.  In addition, as long as I have known Mr. Weiss he has been unusually generous both to individuals and to charities. His generosity, has changed, and is changing, the lives of many far less fortunate than we are. People give for a variety of reasons, and every gift to a good cause helps regardless of motivation. However, it is particularly rewarding to see someone give, as Mr. Weiss has done, quietly and with no interest other than how he can share his good fortune with others.  A lot of people, myself included, have given a lot less with more recognition.

I am sure that you will be burdened with many letters, and I appreciate whatever consideration you give to this one.

Respectfully yours,

David Boies

David Boies

2

**EXHIBIT 7**

# The Zagrans Law Firm

474 OVERBROOK ROAD
ELYRIA, OHIO  44035

www.zagrans.com  (website)
www.sixthcircuitblog.com  (blog)

**Eric H. Zagrans**
Admitted in D.C. and Ohio
Direct Dial:  440.452.7100
Direct Fax:  440.914.9601
E-mail:      eric@zagrans.com

May 5, 2008

Honorable John F. Walter
United States District Court for the
    Central District of California
312 N. Spring Street
Room 176, Courtroom 16
Los Angeles, CA  90012

Re:     *United States v. Melvyn I. Weiss*
        No. CR-05-587(E)-JFW

Dear Judge Walter:

As an attorney who has represented both plaintiffs and defendants in class action litigation, I have known Mel Weiss as an adversary and as a colleague for over 20 years.  I was a law professor at Case Western Reserve University Law School teaching Federal Courts, Civil Procedure, Evidence and Administrative Law when I first encountered Mel.  Later, I was one of his opponents while I was Associate General Counsel of Ernst & Young and he was class counsel suing the accounting firm and others with respect to an alleged corporate defalcation and corresponding audit failure.  In recent years, we have been on the same side of securities fraud class actions at the appellate and Supreme Court levels.  Therefore, I know Mel as a pillar of the legal community and as a giant of the class action bar – an innovator in various legal theories and techniques but someone who values a mutually-beneficial settlement over a scorched earth, take-no-prisoners attitude.  He is a formidable lawyer who fights hard for his clients, but also one who never hesitates to show mercy to his adversaries who deserve mercy.

I am deeply troubled and saddened by the conduct for which Mel has pleaded guilty, but find it completely consistent with the tenor of his character that I came to know and respect over the years that he would take responsibility for his actions and accept the consequences of his behavior.  Mel is one of the most special and unique individuals I have ever met, and his passion for justice is exceeded only by his compassion and concern for the well being of his clients and other victims of large-scale torts whom he has represented for more than 40 years.

As you may be aware from others, Mel has a lengthy and unparalleled track record of civic involvement and service to the community in New York and throughout the country.  Obviously, the crimes to which he has pleaded guilty are serious, but it would compound the tragedy of the downfall of a man who has done so much good for so many people for so long if the community and charitable interests to which he has devoted so much time and energy would be deprived of his services and involvement for an extended period of time.  Mel is in his 70's, and the charities and community organizations that depend on him need the benefit of his services while he still has the strength and health to devote to their causes.

**147**

*The Zagrans Law Firm*

Hon. John F. Walter
May 5, 2008
Page Two

Although I have never believed there is any such thing as a "victimless" crime, I respectfully remind the Court that as wrong as Mel's actions clearly were, they did not add to the overall cost of the settlements paid by the respective defendants in those cases nor reduce the common fund from which other class members were compensated.

Your Honor, I am pleading with you to exercise your discretion to show leniency to Mel Weiss in sentencing him next month – a sentence that will take into account not only the crimes to which he has pleaded guilty but also will recognize and credit the extraordinary accomplishments he has made to our profession and to the community at large. Taking all factors into consideration, I urge you to impose a period of home confinement and/or community service as the cornerstone of your sentence. I respectfully submit it would balance the gravity of the offense with the demonstrable and undeniable value and benefit Mel Weiss brings to his family, his community and the causes of those who would not be nearly as well off without his magnificent contributions.

It is written: "Blessed are the merciful for they shall obtain mercy." I am asking for your mercy on Mel Weiss at the time of his life when he needs it most and when only you can grant it. I will leave it to these lines from *The Merchant of Venice* to express what I am trying to convey far better than I possibly can:

> The quality of mercy is not strain'd;
> It droppeth as the gentle rain from heaven
> Upon the place beneath. It is twice blessed;
> It blesseth him that gives, and him that takes.
> 'Tis mightiest in the mightiest; it becomes
> The throned monarch better than his crown;
> His sceptre shows the force of temporal pow'r,
> The attribute to awe and majesty,
> Wherein doth sit the dread and fear of kings.
> But mercy is above the sceptred sway;
> It is enthroned in the hearts of kings;
> It is an attribute of God himself;
> And earthly power doth then show likest God's,
> When mercy seasons justice. Therefore . . .
> Though justice be thy plea, consider this –
> That in the course of justice none of us
> Should see salvation; we do pray for mercy;
> And that same prayer doth teach us all to render
> The deeds of mercy.

Thank you, Your Honor, for your kind and hopefully favorable consideration of these testimonials and entreaties on behalf of Mel Weiss.

Very truly yours,

Eric H. Zagrans

**148**

**EXHIBIT 8**

# Donald G. Kempf, Jr.

May 7, 2008

1500 N. Lake Shore Drive
Chicago, Illinois 60610
917-750-0957
dkempf@kempflaw.com

Hon. John F. Walter
United States District Court
   For the Central District of California
312 N. Spring Street
Room 176, Courtroom 16
Los Angeles, CA 90012

**Re: United States v. Melvin I. Weiss, No. CR 05-587(E)—JFW**

Dear Judge Walter:

I write this letter to provide some professional and personal observations to you about Melvin I. Weiss based on my knowledge of him and to discuss why I believe he is deserving of leniency at the time of his sentencing.

As for my own background, I am now a retiree—but a busy one. I serve as a Senior Advisor to both an independent investment banking firm and a consulting firm to the legal industry, an AAA- and CPR-certified arbitrator/mediator, an adjunct professor of law and a sole practioner. Prior to my retirement, I spent 35 years as a trial lawyer with Kirkland & Ellis and six years as executive vice president, chief legal officer and secretary of Morgan Stanley. I am a fellow of the American College of Trial Lawyers and have been active in a number of professional organizations, serving, for example, as president of the Seventh Circuit Bar Association and both the Chicago and New York Inns of Court.

I have known Mel Weiss for many years. As you would expect, given my own background, I was always on the opposite side from him. I dealt with him both as a practicing lawyer and as a hands-on general counsel. Over the years, I've gotten to know Mel quite well. And I've gotten to know him both as a talented professional and as a fine person. I hold him in high regard on both fronts, and I'd like to spell out some of the reasons why I do.

During my active practice as a trial lawyer, I went to verdict in bench and jury cases in courtrooms across the country, including in the Central District of California. Practicing law is a lot of fun, but it is also hard work. It is made less pleasant and much harder when lawyers on the other side lack integrity and civility. Mel Weiss lacks neither. Quite the contrary, in our many dealings, he always displayed both. He could be difficult to deal with, of course, but always that was on the merits. He was a tireless and most effective advocate for his clients. He was tough in court and tough at the bargaining table. But he was always gracious, and he was always a man of his word.

**149**

As happens to all of us, Mel would sometimes enter into an agreement that, in retrospect, he wished he hadn't. Unlike some other lawyers, however, Mel would always honor his commitments. Let me give you an example. In the class-action litigation challenging certain alleged practices by underwriters with respect to initial public offerings, Mel agreed to a mock-trial proceeding that might provide all involved with a better handle on how the 800 or so pending cases might unfold if they went to trial—and, by doing so, perhaps help facilitate settlement. Subsequently, Mel concluded that this something he would rather not do. Nonetheless, he went forward as agreed. There was a week-long trial in front of several panels of mock jurors before a retired federal judge. It was hard work, especially for Mel, who served as lead trial counsel—making both the opening statement and closing argument and taking most of the witnesses on direct and on cross. His performance in the courtroom was extraordinary and confirmed to all present on both sides that he is an unusually talented and dedicated lawyer.

To Mel Weiss, representing the plaintiff class in a class-action lawsuit was a most serious responsibility. He never viewed such cases as "brokerage." Rather, he dedicated himself to doing the best possible job he could for those whom he represented. I saw this most recently in late 2006 and early 2007. Post-retirement, I had been hired by Tyco to join the team of lawyers working on preparation for trial and possible settlement in the securities class action that followed the Kozlowski debacle. While a settlement was reached, it was only after protracted and challenging negotiations. Throughout, Mel Weiss worked tirelessly on behalf of the class. At times, others on his side seemed anxious to get to a resolution, but Mel would not agree to settle until he concluded he had secured the very best result possible for the members of the class.

My dealings with Mel Weiss were mainly professional, and others will be better able than I to tell you about his personal thoughtfulness and his many efforts on behalf of other. Let me just mention two—one personal and the other on behalf of United Jewish Federation. First, I was walking down the street in New York City one Saturday afternoon, and I ran into Mel and his wife. When I explained that I was looking for a certain watch, Mel said he knew a dealer in that particular watch and could help me find it—perhaps even at a discount. And he did. It was a small thing, but it reflects his genuine interest in others and his always-helpful approach to things. Second, I was approached in 2004 about being honored by UJA-Federation with the Steven Banner award—given annually to the New York Jewish corporate lawyer of the year. Since I'm not a New Yorker, not Jewish and not a corporate lawyer, I had my doubts, but it was a major fundraiser for a most worthy cause, so I said okay. One of the first people I turned to be a Vice Chairman for the event was Mel Weiss. I knew that, if he accepted, I could count on him to work hard and well to help make the event a success. He said yes, and, as I had anticipated, gave of his time as well as his money to help bring home the bacon. Together, and with the help of others, we raised a million dollars for UJA-Federation.

My direct dealings with Mel Weiss led me to have a great respect for him and, over time, we became good friends. I occasionally socialize with Mel, and I also play golf with him from time to time—both of us love the game, and, while neither of us is great at it, Mel is

a lot better than I am.  In this context as well, I've gotten to know Mel better.  He is, I sincerely believe, a very good person.  What he did that is at issue in this case against him is wrong—as he recognizes and has acknowledged.  But he is a fundamentally good and kind person and a skilled professional who has dedicated his life to the effective representation of class members in securities litigation.  He has made their lot better and, along the way, has helped corporations improve their ways of doing business.

I was not asked to write this letter.  I am a volunteer.  And I write to you in the hope that my recounting of my own experiences with and observations of Mel Weiss, coupled with the observations of others and the additional information available to you, will lead you to be lenient in your sentencing of Mel Weiss.

Respectfully,

Donald G. Kempf, Jr.

3

# EXHIBIT 9



CENTURION HOLDINGS LLC

Joseph J. Grano, Jr.
*Chairman and CEO*

1185 Avenue of the Americas
Suite 2250
New York, NY 10036
Tel. 212.371.5080
Fax 212.371.5202

April 14, 2008

Honorable John F. Walter
United States District Court
Central District of California
312 N. Spring Street
Room 176, Courtroom 16
Los Angeles, CA 90012

RE: UNITED STATES v. MELVYN I. WEISS
NO. CR 050587(E) - JFW

Dear Judge Walter:

My name is Joseph J. Grano, Jr. and I am writing you in order to provide you with some insight as to the character of Melvyn I. Weiss. I am aware that he has pleaded guilty and is before your court for sentencing. I have been a friend of Mel's for approximately twelve years. My recent background has been in the capacity of Chairman and Chief Executive Officer of UBS PaineWebber, a global securities firm, and until July of 2005 I served as Chairman of the Homeland Security Council for President George W. Bush. I am currently the CEO of Centurion Holdings, a corporate advisory company.

Your Honor, I truly do not understand how Mel Weiss allowed himself to be in this current situation. I can assure you, however, that he assumes responsibility for his actions and feels that he has betrayed an otherwise stellar lifetime of achievement. He is embarrassed and remorseful. I am confident that his achievements have been brought to your attention. I would like to share with you the "essence" of the man.

I know him to be an insightful guardian of corporate responsibilities. We have had long discussions relative to our respective positions as to adequate and appropriate disclosures to a company's clients and shareholders. In each and every discussion, Mel would be the advocate for better and forthright communication. I always understood as a CEO of a public firm that his firm was in the business of representing clients for a contingency fee; however, I never once walked away with anything but a sense that his priority was to right a wrong. Despite our friendship, he had on occasion named my firm as a defendant in a class action suit.

We also share the regret that comes from the long hours away from family due to the demands of the job and industry. In Mel's case those demands were exacerbated by the "pull" from his peers to lead, to teach and to represent. He often expressed to me the

152



**CENTURION HOLDINGS LLC**

frustration he experienced when asked to lead another law review or charitable event;  the dichotomy of wanting to spend more time with family and the desire to "give something back" in return for the many successes.  We have had numerous discussions relating to our respective backgrounds and how only in our great country would we have had the opportunity to succeed.  For the vast majority of his life Mel has exemplified family values, an inordinate work ethic, a philanthropic duty and, most of all, has been a teacher to the new lawyers pursuing his profession.  I have never had reason to question his integrity and frankly do not question it now.  The "essence" of the man is to be admired and respected.

Your Honor, I do not pretend to understand how one deals with a man who throughout his lifetime personified "giving of oneself" and who suddenly must face the consequences of an illegal misstep.  I can only hope that your judgment of him considers the totality of his contributions to society.  I do respectfully and humbly ask you to consider allowing Mel to atone for his crime by contributing his time and talent to the development of the next generation of attorneys and towards a constructive process of improving corporate governance.  A pro bono activity of this nature is in great demand by our nation today.

Finally Your Honor, this man's reputation, mental state, dignity and future are obviously in your hands.  I beg you to embrace him with those hands and allow him a chance to pay for his mistakes without destroying his life.  I am honored to call him my friend regardless of the outcome.

Thank you for your consideration.

Sincerely,

Joseph J. Grano Jr.

Joseph J. Grano, Jr.

**153**

**EXHIBIT 10**

April 8, 2008

Honorable John F. Walter
United States District Court
Central District of California
312 N. Spring Street
Room 176, Courtroom 16
Los Angeles, CA 90012

Re: United States v. Melvyn I. Weiss No. CR 05-587 (E)-JFW

Dear Judge Walter,

My name is Lilli Gordon. I met Mr. Weiss personally two years ago, but as someone who has delved deep both professionally and intellectually into the world of corporate governance and shareholder rights, I have known of Mr. Weiss and his dedication to the rights of shareholders for well over a decade. I am writing this letter to express my support and admiration for Mr. Weiss. He has done great things for shareholders of public companies and has been a supportive friend.

Over the past 15 years, I have worked on behalf of some of the largest shareholders in corporate America. I have an MBA from the University of Chicago and founded one of the first corporate governance and proxy voting services in the country – Institutional Voting Research Services. I launched this business with leading corporate governance experts from the Harvard Business School and Harvard's Kennedy School of Government. I have authored several articles on the rights of shareholders and the effects of anti takeover laws and charter and by-law provisions on shareholder value in public markets that have been published in leading academic journals and in the national press. I have spoken publicly on numerous occasions to both institutional investors and leaders of corporate America on these issues. I was a partner in a $2.0 billion dollar private equity fund that focused on unleashing value in small to mid-cap public companies and in a fund of hedge funds that focused on identifying investment managers that were particularly adept at working with management and boards to realize shareholder value. I have consulted with over two dozen institutional investors and boards of public companies on issues pertaining to corporate governance and shareholder value in public companies.

During my involvement in the corporate governance arena, Mr. Weiss has been recognized as a staunch supporter of shareholders rights. His reputation among those devoted to the rights of shareholders has been unwavering. His voice and his actions in the shareholder rights movement have been loud, true, to the point and constructive.

In ensuring the rights of shareholders, Mr. Weiss at times has staked out positions that have made him unpopular in certain circles. It takes courage to challenge America's leading executives and their paid advisers. Mr. Weiss has met these challenges with an abundance of courage. He is a fierce individual with a fierce devotion to shareholders of

**154**

public companies. While other corporate governance devotees and I have chosen to focus on such issues as the composition of boards of directors, executive compensation, charter and by-law provisions and corporate control contests as a means of ensuring shareholder rights, Mr. Weiss chose to take a different but equally necessary tact – the use of private securities litigation to provide redress to shareholders who experienced economic losses resulting from the mispricing of public market securities as a result of company actions. I have talked with Mr. Weiss for hours about his work in private securities litigation. I know his deep devotion to shareholders of public companies. I also know that he has tremendous remorse for whatever misconduct he engaged in as he has fought for shareholders.

On a personal note, Mr. Weiss is just about the nicest tough guy out there. Since meeting him two years ago, I have had the opportunity to meet other lawyers in his firm, his assistants, his children and personal friends. I have seen him reach out to all of these people as a dedicated father, friend and mentor. I have heard many stories of how generous Mr. Weiss has been with both his time and personal resources in helping people in his life and being there for his friends and family when the going has got tough.

I met Mr. Weiss while I was in the midst of a challenging professional situation -- the sudden death of a former colleague who had just hired me as a partner in a hedge fund he had recently formed. Despite Mr. Weiss's own problems, he was there to provide me whatever support and encouragement he could. He promptly returned my phone calls, met with me in New York and helped me sort out the professional issues that I was weighing. By that point, this didn't surprise me much, because I had come to appreciate that this was the kind of person Mr. Weiss is, a genuinely nice tough guy.

There is much that Mr. Weiss has to offer to the community. I truly hope that as the Court considers his sentencing, it takes advantage of Mr. Weiss' tremendous capabilities and qualities by incorporating a significant period of Community Service as part of his sentence and by letting Mr. Weiss make up for his misconduct by providing meaningful services to others.

Respectfully,

Lilli A. Gordon

**155**

**EXHIBIT 11**



# CCA
### INDUSTRIES, INC.

Ira W. Berman
Chairman of the Board
cca5@earthlink.net

April 15, 2008

Honorable John F. Walter
United States District Court
Central District of California
312 North Spring Street
Room 176, Courtroom 16
Los Angeles CA 90012

Re:  United States v Melvin I. Weiss
Number No. CR -05-587(e) JFW

Dear Judge Walter:

My name is Ira W. Berman.  I am an attorney, a member of the bar of New York State, who practiced law in New York State since 1955.  I am a graduate of Cornell University and Cornell Law School.  I just recently retired from practicing law.  I am very familiar with all of the litigation in the area of securities.

I met Melvin Weiss when we represented different clients in a business transaction.  At a luncheon, we discussed the fraudulent practices being imposed upon shareholders of public companies.  Melvin believed something should be done about it.

Going back to the early days of the sixties, neither the SEC nor the attorneys general were that vigorous in pursuing law enforcement of securities violators.   At that time, class action cases were very rare. Mel and I discussed his idea of going into the business of filing class action litigations to see what he could do to protect shareholders' rights.  From that point on, Melvin Weiss spent his entire life and career protecting public shareholders.  As busy as he was, he was always available to answer any questions concerning matters in any and all litigations in the area in which his firm was involved.   Melvin has been unbelievably successful in obtaining recoveries for shareholders.  I do not know the amount of monies he has been able to collect on behalf of shareholders, but I believe it is an enormous amount.

When I was practicing law, I was also involved, on very small scale, in class action litigations, but I did not have the fervor to sue the firms and go after fraudulent securities violators the way Mel Weiss did.  Mel believes it was his duty, as if he were the attorney general, to regulate the markets for the protection of the public shareholders.  Apparently, it appears that Mel may have gone too far in his endeavors to build a bigger

**156**

and stronger firm to protect shareholders.  The loss of Mel Weiss as a practicing attorney means the industry will lose one of its stalwart watchmen.

I feel sorry for the position Mel Weiss is in today.  But, I do believe that we should acknowledge that fact that he was always around looking over every director's shoulder, questioning decisions made to run public companies, keeping directors from running afoul of law.  I am aware that Mel pled guilty to wrongdoing, but I still have great respect for him because of what he has done in the past, for what he has built and how he has helped regulate one of the most important parts of the United States' financial system in the area of public securities.

I respectfully request that Mel Weiss be granted as much leniency as the court can allow in view of Mel Weiss' contributions.  He is a philanthropist, a good human being, thoughtful and always available.  He was the consummate defender of the rights of the public shareholders who invested their hard earned dollars in public securities.

Very truly yours,
CCA Industries, Inc.

Ira W. Berman
Chairman of the Board of Directors

/js

**157**

**EXHIBIT 12**

WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP

FOUNDED 1888

270 MADISON AVENUE
NEW YORK, NY 10016
212-545-4600

750 B STREET · SUITE 2770
SAN DIEGO, CA 92101

625 NORTH FLAGLER DRIVE
WEST PALM BEACH, FL 33401

WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLC
55 WEST MONROE STREET, SUITE 1111
CHICAGO, IL 60603

DIRECT DIAL: 212-545-4690
FACSIMILE: 212-545-4653
isquith@whafh.com

April 17, 2008

Honorable John F. Walter
United States District Court
Central District of California
312 N. Spring Street
Room 176, Courtroom 16
Los Angeles, CA 90012

Re: United States v. Melvyn I. Weiss
No. CR 05-587(E) – JFW

Dear Judge Walter:

I am a senior partner in the law firm of Wolf Haldenstein Adler Freeman & Herz LLP. My firm has a general commercial practice in New York, Chicago and San Diego. Recently, *The New York Law Journal* published a profile of our firm which I include with this letter as a reference. About half of the firm's lawyers are litigators and much of that litigation is anti-trust, consumer, labor and securities class action work.

I graduated from Columbia University Law School in 1971. My first job was with what was commonly referred to then as a "Wall Street firm". I joined the Wolf Haldenstein firm as a partner in 1980 to help build and develop the litigation practice. It is within the context of doing securities class action work that in about 1980 I first met, and began to work with, Mel Weiss as co-counsel.

The Milberg Weiss firm, even then, was regarded as one of the most formidable of the class action firms. The reason was that Milberg Weiss was prepared to litigate cases in a way that I had learned to do in the Wall Street firms. The Milberg Weiss firm did so with imagination, tenaciousness, care and, particularly, the willingness to risk the resources necessary to maximize the value of the case for the classes that its lawyers represented. Mr. Weiss' approach was then unusual and set his firm apart. The results he achieved are a reflection of Mr. Weiss, a determined and brilliant attorney and strategist.

I got to know Mr. Weiss well in working with him on cases, and occasionally, as lawyers do, we would find ourselves at meals chatting about the law, and its central role in our society in enforcing the rights of the weaker members of our society. As a somewhat younger lawyer, I learned much from observing him. He was always generous with his time.

**158**

WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP

April 17, 2008
Page 2

I am sure it has been pointed out to this Court the expansiveness of Mr. Weiss' interests and how he utilized his talent not only for his clients and his firm but for others as well. I know him to have been active in numerous organizations here in New York as well as nationally and even internationally. His extended interest has included charitable, social and academic interests. His activity extended into public affairs, where he understood that lawyers needed to be active to apply their skills to educate busy legislators as to the importance of the securities laws and anti-trust laws and how American competitiveness and the strength of our capital markets was enhanced by private enforcement of these laws. As a result, he has lead a struggle against those who in their short-sightedness often aim at quarterly, personal and other short-term benefits without seeing the greater national interest.

I am terribly disappointed and saddened by the reasons that have necessitated this letter. I appreciate the great fall, Shakespearian in scope, of what is a tragedy in the classic sense. It seems to me fruitless, however, for the government to exact incarceration as a punishment in addition to the humiliation, and the self-destruction of reputation, and the probable disbarment, of a man in his 70s who has done great good in his life, and has the capacity to do great good in the future. Mr. Weiss has paid dearly for that which he has plead guilty. His otherwise sterling record argues strongly that this Court in exercising its discretion in sentencing should do so with great leniency. I urge the Court to consider more socially useful alternatives to incarceration.

Respectfully submitted,

Fred Taylor Isquith

FTI:bf
507326

Enclosure