# EXHIBIT 13

# HUBBARD & BIEDERMAN LLP

## ATTORNEYS AT LAW

*A Texas Registered Limited Liability Partnership*

1601 Elm Street
Suite 1995
Dallas, Texas 75201

Telephone: 214-857-6000
Facsimile: 214-857-6001
www.hblawfirm.com

April 22, 2008

Honorable John F. Walter
United States District Court
Central District of California
312 N. Spring Street
Room 176, Courtroom 16
Los Angeles, CA 90012

**Re: United States v. Melvyn I. Weiss,
No. CR 05-587(E)-JFW**

Dear Judge Walter:

I write this letter to seek leniency from the Court for the sentence of Mel Weiss. As described below, there is no other lawyer, who has had such a positive influence on my practice, than Mel.

I have been a lawyer for 30 years. Presently, I am partner in the firm of Hubbard & Biederman LLP in Dallas, Texas. I have known Mel since the early 1990's. While representing the California Commissioner as Receiver of the Executive Life Insurance estate, I and my then and current partner, Steve Hubbard, first met Mel and his firm in connection with our common interest to pursue claims against those who contributed to the insolvency of Executive Life including Michael Milken, officers, directors, and accountants. While we represented the interests of the estate, Mel and his firm represented the class of policyholders. This joint prosecution was an enormous success that resulted in substantial recoveries in the hundreds of millions of dollars for the Executive Life estate and its policyholders. I observed first-hand Mel's remarkable combination of intelligence, savvy, and creativity.

Following that successful pursuit, Mel asked our firm to work with him in connection with a series of class actions primarily against the life insurance industry regarding its marketing practices. These cases began in 1995 and lasted until approximately 2002. Working with Mel during this period has been one of the highlights of my career as a lawyer. In numerous cases I was awed by his remarkable strategic and tactical skills in prosecuting consumer class actions. Whenever we reached an impasse or became plagued by doubts, Mel found a way to re-energize, motivate, and

**160**

Honorable John F. Walter
April 22, 2008
Page 2.

move us forward. His rapport with judges, who, at times, were initially hostile to class actions, was remarkable. Mel was able to turn around even the most skeptical judges by virtue of his hard-earned reputation, intelligence, trust, honesty, and integrity. To me, one of the most telling signs of a successful lawyer is how opposing counsel views him. Daily, I saw the enormous respect that defense counsel had for Mel, which was well-earned based upon his years of experience and integrity. Mel was someone that all of us trusted, whether it was the Court, opposing counsel, or co-counsel. By working with and observing Mel, I learned more about the real practice of law than from anyone else.

The outcome of the life insurance marketing cases was remarkable. These settlements that were endorsed by government regulators and leading academicians broke new ground for resolving complex consumer issues that resulted in recoveries in the billions of dollars to those consumers. Mel conceptualized the use of a creative ADR program and other novel remedies for this class of consumers. Equally significant was that these cases resulted in a change in how life insurance was sold including substantially improving disclosures to consumers.

During this time, I also became familiar with other aspects of Mel's life. I saw his deep commitment to philanthropic activities that reflected his tireless energy. He always had time to help those in need. I attended charitable events that honored Mel for his selfless activities on behalf of others.

Apart from these public activities of good works, Mel extended kindness to me and my family. My wife, who at the time was working as a free-lance journalist, wanted to do an article on Mel's practice and philanthropy. Without reservation, Mel opened up his life, including his home to her, so that she could observe the whirlwind daily activities. He invited her to spend Passover with his family, and observed the deep interaction between Mel and his family.

I hope that I have conveyed Mel's lasting impression on me as to how a person should conduct their professional and personal life. I have never worked with a lawyer who has had such a wide-ranging set of skills, and earned the trust and confidence of the plaintiff and defense bar as well as the courts. While for most people these professional achievements would be enough, Mel's charitable activities equal, if not exceed, his professional accomplishments.

I am fully aware of the specific charges leveled against Mel, and his guilty plea in this case. I read Mel's statement where he took full responsibility for his wrongdoing. The manner in which Mel has handled this issue re-enforces my respect for him.

In light of Mel's long history of integrity and honesty, including the numerous professional achievements that have benefited countless number of consumers as well as his equally numerous charitable activities, I ask the Court to impose a lenient sentence. With due respect for this Court's discretion, Mel's lifetime of good works, which I'm confident will continue for the duration of his life, should result in a lenient sentence. While I realize the inclination is to impose a certain amount of imprisonment, Mel's full and unequivocal acknowledgement of his guilt, particularly for such a publicly-engaged person, as well as the inevitable loss of his law license will achieve the

Honorable John F. Walter
April 22, 2008
Page 3

deterrent purpose for punishment of this crime. I further believe that in light of Mel's unmatched charitable endeavors, he could best continue to benefit the community by home confinement with concurrent community service that would serve the remedial purposes of any punishment.

Sincerely,

Robert W. Biederman

**EXHIBIT 14**

April 11, 2008

Re:  United States v. Melvyn I Weiss

No. CR 05-587(E) – JFW

---

## Honorable John F. Walter

United States District Court

Central District of California

312 N. Spring Street

Room 176, Courtroom 16

Los Angeles, CA 90012

Dear Judge Walter,

I have known Melvyn Weiss since 1960, when we met on a Long Island Railroad commuter train – and ever since, as a dear friend, fellow golf member and past client.

I was a senior partner in a member firm of the New York Stock Exchange, member of it's Investment Committee, securities analyst and registered Investment Advisor.

Presently, I am on the Board of the University of Miami/Sylvester Comprehensive Cancer Center, Chair of its Cancer Research Committee. We are major donors for cancer research. In addition, I chair Boca West's Council of President (55 presidents representing 9,000 members.

163

In the 1970 period, I uncovered a special investment situation, **ELGIN NATIONAL INDUSTRIES,** listed on the NYSE – which was being raided by another company. As we began acquiring this undervalued stock at $8+ a share, we were sued by the Company for "interfering with their merger plan" Melvyn Weiss and his firm represented us. After a year of heated litigation, the company acknowledged we did nothing improper, canceled the proposed merger, posted a full page apology in the NY papers, paid a large settlement fee. Shareholders profited mightily as the stock rose to $100 a share. If it was not for Mel's mighty effort, Elgin would have been absorbed at $12 a share, a small fraction of its true value!

 As a "special situation" security analyst, over the years, I witnessed Mel champion the rights of minority shareholders many times. I admire him greatly.

**I am not suggesting what he did can be justified – it cannot. We do hope you will take into consideration Mel's positive, enormous contribution towards curbing corporate malfeasance.**

Sincerely,

164

**EXHIBIT 15**

BERNSTEIN LIEBHARD & LIFSHITZ, LLP

ATTORNEYS AT LAW

IO EAST 40TH STREET

NEW YORK, NEW YORK IOOI6

(212) 779-1414

FAX: (212) 779-3218

www.bernlieb.com

STANLEY D. BERNSTEIN
bernstein@bernlieb.com

May 13, 2008

Honorable John F. Walter
United States District Court
Central District of California
312 N. Spring Street
Room 176, Courtroom 16
Los Angeles, CA 90012

Re:  *United States v. Melvyn I. Weiss*
     *No. CR 05-587 (E) – JFW*

Dear Judge Walter:

I am a founding partner of Bernstein Liebhard & Lifshitz, LLP, a law firm which specializes in prosecuting securities class actions. Our firm represents many state and other public pension funds, labor unions and individual investors and has been recognized by the National Law Journal as one of the top plaintiffs' firms in the country for each of the last five years. Mel Weiss' firm and our firm have been both direct competitors and, oftentimes co-counsel, for years.

In this regard, in 2001 Mr. Weiss and I were appointed by Judge Shira Scheindlin of the Southern District of New York as Chair and Vice-Chair, respectively, of In re: Initial Public Offering Securities Litigation (21 MC 92) (the "IPO Litigation"). The IPO Litigation is probably the largest and most complex securities litigation ever, comprised of over 300 separate class actions arising from the Dot Com frenzy of the late 1990's, against the 55 largest investment banks in the country, the 300+ companies they brought public and over 1000 corporate directors. We are advised that there are over 7 million putative class members. The team of lawyers and other professionals Mr. Weiss and I supervised numbered over 100, from more than 50 law firms working together.

**165**

BERNSTEIN LIEBHARD & LIFSHITZ, LLP

Honorable John F. Walter
May 13, 2008
Page 2

Throughout the long and difficult litigation Mr. Weiss was singularly focused on one goal: the expeditious and maximum recovery for the class members. Mr. Weiss constantly analyzed and strategized with me to achieve that goal. Together, we negotiated two partial settlements which would have guaranteed over $1.2 Billion in recoveries for the class members (though, regrettably, a disappointing decision by the Second Circuit on a class certification issue forced the annulment of those agreements). His devotion to the pursuit of justice for these millions of victims continued unabated despite the distractions of the long running criminal investigation.

I am also aware of Mr. Weiss' leadership of the Holocaust cases -- difficult, if not seemingly impossible cases, in which Mr. Weiss' legal acumen and strong personality helped achieve substantial recoveries for survivors of this great tragedy. Unlike others, much of Mr. Weiss' work was done pro bono.

I have also witnessed on numerous occasions a quality that Mr. Weiss has that is unfortunately all too rare in the Bar these days: his word is his bond and his handshake is a commitment. I believe this has contributed to much of his success.

Let me also relate a vignette which I believe demonstrates Mr. Weiss' true and heartfelt concern for others. Early on the morning his guilty plea was to be announced, Mr. Weiss called me at home. Despite the obvious distress of such a day for Mr. Weiss, he devoted the beginning and most of the conversation to expressing his concern about my mother's health (having heard that she was in the hospital following a major surgery). We briefly discussed the upcoming plea, but Mr. Weiss' primary focus was on wishing my family and me all his prayers for a speedy recovery.

Thus, despite the criminal conduct to which Mr. Weiss has pled guilty (some of which arguably impacted plaintiffs firms such as mine), I respectfully implore the Court to consider all the wonderful deeds performed by Mr. Weiss during the course of his lengthy career and his unwavering commitment to the vindication of victims' rights, often on a pro bono basis, when deciding upon an appropriate, and hopefully lenient, sentence.

Mr. Weiss deserves all the best sentiments I can convey under these difficult circumstances and I trust this letter is helpful. To this end, given Mr. Weiss' extraordinary talents and past good deeds, I would respectfully suggest that society would be sufficiently served by the imposition of community service and home confinement elements to any sentence.

Respectfully submitted,

Stanley D. Bernstein

SDB: aam

15572v2

**166**

**EXHIBIT 16**

# LOVELL STEWART HALEBIAN LLP

ATTORNEYS AT LAW

500 FIFTH AVENUE

NEW YORK, NEW YORK 10110

www.lshllp.com

TELEPHONE
(212) 608-1900

FACSIMILE
(212) 719-4677

May 1, 2008

Honorable John F. Walter
United States District Court
Central District of California
312 N. Spring Street
Room 176, Courtroom 16
Los Angeles, CA 90012

Re: **United States v. Melvyn I. Weiss No. CR 05-587(E) – JFW**

Dear Judge Walter:

I am a Senior Partner at the law firm of Lovell Stewart Halebian LLP, a firm primarily engaged in antitrust, securities and commodities litigation. The original version of our firm, Lovell & Stewart, LLP, was first founded in 1983. I was first admitted to the bar in Virginia in 1979, and I have been practicing law or working in the securities industry ever since that time. I received a B.A. in English from Yale (1972), an M.B.A. from Harvard University (1975) and a J.D. from the University of Virginia (1979). I first met Mel Weiss during the *In re NASDAQ Market-Maker Antitrust Litigation*, M.D.L. No. 123 (S.D.N.Y.), in 1997, which resulted in over a billion dollar recovery for the investing public, and came to know him well and work with him closely during the *In re IPO Securities Litigation*, 21 MC 92 (SAS) (S.D.N.Y.), which began in 2001. I am writing this letter in the fervent belief that Mel Weiss deserves the Court's mercy when he comes before Your Honor for sentencing on June 2, 2008.

In my personal experience, Mr. Weiss is a man of rare and exemplary character, and a true crusader for the rights of the downtrodden and the small investor, who without his help would often have had no recourse to redress their wrongs. In a world of equivocation and indecisiveness, Mel Weiss has shone forth as a forceful and confident leader in ensuring fairness and equal protection under the laws. His tireless pro bono work on behalf of Holocaust victims is just one legendary testament to his abilities and accomplishments. He has gained deep wisdom through many years of hard work and fearless struggle against the most powerful adversaries in our securities markets, and he has never shirked from a fight when he thought the cause was a just one. I have watched him many times in the IPO Securities litigation encourage his colleagues to do their utmost to vindicate the rights of our investor clients, and in every case it was clear that the driving force was our inviolable duty to work tirelessly to recover the lost savings and dreams of our clients, and to make sure that our investor protection laws as written had meaning and force.

**167**

LOVELL STEWART HALEBIAN LLP

Honorable John F. Walter
May 1, 2008
Page 2

    The "devices of Wall Street" are many, and I dare say that over his long career Mel Weiss has fought against and defeated almost all of them.  He has been a strong bulwark in the defense of shareholder rights and in preserving the integrity of our free market system.  He has led by his own example, with an unshakeable belief in the justness of his cause.  He has inspired many to work that extra bit harder, to try to find the winning legal theory, the better legal argument – never to "let well enough alone" when advocating on behalf of clients.  When times have been hard, I have seen the inspiring effect that his words and actions have had not only on many of my colleagues, but on me as well.  He has always made the time for a private word of encouragement or advice to whomever sought it, and the loyalty of his staff and associates is palpable.  It is also very clear to me that he has had this effect not only on me and my immediate colleagues, but upon generations of lawyers, both young and old, who I am sure would agree that they went away from their encounters with Mel Weiss much better for the experience.

    I do not need an affidavit to know that Mel Weiss has had his heart broken over what has happened in the case before Your Honor.  It is clear to me that for Mel, his reputation and standing in the community, both professionally and as an active, philanthropic supporter of good works of all descriptions, mean everything to him.  It was a reputation that he spent a lifetime building, and now it lies in ashes around him.  He has already suffered greatly, and will have to live with the consequences of his actions for the rest of his life.  Surely that is punishment enough, to have fallen so far in the face of the many more great legal works which now, sadly, will have to be left undone.  Considering his age and the great good that Mel can still do for so many people, I would implore the Court to show mercy, and consider a sentence consisting of home confinement and community service.  This would be a winning solution for all concerned, and would give this great man a chance to employ all of his wonderful gifts and resources to continue to do good works for those around him while at the same time making restitution for his past actions.

    Please do not hesitate to contact me at my firm should you desire any further information or elaboration of any of the points that I have made in this letter.

Very truly yours,

Victor Edwin Stewart

VES:ald

**168**

**EXHIBIT 17**

**Marvin E. Jacob**
**Weil Gotshal & Manges LLP**
**Room 2722**
**New York, New York  10153**

Honorable John F. Walter
United States District Court
Central District of California
312 N. Spring Street
Room 176, Courtroom 16
Los Angeles, CA  90012

Re:     <u>United States v. Melvyn I Weiss No. CR 05-587(E) – JFW</u>

Dear Judge Walter:

I am a retired partner of the firm of Weil, Gotshal & Manges LLP, where I was an active partner from 1979-2004.  I graduated from Brooklyn College in 1960 and New York Law School in 1964, after being ordained as a Rabbi in 1957 and practicing as such for a short time.

The first fifteen years of my law career were spent at the U.S. Securities & Exchange Commission where I became Associate Regional Administrator of the Commission's New York Office.  I left to become a partner at Weil, Gotshal where I spent the next twenty five years until my retirement.  During that time I taught law as an Adjunct Professor of Law for twenty five years at my alma mater and engaged in extensive public service and pro bono work.

I became familiar with Mr. Weiss' work and reputation during my tenure at the SEC and Weil, Gotshal, but did not become involved personally in any cases with him until about 3 years ago.  I was designated as one of three mediators in the <u>Tyco</u> litigation, the other two being retired Federal Judges.  After more than eighteen months of effort, we managed to bring the parties together and the case settled with a payment to public investors of almost three billion dollars.

I had extensive and close contact with Mr. Weiss during that time and had the opportunity to observe his efforts on behalf of his clients, the public interest in the case.  He was greatly respected, skilled and high minded in pursuit of his clients' interests and pleasant to work with and courteous with his adversaries.  In a word he was a class act throughout.

Page 2
Honorable John F. Walter

       I am not unmindful that Mr. Weiss has pleaded guilty to certain crimes; nor should his wrongful conduct be trivialized or excused.  However, given the totality of Mr. Weiss' activities over his long professional career, I urge leniency in his sentencing .

       It is my hope that the foregoing will be of assistance to the Court in passing upon the difficult issues before it.

Respectfully,

Marvin E. Jacob

**170**

**EXHIBIT 18**

# THE GILREATH LAW FIRM, P.A.

JAMES R. GILREATH*
jim@gilreathlaw.com

*ALSO ADMITTED TO PRACTICE IN NC

WILLIAM M. HOGAN
bhogan@gilreathlaw.com

110 LAVINIA AVENUE (29601)
P.O. BOX 2147
GREENVILLE, SC 29602
www.gilreathlaw.com

TELEPHONE (864) 242-4727
FACSIMILE (864) 232-4395

April 30, 2008

Honorable John F. Walter
United States District Court
Central District of California
312 N. Spring Street
Room 176, Courtroom 16
Los Angeles, CA 90012

RE:   *United States v. Melvyn I. Weiss*
      No. CR 05-587(E) – JFW

Dear Judge Walter:

I write you as a friend of Mel Weiss. I have been practicing law since 1967 and during a part of my career I was involved in federal tax matters having received a LLM from NYU in 1968. I eventually moved more from the tax area into complex litigation and it was in that context that I met Mel in the fall of 2004. During 2002, because of my tax background, I had been representing a number of wealthy taxpayers who were sold fraudulent tax shelters being promoted by the KPMG accounting firm. In the fall of 2004, Mel associated me to assist him and his firm in connection with a possible class action against KPMG and the former law firm of Brown & Wood, which by merger is now known as Sidley Austin, LLP. During the course of that litigation, which was ultimately settled sometime in late 2006, I had many meetings with Mel and observed him in interactions with the defendants in what became a very complex tax shelter class action. While Mel was a very able advocate, I could not help but observe his compassion for some of the attorney defendants who unfortunately found themselves the victim of the tax shelter by virtue of their firm's merger with a law firm which they later discovered had an unscrupulous partner who was issuing tax opinions on the tax shelters. Thus, even though they were not personally involved, their merged firm was named in multiple lawsuits resulting from opinions written by this partner they acquired in the merger.

During the course of the litigation discussed above, there were many heated meetings and court hearings where I was able to observe Mel's manner and professionalism. I can truly say that I never saw anything but a very able and brilliant lawyer representing his client against other lawyers and accountants, some of whom were in the unfortunate position of being in the wrong place at the wrong time. While this did not cause Mel to cut the wrongdoers any slack, his actions clearly reflected to me that he was a very compassionate individual and truly had feelings for the attorneys we were

**171**

Honorable John F. Walter
Page 2
April 30, 2008

suing who were themselves somewhat of a victim in the way the tax shelter litigation finally played out.

While I am aware that Mel has pleaded guilty to certain crimes, which all of us must acknowledge were incorrect, I must nevertheless say that I still have great respect for him and all of the many accomplishments that he and his firm have obtained. For instance, in the tax shelter cases that I was working on with Mel, he was able to mastermind a settlement which allowed smaller taxpayers to become part of a global class action which would never had been possible without the brilliant ideas he brought to the table.

Considering all of the above, I would respectfully ask that your Honor please impose a limited sentence which takes into consideration not only the crime Mel has pleaded to but also the fact that he truly is a compassionate person who has left this world a better place for the many clients he has represented during the course of his long career.

In closing, I would say again that he is still my friend.

Very truly yours,

James R. Gilreath

JRG/kmk

**172**

**EXHIBIT 19**

# STANLEY SPORKIN
### 1300 Eye Street, NW, Suite 900
### Washington, DC   20005

202-682-7146 (direct)
202-682-7200 (fax)
Stanley.sporkin@weil.com

May 5, 2008

The Honorable John F. Walter
United States District Court
Central District of California
312 N. Spring Street
Room 176, Courtroom 16
Los Angeles, CA   90012

RE:   **UNITED STATES V. MELVYN I. WEISS**
      **NO. CR 05-587(E) – JFW**

Dear Judge Walter:

　　　My name is Stanley Sporkin.  I am a practicing attorney who served in the U.S. government for more than 40 years.  I started my legal career as a clerk to U.S. District Court Judge Caleb M. Wright in the District of Delaware.  I clerked for three years for Judge Wright and then for a short period for Judge Paul Leahy.  After one year in private practice I became a member of the staff of the Securities and Exchange Commission where I served for almost 20 years, the last seven (1974-81) as director of the SEC's Division of enforcement.  I then became General Counsel to the CIA to be followed by 14 years as a U.S. District Court Judge for the District of Columbia.  I retired from the bench in 2000 and am presently a sole practitioner.

　　　I am writing this letter on behalf of Melvyn I. Weiss who is scheduled for sentencing in your court on June 2, 2008.  My relationship with Mr. Weiss has largely been on a professional basis.  I have known him for over 30 years.  I first met him when I was with the SEC.  He represented investors.  I, in my government capacity, was charged with the protection of the financial interests of those very same investors.  Essentially we both shared the same overall objective:  of righting wrongs that subjected investors to financial losses.  During my years at the SEC, particularly the 1974-1981 period and recently as a mediator where Mr. Weiss represented one of the parties, I observed Mr. Weiss's efforts on behalf of investors.  I found him to be a person of great intellect, creative, and with high morals and principles.  Thus, I was truly shocked when I learned of Mr. Weiss's difficulties with the law.

The Honorable John F. Walter
May 5, 2008
Page 2

  Because of my background at the SEC, I know how important Mr. Weiss' role was in helping the securities regulation process. Up until recently, when the SEC was given the power to get back from wrongdoers some of their ill-gotten gains, it was strictly up to class action lawyers to obtain those monies to compensate investors for their losses. Over those years, Melvyn Weiss was the leading plaintiff class action lawyer. According to his firm's web site, it has been instrumental in recouping over $45 billion for investors. It was largely through Mr. Weiss' leadership that his firm was able to obtain these dramatic results.

  Even now, where the SEC is authorized to pursue corporate wrongdoers to make them repay investors for their losses, the private bar is still necessary because it is able to obtain more realistic recoveries. The SEC simply does not have the resources to effect complete recoveries and thus it relies heavily on the plaintiffs' securities bar to assist it in its endeavors.

  I know what a judge faces when called upon to sentence an individual. It was the most difficult part of my judicial role. Stripping a person of his freedom is not a decision that is lightly made. In preparing to sentence someone I would look at that person's entire life. I would balance the many good things with those that brought about the breach in the law.

  As I look at Melvyn Weiss's career I see many good things that I believe warrant careful consideration and possibly earn him the break that his up to now unblemished record deserves. At the age of 72 his remaining productive years may not be that many. While he must pay the price for his actions, he certainly does not need to be given a sentence that would preclude him from ever being able to once again become a productive member of society. I know you will hear from many of Mr. Weiss's friends, both professional and social, who will tell you the many wonderful things Mr. Weiss has done for his fellow citizens. He is a person with a big heart who has befriended those in need, such as the families of those who were victims of the Holocaust.

  I am writing this letter to you because I want to and not because I was asked to do so. This is the first such letter on behalf of an individual defendant that I have ever written. I know that these letters are important to the sentencing process and therefore I am providing my views in the hope they will aid the court in dealing with the daunting task before it to impose a fair and just sentence. It is in that spirit that I write this letter.

      Sincerely,

      Stanley Sporkin

**EXHIBIT 20**

Penny J. Newman
9253 Hastings Blvd.
Riverside, California 92509

April 28, 2008

The Honorable John F. Walter
United States District Court
　　for the Central District of California
312 North Spring Street
Los Angeles, California 90012

<u>**RE: United States v. Melviyn I. Weiss**</u>
<u>**No. CR05-587(E) -JFW**</u>

Dear Judge Walter:

　　More than 25 years ago, I first met Mel Weiss, at a very critical time for me, my family and my community.  I was a Special Education teacher in the small community of Glen Avon in Riverside County.  It was in the early 1980s that we had recently discovered that our families had been exposed to toxic chemicals coming from the Stringfellow Hazardous Waste Site, now California's top priority Superfund site.  In 1984, adding to an already stressful situation of being exposed to hundreds of toxic chemicals, we were told our drinking water had high levels of radiation.  No one could sell their homes and move away from the pollution;  no one could prove our water was safe;  people refused to come into the town closing many businesses—the town was held hostage to the pollution.

　　The Stringfellow Acid Pits, as they became to be called, was one of the first sites put on the federal National Priotiry List (NPL) under the new CERCLA law (Superfund).   From this toxic site were repeated episodes of overflowing of the pooled toxic waste that flooded our homes and the elementary school where my two boys attended school.  In one such event in 1978, during heavy rainfall, the State of California released more than 1 million gallons of chemicals from the site in order to attempt to keep the main dam from breaing and flooding the enitre community with more than 34 million gallons of toxic chemicals.   To keep from "panicking the public" no one informed us of the critical situation, so we continued to send our children to school.  Walking to school the children played in the water, making beards out of the toxic foam and coming 'snowmen'.   More than five days went by before we found out the situation we were in.  We discovered that over many decades obvious airborne releases had occurred, and later the contamination and destruction of our entire drinking water aquifer.  We saw the affects upon our children with bloody noses, headaches, respiratory ailments and seizures.

　　The contamination was a real tragedy for our families, causing increased illness and even deaths from cancers and heart disease, and of course, damage to the value of our property, the only real assests any of us had.

**175**

We felt totally overwhelmed realizing that we were fighting the State of California, County of Riverside and hundreds of major corporations that had all dumped at the site. The identified polluters included General Electric (GE), Rockwell International, Rohr Industries, Weyerhauser, Montrose Chemical to name just a few. We asked ourselves, How were we—a rag tag group of Mom's from an ordinary, hard working community ever begin to fight for our rights and our families' safety, against all these powerful people and corporations?. We began searching for a lawfirm to represent us. We knew it would be a challenge--being a working class community none of us had money to put up for retainer fees for attorneys, much less funds for the experts, investigations and expenses a massive lawsuit would require. Attempting to find a lawfirm willing to pay for everything themselves with no guarantee of recovering their money was a monumental undertaking. After much searching we met Mel Weiss. He and his law firm, Milberg Weiss Bershad Hynes & Lerach, stepped forward to champion our case. More than 4,000 people signed up. From that day forward I and my friends and neighbors have been forever grateful to Mel and his lawfirm. From that day forward I have considered Mel to be a steadfast and trusted personal friend.

At that time the case was the largest toxic tort case in the nation requiring dozens of expert witnesses and millions of dollars in out-of-pocket expenses – all covered by the firm. None of the plaintiffs ever had to put forward a dime to be represented—the firm footed the bills themselves for more than 8 years. While the case was pending, the firm dedicated ten lawyers in the California office to working full-time on our case alone.

The defendants drug us through scathing depositions, prying into our personal lives and even implying to mothers that they were horrible parents and were to blame for their children's ailments. Mel stayed with us through the entire ordeal, holding our hands and even crying with us when it got really bad. He never gave up on us. By perservering and hanging with us, we were ultimately able to settle the case for more than $110 million dollars.

Beyond the settlement funds, which were much appreciated by the families touched by illness and monetary loss, the victory we experienced made all of us in the community feel that we had achieved justice—that ordinary people with the help of extrordinary and committed attorneys could take on powerful companies and the inept government agencies which promoted and established the Stringfellow Acid Pits—and actually win.

Mel's involment with our community didn't end with the settlement. He continued to help our community recover from this tragedy. In an attempt to revitalize our community, we were promised funds from the polluting companies funding to build a community park. On December 21, 2000, a week before escrow was to close, the companies reniged on their promise. We were all devastated, having gotten our hopes up that we could do something to improve and rebuild our community. After sitting and crying for hours, I called Mel and asked if we could borrow the funds in order to close escrow on the property. I explained we had no idea how we would repay the loan, but we'd do it somehow. Mel explained he had an Executive meeitng of the law firm in 30 minutes and to fax him some information. The next morning Mel called and said we could have the money. I again explained we didn't know how we could repay it and he responded, "It's not a loan, Penny, it's a gift – Merry Christmas." I can't explain the gratitude and appreciation we have had for a man that would give so much and care so deeply for our

community.   Mel  had nothing to gain from helping us, once again.  He did it because he truly cared about our community and the people who had gone through so much for so long.   I realize that Mel Weiss has made some mistakes in his career and that he will be punished for them, but I would like this Court to consider when imposing a sentence, the good accomplished by this special man and his firm.

These courageous, principled actions must count for something!  It is clear to me, that without Mel's concern and legal talent and his willingness to stand up for the little guys, our community would have been abandoned and forgotten to suffer on our own.  We could never have accomplished what we did.  For his efforts and those of his colleagues who worked with us day-by-day on the case; for the friendship and respect he showed us— we will be forever grateful.

Respectfully yours,

Penny Newman

**177**

**EXHIBIT 21**

Linda D. Spinney
7811 Mission Blvd.
Riverside, Ca. 92509

April 28, 2008

The Honorable John F. Walter
United States District Court
Central District of California
312 North Spring Street
Los Angeles, California 90012

Re: United States v. Melvyn Weiss
No. CR 05-587(E)-JFW

Dear Judge Walter:

I have lived in the small community of Glen Avon, in Riverside, County for forty five years. I worked for Riverside County Office of Education as a special education school secretary. My last assignment was also here in Glen Avon.

I became aware that my home and school, which were both less than a mile from Stringfellow Acid Pits, were being contaminated on a regular basis, both by air and overflows of liquid hazardous waste being dumped into our community. I became involved in a community group with the goal of closing the site and finding some justice for the people who were being sacrificed to the convenience of the State of California, Riverside County and many large corporations who had no regard for the safety of a poor community with little or no resources to fight these giant entities.

We made a lot of progress in getting the site closed and mitigating the risk of more contamination. However, this did nothing to address the issues our community faced with health problems from the years of exposure and the reputation of the community, resulting in the loss of property values. At that point we realized that we must take action in the form of a lawsuit for personal injury and property damages.

We went looking for a law firm that would be willing to take our case and be able to front the huge expenses required to litigate a case like this. We entered into an agreement with a California firm. After some time it became too much of a financial burden to that firm. It became clear that we could not continue with this firm unless we found help. This is where Mel Weiss and his firm came to our rescue.

With somewhere in the neighborhood of four thousand plaintiffs it was necessary to select a steering committee from the group to help oversee the day to day business of the lawsuit, report this back to the plaintiffs for their input and see to the welfare of the whole plaintiff population. I was one of five elected to this committee.

**178**

During the many years of litigation I was able to work closely with Mel . During this time I had the opportunity to observe Mel's character.  He was kind man who genuinely cared about the plight of our community.  As the years passed the cost mounted Mel and his firm was willing to stick with the case to the end, risking millions of dollars in expenses and attorney hours had the case not had a good outcome.

Mel always took the time to fully educate the steering committee on the law regarding the case and keep us informed of he risks and rewards of his negotiations with the defendants, always listening to our input.

I have come to consider Mel more than an attorney but as a friend.  I always knew Mel was a special person but it really reinforced this opinion when, after the suit had been settled, the bills paid and the proceeds distributed to the plaintiffs he heard we had run into a problem funding a community park that was meant to help heal the wounds of the community and give us something to be proud of.  We were closing escrow and the money that had been promised to purchase the land was withdrawn.  We sent out an SOS to Mel and his firm for a loan.  We were immediately forwarded the money.  This was a large amount of money and Mel made it clear that it was a gift to our community and no repayment was expected.

I was so sorry to hear that Mel is facing the charges that are before your court.  I understand that you will be sentencing Mel soon and as someone who has seen what Mel's true character is I would hope that you will take this into consideration when you sentence him.  If you feel that he must spend time in prison I hope you will make it the minimum time possible.  If you would see fit to sentence him to some form of community service I am sure Mel would perform this service with enthusiasm and honor.  Thank you for your consideration of this request and I hope my input will help you make this difficult decision.

Respectfully yours,

Linda D. Spinney

**179**

**EXHIBIT 22**

Betty Stinson
7605 Skyview Rd.
Riverside, CA 92509


April 28, 2008


The Honorable John F. Walter
United States District Court
  For the Central District of California
312 North Spring Street
Los Angeles, CA 90012


**RE; United States v.Melvyn I. Weiss**
**NO.CR05-587(E) – JFW**


Dear Sir/Madam:


My family first met Mel Weiss over 25 years ago.  We live in the Glen Avon Community and were part of the Stringfellow Acid Pits Lawsuit.  We were and still are a very proud community.  We have many different nationalities here and also low and medium class income people.  In 1984,  we heard that our drinking water had high levels of radiation. This was horrible for my family since we were trying to cope with the Acid Pits and our children going to the school right down the line of flow from the pits.  We had built our dream home on 1-1/2 acres of horse property,  the perfect place to raise three boys.  The down side was we were on a well, and lived along way off of the main road.  We didn't know what to do or who to turn to.   This is when we met Mel Weiss and his wonderful law team.  These people were so compassionate to us it was like they lived right here in our community.  They got to know us so well and were genuinely concerned about each family member.

My husband became ill with terminal cancer at the age of 46.  This team of attorneys were just wonderful to me and my sons.  They worked with this community so hard and we never paid any money out of our pockets.

**180**

My husband passed away in 1986 and the fight went on with Stringfellow.  We lost many more residents and some teachers from the local elementary school.   Mel Weiss and his firm stayed right with us and lead us in the fight against the State of California and many companies who dumped at the site.

After the lawsuit was settled and a few years later I learned about the great gift Mel Weiss gave to our community.  Penny Newman was trying to buy land to build a park for the community.  It would set in the middle of Glen Avon for all community families to enjoy together.  It was a beautiful idea and the money was to come from the polluters. At the last minute escrow plans changed and there was not enough money from the settlement for the park, it seems the companies had a change of heart.  Mel Weiss went to his Executive Members and donated the money for the land so that the park could go forward.

I know people make bad choices in their lives, and we must pay the consequences but I hope this letter helps you to understand the man we know and respect here in Glen Avon, CA.  We will forever remember these wonderful people who came into our lives and worked so hard for us.  This team was led by Mel Weiss and we will forever be grateful to him.


Respectfully,

*Betty Stinson*

Betty Stinson

181

**EXHIBIT 23**

Sally Merha
5197 Pedley Road
Riverside, CA 92509

April 30th, 2008

The Honorable John F. Walter
United States District Court
    For the Central District of California
312 North Spring Street
Los Angeles, California 90012

**RE: UNITED STATES v. MELVYN I. WEISS**

**NO. CR 05-587(E)-JFW**

Dear Judge Walter:

    Our family lives in the small community of Glen Avon in Riverside County. Situated above Glen Avon is a Class I toxic waste dump known as the Stringfellow Acid Pits. The community endured the State of California telling us they were protecting us while unbeknownst to us, we were being exposed to chemicals by air and in our groundwater daily. We were frustrated with the polluters saying they weren't responsible. Most of all we were worried about our children's health due to chronic illnesses. Teachers employed at Glen Avon School were becoming ill and dying. Many in the community had become sick. As a last resort, when the community had decided enough was enough we decided to file a lawsuit. This was over twenty-five years ago and when my family first met Mel Weiss.

    In the beginning we were cautious. Who ever heard of an attorney offering all his resources to help a community who didn't have extra money to attempt such a big undertaking?! We didn't have to use our homes as collateral or find some other way to get money or just be on the outside looking in for lack of funding. All Mel and his firm

**182**

asked of us was to cooperate when we needed to fill out forms, supply information and documents or participate in medical testing. That's all Mel asked in exchange for filing a massive toxic tort case.

My family and I were plaintiffs and I was part of a small group that worked with Mel and his firm. Mel was not only a professional, but personable and he really seemed to care about us as a community. To him we were faces and not just names on paper. He dedicated lawyers & staff for us only! Soon his team also became part of our families and community. They attended family events and even shared in our sorrow for our loved ones as Mel did in some way or another. He laughed with us and cried with us. His compassion for people with a just cause who don't have the resources is phenomenal.

When it was all over, the community decided building a park was a healthy way to rebuild the community. We began with promise of "good faith" from the polluters to donate money for the land. Later they backed out at the last minute. We didn't know where to turn for the money. We decided to call Mel. He didn't hesitate when we asked for his help. Mel came to our rescue again.

I understand that Mel has made mistakes and is accepting responsibility for them. I would ask as you deliberate that you see Mel as we see him. Mel is a very kind, caring and generous man who helped many. This community will be forever grateful for Mel Weiss.

Sincerely,

Sally Merha

183

# EXHIBIT 24

LAW OFFICES

**Macon Cowles** & Associates PC

1680 Wilson Court
Boulder, Colorado 80304                                                    (303) 447-3062

E-MAIL ADDRESS:
macon.cowles@comcast.net                                    FACSIMILE:  (303) 440-6294

Macon Cowles, Esq.

---

April 30, 2008

Honorable John F. Walter
United States District Court
Central District of California
312 North Spring Street
Room 176, Courtroom 16
Los Angeles, CA 90012

Re:    United States v. Melvyn I. Weiss
          No. CR 05-587(E)-JFW

Dear Judge Walter:

I first met Mel Weiss nearly 20 years ago, at the beginning of the Exxon Valdez Oil Spill
Litigation. I was lead counsel for the environmental plaintiffs suing Exxon and Alyeska for
the massive contamination of the Prince William Sound following the grounding of the
Exxon Valdez on March 24, 1989.

I was the new lawyer entering this case—the one that the state and federal judges
appointed as an additional lawyer to serve on the seven member Plaintiffs Executive
Committee to coordinate the 170 cases that had been filed on behalf of tens of
thousands of plaintiffs. The reception that I got from the lawyers who had already
elbowed their way on to the executive committee was cool—to say the least—and
standoffish.

Mel Weiss—the dean of the class action lawyers in the case—first challenged me
directly, in a room full of hostile plaintiffs lawyers, on the legitimacy of the environmental
cases and the theories upon which those cases were based. After I responded to a
series of searching questions, Mel Weiss then welcomed me to a seat at the table,
admiring, I think, the fact that I did not fold under his fierce challenge. He thereafter
extended himself personally and professionally. He took me under his wing. He
accorded me respect, which helped me to operate effectively in a tough crowd.

Mr. Weiss encouraged me to do pro bono work, representing citizen groups and people
in cases whose aim was to protect animals, habitat, clean flowing waters and clean air,
and communities whose health was threatened by toxic emissions. For nineteen years,
Mr. Weiss has been generous of his time and sharing his experience in ways that would

**184**

Honorable John F. Walter
April 30, 2008
Page 2

be helpful to me in doing my work for these clients. Through countless phone calls, conferences and visits, he has cheered me and given me courage to keep heart during difficult times in very hard cases representing clients who had no money, but felt that their case would make the world a better place for our children.

In time, I met Mel's wife, Bobbi, and his children. Our families became friends. My wife Regina—born in the Bronx—and I were on the receiving end of many kindnesses extended to us by both Mel and Bobbi. We are nearly a generation younger than they. But their words of encouragement and support for our work in the world helped us to serve a very different set of clients than Mel was accustomed to representing. It meant a lot to me that this older lawyer from an established firm would provide time, direction and attention that was useful to me in representing citizens and groups in hard scrabble litigation to protect the environment.

I want to ask you to be lenient in your sentencing of Mel Weiss. He has lost already the most valuable and important thing that a lawyer has: his reputation for honesty and integrity. Mel has brought this upon himself, both retribution and punishment.

There is time—and he has the capacity—to rebuild some of that reputation through good works within the community. Community service—in subject areas, obviously, far removed from the investment world—should be considered as an option in sentencing.

There are many people who struggle on a daily basis for food, shelter and health care. The better angels within Mel Weiss have always sided with people who have these needs. Rather than lock him up, release him for supervised community service in this other world. Let someone who has been among the "haves" in our society walk among, and serve, the people who have nothing. In so doing, you would be setting up a structure for rehabilitation of a man—surely an important aim of the criminal law and sentencing—and for needed help to the community which he serves.

If there are other questions that you have, you need only call on me to answer them.

Very truly yours,

Macon Cowles

# EXHIBIT 25

# KENNETH L. ADAMS

1825 Eye Street, N.W. • Washington, D.C. 20006
Tel (202) 420-2220 • Fax (202) 420-2201
Email:  adamsk@dicksteinshapiro.com

May 13, 2008

The Honorable John F. Walter
United States District Court
Central District of California
312 N. Spring Street
Room 176, Courtroom 16
Los Angeles, CA  90012

Re:  **United States v. Melvyn Weiss, CR 05-587(E) – JFW**

Dear Judge Walter:

I understand that you have the responsibility of deciding what is a fair sentence to impose on Mel Weiss in the above-captioned case.  I submit this letter to help you gain a more complete understanding of the man whose fate rests in your hands.

I am a litigation partner in the law firm of Dickstein Shapiro LLP.  I have known Mel Weiss professionally for most of the 35 years I have practiced law.  When I first entered practice I learned to respect Mel as one of the pioneers of Rule 23 and class action practice, alongside two of the senior partners of my firm (David Shapiro and Sidney Dickstein).  Like Messrs. Dickstein and Shapiro, Mel was deeply committed to correcting the historical inequity which left individual consumers and investors powerless to stand up against large companies and industries which had taken advantage of them through price fixing, monopolization and securities fraud.  The class action procedures of Rule 23 made it possible for individuals whose claims were too small to justify expensive litigation, to band together and match the legal power of monied corporate interests by pledging a portion of their collective claims in payment of their legal fees.

Rule 23 was intended to right the imbalance of legal resources available to plaintiffs and defendants, and to make justice equally available to both. But Rule 23 alone could not be effective unless first-rate lawyers were willing to take the risk of spending years litigating against the top defense firms in the country, without any assurance of being paid.  Mel Weiss was willing to take that risk.  Over the years he built a successful and powerful law firm that was committed to representing individual consumers and investors who had been wronged by powerful corporations.

His success made him very unpopular in corporate board rooms, and among some defense counsel whom he regularly outlawyered.  But it made him a hero among people whose legal rights were abused, and among lawyers who share his passion for equal justice.

Mel developed a reputation for being tough.  His adversaries portrayed Mel's toughness as a vice.  But I saw first hand how valuable his toughness was when we worked as co-counsel on behalf of the victims of the Exxon Valdez oil spill.

**186**

The Honorable John F. Walter
May 13, 2008
Page 2

In the immediate aftermath of that oil spill, lawyers flocked to Alaska to sign up plaintiffs for what they expected would be a quick, easy kill. After all, an enormous tanker with Exxon's name emblazoned on the side had sat grounded on Bligh Reef for days spilling oil into the rich fishing grounds of Alaska and fouling the land surrounding Prince William Sound for hundreds of miles. There was no question about Exxon's liability, or about the enormity of the harm done by the company's recklessness in putting a known alcoholic at the helm of a supertanker loaded with tens of millions of gallons of toxic liquid hydrocarbons, with no qualified backup aboard.

Dozens of law firms small and large filed cases in the Alaska courts. Exxon fought the plaintiffs at every step of the way. They removed the cases from state court to federal court in the belief that it would be a more favorable forum. They successfully opposed class action certification for many groups of plaintiffs (such as tourism businesses and seafood processing companies), in the belief that many individual claims would prove too small to be able to afford to litigate outside of a class. Conversely they successfully moved for certification of a punitive damages class, in the hope of avoiding a succession of individual punitive damages verdicts. And most of all, they fought a war of attrition taking advantage of every conceivable procedural opportunity to delay the day of reckoning as long as possible.

After four years of litigation it had become apparent that Exxon's management was committed to fight the case through trial and appeals for as long as the courts would allow. While Exxon could readily afford to spend hundreds of millions of dollars on a strategy of delay, many of the small law firms that had filed cases could not afford to invest thousands of hours for a decade or more without getting paid. They fell by the wayside, leaving it to the court-appointed lead counsel and "Executive Committee" to carry the fight to Exxon. Mel Weiss and I have served on that Executive Committee for the entire 19 years of the litigation, which still has not yielded a final judgment. (The jury returned a verdict against Exxon in 1994; Exxon has kept the case alive ever since through a series of appeals, the latest of which is awaiting a decision from the U.S. Supreme Court.)

I remember distinctly two meetings in which Mel and I participated during the year preceding the Exxon trial. In the first, Mel single-handedly lifted the spirits and the confidence of a demoralized room full of plaintiffs' lawyers, who had never expected to have to try the case. He reminded them of the reason they had chosen to represent plaintiffs rather than commit their careers to hourly work defending wealthy corporate interests. He reminded them of what Exxon had done to the people of Alaska, before and after the oil spill, in an effort to keep its profits and stock price as high as possible, and in utter disdain of corporate responsibility. He reminded them of the arrogance with which Exxon opted for a legal strategy that assumed its superior resources would win a war of attrition against the underfunded plaintiffs. And most of all, he challenged them to stand up to the bully that was kicking sand in the face of their clients.

I will never forget the electrifying effect of Mel's "locker room" speech. Everyone was energized and renewed in their commitment to give their all for our collective clients, regardless of the hardship and the risk. And in the end, we went out and kicked Exxon's butt in the courtroom.

The Honorable John F. Walter
May 13, 2008
Page 3

I will also never forget the more private conversation between Mel and one of the lead counsel, whom we had all selected to play a key role in the consolidated trial. His firm had lost patience with how long the litigation had dragged on, and with the amount of firm resources that were being expended with no end in sight. Mel knew how our colleague had to be feeling. He took him aside and told him not he did not need to worry about his own or his family's future. That no matter how the case came out, and no matter how his firm treated him, Mel would take care of him if need be. It had a powerful effect on our colleague, to know that he was not alone and that we were behind him regardless of the outcome. He went forward from that day like a tiger unleashed, and I never again saw him worrying about the personal risks to himself and his family if we lost at trial.

Like all of us Mel Weiss has strengths and weaknesses. It is his failings that put him before you in this case. But I hope that when you pass sentence you will also bear in mind the enormous contributions Mel Weiss has made to the cause of justice, in a legal system that too often works well only for those who can afford the best that the legal system has to offer.

Respectfully,

Kenneth L. Adams

**188**

**EXHIBIT 26**



## FAEGRE & BENSON
LLP

UNITED STATES | ENGLAND | GERMANY | CHINA

BRIAN B. O'NEILL
boneill@faegre.com
(612) 766-8318

April 24, 2008

Honorable John F. Walter
United States District Court
Central District of California
312 N. Spring Street
Room 176, Courtroom 16
Los Angeles, CA 90012

Re:  **United States v. Melvyn I. Weiss**,
**No. CR 05-587(E) - JFW**

Dear Judge Walter:

My name is Brian O'Neill. I am a trial lawyer at Faegre & Benson in Minneapolis, Minnesota. I am a former Regent of the American College of Trial Lawyers and a fellow of the International Academy of Trial Lawyers.

In 1994, I had the honor of trying *In re the Exxon Valdez*, on behalf of 32,000 Alaskan fishermen and natives. The trial resulted in one of the largest verdicts in history.

Halfway through the five month trial, I was running out of energy, and began to believe each trial day and each witness was not going as it should. In maritime terms, our ship may have been floundering. Somehow or another, Mr. Weiss sensed that. He flew from New York City to Anchorage, a 16 hour trip at the time, and took me and my wife Ruth out to dinner. He directly reminded me that 32,000 Alaskans were counting on my efforts for their fair shot at justice. The next morning he reviewed my game plane, pronounced it sound, and sent me off with renewed energy and direction. The jury verdict was favorable (although still on appeal after 14 years). Alaskan fishers and natives got their fair shot in the trial court. I thank Mel Weiss for that.

Your colleague Jim Selna was a player in this huge litigation.

This case was the platform for my subsequent success.

Honorable John F. Walter
April 24, 2008
Page 2.

    I hope this is helpful in addressing your important task.

                 Sincerely,

                 Brian B. O'Neill

ONEBB:honlt

**EXHIBIT 27**



**Earth Island Institute**
300 Broadway, Suite 28
San Francisco, CA 94133-3312  USA

Telephone: 415-788-3666
Fax: 415-788-7324
Web: www.earthisland.org

*celebrating
25 years
of growing
environmental
leadership*

Founder

David R. Brower
*1912-2000*

Executive Directors

John A. Knox
David Phillips

Thursday, April 24, 2008

Honorable John F. Walter
United States District Court
Central District of California
312 North Spring Street
Room 176, Courtroom 16
Los Angeles, CA 90012

Re:     UNITED STATES v. MELVYN I. WEISSS
        NO. CR 05-587(E) — JFW

Dear Judge Walter:

I am writing to inform you of my experience of Melvyn Weiss, in the hope
that it might assist in your decision about sentencing in the above-captioned
case.

I manage an environmental advocacy organization called Earth Island
Institute (EII), and have done so for approximately 23 years. EII plays a
unique role in the movement for environmental sustainability in focusing on
emerging leaders and their ideas.  We publish a quarterly magazine called
*Earth Island Journal* about pressing issues, we honor and mentor emerging
leaders, and we provide an organizational home for nonprofit public interest
projects.  Our organization uses a number of different types of strategies,
including litigation from time to time.  We have grown to be an organization
with operations of approximately $8 million per year with employees and
offices in several states and a number of foreign countries.  Our Web site is
http://www.earthisland.org.

Beginning in the late 1980s, we became aware of the massive impacts on the
marine ecosystem in Southern California of the operations of the San Onofre
Nuclear Generating Station (SONGS) run by Southern California Edison.  A
long-time colleague in Southern California worked with EII on the idea of
bringing litigation under the Clean Water Act against Southern California
Edison to properly mitigate for the marine impacts in question.  Because of
the prospective scope of such an action, a significant barrier to success was
finding a law firm that would take the risk of carrying through on providing
representation against a very formidable corporate defendant on a pro bono
basis.

*Printed on 100% post-consumer recycled paper, processed chlorine free*

**191**

*To*    Honorable John F. Walter                Thursday, April 24, 2008
*From*  John A. Knox                                              Page 2

---

Fortunately for us, that law firm was Milberg Weiss. Milberg Weiss had developed a significant track record in shareholder class actions, and the firm made a bold decision to undertake this new area of litigation under the Clean Water Act. *Earth Island Institute, et al., v. Southern California Edison Company* was filed in November 1990.

Milberg Weiss successfully represented our interests, and in 1992 a compromise settlement was concluded that was a landmark in the history of Clean Water Act litigation. Edison would provide $15 million in benefits mitigating for the impacts of its SONGS power plant operations. I met Mr. Weiss when he was the key negotiator in concluding the outlines of this proposed settlement during three days of meetings with a mediating retired Federal Judge in New Haven. Many people have observed that it was probably not a coincidence that Mr. Weiss's negotiating skills were involved in concluding such a landmark agreement. We felt fortunate to have his assistance. Part of the settlement was the award of fees to Milberg Weiss, as provided in the Clean Water Act for citizen suit actions.

The outcomes of the settlement redound to the benefit of the Southern California marine environment and its people. Key research on restoring functional wetlands was concluded at San Diego State University. An environmental education program called SEA Lab was set up in Redondo Beach to serve young people in the entire LA Basin, and that program continues today as part of the Los Angeles Conservation Corps. And the interagency Southern California Wetlands Recovery Program has directly benefited from millions of dollars granted to support wetlands restoration and particularly public participation in wetlands restoration, with staff support from Earth Island Institute. Earth Island Institute's restoration agenda has been shaped directly by the settlement: http://restoration.earthisland.org.

I have kept Mr. Weiss up to date about Earth Island's work over the years, primarily through periodic letters. He has indicated his satisfaction that Milberg Weiss was instrumental in establishing the legacy of benefits to the people of Southern California that I have described above.

While my knowledge of Mr. Weiss is limited, his work for Earth Island Institute created obvious positive benefits with enduring worth. I would hope that your decision concerning appropriate sentencing would take into consideration what I believe to be his lifelong commitment to the public interest and his hope, which he has recently communicated to me, that he can find ways to make further public interest contributions during this next stage in his life. As a public interest advocacy organization that has benefited from Mr. Weiss's past work, we would be eager to assist in facilitating such contributions, if called upon.

Sincerely,

John A. Knox
Executive Director

**192**

**EXHIBIT 28**

LAW OFFICES

# ALTSCHULER & ALTSCHULER

THE ALTSCHULER BUILDING · 1859
509 CAMPBELL AVENUE, BOX 606
WEST HAVEN, CONNECTICUT 06516-0606

(203) 932-6464 932-1400
FAX: (203) 933-4562

RICHARD ALTSCHULER
altschuler.ricky@snet.net

DONALD L. ALTSCHULER
altschuler.don@snet.net

ATTORNEYS AT LAW

MURIEL L. ALTSCHULER
PARALEGAL

SUE L. ABATE
KIRSTEN M. BURNS
BREIGH GARGUILO

LEGAL ASSISTANTS

April 29, 2008

Dear Judge Walter:

I have been an attorney for over thirty-four years, licensed to practice in Connecticut in both State and Federal Courts. I have also been granted pro hac vice in New York Federal Courts on a few occasions, and I have argued a case in front of the Second Circuit Court of Appeals recently with Mel Weiss. I graduated Tufts University in 1970 and University of Connecticut School Of Law in 1973.

Interestingly, I may know Attorney Mel Weiss the shortest duration of time of any one of the numerous people I am sure will be writing on his behalf. However, I have been his co-counsel representing plaintiffs in a civil action currently in front of the Federal District Court, Southern District of New York and Second Circuit Court of Appeals No. 1:04Civ. 1351 (WHP). This case concerns the alleged improper drug testing by an international pharmaceutical corporation against Nigerian children. Mel was instrumental in the initiation of the case, as well as the orchestration of it. He was very much involved and he attended the argument in the Second Circuit Court of Appeals and I was struck by how he gently guided and supervised his associates' arguments in the case with a silent paternal hand. What really caught my attention is the fact that at various meetings, as well as during phone conferences between counsel, he was not in any rush to settle the case even though there could have been a significant legal fee. In fact he was vociferous in making sure that all the plaintiffs, and/or their representatives, were adequately protected and represented. When Mel first introduced himself to me, I knew immediately by his simple salutation "Hi, I'm Mel Weiss" that, despite his international reputation as a great lawyer, he was also a wonderful human being.

I am aware that Mel pled guilty to the federal crimes he was charged with. It doesn't surprise me to know that Mel has admitted to the wrongdoing. I respectfully request that you, your Honor, consider giving Mel a non-incarcerating sentence in light of his many years of ethical conduct and service to his clients and the national league community as well as his civic responsibilities.

To those people who do not personally know Mel Weiss, they may just consider him to be a class-action attorney. However, it is obvious to me, and to those who do know him, that he is a class-act attorney and human being. As Shakespeare said "The quality of

**193**

mercy is never strained". Certainly, it would not be strained in this case in consideration of Mel Weiss's long outstanding record as an attorney and person in society.

Very Truly Yours,

Richard Altschuler
RA/beg.

**194**

**EXHIBIT 29**

WHITTIER LAW SCHOOL
Faculty Offices

April 29, 2008

Hon. John F. Walter
U.S. District Judge
312 N. Spring Street
Los Angeles, CA 90012

Re: Sentencing of Melvyn Weiss,
No. CR 05-587(E)-JSW

Dear Judge Walter:

I am writing to you with regard to the upcoming sentencing of attorney Melvyn Weiss.

I write this letter at my own initiative and without any communication with Mr. Weiss, his attorneys, or anyone else on his behalf. To help assure that the letter comes to your attention, I am sending a copy concurrently to Mr. Weiss's attorney, Benjamin Brafman.

My reason for writing is to point out the invaluable and ground-breaking role played by Mr. Weiss in the Holocaust restitution litigation that began in the late 1990's, yielding significant benefits to over one million Holocaust survivors and other victims of Nazi persecution around the world.

By way of background, I am currently Professor of Law and The "1939" Club Law Scholar in Holocaust and Human Rights Studies at Whittier Law School, located in Costa Mesa, California. For the last ten years, I have devoted the bulk of my research and scholarship on the litigation filed by Holocaust survivors and heirs in the United States to obtain both compensation and recognition of the injustices committed against them arising out of the financial crimes of the Holocaust.

The Holocaust restitution suits encompassed claims against Swiss banks for failure to return moneys deposited by Jews for safekeeping with the Swiss banks prior to the war and the trading in Nazi gold and other looted assets by the private Swiss banks and neutral Switzerland during World War II; similar claims by depositors and heirs against German, French, English and American banks with branches in Nazi-occupied Europe; claims by former slave laborers of German industry during the Nazi era against their wartime German masters, consisting of both Jews and non-Jews; claims for payment of insurance policies purchased by Holocaust victims prior to the war; and claims for Nazi looted art.

I am the author of the book *Holocaust Justice: The Battle for Restitution in America's Courts* (NYU Press 2003) and the co-editor of *Holocaust Restitution: Perspectives on the Litigation and Its Legacy* (NYU Press 2007), an anthology of selected essays by the most important participants

in the litigation, including Mr. Weiss.

I myself have not been involved in any of the suits discussed in my books, but have examined them strictly as a law professor and scholar from the "Ivory Tower."

Mr. Weiss was involved in two of the most important types of class actions filed by Holocaust survivors and heirs in the Holocaust restitution movement: the three class action lawsuits against the Swiss banks; and the over fifty class action suits against German industry.

The suits against the Swiss banks settled in August 1998 for $1.25 billion, at that time the largest settlement of a human rights case in U.S. history. Mr. Weiss and his firm were major participants in the suit, filing numerous briefs in the case. Mr. Weiss himself played a significant role in negotiating the settlement with the Swiss banks.

In my interviews of the lawyers involved in the suit and other participants, including the Hon. Edward J. Korman of the Eastern District of New York, presiding over the suits, all spoke about the critical role played by Mr. Weiss in resolving the litigation and obtaining the $1.25 billion successful settlement for the plaintiffs.

Mr. Weiss also was instrumental in having the elderly Holocaust survivors receive their Swiss banks settlement payments tax free. As Judge Korman explains in one of his opinions:

> The truly outstanding post-settlement work that benefitted the Settlement Fund and its beneficiaries by millions of dollars was that of Mel Weiss. After Special Master Judah Gribetz called attention to the diminution of the Settlement Fund by taxes on earned interest as well as the taxation of benefits awarded to the members of the classes, Mr. Weiss was instrumental in leading the effort to persuade Congress to adopt legislation exempting from taxation interest earned by the Settlement Fund and payments to its beneficiaries.

*In re Holocaust Victim Assets Litigation*, 270 F.Supp.2d 313, 324 (E.D.N.Y. 2002).


Three of the principal plaintiffs' lawyers involved in the litigation -- Mr. Weiss; attorney Michael Hausfeld and his firm; and Professor Burt Neuborne of NYU School of Law -- all waived their fees in the case. Therefore, the work of Mr. Weiss and his firm was done *pro bono*.

Once again, I quote Judge Korman:

> Moreover, based upon my extensive personal involvement in the process, I know that the [$1.25 billion] compromise [settlement] was reached as the result of lengthy, well-informed and arm's-length negotiations by competent and dedicated counsel who provided loyal and effective legal representation to all parties. Counsel for the plaintiff settlement classes are experienced plaintiffs' advocates and class action lawyers. One could not assemble a more capable group. Among the lawyers for the plaintiffs who are serving without fee are Professor Burt Neuborne of New York University Law School, a brilliant scholar and advocate, who developed the class's legal theories and who presented legal argument on behalf of plaintiffs, and Melvyn H. Weiss and Michael D. Hausfeld, leading members of the class action bar, who ably led plaintiffs' negotiating team.

*In re Holocaust Victim Assets Litigation*, 105 F. Supp.2d 139, 146 (E.D.N.Y. 2000).

The success of the Swiss banks settlement was critical to the success of the subsequent Holocaust restitution suits I mention above. For this reason, in my *Holocaust Justice* book (at page 51), I called the Swiss bank settlement "The Mother of All Holocaust Restitution Settlements."

The successful conclusion of the Swiss banks litigation led directly to the litigation against German companies for their criminal activities during the Nazi era. In this litigation, the United States Government became a major participant in crafting a settlement, through the involvement of Ambassador Stuart Eizenstat, appointed by President Clinton as Special Representative of the President on Holocaust Issues.

That litigation settled in December 1999, for 10 billion German marks (approximately US$ 5.2 billion), and became, and remains, the largest settlement of a human rights case in U.S. history. Mr. Weiss' role in this litigation and the negotiations of the settlement with German industry was even greater that in the Swiss banks litigation.

For these suits, all the plaintiffs' lawyers applied for attorney's fees, and fifty-one lawyers were awarded fees, totaling $59.9 million, amounting to approximately 1.2% of the $5.2 billion settlement. The fees were set by two distinguished individuals: Kenneth R. Feinberg (who later gained fame as the special master of the 9/11 Disaster Fund) and Nicholas D. Katzenbach, President Lyndon Johnson's attorney general. Messrs. Feinberg and Katzenbach awarded Mr. Weiss and his firm the highest fee -- $7.3 million -- reflecting the significant role played by Mr. Weiss in obtaining this historic and monumental settlement for the still-living Jewish and non-Jewish victims of German industry during the Second World War.

Mr. Weiss' leading role in the monumental German settlement was noted by Ambassador Eizenstat at the July 2000 signing ceremony in Berlin of the Executive Agreement between President Clinton and German Chancellor Gerhard Schroeder known as the Berlin Accords. Ambassador Eizenstat noted:

> We must be frank. It was the American lawyers, though the lawsuits they brought in U.S. courts, who placed the long-forgotten wrongs by German companies during the Nazi era on the international agenda. It was their research and their work which highlighted these old injustices and forced us to confront them. Without question, we would not be here without them. The settlement we reached of 10 billion DM will help hundreds of thousands of victims, beyond those whom the lawyers represent, live out their declining years in more comfort. For this dedication and commitment to the victims, we should always be grateful to these lawyers.

> But they have also worked diligently to find solutions to seemingly intractable problems and to cooperate in finding ways to achieve legal peace for German companies.

> The legal fees they will receive are far less than would normally be received for such a large settlement and represent only about one percent of the total Foundation sum. This is eminently reasonable given their contribution. Their receiving from the Foundation what is negotiated with German companies and the German Government is indispensable to the implementation of this agreement, and I have pledged, together with Count Lambsdorff and Dr. Gentz, to ensure that this is achieved.

Special recognition is due Mel Weiss, Professor Burt Neuborne, Deborah Sturman, Michael Hausfeld, Martin Mendelsohn, Robert Swift, Ed Fagan, Michael Witti, Steve Whinston, Mel Urbach, Lawrence Kill, Dennis Faucher, Barry Fisher, Carey D'Avino, Linda Gerstel, Irwin Levin, Edward Millstein, Morris Ratner, and Richard Shevitz.

(See <http://www.ustreas.gov/press/releases/ls774.htm>)

As seen, of the lawyers that Ambassador Einzenstat notes deserve special recognition, Mr. Weiss' name tops the list.

In my book, I also pay special recognition to Mr. Weiss by including (at page 68) an AP photo of Mr. Weiss (and his co-counsel Deborah Sturman) taken during the course of the litigation.

I hope the above information is helpful in your decision in determining the proper sentence for Mr. Weiss.

While I do not condone or approve in any way the conduct for which Mr. Weiss has pled guilty, I cannot forget the momentous role he played in finally bringing a small measure of justice and recognition to the over one million elderly Holocaust survivors and other victims of the Second World War around the world benefiting from the Swiss and German restitution settlements.

Feel free to contact me if I can provide any further information or clarification.

Yours truly,

Michael J. Bazyler
Professor of Law and
The "1939" Club Law Scholar
in Holocaust and Human Rights Studies
Whittier Law School
Costa Mesa, CA 92626
bazyler@aol.com
www.michaelbazyler.com

[Letterhead used for identification purposes only and not an endorsement of contents by Whittier College or Whittier Law School]

**198**

**EXHIBIT 30**



**New York University**
*A private university in the public service*

School of Law

40 Washington Square South, Room 307
New York, New York 10012-1099
Telephone: (212) 998-6172
Fax:        (212) 995-4341
Email:      burt.neuborne@nyu.edu

**Burt Neuborne**
*Inez Milholland Professor of Civil Liberties*
*Legal Director, Brennan Center for Justice*

April 25, 2008

Hon. John F. Walter
United States District Court
Central District of California
312 N. Spring Street
Room 176, Courtroom 16
Los Angeles, California 90012

Re: United States v. Melvyn I. Weiss
No. CR 05-587(E) – JFW

Your Honor:

My name is Burt Neuborne. I am the Inez Milholland Professor of
Civil Liberties at New York University School of Law, where I have taught
for the past 35 years. In 2001, I was elected a Fellow of the American
Academy of Arts and Sciences in recognition of my work as a scholar and
practitioner of Constitutional Law in the federal courts.

I write to ask you to take Mr. Weiss's monumental efforts on behalf
of victims of the Holocaust into account in fashioning a just sentence in this
case. As an academic lawyer who has devoted much of my career to the
study of the judicial process, I acknowledge the seriousness of Mr. Weiss's
behavior. I believe strongly, however, that a truly just sentence should also
reflect the unique – indeed almost incalculable – contribution to justice
made by Mr. Weiss in connection with a decade of litigation, negotiation
and advocacy on behalf of elderly Holocaust victims.

1

I write from deep personal knowledge of Mr. Weiss's leadership of the Holocaust litigation. I serve as court-appointed Lead Settlement Counsel in the so-called Swiss bank litigation,[1] and as the United States government's lawyer-appointee to the Board of Trustees of the German Foundation "Remembrance, Responsibility and the Future," established to settle the so-called German slave labor litigation.[2] I affirm without hesitation that Mr. Weiss was the heart and soul of both the Swiss bank and German slave labor litigation. He conceived of the litigation, funded it, organized it, directed its strategy, led the negotiations, and developed the implementation mechanisms. While I was proud to assist him in the process, it was Mr. Weiss who pulled the plough.

I have no business or economic ties to Mr. Weiss. I met him for the first time in January, 1997 when Chief Judge Korman asked me to serve as co-counsel in the Swiss bank litigation pending before him in the Eastern District of New York. I was somewhat apprehensive about serving as co-counsel with Mr. Weiss because of his reputation as a fierce advocate and an aggressive negotiator. Within weeks, however, my apprehensions had disappeared. I found Mr. Weiss to be a brilliant strategist, and a completely committed advocate for the victims. He could not have been kinder to me, educating me in the complexities of class action practice, and counseling me on a daily basis about how best to proceed. He led the negotiations, and helped to develop our legal theory. In my opinion, without Mr. Weiss, the Swiss bank case would not have moved forward.

During the climactic 12 days of negotiations in Judge Korman's chambers in August, 1998 that culminated in settlement, it was Mr. Weiss who spoke for the victims – passionately; brilliantly; and effectively. Once the case was settled for $1.25 billion, it was Mr. Weiss who persuaded most of the lawyers to waive fees for having obtained the settlement, and who persuaded me to accept Judge Korman's post-settlement appointment as Lead Settlement Counsel in January, 1999. I accepted the appointment only

---

[1] See *In re Holocaust Victim Assets Litig.*, 105 F. Supp.2d 139 (E.D.N.Y. 2000)(upholding Swiss bank settlement).

[2] See *In re Nazi Era Cases Against German Defs. Litig.*, 198 FRD 429 (D.N.J. 2000)(upholding German slave labor settlement).

2

**200**

after extracting a promise from Mr. Weiss that he would counsel me throughout the implementation phase. Scarcely a day passed in the next seven years that I did not hold him to his promise. Mr. Weiss's commitment and generosity of spirit helped us to pilot an unorthodox and complex class action settlement through the courts and, most importantly, through the practical problems of distribution. We have now distributed more than $1 billion to more than 400,000 victims throughout the world. While I am proud to have played a constructive role in the process, it was Mr. Weiss who played the crucial role in making it possible, and who played an unceasingly constructive role in making it happen.

Mr. Weiss's role in the German slave labor litigation was equally remarkable. In 1996, the German Federal Constitutional Court ruled in *Krakauer* that a 1991 treaty had lifted the international bar to litigation on behalf of Holocaust victims that had been imposed by the London Debt Agreement of 1953. Mr. Weiss brought the *Karakauer* case to my attention, and urged me to join with him in seeking compensation on behalf of slave and forced laborers. When I initially declined, he refused to take no for an answer. I finally agreed to work with him. Mr. Weiss then filed the first of 60 cases on behalf of Nazi-era slave and forced laborers seeking compensation from German corporations. He provided invaluable unpaid assistance to other lawyers seeking to file similar cases. Mr. Weiss led the discussions on strategy, and launched the nationwide movement that forced German industry to seek a negotiated resolution.

When Secretary Eizenstat convened the parties to the slave labor cases in an unprecedented international negotiation involving 17 major German companies and eight nations, he asked Mr. Weiss to play a leading role as spokesman for the victims. While I expressed myself on occasion, it was Mr. Weiss who willingly assumed the emotional and financial burden of principal negotiator. The complex negotiations lasted for 18 months, shuttling on a monthly basis between Bonn and Washington, D.C., culminating in Berlin in July 2000 in the creation of a $5.2 billion German Foundation "Remembrance, Responsibility and the Future," funded jointly by German industry and the German government, designed to compensate the victims.

**201**

Mr. Weiss played a central role at every stage of the process – from conceiving and funding the German slave labor litigation, to arguing the cases, to negotiating the innovative settlement that Chief Judge (now Attorney General) Mukasey has hailed as a "remarkable" achievement of justice.[3]

In August, 2000, I was appointed by the United States to the Board of Trustees of the German Foundation, with a special responsibility to protect the rights of the victims. I accepted the responsibility only after Mr. Weiss promised to work with me in carrying out my responsibilities. During the eight years that I have served on the Foundation Board, Mr. Weiss has provided me with invaluable support and counsel. While the Foundation has succeeded in distributing over $6 billion to 1.66 million Holocaust victims, numerous issues have required legal representation of the victims, ranging from litigation over unpaid interest, to efforts by German insurance companies to avoid paying the agreed sums, to concern with currency fluctuations. I sought and received Mr. Weiss's advice, counsel and support on virtually every contested issue. On behalf of the victims, I owe him an enormous debt of gratitude.

The above narration of Mr. Weiss's efforts, while impressive, does not capture his passion and the generosity of his spirit. Two examples must suffice.

---

[3] Then-Chief Judge (now Attorney General) Mukasey has stated:

> A lot of things get written about lawyers these days, most of them bad. But the disposition here is a remarkable achievement for the lawyers in this case. I want to thank each of you and all of you for what you have done. It is a remarkable, remarkable thing....When lawyers get a bad rap, I will speak up for lawyers on the basis of this, if nothing else. Transcript of Proceedings before Chief Judge Mukasey, pp.19-20. *Winters v. Assicurazioni Generali*, 98 Civ. 9186 (December 8, 2000 SDNY) (MBM). (discussing the German Foundation settlement).

4

As the Holocaust litigation gained public attention and a measure of success, we were overwhelmed with requests for assistance by individual victims. I was present on numerous occasions when Mr. Weiss responded to a telephone call or a poignant letter seeking help. No matter how busy he might be, I repeatedly watched Mr. Weiss speak patiently – even lovingly – to elderly victim after victim – providing counsel and reassurance; but most of all providing them with the respect and dignity that had been stolen from them. One astonishing elderly woman not only spearheaded the slave labor litigation against Volkswagen, she wrote life-affirming poetry. Mr. Weiss quietly arranged for the private publication of her poetry.

Mr. Weiss was also responsible for the decision to include non-Jews in the Holocaust litigation. While the Holocaust was a tragedy of unimaginable scope for the Jewish people, Mr. Weiss recognized the universal nature of Nazi persecution. In the Swiss bank case, he successfully urged the inclusion of Jehovah's Witnesses, Sinti-Roma (gypsies), gays, and the disabled as victims of Nazi oppression equally entitled to legal redress. In the German slave labor cases, he was instrumental in assuring compensation for non-Jewish forced laborers from Eastern Europe who had never before received recognition or compensation. Indeed, in large part due to Mr. Weiss's espousal of universality, 75% of the German Foundation's payments have gone to non-Jews.

But Mr. Weiss's wisdom in this area went even further. He recognized that a decision to include additional victims in the litigation, and decisions about settlement terms, should not be vested solely in the lawyers. He recognized, moreover, that most of the elderly Holocaust victims valiantly serving as named plaintiffs were not well-situated to make decisions affecting so many victims. Accordingly, Mr. Weiss assembled an informal Board of Advisors consisting of Jewish community leaders, both religious and secular, to advise the lawyers on such issues. Membership was open to any interested leader. The Board of Advisors fully concurred in broadening the scope of the litigation to include non-Jews, and in the terms of the settlements.

5

**203**

In my opinion, the ultimate success of the enterprise in distributing more than $7.5 billion to almost two million Holocaust victims is traceable, in large part, to Mr. Weiss's wisdom, his passion, and his generosity of spirit. I implore you to weigh Mr. Weiss's magnificent contribution to justice in the Holocaust cases in fashioning a truly just sentence in this tragic case.

Sincerely yours,

Burt Neuborne

6

**204**

# EXHIBIT 31



**VALPARAISO**®
UNIVERSITY                S C H O O L   O F   L A W

May 2, 2008

Honorable John F. Walter
United States District Court for the Central District of California
312 N. Spring Street
Los Angeles, CA 90012

Re: *United States v. Melvyn I. Weiss*, No. CR 05-587(E) – JFW

Dear Judge Walter:

I write as a member of the Bar of your Court; as a law professor who has for taught and written for over thirty years on subjects relevant to the disposition of this case: criminal law and procedure, constitutional law, and professional responsibility. I also write as a former dean familiar with leaders of American philanthropy. And I write as a Catholic lay theologian familiar with Jews in America through decades of involvement in interreligious dialogue.

As a member of the Bar of your Court, I worked with a previous Chief Judge to support a legal challenge to the reduction of the power of Article III judges to perform one of the most important tasks committed to judges: *sentencing*. I did so with great respect for the central role that the political branches – both legislative and executive – play in our republic, since the legitimacy of the rule of law in our society hangs upon the consent of the governed. But I am equally committed to the independence of the judiciary, and believe that this central doctrine of constitutional law requires great deference to judicial discretion in fitting general legal principles to specific facts in an individual case. Nowhere is this more necessary than in the task of sentencing. Although the Supreme Court did not adopt the separation of powers argument presented in *Mistretta v. United States*, 488 U.S. 361 (1989), the body of law that has emerged now clarifies that the Sentencing Guidelines are at the end of the day *guidelines*. For this reason, I write now to urge a disposition of this case that is clearly within your powers as a federal judge: *to sentence the defendant to community service*. I offer below some considerations that support this recommendation.

Since 1991 (my second year as dean of our law school) Valparaiso has operated a program of supervised pro bono service that is required of all our 3Ls. As a professor of professional responsibility I have regularly encouraged generosity by lawyers to provide excellent legal services to those who cannot afford to compensate us with a fee. One of the many lawyers who has inspired me to challenge our students in this way is the defendant in this case, who is famous for his willingness to provide the best legal representation imaginable on a pro bono basis. I had the privilege of working with Mr. Weiss in *Republic of Austria v. Altmann*, 541 U.S. 677, (2004), a case involving restitution of Nazi-looted art. We represented the American Jewish Congress, numerous Holocaust survivors, and art historians; the brief is at 2003 WL 23052015. Mr. Weiss asked his friend, Professor Arthur Miller of Harvard Law School, to join us on the brief, and Mr. Weiss paid for the printing of the brief. Mr. Weiss also acted as co-counsel with me in representing the same amici in a similar matter in the U.S. Court of Appeals for the D.C. Circuit; this case recently settled.

WESEMANN  HALL

656 S. GREENWICH ST.

VALPARAISO, INDIANA

46383

FACSIMILE: 219 465 7872

INTERNET:
WWW.VALPO.EDU/LAW/

OFFICE OF THE DEAN
219 465 7834

ADMISSIONS
219 465 7829

ADVANCEMENT
219 465 7851

CAREER PLANNING CENTER
219 465 7814

CLINIC
219 465 7903

FACULTY
219 465 7825

LIBRARY
219 465 7838

REGISTRAR
219 465 7840

**205**

I served as dean of our law school for seven years. In this capacity I endeavored to serve to the needs of our alumni and to invite them to support our financial needs. To broaden my horizons on both friend-raising and fund-raising, I participated in workshops sponsored by the Association of American Law Schools. In these meetings the name of Mel Weiss kept recurring as an example of generous commitment of time and money to his alma mater, New York University. Since that time I have become fully aware of the extraordinary extent of the generosity of Mr. Weiss and his wife Barbie to numerous charities. They are widely known as patrons of the arts in New York and throughout this country, Latin America, and Israel.

As a Catholic lay theologian, I have been engaged for decades in interreligious dialogue with Jews. Hence I can testify personally to the superb reputation of Mr. Weiss as a champion of justice for the surviving victims of the greatest atrocity and mass murder of the last century. Mr. Weiss applied his formidable skills as a litigator and a negotiator to an extraordinary array of cases and claims dealing with the compensation of surviving Jews for the atrocious slave labor they were forced to perform during the war, and with restitution of assets of Jews (including art and bank accounts) seized by the Nazis from 1933 to 1945, and unlawfully retained by banks and museums for decades. He did so with courage, creativity, and tenacity, achieving results that many had deemed impossible before he became a central actor in these events. You will find a candid assessment of Mr. Weiss's amazing work in these matters in the definitive study written by Ambassador Stuart E. Eizenstat, *Imperfect Justice* (2003) at pages 83-84, 86, 88, 116-120, 122-123, 128-130, 132-135, 143-148, 150-156, 158, 160, 162, 166-168, 170, 172-173, 208, 222-225, 230-232, 235, 240-242, 245-250, 254-256, 263, 267, 283, 300, 308, 345. Elie Wiesel notes at the end of his *Foreword* to this volume: "The duty to remember covers not only big accounts, huge palaces, and rare art collections but also less wealthy families, small merchants, cobblers, peddlers, school teachers, water carriers, beggars: the enemy deprived them of their pathetically poor possessions, such as a prayer book, a shirt, a comb, eyeglasses, toys." At p. xi. I write on Yom Hashoah – Holocaust Memorial Day – to make Your Honor aware that Mr. Weiss is deeply engaged in honoring the memory of these little people who were also victims. For this very purpose, he founded a not-for-profit organization called the Holocaust Art and Remembrance Foundation, which has published the poems of a camp survivor and is supporting the post production of a documentary film on the mass rescue of over 50,000 Jews in Bulgaria in 1943. I am aware that Mr. and Mrs. Weiss have contributed generously to the projects of this foundation.

Mr. Weiss is, of course, primarily known as one of the most talented lawyers in the country who has used the class action as a vehicle to enable victims of corporate wrongdoing to recover some amount of damages for injuries they have sustained. No matter what has occurred in the matter now before you – of which I have no information or knowledge – no presentence report in this matter would be complete if it overlooked the millions of people who have been helped throughout the astonishing legal career of Mr. Weiss.

The task of sentencing is sometimes difficult. You must balance attributes of a particular defendant and the societal values protected by the law. In this instance, I strongly urge you to take into account *the enormous good to our society that the defendant will do if you let him do it.* In my view this case does not require incarceration to achieve rehabilitation. From nearly twenty years of personal acquaintance with the defendant I can assure you of his utmost sincerity. When Mel Weiss gives his word, he means it and there is no gap between his word and his deed. Specifically, now that he says he is guilty, he means that too. Hence the task before you now is how to enable a repentant defendant who has humbly acknowledged wrongdoing to have an opportunity to perform as a condition of his sentence a wide variety of goals that are consonant with his previous moral commitments. He can do on a pro bono basis a host of superb things for the arts, for charities, for the survivors of the Shoah, for persons in all stations of life who are in need of his boundless generosity, for lawyers who need to hear from someone like him about the duty to advocate zealously *within the bounds of the law* (a lesson he can teach much more effectively after his plea than I or any other law professor who is not in his circumstances). *You have the power to enable this defendant to do a world of good through a supervised program of community service.* I hope you exercise this judicial option in this case. If there is any way in which I can be of further service to you in this matter, please do not hesitate to contact me. My cell phone is 323-899-4233.

Edward McGlynn Gaffney, Jr.
Professor of Law

**206**

**EXHIBIT 32**

# WAITE, SCHNEIDER, BAYLESS & CHESLEY CO., L.P.A.

### ATTORNEYS & COUNSELLORS AT LAW

1513 FOURTH & VINE TOWER
ONE WEST FOURTH STREET
CINCINNATI, OHIO 45202
TELEPHONE (513) 621-0267

JEAN M. GEOPPINGER

FAX (513) 381-2375
FAX (513) 621-0262

May 8, 2008

Honorable John F. Walter
United States District Court
Central District of California
312 N. Spring Street
Room 176, Court 16
Los Angeles, California  90012

Re:    United States v. Melvyn I. Weiss,
       No. CR 05-587(E) – JFW

Dear Judge Walter:

Please allow me to introduce myself.  My name is Jean M. Geoppinger and I am attorney associated with the law firm of Waite, Schneider, Bayless & Chesley Co., L.P.A. in Cincinnati, Ohio.  I am a graduate of Miami University, attended the Miami University European Center, and am a graduate of the University of Cincinnati College of Law.  I am an attorney in good standing with the Ohio Supreme Court and have been practicing law for eighteen years – eight years as a defense attorney with the law firm of Graydon, Head & Ritchey, and the last ten years with Waite, Schneider, Bayless & Chesley.  Although I am not personally familiar with the facts that gave rise to Melvyn I. Weiss's present situation, I am writing today, out of a sense of deep respect, to lend him my support.

By way of background, I am a practicing Catholic who, despite a life-long interest in the Holocaust, had had virtually no contact with the Jewish world prior to joining WSBC.  Shortly after my arrival, however, I was asked by Stanley M. Chesley to take responsibility for the firm's *pro bono* work representing the organized Jewish world – the Conference on Jewish Material Claims Against Germany, the World Jewish Restitution Organization, and the World Jewish Congress – in the Holocaust litigation.  As I am sure you can imagine, working on these matters has been an incredible honor, both personally and professionally.

**207**

Honorable John F. Walter
Page 2
May 8, 2008

I met Mel in 1998, during the course of the settlement agreement negotiations in the *In re Holocaust Victims' Assets (Swiss Banks) Litigation*, and got to know him better over the next two and a half years as we worked to secure compensation and restitution for Jewish Holocaust survivors through the *In re: German and Austrian Banks Holocaust Litigation*, the German Economic Foundation Initiative – "Remembrance, Responsibility and the Future," and the Austrian Funds – "Reconciliation, Peace and Cooperation" and General Settlement Fund.

Mel's commitment to Holocaust survivors is virtually unparalleled. Despite his busy schedule and the fact that he most certainly has numerous other matters vying for his attention, he has never once lost sight of the goal of securing a "a measure of justice" for survivors during their waning years, or hesitated to utilize his many resources to accomplish that goal. When negotiations relating to the German Economic Foundation were at a standstill, he was a critical factor in breaking the logjam, which led to the establishment of the foundation. Additionally, he was a leading proponent of the Holocaust Survivors Tax Fairness Act, which ensures that victims of the Nazi regime, their heirs and estates pay no federal income tax on restitution payments received.

In short, there is absolutely no doubt in my mind that, without Mel, without his legal acumen and his sheer tenacity, we would not have secured payment of the billions of dollars that have provided desperately needed relief to aging Holocaust survivors. Not surprisingly, notwithstanding his present personal situation, his efforts on behalf of survivors continue to this day. During a recent meeting, in an attempt to educate and persuade the assembled lawyers to carry on his legacy of assisting survivors, Mel described standing in the salon of the presidential palace in Berlin, Schloss Bellevue, and listening to German president Johannes Rau beg forgiveness from the survivors on behalf of the German people. His choice of that moment as the single most important in the Holocaust litigation is the epitome of Mel.

In closing, I would ask that, when sentencing Mel, you take into consideration his extraordinary achievements on behalf of so many who are in such need and impose a lenient sentence.

Very truly yours,

WAITE, SCHNEIDER, BAYLESS
& CHESLEY CO., L.P.A.

Jean M. Geoppinger

**208**

**EXHIBIT 33**



# COHEN & MALAD, LLP
## ATTORNEYS

Louis F. Cohen (1936-1992)
Richard M. Malad
Irwin B. Levin
Richard N. Bell
David J. Cutshaw
Gregory L. Laker
Richard E. Shevitz
Shokrina Radpour Beering
Arend J. Abel
Brian K. Zoeller*

*Certified Family Law
 Specialist

Michael C. Adley
Scott D. Glichrist
Eric S. Pavlack
Jeff S. Gibson
Elizabeth J. Doepken
Julie Andrews
Katherine A. Harmon*
Kelley J. Johnson
Vess A. Miller
Jere A. Rosebrock
Gabriel A. Hawkins
Leslie B. Gibson

April 29, 2008

Honorable John F. Walter
United States District Court
Central District of California
312 N. Spring Street
Room 176, Courtroom 16
Los Angeles, CA 90012

In Re: United States v. Melvyn Weiss; Case No. CR 05-587(E)- JFW

Dear Judge Walter:

I write this letter hoping that I can offer insights regarding Melvyn Weiss which will assist the Court in evaluating a request for leniency at his upcoming sentencing hearing. I am not familiar with charges to which he has chosen to plead guilty, or with any of the facts or circumstances relating to those charges and am unable to comment in that regard.

I serve as the managing partner of Cohen & Malad, LLP, and have practiced with this law office for over 30 years. We represent clients from various walks of life, including victims of wrongdoing by large corporations. The professional achievement in which I take the greatest personal satisfaction involves the role my firm played in litigation on behalf of Holocaust victims, including the litigation brought against Swiss Banks that was resolved for $1.25 billion in the United States District Court of the Eastern District of New York, as well as a separate phase of litigation brought against German companies that was resolved through the creation of a $5 billion fund negotiated with those firms by private counsel, representatives of Holocaust survivors, as well as representatives of a number of countries, including Germany, the United States, and Israel.

As you may be aware, Mr. Weiss played a leading and essential role in the stewardship of that historic effort on behalf of Holocaust victims. Although well aware of his professional achievements and philanthropy, I first became acquainted with Mel in the context of that litigation and the highly complex negotiating sessions, many of which took place in Europe.

April 29, 2008
Page Two

The unprecedented results could not have been achieved without Mr. Weiss' guidance and commitment, much of which he provided for no compensation.   I immediately developed an admiration not only for his negotiating skills, which involved developing consensus among a diverse groups of lawyers, government officials, corporate representatives and non-governmental organizations, but also for his devotion to the interests of Holocaust survivors.

Although nothing can compensate Holocaust survivors for the suffering of the Nazi era, Mel Weiss can be credited with improving the lives of hundreds of thousands of Holocaust survivors around the world.   I urge the Court to consider that historic contribution by Mr. Weiss in connection with his request for leniency at sentencing.

Sincerely yours,

Irwin B. Levin

IBL:js

**210**

# EXHIBIT 34

# FREDERIC BOLOIX

May 1, 2008

Honorable John F. Walter
United States District Court
Central District of California
312 North Spring Street
Room 176, Courtroom 16
Los Angeles, Ca 90012

RE: United States vs. Melvyn I. Weiss
NO. CR 05-587 (E) - JFW

Dear Judge Walter:

My name is Frederic Boloix. I am a fine arts dealer living in Sun Valley, Idaho. Prior to embarking on my career as a gallery owner I was a classical trombonist in Vienna, Austria. After many years abroad and in the Bay Area I moved to Sun Valley because I love the mountains and the outdoors. I am happily married and my French wife Aurelie and I are expecting our first child any day now. Mr. Weiss and I have been friends for nearly twenty years. Although we originally met through our mutual love of fine art a close friendship ensued in which I've had the opportunity of experiencing his many qualities as a human being. At the time of our first meeting I was a young art consultant in a San Francisco Gallery. I was neither rich nor famous nor very experienced in the art business and yet Mel became my client and soon thereafter embraced me with his friendship; he has since always treated me like family. I have been very fortunate to spend quality time with Mel and his wife Bobbi both here and abroad and have great affection for his whole family.

Your honor, I am sure Mel has many friends and colleagues who will write in great detail about his many meaningful professional accomplishments, his pro-bono work and support for favorite charities. I've decided to simply give you a personal glimpse of the man as I've known him for two decades. I'll start by saying that Mel is simply one of the finest, most thoughtful and generous human beings I have had the privilege of knowing in my fifty years and I would like to illustrate ways in which he has touched my life and served as a positive influence and mentor.

Sometimes it's the little every-day things that define a person – even more so than any earth-shaking accomplishments that are perhaps more obvious. I vividly recall one of the highlights of our friendship, an intimate celebration of his sixtieth birthday with both our spouses in the city of Vienna (where both Beethoven and I studied music). Mel, Bobbi and my ex-wife Mitra and I had finished dinner and decided to walk the town a bit. It was a weekday and not a lot was happening so we went for a walk and the ladies did a little window shopping although all the shops were closed. Mel saw that Mitra was especially captivated by a pair of boots in one of the most expensive shops on the street – she was

**211**

speaking to Bobbi about them when Mel, not missing a beat, went over to Mitra and handed her a few large bills and said "tomorrow come back and get those boots, ok?" We were a young couple almost half his age at the time (and struggling a bit since we had just moved back to Europe) and this spontaneous gesture spoke volumes. It was a moment Mitra and I have never forgotten and this simple act taught me a lot about how to be. Mel is a person who gives constantly and it is evident in all walks of life; whether it be tipping generously, offering a kind word of encouragement or helping a friend in need, his attitude about giving is an unshakeable part of his being. Many a time he offered to help me while as I was trying to grow my business. I didn't take him up on it but the fact that he would have been there for me gave me courage. This is the sign of a big heart and a true friend. He is one of those people that when push comes to shove his promises are good and not just made of words.

Mel is a very passionate man and the reason for his great success is that he really loves what he does and it brings out a will and focus that are uncanny.. We met on several occasions while he was working on a case that was consuming him – he seemed like a man possessed. I was a bit worried and asked his assistant Lois what was going on with him, she told me that he was spending every waking hour working on this particular case and was hardly sleeping at night. The case I am referring to ended up being one of his greatest accomplishments: recovering wages and compensation for victims of slave labor during the Nazi regime – something he did pro-bono. It is not often that I have seen this level of compassion converted into the will and energy to really make a difference He is particularly driven when it comes to giving a voice to those who have none. The burning desire to help those who are victims of injustice is something that I believe one is born with – I don't think it can be learned or faked. That is simply Mel's nature and it explains why he is a pioneer in his profession.

I have a client and friend who was an attorney representing a large investment banking firm that Mel had taken to court on more than one occasion. When we first met and he told me he represented the firm in cases involving class action law suits I asked him if he knew Mel Weiss. He shook his head and said, "you bet I know Mel Weiss, he really kicked our butts, but I must say I like him… he's a hell of an attorney and he gives a lot to important causes". I think when a person's adversaries speak with this much respect and admiration it is a clear sign of success, and when they actually like you for the person you are that is very, very special.

Mel Weiss also proved to be a true and loyal friend when I was going through a painful divorce from the woman to which he had been so kind on his sixtieth birthday. He was there for me even during the busiest of times. He opened his heart and listened, not from the point of view of a lawyer, but as a compassionate friend. He once again set a great example for me by convincing me that if in doubt I should be more generous than the law required and make sure that she would be ok both economically and if possible emotionally. Because of his broad perspective and ability to see "the big picture" he influenced decisions that allowed my ex-wife and I to part amicably ways and have remained friends.

**212**

2

This man is a glowing example of how it is possible for a single person to have a wide reaching impact on a community, a country and the world. Your honor, I believe our planet is a better place because of rare individuals like Mel Weiss and for this reason I ask for your leniency.

Reading recent accounts of Mel Weiss in the paper one would think he is yet another greedy, selfish type who cares for nothing but his pocket book. I hope the experiences I have shared with you show that this couldn't be further from the truth.

Your honor, I respectfully ask that you consider his many exceptional qualities and his exemplary generosity as you make this difficult decision. Please consider ways in which his unique talents can be used to improve the lives of others. What a wonderful community service he would render if he had the chance to spend time with students with whom he would have so much to share – he is after all a legend in his field. I'm sure he would repay society manifold for wrongdoings that I know he deeply regrets. The greatest punishment by far is that he will never again be able to practice the profession he loves and for which he has dedicated his life. I am confident that by giving him a chance you would be witness to the true colors of this remarkable man.

Thank you so much for taking my thoughts into consideration.


Sincerely yours,

Frederic Boloix

P.O. Box 2111
Sun Valley, ID 83353

Te. 208 725 0079

**213**

3