UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

*HONORABLE JOHN F. WALTER, U.S. DISTRICT JUDGE*

- - -

UNITED STATES OF AMERICA,           )
                                    )
                    Plaintiffs,     )    Case No.
                                    )
          vs.                       )  CR-05-587(E)-JFW
                                    )
MELVYN I. WEISS,                    )
                                    )
                    Defendant.      )
_____)

REPORTER'S TRANSCRIPT OF
*SENTENCING HEARING*
MONDAY, JUNE 2, 2008
10:00 A.M.
LOS ANGELES, CALIFORNIA

_____

***VICTORIA L. VALINE, CSR 3036, RMR, CRR***
FEDERAL OFFICIAL COURT REPORTER
312 NORTH SPRING STREET, ROOM 440
LOS ANGELES, CALIFORNIA 90012
PHONE: (213) 625-1580
www.victoriavalinecsr.com

```
 1                    APPEARANCES OF COUNSEL:

 2

 3    FOR THE PLAINTIFF:

 4            THOMAS P. O'BRIEN
              Acting United States Attorney
 5            BY:  Douglas A. Axel,
                   Richard E. Robinson,
 6                 Pio Kim,
              Assistant United States Attorneys
 7            Criminal Division
              United States Courthouse
 8            312 North Spring Street
              Los Angeles, California  90012
 9

10    FOR THE DEFENDANT MELVYN I. WEISS:

11            BRAFMAN AND ASSOCIATES
              Attorneys at Law
12            BY:  Benjamin Brafman
              767 Third Avenue, 26th Floor
13            New York, NY 10017
              (212) 750-7800
14

15            BROWN AND WHITE
              Attorneys at Law
16            BY:  Thomas M. Brown
              333 S. Hope Street, 36th Floor
17            Los Angeles, CA 90071-1406
              (213) 613-0500
18

19

20

21

22

23

24

25
```

UNITED STATES DISTRICT COURT

```
 1            LOS ANGELES, CALIFORNIA;  MONDAY, JUNE 2, 2008

 2                      10:00 A.M.

 3                        -  -  -

 4            THE CLERK:  Calling item 4, CR-05-587-(E)-JFW,

 5   United States of America versus Melvyn Weiss.

 6            Counsel, please state your appearance.

 7            MR. AXEL:  Good morning, your Honor.  Douglas Axel

 8   on behalf of the United States.  Also present at counsel

 9   table are Assistant United States Attorneys Richard Robinson

10   and Pio Kim, and Postal Inspector Katherine Budig.

11            MR. BRAFMAN:  Good morning, your Honor.  Benjamin

12   Brafman, admitted pro hac vice.  At counsel table is Thomas

13   Brown and Mr. Weiss, who is present.

14            Good morning, sir.

15            THE COURT:  All right.  Good morning to all.  This

16   matter is before the Court for pronouncement of judgment and

17   imposition of sentence.

18            Is there any reason why judgment and sentence should

19   not be imposed at this time?

20            MR. BRAFMAN:  No, sir.

21            MR. AXEL:  No, your Honor.

22            MR. BROWN:  No, your Honor.

23            THE COURT:  Was the Presentence Report timely

24   disclosed to both parties?

25            MR. AXEL:  Your Honor, I believe it was just shy of
```

UNITED STATES DISTRICT COURT

1   the dates, but the defendant has waived the 35 days.

2            MR. BRAFMAN:  That's correct.

3            THE COURT:  All right.  Did counsel and Mr. Weiss

4   read and discuss the Presentence Report, as well as the

5   addendum to the Presentence Report?

6            MR. BRAFMAN:  Yes, sir.

7            THE COURT:  The Court has received, read, and

8   considered the Presentence Report, the addendum, the parties'

9   sentencing memorandum, letters, and other material.

10  Specifically, the Court has reviewed the government's

11  sentencing memorandum filed on May 23rd, 2008, Mr. Weiss'

12  sentencing position papers Volumes 1 through 4 filed on

13  May 23rd, 2008.  In addition, the Court has reviewed the

14  government's reply sentencing memorandum as well as

15  Mr. Weiss' reply sentencing memorandum, and the under seal

16  exhibits that were filed pursuant to a previously entered

17  protective order in this case.

18            The Court has also received an ex parte application

19  to seal certain letters that were submitted.  There were

20  actually three letters.

21            I did not receive any opposition from the

22  government; is that correct?

23            MR. AXEL:  Correct, your Honor.  I'm sorry, our

24  position was stated in the declaration.

25            THE COURT:  All right.  I believe that the two

1    exhibits, 115 and Exhibit 116 are properly sealed because

2    they do describe health and other medical information.

3         Exhibit Number 117, I do not believe that there is a

4    basis, so pursuant to your request, I'm going to return --

5         MR. BRAFMAN:  Thank you, your Honor.

6         THE COURT:  -- that letter.  Since they were all

7    attached to the ex parte application, what I'm going to do is

8    return the entire ex parte application to you and then you

9    can re-file it with the two letters that the Court will enter

10   an order sealing as Exhibit 115 and 116.

11        MR. BRAFMAN:  Thank you, your Honor.

12        THE COURT:  The Court also has a stipulation for

13   entry of final order of forfeiture and a proposed order,

14   which I'll deal with later this morning.

15        Although the sentencing guidelines are now advisory,

16   the Court must still consider the advisory guideline range,

17   in addition to the other directives set forth in 3553(a) and

18   impose a sentence that is sufficient, but not greater than

19   necessary to comply with the purposes of the Act.

20        This Court follows a two-step or a two-phase

21   sentencing process.  In phase one, the Court will determine

22   or calculate the applicable advisory guideline range, which

23   will require the Court to resolve any objections to the

24   Presentence Report guideline calculation, as well as any

25   factual disputes.  Thereafter, the Court will determine

1   whether, pursuant to the commission policy statements, any

2   departures from the guideline range clearly apply.  I will

3   defer to phase two any argument as to why the Court should be

4   bound by the plea agreement filed in this case.

5         In connection with the calculation of the advisory

6   guideline range based upon the addendum, as well as the

7   sentencing position papers filed by the parties, it appears

8   that there is an agreement with the calculation of the

9   advisory guideline range by the Probation Officer.

10         Specifically, the Probation Officer has calculated

11   the base offense level at level 14 and has increased that

12   base level as follows.  A three-level increase as a result of

13   the offense resulting -- involving a substantial interference

14   with the administration of justice, that adjustment or

15   increase is set forth in Paragraph 62 of the Presentence

16   Report.

17         In addition, the Probation Officer has added a

18   two-level increase provided by 2J1.2(b)(3), because the

19   offense was extensive in scope, planning, and preparation as

20   discussed in Paragraph 63 of the Presentence Report.  And a

21   two-level increase was -- adjustment was made pursuant to

22   Paragraph 64 for the role in the offense.  Finally, there was

23   an additional two levels for the obstruction of justice as

24   described in Paragraph 68.

25         The resulting adjusted offense level was 23, and

1    from that the Probation Officer has applied a three-level

2    reduction for acceptance of responsibility.  Accordingly, the

3    Probation Officer's calculation of the total offense level is

4    20.  The defendant is in criminal history category -- excuse

5    me -- 1.  The resulting advisory guideline range is 33 to

6    41 months.

7          As counsel point out, Mr. Weiss entered his plea

8    pursuant to Rule 11(c)(1)(C), and in the plea agreement the

9    government and Mr. Weiss have agreed that the -- an

10    appropriate disposition in this case would allow -- or permit

11    the government to impose a sentence within a range of 18 to

12    33 months, with the Court retaining discretion to substitute

13    community confinement or home detention for no more than

14    one-half of the term of the imprisonment, a fine of $250,000,

15    a three-year period of supervised release, a special

16    assessment of $100.  The agreement also provides that

17    Mr. Weiss shall forfeit $9,750,000 as proceeds of the

18    racketeering conspiracy.

19          Although the plea agreement did not contain any

20    agreement as to the applicable sentencing guideline

21    calculations, it appears that neither party has any objection

22    to the guidelines as calculated by the Probation Officer, and

23    the Court is prepared to accept the guideline calculation

24    unless there is an objection.

25          So, let me confirm, Mr. Brafman, you don't have any

1   objections to the calculations?

2           MR. BRAFMAN:  That's correct, your Honor.

3           THE COURT:  All right.  Does the government have any

4   objections?

5           MR. AXEL:  No objection, your Honor.

6           THE COURT:  All right.  As far as any factual

7   issues, Mr. Brafman raised certain issues regarding the

8   Probation Officer's description of conduct attributable to

9   Mr. Weiss in Paragraphs 20 through 50, and 52 through 56.

10  The Probation Officer was advised by counsel that he did not

11  believe it was necessary to challenge those facts or bring

12  them to the attention of the Court for resolution.

13          Accordingly, there does not appear -- or did not

14  appear to be any factual disputes that the Court needs to

15  resolve before calculating the guidelines.  Is that also

16  correct?

17          MR. BRAFMAN:  Yes, your Honor.

18          THE COURT:  Mr. Axel?

19          MR. AXEL:  Yes, your Honor.

20          THE COURT:  All right.  Accordingly, the Court will

21  calculate the guidelines as follows.  The total offense level

22  will be 20, the criminal history category is 1, the advisory

23  guideline range is 33 to 41 months.

24          After calculating the advisory guideline range, in

25  phase two the Court must consider the Congressional goals of

UNITED STATES DISTRICT COURT

1   sentencing as set forth in the Sentencing Reform Act and

2   impose a sentence that is sufficient, but not greater than

3   necessary to accomplish the goals of sentencing.

4           The Court will hear from counsel, but before I do

5   so, let me ask Mr. Axel, are there any victims in court that

6   wish to be heard?

7           MR. AXEL:  Not that I'm aware of, your Honor.

8           THE COURT:  All right.  Are there any victims in

9   court that wish to be heard?

10                  *(No response.)*

11          THE COURT:  All right.  Hearing no request to be

12   heard, we'll move on to hear arguments of counsel.

13          I'll begin with the defendant as to the appropriate

14   sentence in this case.

15          MR. BRAFMAN:  Thank you, your Honor.

16          Your Honor, despite having been in the well of a

17   courtroom for -- on one side of the aisle or another for

18   almost 35 years, this is, I think, perhaps one of the most

19   difficult days that I can imagine.  I'm standing in the well

20   of a courtroom next to Melvyn Weiss who, at age 73, who,

21   despite his criminal conduct, has led what can only be

22   described in many ways as an extraordinary life in which he

23   has done many, many good things for hundreds of thousands, if

24   not millions of people, makes me profoundly sad that we are

25   here in the context of a criminal sentencing.  And I hope

1    that the Court, and the government, and all of the people in

2    this courtroom recognize that this is a difficult day where

3    we all, I think, lose regardless of the sentence that the

4    Court imposes.

5         Your Honor, the sentencing submission that we have

6    prepared for the Court, and the more than 275 letters that

7    have been attached as individual exhibits, and some of them

8    excerpted, speak volumes, if you will, about the kind of life

9    that Mr. Weiss has led and where, I think, the Court needs,

10   most respectfully, to concentrate your Honor's attention,

11   despite the serious criminal conduct that Mr. Weiss stands

12   convicted of.

13        And in our memo -- and I think I would like to begin

14   that way, and I don't intend to repeat all of the arguments

15   we made.  I know that the Court has carefully read the

16   sentencing submission and all of the letters, and I hope that

17   the Court is as moved and impressed as I was at the

18   breathtaking array of extraordinary work that they describe.

19   One of the --

20        THE COURT:  I was.  It was a -- it was a showing

21   that I don't think I've ever seen in the brief time that I've

22   been on the bench.

23        MR. BRAFMAN:  Well, I -- I -- I appreciate that,

24   sir, and will add to that -- and I say this with great

25   respect -- that it's a showing that I have not seen either,

1    in not only the breadth of the work that Mr. Weiss has

2    undertaken, but the fact that each of the people who write to

3    the Court don't write about something that they heard or read

4    about, write about something that they personally lived

5    through at one way or another at Mr. Weiss' side, they're a

6    direct beneficiary of his magnificent work.

7            Your Honor, in addition to the 3553 factors that the

8    Court must consider, I think we also need to look at Section

9    1B1.4 of the notes to 18 USC 3661, where the Court is advised

10   that all that a person has accomplished, separate and apart

11   from the charged conduct, must be considered.

12           And I'd like to just begin my presentation with

13   reading a quote from the Honorable Judge Rakoff who, in the

14   Southern District, is considered by I think all -- all who

15   practice there to be a -- a highly regarded Court who has

16   spent many years as a prosecutor, as a defense lawyer, and

17   has a breadth of experience.  And in sentencing an individual

18   in the case of *United States v Adelson* where the Court was

19   provided with a hundred letters that describe the work of the

20   defendant in that case, Judge Rakoff said, and I quote from

21   *Adelson* at Page 513, "Surely if ever a man is to receive

22   credit for the good he has done and his immediate misconduct

23   assessed in the context of his overall life hitherto, it

24   should be at the moment of his sentencing when his future

25   hangs in the balance."

UNITED STATES DISTRICT COURT

1    And I think, Judge, that's a -- I think it's a good

2    place for us to start, because I do not believe that this

3    Court will, in the years ahead -- and you've already

4    concluded that you have not in the years up to this point --

5    really be in the position where you must impose sentence on

6    someone who, in many ways, can, I think, accurately be

7    described as one of the most extraordinary men of this

8    generation.

9    And when you say that in the well of a courtroom

10   before a Court who is to impose a prison sentence, there's

11   obviously a terrible disconnect between the crime and

12   criminal conduct that Mr. Weiss has acknowledged, and someone

13   who is so fundamentally good and generous and decent, and who

14   has devoted so much of his life to good work.

15   And I think that we need to recognize that there is

16   nothing that I can say to defend the criminal conduct, to

17   excuse the criminal conduct.  There's nothing that Mr. Weiss

18   will say.  But what I do ask, and I -- I say this quite

19   candidly -- what I do beg, is that the Court, as one of the

20   eloquent letters provides from a former partner in a major

21   law firm, and White House counsel, and judicial counsel, they

22   ask the Court to temper justice with mercy.  And I think it's

23   appropriate, and I think in this case, perhaps more than any

24   other, it would be an appropriate response; that the Court

25   not simply do the math, and accept the agreement, and say the

1    crime is serious, and I've got to impose that sentence.

2         I think if you look at 3553, if you look at the

3    cases that have come down since the guidelines were deemed to

4    be only advisory, and you look at 1B1.4, this Court has the

5    discretion to do what you feel is appropriate within reason.

6    And so long as the Court can impose a sentence that is not

7    greater than necessary, then I think that's okay.

8         And I don't think that the government, or the Court,

9    or public at large will suffer at all if there is some

10   compassion extended to someone who, in 50 years, has extended

11   compassion to tens of millions of people across the world,

12   not just in the United States.  And I think, Judge, that that

13   is really at the heart of what we're here to decide.

14        And I bring you back, sir, with great respect, to

15   the colloquy between your Honor and the government at the

16   sentencing of Mr. Lerach just several months ago, where there

17   was a discussion as to how we pick a number.  And isn't it

18   arbitrary?  And I think the Court used the word subject --

19   there's a degree of subjectivity involved, and whether you

20   ask for 15 months, or 18 months, or 21 months, or 24 months,

21   there's a degree of subjectivity involved, and there is.

22        And in this case, the only people who will suffer if

23   the Court sentences Mr. Weiss to a higher period of time than

24   is absolutely necessary, given his age and given all that

25   he's done, will be Mr. Weiss and his family.  I don't think

1    the integrity of the process will suffer if your Honor

2    imposes a 24-month sentence or a 18-month sentence as opposed

3    to a 33-month sentence.

4         I think when you recognize that one of the greatest

5    lawyers of this generation will no longer be able to practice

6    law, that any punishment that the Court imposes beyond that

7    is in addition to an extraordinary punishment the defendant

8    will suffer regardless of where your Honor comes out on the

9    math.

10        In the sentencing of Mr. Lerach, Robert McGahan who

11   was the assistant in the well of the courtroom on that date,

12   told your Honor that in the government's view it was enough.

13   That 24 months was adequate to meet the interest of justice

14   in that case.

15        Well, the core criminal conduct is the same.  I know

16   what Mr. Axel has said in writing, and I know what the Court

17   has before him with respect to what the government argues to

18   be either criminal arrogance or obstruction of justice, and I

19   chose not to litigate either of those two issues because I

20   can't win on that argument if we were to litigate it.

21        What I have offered, though, is an explanation --

22        THE COURT:  Yes, but you raised it in the reply

23   brief.

24        MR. BRAFMAN:  I did, your Honor, because --

25        THE COURT:  Which then, you know, it's the slippery

slope --

    MR. BRAFMAN:  Right.

    THE COURT:  -- because you raise the issues, and the issues that we're talking about are the -- is the meeting in November of 2003 when Schulman and Bershad decided that -- I think it was Schulman who concluded that Mr. Vogel's fee in the Oxford Health case was too much and needed to be negotiated downward.  And the government's investigation had been under way for -- since January of 2002 -- and I know Mr. Weiss doesn't necessarily agree with -- and I'm not asking him to -- the characterization by Schulman and Bershad.  But it's pretty obvious to me, and I think there was even something that I may have read many -- many, many months ago in the motion practice, that there was a belief that Mr. Vogel was getting somewhat greedy in connection with this case, and there was going to be an effort to negotiate with Mr. Vogel to reduce his kickback.

    Bershad and Schulman didn't want to entertain or engage in those negotiations, and I don't know why, I have my suspicion, that Mr. Weiss may have been the stronger of the negotiators, or maybe Bershad and Schulman had advice which indicated to them or strongly cautioned them not to participate in such a meeting.  But nonetheless, Mr. Weiss did and negotiated with -- not Mr. Vogel, but his lawyer who the government has described as Intermediary A.

1       I've looked at that transcript -- the report of the

2   interview that was filed under seal, and I don't see anything

3   in that transcript that really supports your argument as to a

4   state of mind of Mr. Weiss.  You do make the statement in

5   your reply that the facts are not helpful.  I think that's a

6   classic understatement with respect to that transaction, as

7   the other evidence that the government has set forth in the

8   reply brief with respect to the -- Mr. Weiss' attempt to

9   obstruct the grand jury investigation in this case.

10      So, I do take those two issues very serious because

11  it's obvious, at least in the Court's view, that

12  notwithstanding the fact that the investigation was on the

13  table, it was ongoing, Mr. Weiss continued to participate in

14  this activity.  I think it was Mr. Kecker who, during the

15  course of the sentencing of Mr. Lerach, had indicated that

16  if -- if Mr. Lerach had known what was going on in

17  New York -- and I don't know if he was specifically referring

18  to this meeting, but certainly the concept of continuing to

19  be involved with these paid plaintiffs -- that Mr. Lerach

20  would have been tried for murder.

21      So, I do have concerns about the -- about Mr. Weiss'

22  conduct from and after the government's investigation became

23  known.

24      MR. BRAFMAN:  Let me briefly respond, Judge.  And I

25  want to make it clear to your Honor that given the reply

1    sentencing memo filed by the government, where they pushed

2    those two issues to justify a sentence greater in the case of

3    Mr. Lerach than the one -- greater than the one imposed by

4    Mr. Lerach in the case of Mr. Weiss, we had no choice but to

5    respond.  And the response we took was a measured response.

6    And there is -- with the benefit of hindsight, Mr. Weiss

7    knows a lot more now than he knew then.

8              The difficulty in this case is, I'm not going to be

9    able to convince the government or the Court that Mr. Weiss'

10   conduct was good.  As I quote in the brief, "it certainly

11   wasn't helpful."

12             THE COURT:  Right.

13             MR. BRAFMAN:  But when the government pushed the

14   envelope to require Mr. Weiss, in the statement of facts to

15   acknowledge the issue with respect to Intermediary A, there

16   was push back because, you know, Mr. Weiss will go to his

17   grave taking the position that he was told certain things by

18   Bershad and Schulman that is different than what Bershad and

19   Schulman have told the government they told him.  There's no

20   way to resolve that.  It doesn't affect the calculation, so

21   you don't need an evidentiary hearing.

22             THE COURT:  I agree.  But it just seems to me, given

23   the facts and the way the facts unfolded, and I obviously

24   have spent a lot of time looking at this issue, but it was

25   particularly interesting to me that this -- this meeting --

1    let me make sure I have my dates correct --

2         MR. BRAFMAN:  November of 2003, your Honor.

3         THE COURT:  -- November of 2003, what struck me is

4    that meeting with the Vogel intermediary -- is there a reason

5    that we continue to call him the Vogel Intermediary A?

6         MR. AXEL:  Your Honor, it's the Department of

7    Justice policy not to do that on the basis -- it's up to the

8    Court to do that.  It's the Court's judgment at this point.

9         THE COURT:  It comes on the heels of the August 2003

10   meeting with Mr. Kaufman and the -- and the United States

11   Attorney's Office where Mr. Kaufman produced the phony art

12   option documents and falsely represented, based upon

13   Mr. Weiss' instructions or conversations with his then

14   attorney, that those were his personal documents, which he

15   had just found in his safe, which is the other argument.

16        Then we have several months pass and we have the --

17   we have this meeting with intermediary number A.  And based

18   upon the circumstances, I know you take the position, and

19   it's -- it is just inconceivable to me that -- first of all,

20   why was Mr. Weiss dealing with an intermediary?

21        It also seemed that it was pretty clear that

22   Vogel -- and I -- and I recognize that Mr. Vogel was brought

23   into the conspiracy, I believe it was in 1991.  He was

24   brought in my Mr. Sugarman.  He was handled by Schulman and

25   Bershad.  Mr. Weiss did not have any involvement with him,

1   but given the climate of what was going on in the firm at

2   that time after the grand jury investigation had commenced,

3   it seems to me that Mr. Weiss -- certainly there was a red

4   flag in terms of the -- of the cancellation of the telephone

5   meeting and setting up the personal meeting in his office, to

6   negotiate with this -- with this attorney on behalf of

7   Mr. Vogel, that the red flags were just -- I mean, why do you

8   need to deal with an intermediary attorney when, if there was

9   nothing wrong with the case, if it was not a tainted case or

10  a paid plaintiff, you could simply have a simple phone

11  conversation trying to negotiate the amount of the fee

12  downward.  It just -- all of the facts just don't pass

13  muster.

14         MR. BRAFMAN:  Well, your Honor, we could go

15  respectfully back and forth on this for awhile, and I think I

16  could give you some very powerful arguments on certain of

17  these issues.  At the end of the discussion, I don't believe

18  I'm going to convince the Court.

19         With the benefit of hindsight, it was poor judgment.

20  It was a mistake.  But what we take issue with is the

21  government's characterization of A, that this demonstrated

22  criminal arrogance.  It was not arrogance on Mr. Weiss' part.

23         And the question I ask you to consider, most

24  respectfully, because Mr. Weiss has never been accused of

25  being dumb.  This is someone who he had never dealt with.

1    This is someone he had never met before.  This was a client

2    he had never serviced, and to be candid with you, Judge, it

3    was a paid plaintiff who Mr. Weiss was not even aware of

4    until he was asked to meet with government intermediary --

5    Intermediary A -- Vogel Intermediary A.  In addition, your

6    Honor, he was not even a named plaintiff in the Oxford

7    litigation.  He was --

8         THE COURT:  But that argument isn't very

9    persuasive --

10        MR. BRAFMAN:  No.  I understand that.

11        THE COURT:  -- it was the retirement fund.  It was

12   the Howard Vogel retirement fund.  So, obvious that it's

13   Howard Vogel.  It's not like it's --

14        MR. BRAFMAN:  Your Honor -- your Honor, there --

15   there is one question that no one's been able to answer, and

16   the answer is not criminal arrogance.  Mr. Weiss knew that

17   there was a criminal investigation.  Mr. Weiss understood the

18   format of the investigation.  This is someone who he had

19   never dealt with.

20        The case against Mr. Weiss, because he had never

21   dealt directly with almost any of the paid plaintiffs over an

22   extended period of time, was weaker than their case was

23   against Schulman and Bershad who had direct hand-to-hand

24   contact with so many people.  Why would he inject himself

25   into a case that he previously had nothing to do with when he

UNITED STATES DISTRICT COURT

1    was represented by Mr. Kaufman, the firm was represented by

2    counsel?  If he believed that he had guilty knowledge in his

3    heart that that was a problem, he would not have met with

4    them.  He would have taken the course of action that both

5    Bershad and Schulman took.

6         And I ask you, sir, with great respect, that is a

7    very, very compelling argument that allows you to, I think at

8    least consider that I don't think you're getting the full

9    story with respect to what previewed the meeting between

10   himself and Mr. -- Intermediary A, and what he was told at

11   the time.  But I want to move on, because I want to tell you

12   where I come out on this, and I think I've said it in

13   writing.

14        I can't convince your Honor on this point and I

15   recognize that.  And I don't think I ever will.

16        THE COURT:  Well, I'm not saying I can't be

17   convinced, I just tell you that I was troubled by it.  I -- I

18   went back and I looked -- after I received the government's

19   reply, I went back and looked at your papers, and I went back

20   and looked at the -- at the factual basis for the plea for

21   both -- for all -- for Bershad, Schulman, and Vogel, and it

22   doesn't seem to me that -- and I looked again, I read the

23   report of interview, and Mr. Weiss' comments during the --

24   during this meeting were something to the effect that money

25   wasn't a problem.

1          So, I just don't understand why there wasn't just a

2     simple phone call that, you know, let's try to negotiate this

3     fee.  And if we're successful, great; if we're not, just pay

4     him.

5          MR. BRAFMAN:  I know the government has latched onto

6     a fact that he insisted on an in-person meeting as opposed to

7     a telephone meeting.  But, your Honor, the meeting was to

8     negotiate a $4 million referral fee down to a $1 million

9     referral fee, with someone he had never met, on behalf of a

10    client he had never met.  I don't think the specter of having

11    an in-person meeting for something that substantial need

12    necessarily resolve itself in terms of criminal knowledge.

13         THE COURT:  I agree.

14         MR. BRAFMAN:  Okay.  And that's --

15         THE COURT:  I mean, the most effective way to

16    negotiate --

17         MR. BRAFMAN:  Is this person --

18         THE COURT:  -- is to negotiate in person.

19         MR. BRAFMAN:  Right.

20         THE COURT:  You're not going to convince anybody to

21    reduce a fee by $3 million in a telephone conversation unless

22    you have them in your office.  And Mr. Weiss is a very -- a

23    very persuasive man and a very persuasive lawyer, and looking

24    someone in the eye is a lot different than having somebody

25    talk on the telephone.  I understand.

UNITED STATES DISTRICT COURT

1    MR. BRAFMAN:  Let me -- let me add two other things,

2    because even if I don't convince your Honor, I don't want

3    your Honor to focus exclusively on this in terms of deciding

4    where the sentence comes out.

5         THE COURT:  Believe me, I'm not.

6         MR. BRAFMAN:  So, let me just finish this, please,

7    so the record is clear.

8         Vogel was not a named lead plaintiff.  And -- and at

9    the time, your Honor -- and I think you need to,

10   unfortunately, go back into the -- what I would call the

11   cloudy mindset, if you will, at the time where there was a

12   distinction being drawn.  And there's a lot of water under

13   the bridge, so we're way beyond that stage now.

14        But back in 2003, there was an arguable distinction

15   being made by many of the people involved in this case, that

16   if you have someone who is himself a lawyer, and if you have

17   someone who is not a lead plaintiff, and if you have someone

18   who, according to Vogel Intermediary A, had performed a great

19   deal of work on the case, as he professed to Mr. Weiss on

20   behalf of Mr. Vogel, there was a voice in that camp of

21   defense lawyers that was taking the position that that is

22   arguably a defensible referral fee and not the classic

23   kickback that the Court came away with at a later time.  That

24   was not criminal arrogance, Judge.  It was bad judgment, with

25   the benefit of hindsight.  Mr. Weiss had no business

1    injecting himself into a case that he did not belong in, but

2    he settled the Oxford case.  And long after he settled the

3    Oxford case -- and he never had anything to do with the

4    Oxford case until it came to settlement.  He didn't litigate

5    it.  He didn't take depositions.  He didn't discuss who the

6    plaintiffs were.  He settled the Oxford case.  After the fees

7    were awarded and after the settlement was arrived at and the

8    fees were awarded, this call came in.

9          What Mr. Bershad and Mr. Schulman have said, we're

10   stuck with.  We don't want a hearing on this because it

11   doesn't affect the guideline range.  But I ask your Honor to

12   understand that someone as smart as Mel Weiss would not set

13   up a meeting, in person or on the phone, with someone who he

14   doesn't know, to discuss something which, in his own mind,

15   might directly involve him in criminal conduct, but before

16   that he had no involvement with him.

17         Certainly if Mr. Bershad and Mr. Schulman, as they

18   claim, said to Mel, we don't want to have this meeting

19   because of the criminal investigation, why for God sake would

20   Mr. Weiss have that meeting when, with respect to Vogel, they

21   had no evidence whatsoever with Vogel to directly connect

22   Mr. Weiss to that?

23         And that's why I had to respond, because it's not as

24   clean-cut an issue as the government suggests.  And even if I

25   don't convince the Court, I ask the Court to consider these

1    issues in -- in the whole scheme of things as they were in

2    2003, not today.

3          And because your Honor mentioned that, I also tell

4    you, sir, that our response to the obstruction of justice

5    argument was not to object to the enhancement.  And I make

6    that clear in our papers, that to the extent that this

7    essentially did impede the investigation then the obstruction

8    enhancement is appropriate.  But if I were a District Court

9    Judge considering whether to enhance someone's sentence as a

10   result of a claim of obstruction of justice, I would want

11   some explanation of exactly what kind of obstruction are we

12   talking about.

13         Did a defendant burn documents?

14         Did he delete documents?

15         Did he destroy documents?

16         And in this case, I think there is a very powerful

17   argument that although Mr. Weiss has violated that

18   application note, so that your Honor can consider it, on

19   balance his conduct did not substantially impede the

20   investigation, because the documents were turned over, A.

21   And as I point out in the second stipulation, there always

22   was a personal element to Cooperman's efforts to entice

23   Mr. Weiss into an art relationship.

24         So, Mr. Weiss has acknowledged that the payment he

25   made to Cooperman -- the $175,000 check, was in furtherance

UNITED STATES DISTRICT COURT

1    of the conspiracy.  He has pled guilty to it.  It's in the

2    statement of facts.  But in the June 15th, 1990 letter that I

3    attached to the second exhibit from Cooperman to Weiss, this

4    is three months after the art option has expired,

5    Mr. Cooperman is still bothering Mr. Weiss and bringing to

6    his attention how the value of that Picasso was going up, and

7    how there are other paintings that Mr. Weiss should focus on.

8         So, when thirteen years later Mr. Weiss sees among

9    these documents, a personal if you will, letter, telling

10   Mr. Kaufman at the time that these documents relate to a -- a

11   personal transaction, is not completely accurate and it's

12   misleading and the obstruction enhancement applies.  But the

13   document --

14        THE COURT:  They certainly weren't found in his

15   personal safe.

16        MR. BRAFMAN:  Some were.  You see, that's the

17   problem here, your Honor.

18        Mr. Bershad does not know specifically which

19   documents were filed -- found in his drawer, and which were

20   turned over by Mr. Kaufman.  There is a -- not a full

21   accounting of all of the documents.

22        Mr. Bershad could specifically identify some and not

23   others.  But, at the end of the day, you have a target of an

24   investigation giving the documents to his lawyer, who then

25   goes out to California in 2003 and gives them to an Assistant

1  United States Attorney.  And the lawyer, who is a former

2  Chief of the Criminal Division in the U.S. Attorney's Office

3  in the Southern District, an experienced criminal defense

4  lawyer, asks on his own for active production immunity and

5  receives it.

6      Then for four years, these documents are in the

7  government's possession.  And they have Cooperman.  They have

8  their copies of the document.  They don't believe the

9  explanation by Weiss.  They do nothing to vitiate the act of

10  immunity order during that period.

11      The first time I met with Mr. Robinson and an

12  agent -- I believe it was in 2005, but I'm not certain, when

13  Mr. Weiss was produced for a handwriting exemplar --

14  Mr. Robinson, in passing, raised the art documents.  And in

15  words or substance, because none of this was reduced to

16  writing, I said, whenever you want to address that issue, you

17  tell me and we'll deal with it.  Because I understood that

18  there was no point to this issue.  It was either documents in

19  connection with the criminal investigation, for which there

20  was not going to be any immunity issue, or they were personal

21  and I wanted to turn them over because I wanted to argue that

22  issue.

23      When Mr. Axel approached Mr. Weiss in 2007 and said,

24  we need to resolve the art documents one way or another,

25  either by subpoenaing Steve Kaufman or by stipulation, I

1    think within days we had a stipulation.

2         So, I understand that there is an obstruction issue

3    that is sufficient to cause the Court and Probation to argue

4    that an enhancement is appropriate.  If I were a district

5    court however, and I were faced with obstruction, I most

6    respectfully would want to know, is there a burning of

7    documents by a defendant once they have been subpoenaed, or

8    in this case have they been safeguarded, turned over to the

9    government, and the immunity issue -- which gets injected

10   into the proceeding -- is by Mr. Kaufman.  Mr. Weiss didn't

11   even know what active production immunity was at the time.

12   So, Mr. Kaufman does it and they don't move to set it aside.

13        And I think that that's an explanation that at least

14   softens the obstruction.  It doesn't remove it, but I think

15   when you look at this -- and I -- and I think, your Honor,

16   that part of the problem we have had in this case from the

17   beginning -- and it's a point we make in our statement -- is

18   that, you know, there were two parts of the Milberg Weiss

19   firm.  There was the man who went around getting business,

20   and settling cases, and litigating cases, and trying cases,

21   and flying all over the world doing 20, 30 years of active

22   pro bono work on behalf of victims of genocide, and

23   establishing all sorts of programs, and then there's the nuts

24   and bolts back in the office.

25        Mr. Weiss delegated a lot of responsibility in terms

1    of his own personal life -- his own personal finances to

2    others.  It's not a good excuse, and it's not an excuse that

3    solves the issue.  But thirteen years later when this art

4    transaction arose for the first time, I'm advised by counsel

5    who were present at the time, that's the first time that

6    Mr. Weiss recognized that he hasn't even been repaid in full

7    by Cooperman; so uninvolved was he in the details -- the nuts

8    and bolts.

9           It's not an excuse.  He's a co-conspirator.  He's

10   responsible for everything that anyone else does and he's

11   part of the plan.  So, I don't offer it as a defense.  But, I

12   do ask you, when you are imposing sentence, do you have

13   someone who's sitting in his office and trying to determine

14   how can I act more criminally, or with more criminal

15   arrogance?  And I say with great respect, the answer is no.

16          And that's the only reason we had to respond to what

17   the government said.  If they had simply laid it out and not

18   suggested that it demonstrated criminal arrogance, I think we

19   would have taken it on the chin like we took it from

20   Department of Probation.

21          We didn't object to the calculation, even though we

22   don't necessarily agree with every factual representation.

23   And you know, sir, and I know, sir, that no witness -- I

24   don't care whether it's David Bershad or Steve Schulman --

25   has perfect recollection of conversations that are not

1    reduced to writing, that happened years prior thereto.  And

2    everyone's spin -- and I'm glad we haven't mentioned

3    Intermediary A's name, because when you read that 302 of

4    Intermediary A, who's supposed to be one of the best criminal

5    defense lawyers in Denver, Colorado, if we had an evidentiary

6    hearing, I would cross-examine him for free, your Honor,

7    because he was dancing as fast as he could.

8         THE COURT:  Well, I -- I quite frankly don't know

9    why he didn't end up in an indictment.

10        MR. BRAFMAN:  Well, you know, so at least you agree

11   with me on that issue.  The spin he has given to the

12   government is, how can I relate my conversation with

13   Mr. Weiss that hurts Mr. Weiss, but saves me from criminal

14   indictment?  And he doesn't do it.

15        THE COURT:  It was absurd.

16        MR. BRAFMAN:  Yes.  But that's the point, Judge.

17   His recitation of facts is absurd, and therefore, if you rely

18   on that recitation to -- to punish Mr. Weiss more severely

19   than you otherwise might punish him under these same

20   circumstances, I just don't think it would be fair.  Because

21   what you're getting is an explanation from people with vested

22   interests who are looking to recollect what they think

23   happened, and then putting it in a way that makes it look

24   best from their own perspective.

25        THE COURT:  That's always the way when we have

1  witnesses who are cooperating with the government, that they

2  want -- they obviously have an obligation to tell the truth,

3  but they also try to spin their testimony in a way that will

4  curry favor with the government, we all know that.

5      MR. BRAFMAN:  But with this witness it takes it a

6  step beyond.

7      THE COURT:  This witness -- I must have read that --

8  what is it, a memo of interview at least three times.  At

9  first I couldn't understand it.

10      MR. BRAFMAN:  Well, that's why I submitted it, your

11  Honor, because when I read it, I didn't understand it either.

12  But what pained me in there is, if he's the best criminal

13  defense lawyer in Colorado, then there's something wrong with

14  their bar.

15      If he is, then what he should have said is look, I'm

16  a criminal defense lawyer.  If this is a criminal

17  investigation, I'm researching this, I'm coming up with

18  excuses and ways out for himself.  And Mr. Weiss is sitting

19  there listening to someone who he believes is an expert in

20  the field -- and I know what Mr. Axel's going to say when he

21  gets up, because he said it in his reply that was the last

22  document filed with the Court -- Mr. Weiss is the expert in

23  class actions, not the Intermediary A.  That begs the

24  question.

25      The one criminal law expert in that room between the

1    two of them was Intermediary A, and he should have advised,

2    if you will, Mr. Weiss at least to understand that you're

3    dancing on the head of a pin here, I don't want anything to

4    do with it.  But, be --

5            THE COURT:  Why he would go to that meeting in the

6    first place is beyond me.

7            MR. BRAFMAN:  Well -- but, Judge, that's the problem

8    with this case.  When we are standing here years later and

9    you're looking at a three -- 302 -- I'm sorry, an M.O.I.,

10   where someone is talking to an agent and an agent is taking

11   not verbatim transcript, but the agent's notes, and I think

12   the agents have been very careful, but nevertheless, this

13   witness has been even more careful.

14           And I don't want to dwell on it.  I think I've said

15   all that I think I can say as a responsible lawyer on either

16   of these two issues without one, getting the Court angry, and

17   two, without making things worse.  I just thought they needed

18   some explanation.  And I hope that this explanation has been

19   helpful.

20           What I -- what I want to do, Judge, before I sit

21   down, is really talk about what I -- what I was hoping would

22   be the principal focus of this hearing, and which I'd like to

23   get us back to.

24           Your Honor, a Court -- a Court has the right to

25   consider a defendant's extraordinary charitable, civic, and

1    public interest work when deciding a sentence, and had that

2    right even when the guidelines were mandatory.  And as we

3    make clear in our submission under 5H1.11 of the guidelines,

4    while ordinary acts of charity, ordinary acts of philanthropy

5    are not to be considered by a court, there have been a number

6    of very, very important decisions following -- that follow

7    that guideline implementation that have said when -- as in

8    this case, I submit -- the acts of kindness, the acts of

9    charity, the public interest work is truly spectacular or

10   extraordinary, or as in this case, perhaps some of the most

11   breathtaking work that any District Court has been presented

12   with -- you would have the right, even when the guidelines

13   were mandatory, to downwardly depart from the guidelines that

14   would be mandatory.  Certainly, sir, now that the guidelines

15   are only advisory, you don't even have to depart if you

16   choose not to.

17         You can use this, as Judge Rakoff said, under 3553

18   as among the characteristics of a defendant that you look to

19   in determining who is -- who is the person who is about to be

20   sentenced.  And I think, your Honor, what is -- is of

21   interest here -- what is of interest here is the array of

22   work that we have presented you with.  And this is not a case

23   of someone who gets in trouble and then 20 minutes afterwards

24   decides to give a check to a foundation.

25         This is charity that went through a lifetime.  And,

1    it's not just giving money.  Because as the Court in *Serafini*

2    in the Third Circuit made clear, when a court is confronted

3    with someone who gives of his time and his energy and his

4    life, it's more impressive than a wealthy person simply

5    writing a check.

6         And when you go through the array of public service

7    that Mr. Weiss has involved himself in, you go through the

8    array of charitable work, the pro bono work, when you --

9    whether it's the Holocaust litigation or the assistance

10   provided to victims of the 9/11 terrorist, whether it's

11   representing children in Nigeria who were used at victims,

12   whether it's representing people in Glen Avon, California who

13   were the victims of toxic waste case, whether it's

14   establishing a loan re-payment program at NYU law school that

15   has enabled hundreds of graduating lawyers to have their

16   loans -- their law school tuition loans forgiven so that they

17   could go into public interest work.

18        He's done a great deal of very, very good work.

19   He's done a great deal of very, very good work that has

20   impacted on the quality of lives of tens of thousands of

21   citizens throughout the world.  And you cannot, and I ask you

22   not to simply say yes, but there's a serious crime, so that

23   doesn't count.  It has to count.

24        And I believe, sir, that when you're in the case of

25   someone who is 73 years old -- or going to be 73 next

1    month -- I think you have to recognize that what you have

2    before you is not just a finite period for six months or a

3    year when someone joined the Peace Corps, or someone had

4    military service, or someone worked for a school zoning

5    board.  You have a 50-year track record, and it's one more

6    impressive letter after the next.

7         Your Honor, I could have filled this building.  I

8    discouraged two hundred people who wanted to come here to

9    show their support.  I said look, the Judge has read your

10   letters.  We appreciate this.  Please don't come.  It's

11   not -- we don't think it's appropriate to do that.

12        So, Mr. Weiss is here with his family intact.

13   That's a factor a court looks at.  Married for almost

14   50 years.  Three grown children who are productive citizens.

15   Grandchildren who are all good citizens.

16        Your Honor, he's a good man.  And a good man can do

17   a bad thing.  And you often have to sentence bad men who have

18   done bad things, and there's a whole different set of factors

19   that this Court looks at.  There's no recidivist issue here.

20   He's going to be disbarred.  For someone like Mel Weiss to

21   end his career disbarred, it breaks my heart to even say it,

22   Judge, because when I grew up in this profession, he was a

23   legend of the bar.  He's one of the legal giants in the bar.

24        Even in the work that brings him before this Court

25   where plaintiffs were unfortunately paid, the quality of the

1  legal work has really never been questioned by a

2  legitimate -- any legitimate authority.  And the quality of

3  the work he imposed on others who he mentored, people who

4  wrote to your Honor about how they went into charitable work

5  because of Mr. Weiss.  How they saw in Mr. Weiss a father or

6  a grandfather.  And the letters run -- run the gamut.

7       You have him endowing an organization with

8  substantial funds, and you have him taking on the case of a

9  doorman who got swindled and gets him his money back.  Or a

10  co-worker who gets fired unfairly and Mr. Weiss goes to bat

11  for him and he gets his pension back.

12       There are people who are living productive lives

13  today because Mel Weiss stepped up to the plate and helped

14  them and got nothing in the return other than the

15  satisfaction of knowing that he did something good.  And who

16  got nothing in return, other than what I hope today is

17  something in return.

18       I think at some point before you meet the ultimate

19  authority that I think all of us ultimately meet, at some

20  point, Judge, I think a man in your position, on this day --

21  and I want to describe this day in a -- in words attributed

22  to Mr. Weiss, but indirectly come to you through his

23  letter -- the letter to your Honor from his son Steven Weiss,

24  who says, and I quote, and it's really remarkable, "My father

25  told me, he says, 'What is for me a day of my professional

1    life, is most often for my client their life's greatest

2    trauma.'"

3            So, I'm in the well of this courtroom, and I will

4    leave here, I think, regardless of the sentence your Honor

5    imposes, sad, because I think this is a sad day for those of

6    us who I think on balance Mr. Weiss is a terrific man, and

7    who don't condone the criminal conduct by any means, but

8    nevertheless, look at the balance of who it is before you,

9    and say on the one hand we have a criminal conduct.  We

10   understand it.  On the other hand, we have someone who has

11   led really a magnificent life.

12           I want to make a couple of other observations before

13   I sit down, your Honor.

14           First of all, Mr. Weiss in his own letter and in a

15   moment in his own brief statement, will explain to you as he

16   has so eloquently in his own letter, how filled with remorse

17   and shame and how sincere his remorse is.  And I don't think

18   we need to dwell on that, but I do think what -- I do need to

19   dwell on just for a moment is the issue of sentence

20   disparity.  And I -- I've made this argument in writing, and

21   to me, even though it's my argument, it seems to me that the

22   strongest argument that I can make, and for one that I hope

23   there is no real response.  In the sentencing of Mr. Lerach,

24   the government urged your Honor to conclude that a 24-month

25   sentence of imprisonment was sufficient.  That it adequately

UNITED STATES DISTRICT COURT

1    addressed the seriousness of the offense and was no greater

2    than necessary to impart respect for the law.  So, you meet

3    the 3553 factors.

4         And in the case of Mr. Weiss, they say you've got to

5    impose a more severe sentence because of the recent conduct

6    and the obstruction.

7         And I have responded, and I say again, very -- as

8    clear as I'm capable of, when you give a 24-month sentence --

9    if you were to conclude that that's appropriate -- to a

10   73-year-old man, that is a much more severe sentence than the

11   same sentence imposed on a 61-year-old man.  Mr. Weiss is

12   twelve years older than Mr. Lerach.

13        So, even if you were to conclude, sir, that because

14   of the recent conduct or the obstructionist conduct that

15   Mr. Weiss should receive a more severe sentence, I say two

16   things to you, sir.  One, if you give him the same sentence,

17   it's much more severe in the case of Mr. Weiss, because he

18   will start that sentence at age 73 -- and we don't have to do

19   an actuarial, you know, analysis for all of us to understand

20   that as you get older, one's own mortality begins to surround

21   you.  And as you start a prison sentence at 73, that's much

22   more difficult for many ways -- the stress, the humiliation,

23   the indignity, the hardship, the embarrassment, the hard work

24   that you're going to have to do in a federal prison when

25   you're 73.  It's much more difficult to do that sentence than

1   you are when you're 61 and you are healthier and stronger and

2   better able to deal with what you confront in the prison,

3   even in the minimum security camp, which I'm going to ask the

4   Court, obviously, to recommend if a sentence of incarceration

5   is imposed.

6          So, I want to ask you, sir, I get what Mr. Axel is

7   going to say.  You know, one of the things we try and do as

8   good lawyers is take the sting out of the argument that's

9   going to hit you in the forehead.  I know he's going to stand

10  up there in a very -- as a very talented advocate, say in

11  words or substance you have to give him a bigger sentence,

12  because otherwise the interest of justice will be

13  dramatically negatively affected.

14         I don't accept that for one minute, sir.  I do not

15  believe that the interest of justice will be hurt one iota if

16  what the Court does is, as you've been asked to do, and you

17  temper justice with mercy.  On the one hand you explain the

18  seriousness of the offense, you laud the defendant for a

19  remarkable life, and you then take the factor into the

20  equation his age and you not impose a sentence that would be

21  greater than necessary, and clearly a sentence beyond that

22  which is imposed on Mr. Lerach would be greater than

23  necessary.

24         There are two letters that I want to close on, your

25  Honor.  And, you know, I've never had a sentencing memorandum

1    where a retired federal judge -- and in this case two -- have

2    offered to write a letter.  Most judges, in their discretion,

3    think, you know what, I just on balance would not like to get

4    involved, even though I think very highly of Mr. Weiss.  Two

5    retired federal judges with impeccable credentials and

6    extraordinary reputations came to us.  We didn't go to them.

7    They said look, this is a special man.  This is a special

8    case.  I'm not going to defend the conduct.  I think the

9    conduct is wrong, and I obviously condemn it.  And if I were

10   a judge, I would look obviously very unkindly on this

11   conduct.  And Mr. Weiss has disappointed me.  And I

12   understand that the Judge is going to have to deal with that

13   conduct and deal with it in a serious way.

14          However, both of them -- former Judge Stanley

15   Sporkin, who also worked as Chief of Enforcement for the SEC,

16   and Judge Nicholas Politan of the District Court in Newark,

17   both of them have written to the Court, and both of them have

18   asked your Honor to examine the entire defendant.  And both

19   of them have experience in sentencing many, many people in

20   their own courtrooms.  And I think their words are

21   particularly important because what they end with, and what

22   they focus on is not the facts of the case.  They focus on

23   who he is and what he's done that is good.  And then Judge

24   Sporkin asks your Honor to note that at age 72, his remaining

25   productive years may not be that many.

1        So, I ask you, through Judge Sporkin, to recognize

2    that at age 73 -- which is next month -- Mr. Weiss is going

3    to face difficulty, even if he remains healthy and even if he

4    lives to serve the sentence.  But it's a hard sentence for

5    someone that age, even if it's less than 33 months.

6        And Judge Nicholas Politan as I think, you know,

7    those of us who know of him and the manner in which he

8    conducts himself with great respect in this courtroom, he --

9    he gets right down to the heart of this.  He says, "At this

10    age" -- because Judge Politan is 73 -- he says, "At this age"

11    and I quote, "every month, every week, and every day is

12    precious."

13        I'm on my hands and knees begging you for months.

14    I'm not asking -- I have too much respect for this case and

15    the -- I understand what's involved, and I have too much

16    respect for myself as an advocate to be here and ask you not

17    to sentence Mr. Weiss to prison.  I would love it if you did,

18    Judge, I would be the second, I think, happiest person in the

19    courtroom.  But I'm not asking you for that.  I'm asking you

20    for months.  I'm asking you to give him back just some months

21    for all that he has given.  And I think it's a fair trade.

22        I think it's something that the Court would never

23    have to be troubled by, and I think it would be the

24    appropriate thing.  I think a sentence that sends a message

25    that if you violate the law, even at age 73, you're going to

1    get punished.  You're going to get disbarred.  You're going

2    to pay $10 million.  And you're going to serve time in a

3    federal prison, even at 73, and even in a nonviolent white

4    collar criminal case.  But, if it's Mr. Weiss, you have spent

5    50 years helping the world become a better place for ordinary

6    citizens, that counts, too.  That counts, too.

7          And I think that's a very good message for a

8    sentencing court to give on the date of sentence in a case

9    where people are watching.  Because nobody, not the

10   government, nobody can take away the legacy that Mr. Weiss

11   will leave his family.  There's a bad part, but there's also

12   a very, very good part.

13         And when I speak to his children, I speak to his

14   grandchildren, and you read these letters, there is a part

15   that is terrible, but there's also a large part that is very,

16   very impressive.  And I'm asking you, Judge, from the bottom

17   of my heart, to give him credit -- just a little bit of

18   credit, for the 50 years of goodness that he has given to

19   society, to the legal profession, to the world, to

20   universities and hospitals and ordinary citizens who have

21   benefitted from his kindness.

22         You will never, probably, your Honor, if you sit for

23   another 20 years, sentence someone who's going to come to you

24   with as breathtaking array of public service as Mr. Weiss,

25   because you can only find a handful of these people in the

UNITED STATES DISTRICT COURT

1    world.  And the odds of them becoming involved in criminal

2    conduct and having to be sentenced are obviously, you know,

3    strongly against that happening.

4           So, this is a terrible case.  This is a terrible

5    day.  And I ask you, sir, to give us just a measure of -- of

6    kindness and a measure back of the compassion that he has

7    given to so many.

8           Thank you for your patience, your Honor.

9           THE COURT:  All right.  Does your client wish to be

10   heard?

11          MR. BRAFMAN:  Yes, he does, your Honor.

12          THE DEFENDANT:  Your Honor, I stand before you very

13   humbly.  I want to apologize to my family, to my professional

14   colleagues, and the people within the organization that I

15   built over the last 45 years, some of whom have been with me

16   for 35 years, and to the courts for my wrongful conduct.

17          As I have written to your Honor, my remorse and

18   contrition for my violations of my oath as a lawyer are

19   beyond my ability to adequately express.  I promise you that

20   my contrition is profound and genuine.

21          In judging me and the way I have spent my life, I

22   can only ask that you look at me not only as the confessed

23   wrongdoer that brought me here, but also through the eyes of

24   the hundreds of people who have written to you on my behalf.

25          My punishment has already been great.  Being unable

1    to practice law again has ended both my life's passion and my

2    ability to earn a living as a professional.  My fall from

3    grace has greatly impaired my ability to work as a public

4    servant and humanitarian, which has always been a part of my

5    life.

6            I can only hope that your Honor gives me the

7    opportunity in the remainder of my life to make amends by

8    using the experience and skills I developed during almost

9    50 years of practice of law as a teacher, as a mentor, and as

10   an enabler to those in need to help them live better lives.

11           I thank you for hearing me, your Honor.

12           THE COURT:  Mr. Axel.

13           MR. AXEL:  Thank you, your Honor.

14           First, I too, would like to comment on the

15   defendant's sentencing submission and the letters.  I too

16   haven't seen anything like it.  Certainly nobody can dispute

17   that there's a lot of good in this defendant, Mr. Weiss, and

18   that is deserving of recognition and deserving of being taken

19   into account here today.

20           However, your Honor, as we have pointed out in our

21   papers, there is a lot that also, when added to the mix,

22   fully supports the sentence that we are asking here for

23   today, the 33 months.

24           The Court has already talked at length about the

25   seriousness of the offense and I won't belabor that point

1    here.  Obviously it was a conspiracy that lasted a long time,

2    decades.  This defendant was right in the thick of the

3    conspiracy, and he knew full well the scope of it, the fact

4    that it involved hundreds of lawsuits, and just how

5    detrimental it was to the administration of justice in those

6    cases.

7              I'd like to focus here today on -- as the defense

8    has, on the defendant's history and characteristics, but to

9    focus on the time period for the last seven years, during

10   which he has been under investigation.  During all that time

11   he has known that the facts that the government was

12   investigating were true.  He has known the full scope of his

13   conduct.  He has known that he was guilty of the offenses

14   that were being investigated.  And he has known that by

15   virtue of his position in the firm, the firm was also guilty

16   of those offenses through well-established principles of

17   vicarious liability.  And looking at his actions during that

18   time period also speak to his history and characteristics,

19   and also should be factored into the mix here today.

20             We've laid out in our papers, of course, that during

21   that time he continues the conduct -- very egregious conduct,

22   over a million dollars to Howard Vogel.  We've also laid out

23   that he has obstructed justice in connection with the -- with

24   the Cooperman facts.

25             Additionally, your Honor, it's significant that

1    during that seven years he had opportunity upon opportunity

2    to come in to accept responsibility and to do the right

3    thing, and instead he hid behind the firm.  He continued his

4    control over the firm.  He denied the allegations.  He caused

5    the firm to deny the allegations, and in the process he put

6    the firm in the firing line in order to avoid personal

7    responsibility for his own actions.  And he did that in a --

8    early on when it was just Cooperman.

9           The reason I would submit, your Honor, that he got

10   involved with Vogel is because the government had no idea and

11   he didn't think the government investigation was going

12   anywhere.  But be that as it may, he had the opportunity

13   then.  He wouldn't have been 72 now, he would have been 65,

14   66 and he would have had a lot to say for accepting

15   responsibility.

16          He didn't come in at the time of the Lazar

17   indictment when the firm was named pseudonymously in the

18   indictment.  He didn't come forward when the firm itself was

19   indicted, when his partners were indicted, and even when his

20   partner of some 35 years, David Bershad, decides to come in

21   and plead guilty and cooperate, he didn't come in then.  And

22   I think that that failure to do that during a long period of

23   time also speaks to his history and characteristics, and the

24   consequences that his actions inflicted on the firm also

25   speaks to that as well.

1          THE COURT:  Well, I don't understand your argument

2     with respect to hiding behind the firm.  What's your point?

3          MR. AXEL:  Your Honor, he -- he was the one who knew

4     -- he and his conspiring partners.  He -- he didn't step

5     down.  He didn't allow the firm to -- to independently gather

6     and assess the facts.  He didn't allow the firm to do the

7     right thing for its own interests.  He continued his control

8     over the firm when he knew that he was guilty and therefore

9     the firm was vicariously liable.

10         THE COURT:  The firm had separate counsel.  The firm

11    was represented by that separate counsel.  That separate

12    counsel was advising the law firm with respect to their

13    exposure in the case, and -- I mean, basically what you're

14    saying, as soon as you started serving the grand jury

15    subpoenas in 2002, Bershad, Schulman, and Mr. Weiss should

16    have run into the government and said we did it, and we're

17    here to accept responsibility.  I mean, that's just not in

18    the real world the way it works.

19         MR. AXEL:  I understand, your Honor, and that's --

20         THE COURT:  The government conducted a seven-year

21    investigation.  And during the course of that seven years,

22    there were certain benchmarks in that investigation as any

23    criminal investigation where individuals have to step back,

24    based upon the facts that the government has developed,

25    confer with their lawyers, and reassess their position, and

1    whether or not they should be taking a position that's

2    different from the position that they have taken before.

3        I just don't see how -- and certainly Mr. Weiss was

4    late in the game in accepting responsibility, and it wasn't

5    until after Mr. Bershad and Mr. Schulman entered into plea

6    agreements with the government, that Partner A in the

7    indictment, that the government had brought, ended up to

8    be -- to be Mr. Weiss.

9        I don't see that Mr. Weiss can be -- could be

10   punished for his -- his unwillingness to come running into

11   the government saying that here I am.  He obviously had

12   counsel who was advising him and he made his decision.

13   Certainly now he has accepted responsibility.  And the fact

14   that he made the government's investigation more difficult,

15   that's the government's job.

16       MR. AXEL:  No, your Honor.  I -- certainly, that's

17   correct, and I don't mean to suggest that his -- that his

18   acceptance is not today sincere, nor do I suggest that at the

19   beginning of the investigation he had any sort of obligation

20   or he should be punished for not running in.

21       The point I'm trying to make, your Honor, is it was

22   a long investigation and there were many stages along the way

23   where he could have done the right thing and in the process

24   deflected -- deflected some of the punishment that was

25   inflicted on the firm.  And I don't mean to excuse either the

1    conduct of the firm in the process because they obviously

2    bear responsibility too, but my point is that this defendant

3    controlled the firm.

4         You've seen the partnership agreement he and the

5    other co -- conspiring partners, who then departed when they

6    were indicted had absolute control over the firm, and by

7    continuing -- my point is that by denying responsibility, by

8    causing the firm to deny responsibility when he controlled

9    the firm, knowing that the denials were false, he put the

10   firm in the line of fire as well.  And my point is that when

11   you're assessing the sort of -- the overall picture of what

12   sort of life he's led, I just submit, your Honor, that his

13   conduct during the investigation also is -- is -- should be

14   taken into account in assessing his history and

15   characteristics.

16        THE COURT:  Well, but he was -- he was -- he was

17   doing what most targets or subjects of the grand jury

18   investigation do, they wait and see how the case unfolds, and

19   how the case plays out, and whether the government is going

20   to choose to ask the grand jury to return an indictment.  I

21   just don't see where you're going with your argument.

22        MR. AXEL:  Again, your Honor, it's just he -- yes, I

23   understand they wait to see where it's going, but there was

24   more than footsteps for a long time.  2005, the indictment of

25   Lazar.  2006, the indictment of the firm and the partners.

1    2007, the time that Bershad comes in.  There were many

2    opportunities for him to come in sooner and put an end to it

3    and in the process, try to -- you know, try to save the firm.

4        THE COURT:  Well, by the same token, the government

5    could have -- could have asked the grand jury to return an

6    indictment against Mr. Weiss early on, and then he would have

7    been put to the test at that point in time, because now he's

8    included as a -- as a named defendant.

9        Being named as a criminal defendant in an indictment

10   has, in my experience, a tendency to change one's views in

11   terms of whether or not they ought to continue to maintain

12   that position.

13       MR. AXEL:  Yes, your Honor.  I agree with that.  And

14   in this case it did.  It took the indictment, and frankly the

15   Court's comments I believe at Lerach's sentencing, for him to

16   fully appreciate what it was that he was facing.  And then he

17   did come in, and he was very ably represented by his counsel

18   in getting him to come in at that point.

19       Your Honor --

20       THE COURT:  It's uncharacteristic.  Mr. Weiss is a

21   fighter.  He has fought all his life on behalf of his -- on

22   behalf of the clients that he's represented.  And, quite

23   frankly, I -- I was -- I was somewhat surprised that

24   Mr. Weiss didn't put the government to its burden of proof in

25   a trial.  I'm -- I think he did the right thing.  He made the

1    right decision.  But being the fighter that he is, as I see

2    from the various letters that I've read, it's -- it certainly

3    is uncharacteristic of him, but I don't think we're punishing

4    him for being a fighter.

5              MR. AXEL:  Your Honor, I don't have anything more,

6    other than what was in the papers.  We do firmly believe that

7    the greater sentence here than the 24 months is appropriate,

8    in light of the conduct that we have cited during the

9    investigation.

10             We do think it's appropriate to take into

11   consideration his age and the significant amount of good that

12   he has done in his life.  And frankly, if it wasn't for those

13   factors -- those mitigating factors, I don't think we would

14   be in this posture with the 33 months low end of the

15   guidelines being the cap under the (c)(1)(C), but the

16   government certainly believes that that is appropriate.  It

17   is the low end of the advisory guidelines, recognizing that

18   they are advisory, and for all of the reasons we have cited

19   in the papers and have been elicited here today, we believe

20   that that is the appropriate sentence in his case, your

21   Honor.

22             THE COURT:  Well, what about Mr. Brafman's argument

23   about the 11-year difference in the age between Mr. Lerach

24   and Mr. Weiss in terms of the sentencing disparity?

25             MR. AXEL:  Your Honor, I don't dispute that that's

1    a -- that that's a relevant factor.  I don't believe it's an

2    overriding factor.

3              THE COURT:  It may not be overriding because, as

4    Mr. Brafman points out, the 3553(a) factors, I've got to

5    consider all of them, but I can certainly give more weight to

6    one than the other.  It seems to me that's a -- that's a very

7    powerful -- powerful argument for an individual who's going

8    to be 73, to go in and start serving a sentence is a lot

9    different than someone who is Mr. Lerach's age to go in and

10   serve.

11             MR. AXEL:  Your Honor, I -- I don't disagree.

12   Again, I mean, it's speculation to know what any sentence is

13   in terms of a portion of somebody's future life.

14             So, certainly if somebody is older, there's more

15   likely they have less to go; but, you know, how much -- I do

16   think we did cite it as a reason -- as factor taken into

17   consideration, and again if it wasn't for the age and the

18   good works that he's done, you know, I think that -- I think

19   that we'd be talking about something higher.  But, he's going

20   to be 73.  You know, the 33 months with the good time credit,

21   I would submit that the most likely result is he gets out

22   with a lot of time left to continue to do good works, and

23   that the 33-month sentence is appropriate.

24             Unless the Court has any further questions, your

25   Honor, I'd submit it.

UNITED STATES DISTRICT COURT

1           THE COURT:  No.  I don't have any questions.

2           Do you want the last word?

3           MR. BRAFMAN:  No.  I think you gave us the last

4    word, and will give us the last word in a moment.  So, I'll

5    defer to you, sir.

6           We're ready for sentence.

7           THE COURT:  It's going to take me a period of time

8    to pronounce the sentence, so if you wish to be seated during

9    that period of time, please be my guest.

10          MR. BRAFMAN:  Thank you, your Honor.

11          THE COURT:  Is there any legal reason why sentence

12   should not be imposed?

13          MR. BRAFMAN:  No, sir.

14          MR. AXEL:  No, your Honor.

15          THE COURT:  All right.  In fashioning the sentence

16   to be imposed in this case, the Court has made an

17   individualized assessment based upon the facts and arguments

18   presented by the parties, and the Court has considered all of

19   the 3553(a) factors and would like to comment on several of

20   those factors.

21          The first factor that the Court has considered is

22   the nature and circumstances of the offense.  Mr. Weiss pled

23   guilty to a one-count information filed on March 20th, 2008,

24   charging him with conspiracy to conduct the affairs of the

25   law firm of Milberg Weiss through a pattern of racketeering

UNITED STATES DISTRICT COURT

1    activity.

2         The racketeering activity admitted to by Mr. Weiss

3    consisted of multiple acts indictable as obstruction of

4    justice.  The obstruction of justice involved corruptly

5    influencing the due administration of justice by making and

6    filing false declarations under oath in lawsuits filed by the

7    Milberg Weiss law firm.

8         With a few notable exceptions that I'll mention in a

9    few moments, the Court's views and conclusions as to the

10   seriousness of the criminal conduct involved in this case

11   have not changed since I sentenced Mr. Weiss' former law

12   partner and co-conspirator, Mr. Lerach.  I remain convinced

13   that Mr. Weiss' conduct and his conspiring partner's criminal

14   conduct is by far one of the most serious crimes that comes

15   before the Court.

16        As I indicated before, the scope and duration of

17   this conspiracy was breathtaking.  It was a national --

18   nationwide conspiracy beginning in the early 1970s and

19   continued for decades.  At its core, it involved an agreement

20   among Mr. Weiss and other senior Milberg Weiss partners to

21   secretly pay kickbacks to various individuals who would act

22   as named plaintiffs in select shareholder actions or class

23   actions filed by Mr. Weiss' law firm.

24        The precise origins of this conspiracy are still not

25   entirely clear to the Court, but it's crystal clear that

1    Mr. Weiss and the other senior partners entered into these

2    secrets payment agreements with paid plaintiffs so that the

3    law firm would be able to secure a reliable source of

4    individuals who were ready and willing to serve as plaintiffs

5    in class action lawsuits that the firm wanted to file.

6        It is admitted by all of the senior partners

7    involved in the conspiracy that these kickbacks allowed

8    Milberg Weiss to file more class action lawsuits and to file

9    these lawsuits more quickly than would be possible absent

10   such arrangements.  Because these kickbacks allowed Milberg

11   Weiss to file class actions more quickly than their

12   competitors, the scheme permitted the law firm to obtain led

13   counsel status and recover millions of dollars in attorneys'

14   fees.

15       As I indicated at Mr. Lerach's sentence, the

16   kickback scheme began modestly with conspiring partners

17   making cash payments to the paid plaintiffs.  Mr. Bershad, a

18   senior partner, was responsible for collecting the cash from

19   Mr. Weiss and the other partners involved in the scheme.  He

20   kept the cash in his safe until it was time to reward the

21   paid plaintiffs in amounts that were typically ten percent of

22   the fees awarded or received by the firm.

23       As the fee awards became more substantial, the cash

24   payments were no longer practical, so in order to avoid

25   detection, the scheme was expanded by adding attorneys who

1    would act as intermediaries between the paid plaintiffs and

2    the law firm.

3         In order to conceal what were becoming substantial

4    kickback payments, the law firm and the intermediary law

5    firms would enter into sham or phony agreements that falsely

6    stated that Milberg Weiss was paying the attorneys a referral

7    fee, were paying for work that had been done on a case when,

8    in fact, no work had been done and no referral had been made.

9         The attorneys who were brought into the scheme and

10   acted as intermediaries were simply fronts for this criminal

11   enterprise, and they were knowingly used to secretly funnel

12   the kickback payments to the law firm's stable of paid

13   plaintiffs.

14        It's clear to the Court that Mr. Weiss, as one of

15   the founding partners of the law firm and who was primarily

16   responsible for the development of the firm's class action

17   practice, was one of the key players, if not one of the chief

18   architects of this fraudulent scheme.  Mr. Weiss exercised

19   substantial control over the management and conduct of the

20   law firm's business affairs, and at one point he had a

21   39 percent partnership interest in the firm.

22        As he admitted in his plea agreement, prior to

23   January of 1999, Mr. Weiss was the original managing partner

24   and he possessed the authority to veto any proposed action or

25   decision affecting the operations or management of his law

1    firm.

2           Later he was the co-chair of the executive

3    committee, and thereafter he was given the authority to veto

4    any action or decision affecting the Milberg Weiss law firm.

5    Rather than exercise his veto power to stop or put an end to

6    this scheme, the scheme was vigorously promoted and expanded

7    by the conspiring partners.  As a result of these corrupt

8    practices, his law firm flourished and grew to become the

9    premiere class action law firm in the nation.  The law firm

10   became enormously successful and extremely profitable and

11   brought great wealth and prestige to its partners.

12          In his plea agreement, Mr. Weiss admitted that he

13   was directly responsible for the kickback payments made to

14   Mr. Lazar.  He admitted he was aware of the kickback

15   arrangements that existed in the late 1980s between Milberg

16   Weiss and the Florida paid plaintiffs.  He also admitted that

17   he was aware of the kickbacks paid to Mr. Cooperman.  And he

18   admitted that he has personally made one such payment in the

19   amount of $175,000, which was documented by a phony

20   refundable option payment for the purchase of a Picasso

21   painting owned by Cooperman.  The circumstances surrounding

22   this payment are detailed in the government's sentencing

23   memorandum and demonstrate the tremendous efforts resorted to

24   by the conspiring partners to keep this scheme from being

25   discovered.

1       The Court disagrees with those who attempt to

2  rationalize this conspiracy as simply involving attorneys

3  sharing attorneys' fees or paying an occasional referral fee,

4  because the scheme to conceal these kickbacks extended to the

5  many judges who presided over these tainted cases, and the

6  fraud perpetrated on those judges, in my view, is what makes

7  Mr. Weiss' crime extremely serious and requires a prison

8  sentence.

9       The scheme and resulting fraud committed on the

10  court strikes directly at the core or heart of our judicial

11  system and further shakes the confidence of the public in our

12  system of justice.  Because the judges presiding over these

13  cases have a duty or obligation to protect the interest of

14  the absent class members, they require the parties and the

15  attorneys to make various disclosures to allow the Court to

16  make informed decisions on the appointment of lead counsel,

17  the appointment of lead plaintiffs, and to scrutinize the

18  fairness of any settlements, approve payments to class

19  plaintiffs, and award attorneys' fees.

20       In order for our system of justice to work properly,

21  those disclosures must be truthful.  However, in these

22  tainted cases the disclosures were false because the paid

23  plaintiffs, with the knowledge, consent, and counsel of

24  Mr. Weiss and his conspiring partners, made false or

25  misleading statements to the court which were designed to and

1    did effectively conceal the existence of these secret

2    kickbacks, which in turn prevented the courts from carrying

3    out their crucial role in protecting the interest of the

4    absent class members.

5          In fact Mr. Weiss, in his plea colloquy, has

6    admitted that he knew and agreed with one or more of his

7    conspiring partners to the scheme which involved the paid

8    plaintiffs Cooperman, Vogel, Lazar who made false statements

9    to the judges presiding over the cases referred to in his

10   plea agreement.

11         In many of those cases, the paid plaintiffs signed

12   documents prepared by Milberg Weiss attorneys that were

13   submitted to judges stating that they would not accept any

14   payment for serving as a representative party on behalf of

15   the class beyond the plaintiff's pro rata share.   In other

16   words, with the exception of reimbursement for expenses

17   incurred by the plaintiffs, they would be treated the same as

18   the members of the class they represented.

19         Of course these statements made to the various

20   courts were absolutely false.   And Mr. Weiss and his

21   conspiring partners knew they were false because Cooperman,

22   Vogel, and Lazar were all receiving substantially more than

23   the firm's class member clients, because those paid

24   plaintiffs were being rewarded with kickbacks paid by the law

25   firm.

1        The reason why they lied is obvious.  The lies were

2    absolutely crucial to the continued success of this scheme to

3    conceal those payments from the court, because as Mr. Weiss

4    knew and he has admitted, the discovery of these secret

5    payment arrangements would have resulted in the

6    disqualification of the paid plaintiffs from serving as class

7    representatives, would have resulted in the immediate

8    disqualification of the Milberg Weiss law firm from serving

9    as class counsel.  More importantly, the disclosures would

10   have immediately ended the firm's lucrative business, which

11   resulted, according to the government's estimate, in recovery

12   of over $250 million in fees from these tainted cases.

13        That brings me to my final point regarding the

14   seriousness of the crime.  I've heard many argue in an

15   attempt to downplay or minimize the seriousness of the crime,

16   that no one was harmed.  They argue that Milberg Weiss was

17   simply paying a portion of the attorneys' fees they earned in

18   these cases to their paid plaintiffs, and those payments,

19   allegedly, did not affect the amounts received by the absent

20   class members.

21        Mr. Weiss states in his sentencing memorandum and in

22   his letter to the Court that there is no evidence in any case

23   handled by Mr. Weiss or, to his knowledge, any of his

24   colleagues, that the interest of the absent class members

25   were ever subordinated.  Although his statement that there is

1    no such evidence may be true, it misses the point.

2         First, it fails to take into consideration that this

3    kickback scheme effectively deprived many qualified law firms

4    who played by the rules from becoming involved in these cases

5    and earning fees from these cases.

6         Secondly, given the fraudulent and corrupt nature of

7    the scheme and the steps the parties took to conceal this

8    scheme by filing false documents with the courts, it's

9    painfully evident that the greedy paid plaintiffs only care

10   about the amount or size of the kickbacks they would receive.

11   As a result, they were certainly motivated to abandon their

12   fiduciary duties to the absent class members and were

13   conveniently positioned by the lawyers involved in this

14   conspiracy to take actions or make decisions in these cases

15   in order to maximize the award of attorneys' fees, all at the

16   expense of the absent class members.

17        Of course, the argument is that this never happened

18   or couldn't happen because the settlement and award of

19   attorneys' fees were closely examined and had to be approved

20   by the courts.  However, what that argument overlooks or

21   ignores is that the judges who approved these settlements and

22   awarded millions of dollars in fees to Milberg Weiss were

23   lied to and deceived, and were therefore unable to or denied

24   the opportunity to protect the absent class members from any

25   fraud committed by the paid plaintiffs and their attorneys.

1    In effect, the absent class members were at the mercy of the

2    unscrupulous paid plaintiffs and their corrupt attorneys, and

3    their invidious scheme effectively foreclosed any meaningful

4    judicial scrutiny of their conduct in those cases.

5         Although Mr. Weiss may be correct, there's no such

6    evidence in the cases he handled, we'll probably never know

7    for sure if or how many of those infected cases were

8    compromised by this conspiracy.  However, I do know that if

9    the conspiracy had been discovered or disclosed, there would

10   have been no approval of the settlements, no payments to the

11   paid plaintiffs, Milberg Weiss would have been immediately

12   removed from these tainted cases and would have been stripped

13   of all fees.  More importantly, their ability to act as lead

14   counsel in future cases would have been severely jeopardized

15   and they would have never earned the millions of dollars in

16   fees that the government seeks to forfeit.

17        So, in the Court's view, this case is about much

18   more than attorneys simply sharing attorneys' fees or paying

19   a referral fee, and therefore a substantial prison sentence

20   is required.

21        The next factor that the Court has considered is the

22   history and characteristics of the defendant.  I agree with

23   counsel's observation regarding the compelling nature of the

24   letters submitted on Mr. Weiss' behalf.  They are not only

25   overwhelming in number, but very compelling in their

1    substance.  I have never seen such an outpouring of emotion,

2    love, respect, and support by so many people from so many

3    walks of life.  The letters are from adversaries, from past

4    and present members of the judiciary, from very powerful and

5    influential people, from former clients such as Holocaust

6    victims, Stringfellow victims, the many employees of his law

7    firm that Mr. Weiss personally nurtured, mentored, and helped

8    both emotionally and financially.  From his family, but more

9    importantly from just regular people like Mr. Sheehy.  All of

10   the letters unequivocally attest to the life of an

11   extraordinary man.

12            From humble beginnings, Mr. Weiss learned the value

13   of hard work and that work ethic was the foundation of his

14   legal career.

15            His list of cases is extraordinary, from the

16   Holocaust litigation where he was primarily responsible for

17   the recovery of $6.25 billion for Holocaust victims and their

18   families, to his fight for a group of ordinary citizens who

19   were victims of corporate pollution in what became known as

20   the Stringfellow acid pits litigation, to his representation

21   of individuals like Mr. Sheehy who he represented free of

22   charge in a lawsuit to recover his life savings that was lost

23   in an investment scheme.

24            There's also no question that Mr. Weiss' charity and

25   civic work have been extensive.  The Court agrees with

1   counsel that the nature, extent, and quality of Mr. Weiss'

2   charitable contributions are very important sentencing

3   factors, and the Court does recognize and has considered not

4   only his financial contributions, but more importantly the

5   time that he has contributed to the many charitable

6   organizations that he's been involved in during the last

7   50 years.

8         There is also no question that Mr. Weiss'

9   incarceration will have a tremendous impact on his family,

10  especially his wife of 50 years, and his daughter who has

11  needed and will continue to need her father's wisdom,

12  guidance, and emotional support.  His incarceration will also

13  undoubtedly have a devastating effect on his elderly

14  97-year-old mother who now must be told about Mr. Weiss'

15  conviction.

16        Mr. Weiss, who will soon be 73 years old, not only

17  faces a prison sentence, but disbarment, which will prevent

18  him from ever again practicing in the legal profession that

19  he has devoted his entire life to.  Instead of retiring with

20  the well-deserved recognition for his exceptional

21  accomplishments and his exceptional talents as an attorney,

22  his conviction in this case has effectively destroyed his

23  personal legacy, and in the last several years he has been

24  forced to watch his law firm deteriorate as a result of the

25  government's investigation.

1        There's no doubt that Mr. Weiss' loss of his license

2   to practice law, the damage his conviction has caused to his

3   law firm, his personal embarrassment and disgrace, and the

4   loss of respect from colleagues, family, and friends

5   resulting from his conviction, constitute a significant

6   punishment that will probably hurt more than the loss of his

7   liberty.

8        I've carefully read Mr. Weiss' letter and although

9   it expresses remorse, it doesn't answer the question of how

10  someone with such brilliance, and who contends that he has

11  respect for our system of justice, and who states in his

12  letter that he firmly believes -- and I'm quoting -- that,

13  "adherence to the rule of law has always been what

14  distinguishes the United States from the rest of the world,"

15  could totally abandon that belief and participate in a crime

16  such as this.

17       It's unimaginable how an attorney of Mr. Weiss'

18  statute and ability could violate his sacred oath as an

19  attorney and officer of the court, and participate in the

20  filing of false documents in courts throughout our justice

21  system, knowing that those false documents would be relied on

22  by judges presiding over those cases.

23       Although the record of Mr. Weiss' good works is

24  extensive, it's difficult to reconcile his life of good

25  works, not only with the seriousness of the criminal conduct

1    in this case, but also with the fact that he was involved in

2    this criminal conspiracy for over 20 years.  At the same time

3    he was contributing to charities and performing good works

4    reflected in the hundreds of letters received by the Court,

5    he and his co-conspirators were systematically lying and

6    deceiving judges in courtrooms across the country in hundreds

7    of cases filed by his law firm.  There's no question or doubt

8    that he knew his conduct was wrong, as the scheme expanded

9    and the fees and kickbacks became more substantial, he also

10   realized that the price of getting caught was substantial and

11   not one that he was willing to pay.

12          As I stated in sentencing Mr. Lerach, there's

13   nothing presented by Mr. Lerach, nor has there been anything

14   presented by Mr. Weiss -- and I doubt there will be anything

15   presented by any of the conspiring partners that I'm going to

16   sentence -- that convinces me or even suggests that these

17   defendants would have ended their conspiracy if Congress had

18   not enacted sweeping class action reforms which attempted to

19   change the way plaintiffs' securities bar did business and

20   eliminate the race to the courthouse.

21          Mr. Weiss and his co-conspirators had ample

22   opportunity, after they enjoyed enormous personal and

23   financial success, to voluntarily end their corrupt business

24   practice, but chose not to do so until Congress, and more

25   importantly, the government's investigation of this case by

1    three dedicated prosecutors left them with no choice.

2            I've taken into consideration the fact that

3    Mr. Weiss has accepted responsibility and now appreciates the

4    seriousness of his conduct and has demonstrated remorse in

5    his letter, and I take Mr. Weiss at his word when he says

6    that his remorse is unequivocal.

7            I've also taken into consideration the kinds of

8    sentences available and recognize the fact that the parties'

9    plea agreement allows me to impose or substitute home

10   detention for a portion of the prison sentence that will be

11   imposed by the Court.

12           I've also considered the advisory guideline range,

13   which was calculated at 33 to 41 months and find that this

14   range does adequately take into consideration the specific

15   facts and circumstances of this case.

16           I've also taken into consideration any unwarranted

17   sentencing disparity and wish to comment or elaborate on this

18   factor as it relates to Mr. Lerach's 24-month sentence, which

19   was the maximum sentence the that Court could impose based on

20   the parties' plea agreement in this case.  Although

21   Mr. Weiss' counsel urges the Court to impose a sentence of

22   less than 24 months, he also argues that in the event the

23   Court disagrees, the Court should not impose a sentence

24   greater than the 24-month sentence imposed on Mr. Lerach.

25   Mr. Brafman makes a very persuasive argument that 24 months

1    should be the maximum sentence based on the 11-year

2    difference in age between Mr. Lerach and Mr. Weiss.  However,

3    the Court concludes there are two distinct differences that

4    must be kept in mind in sentencing.  We've discussed those

5    this morning.

6         First, unlike Lerach, who appears to have attempted

7    to withdraw or at least did not engage in conduct in

8    furtherance of the conspiracy after becoming aware of the

9    government's criminal investigation, Mr. Weiss did not do so.

10   And we've discussed the information with respect to the

11   negotiation with Mr. Vogel and intermediary number A.

12        Secondly, it's clear that, unlike Mr. Lerach,

13   Mr. Weiss obstructed the government's investigation by first

14   concealing from the grand jury, and then causing his defense

15   attorney to make false statements to the United States

16   Attorneys office concerning what the government viewed as a

17   crucial piece of evidence, which corroborated Mr. Cooperman's

18   information directly linking Mr. Weiss to Mr. Cooperman via

19   the phony art option.  The history of those events and the

20   specific misrepresentations are memorialized in a written

21   stipulation, which was signed by Mr. Weiss on August 20th,

22   2007, and attached to the government's memorandum as

23   Exhibit A.

24        In my view, those two acts distinguish Mr. Weiss'

25   conduct from Mr. Lerach.  I don't agree that they demonstrate

1    utter arrogance, but I do question Mr. Weiss' participation

2    in those acts.  And as counsel has indicated, he really

3    doesn't dispute the facts of both the obstruction and the

4    meeting with Intermediary A.  And, as I said, perhaps such

5    conduct was to be expected from a man that is known as a

6    fighter.  But, however we characterize such conduct, the

7    conduct was wrong.  Moreover, it's difficult to show a great

8    deal of compassion or leniency to an individual who chooses

9    to commit acts in furtherance of his criminal conspiracy

10   after the government began its investigation.

11         Finally, the statute directs me to impose a sentence

12   sufficient, but not greater than necessary to comply with the

13   purposes of sentencing, and instructs me to consider the need

14   for the sentence imposed.

15         First, to protect the public from further crimes of

16   the defendant.  I've considered this need, and I'm confident

17   defendant will not commit additional crimes.

18         Second, to provide the defendant with needed

19   treatment, which is designed to rehabilitate the defendant.

20   I'm also confident there's no such need in this case.

21         Third, to provide adequate deterrence to criminal

22   conduct.  This is an important factor or goal in this case,

23   and the sentence must and will send the message to those that

24   are considering committing similar crimes, that if they get

25   caught, they will face a prison sentence.

1    Finally, there is a need for the -- for retribution,

2    which requires the sentence to reflect the seriousness of the

3    offense, to promote respect for the law, and to provide just

4    punishment for the offense.  In white collar cases, this need

5    or factor stands out as one of the most important, yet most

6    difficult for the Court to apply.

7    In this case, the Court's task or burden in

8    considering this factor is simplified because the parties

9    have agreed to a sentencing range of 18 to 33 months in their

10   plea agreement.  Although the nature and duration of

11   Mr. Weiss' criminal conduct in this case has given me serious

12   reservations about accepting the plea agreement, the Court

13   realizes the agreement was negotiated by very experienced

14   prosecutors who have conducted an extensive investigation and

15   by Mr. Brafman, who is a very experienced attorney.

16   The Court has considered the plea agreement and

17   notes that the parties have openly discussed the manner in

18   which they approach sentencing issues in this case, and I

19   cannot ignore or disregard that there were disputes and

20   issues which were ultimately compromised in a reasonable

21   manner.  Accordingly, I accept the parties' plea agreement

22   and will be bound by its terms.

23   In conclusion, I am aware that I have dwelled at

24   great length on the nature of the offense and the other

25   factors set forth in 3553(a), however I have done so fully

1    recognizing that justice is due this defendant in imposing

2    sentence, but in also fully recognizing that justice is owed

3    to society for which I am charged with the responsibility to

4    speak in imposing sentence.

5         I concur in the observations of the two former

6    federal judges who acknowledge in their letters to the Court

7    how difficult sentencing can be.  In my view, there's no more

8    important but difficult duty entrusted to a judge than in

9    depriving an individual of his liberty.  It's an enormous

10   responsibility, and I've taken this responsibility very

11   seriously in fashioning the following sentence.

12        It is hereby ordered that the defendant shall pay to

13   the United States a special assessment of $100, which is due

14   immediately.

15        It is ordered that the defendant shall pay to the

16   United States a total fine of $250,000, which shall bear

17   interest as provided by law.  The fine shall be paid in full

18   within seven days of sentencing.

19        Pursuant to 28 U.S.C. Section 2461(c), 18 United

20   States Code Section 981(a)(1)(A) and (C), and 18 United

21   States Code Section 1963, the defendant shall forfeit to the

22   United States the amount of $9,750,000.  The forfeited amount

23   shall be paid to the United States in the following manner.

24        1.  Within seven calendar days of sentencing, the

25   defendant shall pay to the United States the amount of

1    $5 million by electronic fund transfer.

2         2.  Within 180 days of sentencing, the defendant

3    shall pay to the United States the remaining $4,750,000 by

4    electronic fund transfer.

5         Both transfers of funds shall be made to the Federal

6    Reserve Bank of New York, pursuant to the terms of the plea

7    agreement.  The Court will sign the final order of forfeiture

8    submitted by the parties.

9         Pursuant to the Sentencing Reform Act of 1984, it is

10   the judgment of the Court that the defendant is hereby

11   committed on Count 1 of the Fourth Superseding Information to

12   the custody of the Bureau of Prisons to be imprisoned for a

13   term of 30 months.  Upon release from imprisonment, the

14   defendant shall be placed on supervised release for a term of

15   three years under the following terms and conditions:

16        1.  The defendant shall comply with the rules and

17   regulations of the U.S. Probation Office in General Order

18   318.

19        2.  During the period of community supervision, the

20   defendant shall pay the special assessment, fine, and

21   forfeited amount, to the extent such obligations were not

22   satisfied prior to the commencement of the term of supervised

23   release.

24        And finally, the defendant shall cooperate in the

25   collection of a DNA sample from the defendant.

 1          It is further ordered that the defendant surrender

 2     himself to the institution designated by the Bureau of

 3     Prisons on or before 12 noon on July 8th --

 4          MR. BRAFMAN:  Your Honor?  I'm sorry.

 5          THE COURT:  Yes.

 6          MR. BRAFMAN:  We have consent of the government,

 7     subject to your Honor's approval, on a surrender date of

 8     August 28th for personal reasons having to do with family

 9     members.

10          THE COURT:  All right.  So, the Court's order will

11     be that the defendant shall surrender himself to the

12     institution designated by the Bureau of Prisons on or before

13     12 noon on August 28th.  In absence of such designation, the

14     defendant shall report on or before the same date and time to

15     the United States Marshal located in the D'Amato U.S.

16     Courthouse in New York.

17          MR. BRAFMAN:  Your Honor --

18          THE COURT:  Mr. Weiss, under your plea agreement

19     with the government, you might have waived most of your right

20     to appeal this sentence and your plea agreement will govern

21     this issue.  However, if you retain the right to appeal and

22     you wish to appeal this sentence, you must file a Notice of

23     Appeal within ten days of today or you will lose your right

24     to appeal.

25          MR. BRAFMAN:  Your Honor, can I ask the Court for

1    two issues.  That bail be continued on the terms presently

2    set until the surrender date, I think that's with the consent

3    of the government.

4            MR. AXEL:  No objection, your Honor.

5            THE COURT:  I will so order.

6            MR. BRAFMAN:  And, your Honor, with respect to --

7    can we ask for a judicial recommendation that Mr. Weiss be

8    permitted to serve his sentence at the Federal Minimum

9    Security Prison Camp in Morgantown, West Virginia?

10           THE COURT:  Morgantown?

11           MR. BRAFMAN:  West Virginia, minimum security camp.

12           THE COURT:  Yes, the Court -- I will make that

13   recommendation.

14           MR. BRAFMAN:  And, your Honor, it's my understanding

15   that if he is designated there, he could surrender directly

16   to the institution.

17           THE COURT:  Yes.

18           MR. BRAFMAN:  And, your Honor, finally, on

19   surrender, so that we don't have to come back cross-country,

20   if the Court could enter an order exonerating bail?

21           THE COURT:  Yes.  Upon Mr. Weiss' surrender to

22   either the Marshal or the institution on August 28th, 2008,

23   bond will be exonerated.

24           MR. BRAFMAN:  Thank you, sir.

25           MR. AXEL:  Your Honor, I have nothing with respect

UNITED STATES DISTRICT COURT

1    to the sentencing.  The Court just commented on the diligence

2    of the prosecutors.  I just wanted to take the opportunity to

3    say that really the credit of the case is due to the Postal

4    Inspector Katherine Budig here at the table and the rest of

5    the Postal Inspection service team in the audience.  I wish

6    to offer them the thanks of the government for their work.

7          THE COURT:  All right.  Anything else?

8          MR. BRAFMAN:  Nothing.  Thank you, sir.

9          THE COURT:  All right.

10         MR. AXEL:  Your Honor, I'm sorry.  I believe the

11    underlying -- the Second Superseding Indictment, as to the

12    defendant, we would move to dismiss those counts pursuant to

13    the plea agreement.

14         THE COURT:  All right.  That motion will be granted.

15         MR. BRAFMAN:  Thank you, your Honor.

16         MR. AXEL:  Thank you.

17         (Whereupon the matter concluded at 11:42 a.m.)

18                  --o0o--

19

20

21

22

23

24

25

1         *CERTIFICATE OF OFFICIAL REPORTER*

2

3    *COUNTY OF LOS ANGELES      )*
                              *)*
4    *STATE OF CALIFORNIA       )*

5               *I, VICTORIA L. VALINE, FEDERAL OFFICIAL*

6    *REALTIME COURT REPORTER, REGISTERED MERIT REPORTER, IN AND*

7    *FOR THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT*

8    *OF CALIFORNIA, DO HEREBY CERTIFY THAT PURSUANT TO SECTION*

9    *753, TITLE 28, UNITED STATES CODE THAT THE FOREGOING IS A*

10   *TRUE AND CORRECT TRANSCRIPT OF THE STENOGRAPHICALLY REPORTED*

11   *PROCEEDINGS HELD IN THE ABOVE-ENTITLED MATTER AND THAT THE*

12   *TRANSCRIPT PAGE FORMAT IS IN CONFORMANCE WITH THE REGULATIONS*

13   *OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.*

14

15   *DATE:   June 4, 2008*

16

17

18   _____

19   *VICTORIA L. VALINE, CSR No. 3036, RMR, CRR*

20   *FEDERAL OFFICIAL COURT REPORTER*

21

22

23

24

25

UNITED STATES DISTRICT COURT

## $

**$10** [1] - 42:2
**$100** [2] - 7:16; 71:13
**$175,000** [2] - 25:25; 57:19
**$250** [1] - 60:12
**$250,000** [2] - 7:14; 71:16
**$4,750,000** [1] - 72:3
**$6.25** [1] - 63:17
**$9,750,000** [2] - 7:17; 71:22

## '

**'What** [1] - 36:25

## 1

**1** [7] - 4:12; 7:5; 8:22; 22:8; 71:24; 72:11, 16
**10:00** [1] - 3:2
**11(c)1)(C** [1] - 7:8
**11-year** [1] - 51:23; 68:1
**115** [2] - 5:1, 10
**116** [2] - 5:1, 10
**117** [1] - 5:3
**11:42** [1] - 75:17
**12** [2] - 73:3, 13
**14** [1] - 6:11
**15** [1] - 13:20
**15th** [1] - 26:2
**18** [6] - 7:11; 11:9; 13:20; 70:9; 71:19
**18-month** [1] - 14:2
**180** [1] - 72:2
**1963** [1] - 71:21
**1970s** [1] - 54:18
**1980s** [1] - 57:15
**1984** [1] - 72:9
**1990** [1] - 26:2
**1991** [1] - 18:23
**1999** [1] - 56:23
**1B1.4** [2] - 11:9; 13:4

## 2

**2** [3] - 3:1; 72:2, 19
**20** [7] - 7:4; 8:9, 22; 28:21; 33:23; 42:23; 66:2
**2002** [2] - 15:9; 47:15
**2003** [7] - 15:5; 18:2, 9; 23:14; 25:2; 26:25
**2005** [2] - 27:12; 49:24
**2006** [1] - 49:25
**2007** [3] - 27:23; 50:1; 68:22
**2008** [5] - 3:1; 4:11, 13; 53:23; 74:22
**20th** [2] - 53:23; 68:21
**21** [1] - 13:20
**23** [1] - 6:25
**23rd** [2] - 4:11, 13
**24** [5] - 13:20; 14:13; 51:7; 67:22, 25
**24-month** [5] - 14:2; 37:24; 38:8; 67:18, 24
**2461(c** [1] - 71:19
**275** [1] - 10:6

## 28

**28** [1] - 71:18
**28th** [2] - 73:8, 13; 74:22
**2J1.2(b)(3** [1] - 6:18

## 3

**3** [1] - 22:21
**30** [2] - 28:21; 72:13
**302** [2] - 30:3; 32:9
**318** [1] - 72:18
**33** [9] - 7:5, 12; 8:23; 41:5; 44:23; 51:14; 62:20; 67:13; 70:9
**33-month** [2] - 14:3; 52:23
**35** [4] - 4:1; 9:18; 43:16; 46:20
**3553** [4] - 11:7; 13:2; 33:17; 38:3
**3553(a** [4] - 5:17; 52:4; 53:19; 70:25
**3661** [1] - 11:9
**39** [1] - 56:21

## 4

**4** [3] - 3:4; 4:12; 22:8
**41** [3] - 7:6; 8:23; 67:13
**45** [1] - 43:15

## 5

**5** [1] - 72:1
**50** [8] - 9:9; 13:10; 35:14; 42:5, 18; 44:9; 64:7, 10
**50-year** [1] - 35:5
**513** [1] - 11:21
**52** [1] - 8:9
**56** [1] - 8:9
**5H1.11** [1] - 33:3

## 6

**61** [1] - 39:1
**61-year-old** [1] - 38:11
**62** [1] - 6:15
**63** [1] - 6:20
**64** [1] - 6:22
**65** [1] - 46:13
**66** [1] - 46:14
**68** [1] - 6:24

## 7

**72** [2] - 40:24; 46:13
**73** [13] - 9:20; 34:25; 38:18, 21, 25; 41:2, 10, 25; 42:3; 52:8, 20; 64:16
**73-year-old** [1] - 38:10

## 8

**8th** [1] - 73:3

## 9

**9/11** [1] - 34:10

## 97-year-old
**97-year-old** [1] - 64:19
**981(a)(1)(A** [1] - 71:20

## A

**A's** [1] - 30:3
**a.m** [1] - 75:17
**A.M** [1] - 3:2
**abandon** [2] - 61:11; 65:15
**ability** [5] - 43:19; 44:2; 62:13; 65:18
**able** [5] - 14:5; 17:9; 20:15; 39:2; 55:3
**ably** [1] - 50:17
**absence** [1] - 73:13
**absent** [9] - 55:9; 58:14; 59:4; 60:19, 24; 61:12, 16, 24; 62:1
**absolute** [1] - 49:6
**absolutely** [3] - 13:24; 59:20; 60:2
**absurd** [2] - 30:15, 17
**accept** [7] - 7:23; 12:25; 39:14; 46:2; 47:17; 59:13; 70:21
**acceptance** [2] - 7:2; 48:18
**accepted** [2] - 48:13; 67:3
**accepting** [3] - 46:14; 48:4; 70:12
**accomplish** [1] - 9:3
**accomplished** [1] - 11:10
**accomplishments** [1] - 64:21
**according** [2] - 23:18; 60:11
**Accordingly** [4] - 7:2; 8:13, 20; 70:21
**account** [2] - 44:19; 49:14
**accounting** [1] - 26:21
**accurate** [1] - 26:11
**accurately** [1] - 12:6
**accused** [1] - 19:24
**acid** [1] - 63:20
**acknowledge** [2] - 17:15; 71:6
**acknowledged** [2] - 12:12; 25:24
**Act** [3] - 5:19; 9:1; 72:9
**act** [5] - 27:9; 29:14; 54:21; 56:1; 62:13
**acted** [1] - 56:10
**action** [8] - 21:4; 55:5, 8; 56:16, 24; 57:4, 9; 66:18
**actions** [8] - 31:23; 45:17; 46:7, 24; 54:22; 55:11; 61:14
**active** [3] - 27:4; 28:11, 21
**activity** [3] - 16:14; 54:1
**acts** [5] - 33:4, 8; 54:3; 68:24; 69:2, 9
**actuarial** [1] - 38:19
**add** [2] - 10:24; 23:1
**added** [2] - 6:17; 44:21
**addendum** [3] - 4:5, 8; 6:6
**adding** [1] - 55:25
**addition** [6] - 4:13; 5:17; 6:17; 11:7; 14:7; 20:5; 69:17
**additional** [2] - 6:23; 69:17
**Additionally** [1] - 45:25
**address** [1] - 27:16

## Addressed
**addressed** [1] - 38:1
**Adelson** [2] - 11:18, 21
**adequate** [2] - 14:13; 69:21
**adequately** [3] - 37:25; 43:19; 67:14
**adherence** [1] - 65:13
**adjusted** [1] - 6:25
**adjustment** [2] - 6:14, 21
**administration** [3] - 6:14; 45:5; 54:5
**admitted** [10] - 43:19; 54:2; 55:6; 56:22; 57:12, 14, 16, 18; 59:6; 60:4
**adversaries** [1] - 63:3
**advice** [1] - 15:21
**advised** [4] - 8:10; 11:9; 29:4; 32:1
**advising** [2] - 47:12; 48:12
**advisory** [13] - 5:15, 22; 6:5, 9; 7:5; 8:22, 24; 13:4; 33:15; 51:17; 67:12
**advocate** [2] - 39:10; 41:16
**affairs** [2] - 53:24; 56:20
**affect** [3] - 17:20; 24:11; 60:19
**affected** [1] - 39:13
**affecting** [2] - 56:25; 57:4
**afterwards** [1] - 33:23
**age** [15] - 9:20; 13:24; 38:18; 39:20; 40:24; 41:2, 5, 10, 25; 51:11, 23; 52:9, 17; 68:2
**agent** [3] - 27:12; 32:10
**agent's** [1] - 32:11
**agents** [1] - 32:12
**ago** [2] - 13:16; 15:14
**agree** [8] - 15:10; 17:22; 22:13; 29:22; 30:10; 50:13; 62:22; 68:25
**agreed** [3] - 7:9; 59:6; 70:9
**agreement** [23] - 6:4, 8; 7:8, 16, 19-20; 12:25; 49:4; 54:19; 56:22; 57:12; 59:10; 67:9, 20; 70:10, 12-13, 16, 21; 72:7; 73:18, 20; 75:13
**agreements** [3] - 48:6; 55:2; 56:5
**agrees** [1] - 63:25
**ahead** [1] - 12:3
**aisle** [1] - 9:17
**allegations** [1] - 46:4
**allegedly** [1] - 60:19
**allow** [4] - 7:10; 47:5; 58:15
**allowed** [2] - 55:7, 10
**allows** [2] - 21:7; 67:9
**almost** [4] - 9:18; 20:21; 35:13; 44:8
**amends** [1] - 44:7
**America** [1] - 3:5
**amount** [8] - 19:11; 51:11; 57:19; 61:10; 71:22, 25; 72:21
**amounts** [2] - 55:21; 60:19
**ample** [1] - 66:21
**analysis** [1] - 38:19
**ANGELES** [1] - 3:1
**angry** [1] - 32:16
**answer** [4] - 20:15; 29:15; 65:9
**apart** [1] - 11:10
**apologize** [1] - 43:13
**appeal** [4] - 73:20-22, 24

## Appeal
**Appeal** [1] - 73:23
**appear** [2] - 8:13
**appearance** [1] - 3:6
**applicable** [5] - 5:22; 7:20
**application** [4] - 4:18; 5:7; 25:18
**applied** [1] - 7:1
**applies** [1] - 26:12
**apply** [2] - 6:2; 70:6
**appointment** [2] - 58:16
**appreciate** [3] - 10:23; 35:10; 50:16
**appreciates** [1] - 67:3
**approach** [1] - 70:18
**approached** [1] - 27:23
**appropriate** [15] - 7:10; 9:13; 12:23; 13:5; 25:8; 28:4; 35:11; 38:9; 41:24; 51:7, 10, 16, 20; 52:23
**approval** [2] - 62:10; 73:7
**approve** [1] - 58:18
**approved** [2] - 61:19, 21
**arbitrary** [1] - 13:18
**architects** [1] - 56:18
**arguable** [1] - 23:14
**arguably** [1] - 23:22
**argue** [4] - 27:21; 28:3; 60:14, 16
**argues** [2] - 14:17; 67:22
**argument** [19] - 6:3; 14:20; 16:3; 18:15; 20:8; 21:7; 25:5, 17; 37:20-22; 39:8; 47:1; 49:21; 51:22; 52:7; 61:17, 20; 67:25
**arguments** [4] - 9:12; 10:14; 19:16; 53:17
**arose** [1] - 29:4
**arrangements** [3] - 55:10; 57:15; 60:5
**array** [5] - 10:18; 33:21; 34:6, 8; 42:24
**arrived** [1] - 24:7
**arrogance** [8] - 14:18; 19:22; 20:16; 23:24; 29:15, 18; 69:1
**art** [7] - 18:11; 25:23; 26:4; 27:14, 24; 29:3; 68:19
**aside** [1] - 28:12
**assess** [1] - 47:6
**assessed** [1] - 11:23
**assessing** [2] - 49:11, 14
**assessment** [4] - 7:16; 53:17; 71:13; 72:20
**assistance** [1] - 34:9
**Assistant** [2] - 3:9; 26:25
**assistant** [1] - 14:11
**attached** [4] - 5:7; 10:7; 26:3; 68:22
**attempt** [3] - 16:8; 58:1; 60:15
**attempted** [2] - 66:18; 68:6
**attention** [3] - 8:12; 10:10; 26:6
**attest** [1] - 63:10
**Attorney** [1] - 27:1
**attorney** [8] - 18:14; 19:6, 8; 64:21; 65:17, 19; 68:15; 70:15
**Attorney's** [2] - 18:11; 27:2
**attorneys** [9] - 55:25; 56:6, 9; 58:2, 15; 59:12; 61:25; 62:2, 18
**Attorneys** [2] - 3:9; 68:16

attorneys [7] - 55:13; 58:3, 19; 60:17; 61:15, 19; 62:18
attributable [1] - 8:8
attributed [1] - 36:21
audience [1] - 75:5
August [5] - 18:9; 68:21; 73:8, 13; 74:22
authority [4] - 36:2, 19; 56:24; 57:3
available [1] - 67:8
avoid [2] - 46:6; 55:24
Avon [1] - 34:12
award [3] - 58:19; 61:15, 18
awarded [4] - 24:7; 55:22; 61:22
awards [1] - 55:23
aware [6] - 9:7; 20:3; 57:14, 17; 68:8; 70:23
awhile [1] - 19:15
AXEL [22] - 3:7, 21, 25; 4:23; 8:5, 19; 9:7; 18:6; 44:13; 47:3, 19; 48:16; 49:22; 50:13; 51:5, 25; 52:11; 53:14; 74:4, 25; 75:10, 16
Axel [3] - 3:7; 8:18; 9:5; 14:16; 27:23; 39:6; 44:12
Axel's [1] - 31:20

**B**

bad [5] - 23:24; 35:17; 42:11
bail [2] - 74:1, 20
balance [5] - 11:25; 25:19; 37:6, 8; 40:3
Bank [1] - 72:6
bar [4] - 31:14; 35:23; 66:19
base [2] - 6:11
based [7] - 6:6; 18:12, 17; 47:24; 53:17; 67:19; 68:1
basis [3] - 5:4; 18:7; 21:20
bat [1] - 36:10
bear [2] - 49:2; 71:16
became [5] - 16:22; 55:23; 57:10; 63:19; 66:9
become [2] - 42:5; 57:8
becoming [4] - 43:1; 56:3; 61:4; 68:8
beg [1] - 12:19
began [2] - 55:16; 69:10
begging [1] - 41:13
begin [3] - 9:13; 10:13; 11:12
beginning [3] - 28:17; 48:19; 54:18
beginnings [1] - 63:12
begins [1] - 38:20
begs [1] - 31:23
behalf [10] - 3:8; 19:6; 22:9; 23:20; 28:22; 43:24; 50:21; 59:14; 62:24
behind [2] - 46:3; 47:2
belabor [1] - 44:22, 5
belief [2] - 15:14; 65:15
believes [3] - 31:19; 51:16; 65:12
belong [1] - 24:1
bench [1] - 10:22
benchmarks [1] - 47:22
beneficiary [1] - 11:6
benefit [3] - 17:6; 19:19; 23:25

benefitted [7] - 42:2; 43:14, 23; 58:3, 19; 7:3; 34:22
Benjamin [1] - 3:11
Bershad [20] - 15:5, 12, 18, 21; 17:18; 18:25; 20:23; 21:5, 21; 24:9, 17; 26:18, 22; 29:24; 46:20; 47:15; 48:5; 50:1; 55:17
best [3] - 30:4, 24; 31:12
better [3] - 39:2; 42:5; 44:10
between [8] - 12:11; 13:15; 21:9; 31:25; 51:23; 56:1; 57:15; 68:2
beyond [7] - 14:6; 23:13; 31:6; 32:6; 39:21; 43:19; 59:15
bigger [1] - 39:11
billion [1] - 63:17
bit [1] - 42:17
board [1] - 35:5
bolts [2] - 28:24; 29:8
bond [1] - 74:23
bono [2] - 34:22; 34:8
bothering [1] - 26:5
bottom [1] - 42:16
bound [2] - 6:4; 70:22
BRAFMAN [45] - 3:11, 20; 4:2, 6; 5:5, 11; 8:2, 17; 9:15; 10:23; 14:24; 15:2; 16:24; 17:13; 18:2; 19:14; 20:10, 14; 22:5, 14, 17, 19; 23:1, 6; 26:16; 30:10, 16; 31:5, 10; 32:7; 43:11; 53:3, 10, 13; 73:4, 6, 17, 25; 74:6, 11, 14, 18, 24; 75:8, 15
Brafman [6] - 3:12; 7:25; 8:7; 52:4; 67:25; 70:15
Brafman's [1] - 51:22
breadth [2] - 11:1, 17
breaks [1] - 35:21
breathtaking [4] - 10:18; 33:11; 42:24; 54:17
bridge [1] - 23:13
brief [5] - 10:21; 14:23; 16:8; 17:10; 37:15
briefly [1] - 16:24
brilliance [1] - 65:10
bring [2] - 8:11; 13:14
bringing [1] - 26:5
brings [3] - 35:24; 60:13
brought [6] - 18:22, 24; 43:23; 48:7; 56:9; 57:11
Brown [1] - 3:13
BROWN [1] - 3:22
Budig [2] - 3:10; 75:4
building [1] - 35:7
built [1] - 43:15
burden [2] - 50:24; 70:7
Bureau [3] - 72:12; 73:2, 12
burn [1] - 25:13
burning [1] - 28:6
business [6] - 23:25; 28:19; 56:20; 60:10; 66:19, 23

**C**

c)(1)(C [1] - 51:15
calculate [2] - 5:22; 8:21
calculated [3] - 6:10; 7:22; 67:13
calculating [2] - 8:15, 24
calculation [1] - 5:24

calculations [2] - 7:21; 8:1
calendar [1] - 71:24
California [1] - 26:25; 34:12
CALIFORNIA [1] - 3:1
camp [3] - 23:20; 39:3; 74:11
Camp [1] - 74:9
cancellation [1] - 19:4
candid [1] - 20:2
candidly [1] - 12:19
cannot [2] - 34:21; 70:19
cap [1] - 51:15
capable [1] - 38:8
care [2] - 29:24; 61:9
career [2] - 35:21; 63:14
careful [2] - 32:12
carefully [2] - 10:15; 65:8
carrying [1] - 59:2
case [67] - 4:17; 6:4; 7:10; 9:14; 11:18, 20; 12:23; 13:22; 14:14; 15:7, 16; 16:9; 17:2, 4, 8; 19:9; 20:20, 22, 25; 23:15, 19; 24:1-4, 6; 25:16; 28:8, 16; 32:8; 33:8, 10, 22; 34:13, 24; 36:8; 38:4, 17; 40:1, 8, 22; 41:14; 42:4, 8; 43:4; 47:13; 49:18; 50:14; 51:20; 53:16; 54:10; 56:7; 60:22; 62:17; 64:22; 66:1, 25; 67:15, 20; 69:20, 22; 70:7, 11, 18; 75:3
cases [24] - 13:3; 28:20; 45:6; 58:5, 13, 22; 59:9, 11; 60:12, 18; 61:4, 14; 62:4, 6-7, 12, 14; 63:15; 65:22; 66:7; 70:4
cash [4] - 55:17, 20, 23
category [2] - 7:4; 8:22
caught [2] - 66:10; 69:25
caused [2] - 46:4; 65:2
causing [2] - 49:8; 68:14
cautioned [1] - 15:22
certain [6] - 4:19; 8:7; 17:17; 19:16; 27:12; 47:22
Certainly [1] - 24:17; 33:14; 44:16; 48:13
certainly [11] - 16:18; 17:10; 19:3; 26:14; 48:3, 16; 51:2, 16; 52:5, 14; 61:11
chair [1] - 57:2
challenge [1] - 8:11
change [2] - 50:10; 66:19
changed [1] - 54:11
characteristics [6] - 33:18; 45:8, 18; 46:23; 49:15; 62:22
characterization [2] - 15:11; 19:21
characterize [1] - 69:6
charge [1] - 63:22
charged [2] - 11:11; 71:3
charging [1] - 53:24
charitable [5] - 32:25; 34:8; 36:4; 64:2, 5
charities [1] - 66:3
charity [4] - 33:4, 9, 25; 63:24
check [3] - 25:25; 33:24; 34:5
chief [1] - 56:17
Chief [1] - 27:2; 40:15
children [3] - 34:11;

chin [1] - 29:19
choice [2] - 17:4; 67:1
choose [2] - 33:16; 49:20
chooses [1] - 69:8
chose [2] - 14:19; 66:24
Circuit [1] - 34:2
circumstances [5] - 18:18; 30:20; 53:22; 57:21; 67:15
cite [1] - 52:16
cited [2] - 51:8, 18
citizens [6] - 34:21; 35:14; 42:6, 20; 63:18
civic [2] - 32:25; 63:25
claim [2] - 24:18; 25:10
class [22] - 31:23; 54:22; 55:5, 8, 11; 56:16; 57:9; 58:14, 18; 59:4, 15, 18, 23; 60:6, 9, 20, 24; 61:12, 16, 24; 62:1; 66:18
classic [2] - 16:6; 23:22
clean [1] - 24:24
clean-cut [1] - 24:24
clear [11] - 16:25; 18:21; 23:7; 25:6; 33:3; 34:2; 38:8; 54:25; 56:14; 68:12
clearly [2] - 6:2; 39:21
CLERK [1] - 3:4
client [4] - 20:1; 22:10; 37:1; 43:9
clients [3] - 50:22; 59:23; 63:5
climate [1] - 19:1
close [1] - 39:24
closely [1] - 61:19
cloudy [1] - 23:11
co [7] - 29:9; 36:10; 49:5; 54:12; 57:2; 66:5, 21
co-chair [1] - 57:2
co-conspirator [2] - 29:9; 54:12
co-conspirators [2] - 66:5, 21
co-worker [1] - 36:10
Code [1] - 71:20
collar [2] - 42:4; 70:4
colleagues [3] - 43:14; 60:24; 65:4
collecting [1] - 55:18
collection [1] - 72:25
colloquy [2] - 13:15; 59:5
Colorado [2] - 30:5; 31:13
coming [1] - 31:17
commenced [1] - 19:2
commencement [1] - 72:22
comment [3] - 44:14; 53:19; 67:17
commented [1] - 75:1
comments [2] - 21:23; 50:15
commission [1] - 6:1
commit [2] - 69:9, 17
committed [1] - 58:9; 61:25; 72:11
committee [1] - 57:3
committing [1] - 69:24
community [2] - 7:13; 72:19
compassion [4] - 13:10; 43:6; 69:8
compelling [3] - 21:7; 62:23, 25
competitors [1] - 55:12

completely [1] - 26:11
comply [3] - 5:19; 69:12; 72:16
compromised [2] - 62:8; 70:20
conceal [5] - 56:3; 58:4; 59:1; 60:3; 61:7
concealing [1] - 68:14
concentrate [1] - 10:10
concept [1] - 16:18
concerning [1] - 68:16
concerns [1] - 16:21
conclude [3] - 37:24; 38:9, 13
concluded [3] - 12:4; 15:6; 75:17
concludes [1] - 68:3
conclusion [1] - 70:23
conclusions [1] - 54:9
concur [1] - 71:5
condemn [1] - 40:9
conditions [1] - 72:15
condone [1] - 37:7
conduct [48] - 8:8; 9:21; 10:11; 11:11; 12:12, 16-17; 14:15; 16:22; 17:10; 24:15; 25:19; 37:7, 9; 38:5, 14; 40:8, 11, 13; 43:2, 16; 45:13, 21; 49:1, 13; 51:8; 53:24; 54:10, 13-14; 56:19; 62:4; 65:25; 66:8; 67:4; 68:7, 25; 69:5-7, 22; 70:11
conducted [2] - 47:20; 70:14
conducts [1] - 41:8
confer [1] - 47:25
confessed [1] - 43:22
confidence [1] - 58:11
confident [2] - 69:16, 20
confinement [1] - 7:13
confirm [1] - 7:25
confront [1] - 39:2
confronted [1] - 34:2
Congress [2] - 66:17, 24
Congressional [1] - 8:25
connect [1] - 24:21
connection [4] - 6:5; 15:15; 27:19; 45:23
consent [3] - 58:23; 73:6; 74:2
consequences [1] - 46:24
consider [10] - 5:16; 8:25; 11:8; 19:23; 21:8; 24:25; 25:18; 32:25; 52:5; 69:13
consideration [7] - 51:11; 52:17; 61:2; 67:2, 7, 14, 16
considered [11] - 4:8; 11:11, 14; 33:5; 53:18, 21; 62:21; 64:3; 67:12; 69:16; 70:16
considering [1] - 25:9; 69:24; 70:8
consisted [1] - 54:3
conspiracy [18] - 7:18; 18:23; 26:1; 45:1, 3; 53:24; 54:17, 24; 55:7; 58:2; 61:14; 62:8; 66:2, 17; 68:8; 69:9
conspirator [2] - 29:9; 54:12
conspirators [2] - 66:5, 21
conspiring [10] - 47:4; 49:5; 54:13; 55:16; 57:7, 24; 58:24; 59:7, 21; 66:15

**constitute** [1] - 69:5

**contact** [1] - 20:24
**contain** [1] - 7:19
**contends** [1] - 65:10
**context** [2] - 9:25; 11:23
**continue** [4] - 18:5; 50:11; 52:22; 64:11
**continued** [6] - 16:13; 46:3; 47:7; 54:19; 60:2; 74:1
**continues** [1] - 45:21
**continuing** [2] - 16:18; 49:7
**contributed** [1] - 64:5
**contributing** [1] - 66:3
**contributions** [2] - 64:2, 4
**contrition** [2] - 43:18,20
**control** [4] - 46:4; 47:7; 49:6; 56:19
**controlled** [2] - 49:3, 8
**conveniently** [1] - 61:13
**conversation** [3] - 19:11; 22:21; 30:12
**conversations** [2] - 18:13; 29:25
**convicted** [1] - 10:12
**conviction** [4] - 64:15, 22; 65:2, 5
**convince** [6] - 17:9; 19:18; 21:14; 22:20; 23:2; 24:25
**convinced** [2] - 21:17; 54:12
**convinces** [1] - 66:16
**cooperate** [2] - 46:21; 72:24
**cooperating** [1] - 31:1
**Cooperman** [12] - 25:25; 26:3, 5; 27:7; 29:7; 45:24; 46:8; 57:17, 21; 59:8, 21; 68:18
**Cooperman's** [2] - 25:22; 68:17
**copies** [1] - 27:8
**core** [3] - 14:15; 54:19; 58:10
**corporate** [1] - 63:19
**Corps** [1] - 35:3
**correct** [7] - 4:2, 22; 8:2, 16; 18:1; 48:17; 62:5
**Correct** [1] - 4:23
**corroborated** [1] - 68:17
**corrupt** [4] - 57:7; 61:6; 62:2; 66:23
**corruptly** [1] - 54:4
**Counsel** [1] - 3:6
**counsel** [24] - 3:8, 12; 4:3; 7:7; 8:10; 9:4, 12; 12:21; 21:2; 29:4; 47:10-12; 48:12; 50:17; 55:13; 58:16, 23; 60:9; 62:14; 64:1; 67:21; 69:2
**counsel's** [1] - 62:23
**count** [3] - 34:23; 53:23
**Count** [1] - 72:11
**country** [2] - 66:6; 74:19
**counts** [3] - 42:6; 75:12
**couple** [1] - 37:12
**course** [6] - 16:15; 21:4; 45:20; 47:21; 59:19; 61:17
**court** [11] - 9:5, 9; 28:5; 33:5; 34:2; 35:13; 42:8; 58:10, 25; 60:3; 65:19
**COURT** [60] - 3:15, 23; 4:3, 7, 25; 5:6, 12; 8:3, 6, 18, 20; 9:8, 11; 10:20;

12:4, 23; 16:4; 17:14, 17, 23; 18:3, 9; 20:8, 11; 21:16; 22:13, 15, 18, 20; 23:5; 26:14; 30:8, 15, 25; 31:7; 32:5; 43:9; 44:12; 47:1, 10, 20; 49:16; 50:4, 20; 51:22; 52:3; 53:1, 7, 11, 15; 73:5, 10, 18; 74:5, 10, 12, 17, 21; 75:7, 9, 14
**Court** [95] - 3:16; 4:7, 10, 13, 18; 5:9, 12, 16, 20-21, 23, 25; 6:3; 7:12, 23; 8:12, 14, 20, 25; 9:4; 10:1, 4, 6, 9, 15, 17; 11:3, 8-9, 15, 18; 12:3, 10, 19, 22, 24; 13:4, 6, 8, 18; 14:6, 17:9; 18:8; 19:18; 23:23; 24:25; 25:8; 28:3; 31:22; 32:16, 24; 33:11; 34:1; 35:19, 24; 39:4, 16; 40:16; 41:22; 54:15, 25; 56:14; 58:1, 15; 60:22; 62:21; 63:25; 64:3; 66:4; 67:11, 19, 21, 23; 68:3; 70:6, 12, 16; 71:6; 72:7, 10; 73:25; 74:12, 20; 75:1
**Court's** [7] - 16:11; 18:8; 50:15; 54:9; 62:17; 70:7; 73:10
**courthouse** [1] - 66:20
**Courthouse** [1] - 73:16
**courtroom** [8] - 9:17, 20; 10:2; 12:9; 14:11; 37:3; 41:8, 19
**courtrooms** [2] - 40:20; 66:6
**courts** [6] - 43:16; 59:2, 20; 61:8, 20; 65:20
**CR-05-587-(E)-JFW** [1] - 3:4
**credentials** [1] - 40:5
**credit** [5] - 11:22; 42:17; 52:20; 75:3
**crime** [5] - 12:11; 13:1; 34:22; 58:7; 60:14; 65:15
**crimes** [4] - 54:14; 69:15, 17, 24
**Criminal** [1] - 27:2
**criminal** [42] - 7:4; 8:22; 9:21, 25; 10:11; 12:12, 16-17; 14:15, 18; 19:22; 20:16; 22:12; 23:24; 24:15, 19; 27:3, 19; 29:14, 18; 30:4, 13; 31:12, 16, 25; 37:7, 9; 42:4; 43:1; 47:23; 50:9; 54:10, 13; 56:10; 65:25; 66:2; 68:9; 69:9, 21; 70:11
**criminally** [1] - 29:14
**cross** [2] - 30:6; 74:19
**cross-country** [1] - 74:19
**cross-examine** [1] - 30:6
**crucial** [2] - 59:3; 60:2; 68:17
**crystal** [1] - 54:25
**curry** [1] - 31:4
**custody** [1] - 72:12
**cut** [1] - 24:24

---

### D

**D'Amato** [1] - 73:15
**damage** [1] - 65:2
**dancing** [2] - 30:7; 32:3
**date** [5] - 14:11; 42:8; 73:7, 14; 74:2
**dates** [2] - 4:1; 18:1
**daughter** [1] - 64:10

**David** [1] - 29:24; 46:20; 10:11
**days** [7] - 4:1; 9:19; 28:1; 71:18, 24; 72:2; 73:23
**deal** [10] - 5:14; 19:8; 23:19; 27:17; 34:18; 39:2; 40:12; 69:8
**dealing** [1] - 18:20
**dealt** [3] - 19:25; 20:19, 21
**decades** [2] - 45:2; 54:19
**deceived** [1] - 61:23
**deceiving** [1] - 66:6
**decent** [1] - 12:13
**decide** [1] - 13:13
**decided** [1] - 15:5
**decides** [2] - 33:24; 46:20
**deciding** [2] - 23:3; 33:1
**decision** [4] - 48:12; 51:1; 56:25; 57:4
**decisions** [3] - 33:6; 58:16; 61:14
**declaration** [1] - 4:24
**declarations** [1] - 54:6
**dedicated** [1] - 67:1
**deemed** [1] - 13:3
**defend** [2] - 12:16; 40:8
**DEFENDANT** [1] - 43:12
**defendant** [36] - 4:1; 7:4; 9:13; 11:20; 14:7; 25:13; 28:7; 33:18; 39:18; 40:18; 44:17; 45:2; 49:2; 50:8; 62:22; 69:16-19; 71:1, 12, 15, 21, 25; 72:2, 10, 14, 16, 20, 24-25; 73:1, 11, 14; 75:12
**defendant's** [3] - 32:25; 44:15; 45:8
**defendants** [1] - 66:17
**defense** [7] - 12:11; 23:21; 27:3; 29:11; 30:5; 31:13, 16; 45:7; 68:14
**defensible** [1] - 23:22
**defer** [2] - 6:3; 53:5
**deflected** [1] - 48:24
**degree** [2] - 13:19, 21
**delegated** [1] - 28:25
**delete** [1] - 25:14
**demonstrate** [2] - 57:23; 68:25
**demonstrated** [3] - 19:21; 29:18; 67:4
**denials** [1] - 49:9
**denied** [2] - 46:4; 61:23
**Denver** [1] - 30:5
**deny** [2] - 46:5; 49:8
**denying** [1] - 49:7
**depart** [2] - 33:13, 15
**departed** [1] - 49:5
**Department** [2] - 18:6; 29:20
**departures** [1] - 6:2
**depositions** [1] - 24:5
**deprived** [1] - 61:3
**depriving** [1] - 71:9
**describe** [4] - 5:2; 10:18; 11:19; 36:21
**described** [4] - 6:24; 9:22; 12:7; 15:25
**description** [1] - 8:8
**deserved** [1] - 64:20
**deserving** [2] - 44:18
**designated** [2] - 73:2, 12; 74:15
**designation** [1] - 73:13
**designed** [2] - 58:25; 69:19

**Despite** [5] - 4:16, 21; 10:11
**destroy** [1] - 25:15
**destroyed** [1] - 64:22
**detailed** [1] - 57:22
**details** [1] - 29:7
**detection** [1] - 55:25
**detention** [2] - 7:13; 67:10
**deteriorate** [1] - 64:24
**determine** [3] - 5:21, 25; 29:13
**determining** [1] - 33:19
**deterrence** [1] - 69:21
**detrimental** [1] - 45:5
**devastating** [1] - 64:13
**developed** [2] - 44:8; 47:24
**development** [1] - 56:16
**devoted** [2] - 12:14; 64:19
**difference** [2] - 51:23; 68:2
**differences** [1] - 68:3
**different** [5] - 17:18; 22:24; 35:18; 48:2; 52:9
**difficult** [10] - 9:19; 10:2; 38:22, 25; 48:14; 65:24; 69:7; 70:6; 71:7
**difficulty** [3] - 17:8; 41:3
**diligence** [1] - 75:1
**direct** [2] - 11:6; 20:23
**directives** [1] - 5:17
**directly** [7] - 20:21; 24:15, 21; 57:13; 58:10; 68:18; 74:15
**directs** [1] - 69:11
**disagree** [1] - 52:11
**disagrees** [2] - 58:1; 67:23
**disappointed** [1] - 40:11
**disbarment** [1] - 64:17
**disbarred** [3] - 35:20; 42:1
**disclosed** [2] - 3:24; 62:9
**disclosures** [4] - 58:15, 21-22; 60:9
**disconnect** [1] - 12:11
**discouraged** [1] - 35:8
**discovered** [2] - 57:25; 62:9
**discovery** [1] - 60:4
**discretion** [3] - 7:12; 13:5; 40:2
**discuss** [3] - 4:4; 24:5, 14
**discussed** [4] - 6:20; 68:4, 10; 70:17
**discussion** [2] - 13:17; 19:17
**disgrace** [1] - 65:3
**dismiss** [1] - 75:12
**disparity** [3] - 37:20; 51:24; 67:17
**disposition** [1] - 7:10
**dispute** [3] - 44:16; 51:25; 69:3
**disputes** [3] - 5:25; 8:14; 70:19
**disqualification** [2] - 60:6, 8
**disregard** [1] - 70:19
**distinct** [1] - 68:3
**distinction** [2] - 23:12, 14
**distinguish** [1] - 68:24
**distinguishes** [1] -

**District** [5] - 11:14; 25:8; 27:3; 33:11; 40:16
**district** [1] - 28:4
**Division** [1] - 27:2
**DNA** [1] - 72:25
**document** [3] - 26:13; 27:8; 31:22
**documented** [1] - 57:19
**documents** [20] - 18:12, 14; 25:13-15, 20; 26:9, 19, 21, 24; 27:6, 14, 18, 24; 28:7; 59:12; 61:8; 65:20
**dollars** [4] - 45:22; 55:13; 61:22; 62:15
**done** [13] - 9:23; 11:22; 13:25; 34:18; 35:18; 40:23; 48:23; 51:12; 52:18; 56:7; 70:25
**doorman** [1] - 36:9
**doubt** [3] - 65:1; 66:7, 14
**Douglas** [1] - 3:7
**down** [6] - 13:3; 22:8; 32:21; 37:13; 41:9; 47:5
**downplay** [1] - 60:15
**downward** [2] - 15:8; 19:12
**downwardly** [1] - 33:13
**dramatically** [1] - 39:13
**drawer** [1] - 26:19
**drawn** [1] - 23:12
**due** [4] - 54:5; 71:1, 13; 75:3
**dumb** [1] - 19:25
**duration** [2] - 54:16; 70:10
**during** [16] - 16:14; 21:23; 27:10; 44:8; 45:9, 17, 20; 46:1, 22; 47:21; 49:13; 51:8; 53:8; 64:6
**During** [2] - 45:10; 72:19
**duties** [1] - 61:12
**duty** [2] - 58:13; 71:8
**dwell** [3] - 32:14; 37:18
**dwelled** [1] - 70:23

---

### E

**early** [3] - 46:8; 50:6; 54:18
**earn** [1] - 44:2
**earned** [2] - 60:17; 62:15
**earning** [1] - 61:5
**effect** [3] - 21:24; 62:1; 64:13
**effective** [1] - 22:15
**effectively** [4] - 59:1; 61:3; 62:3; 64:22
**effort** [1] - 15:16
**efforts** [2] - 25:22; 57:23
**egregious** [1] - 45:21
**either** [9] - 10:25; 14:18; 27:18, 25; 31:11; 32:15; 48:25; 74:22
**elaborate** [1] - 67:17
**elderly** [1] - 64:13
**electronic** [2] - 72:1, 4
**element** [1] - 25:22
**elicited** [1] - 51:19
**eliminate** [1] - 66:20
**eloquent** [1] - 12:20
**eloquently** [1] - 37:16
**embarrassment** [2] - 38:23; 65:3
**emotion** [1] - 63:1
**emotional** [1] - 64:12

emotionally [1] - 63:

employees [1] - 63:6
enabled [1] - 34:15
enabler [1] - 44:10
enacted [1] - 66:18
end [10] - 19:17; 24:6,3; 30:9; 35:21; 40:21; 50:2; 51:14, 17; 57:5; 66:23
ended [4] - 44:1; 48:7; 60:10; 66:17
endowing [1] - 36:7
energy [1] - 34:3
Enforcement [1] - 40:15
engage [2] - 15:19; 68:7
enhance [1] - 25:9
enhancement [4] - 25:5, 8; 26:12; 28:4
enjoyed [1] - 66:22
enormous [2] - 66:22; 71:9
enormously [1] - 57:10
enter [3] - 5:9; 56:5; 74:20
entered [4] - 4:16; 7:7; 48:5; 55:1
enterprise [1] - 56:11
entertain [1] - 15:18
entice [1] - 25:22
entire [3] - 5:8; 40:18; 64:19
entirely [1] - 54:25
entrusted [1] - 71:8
entry [1] - 5:13
envelope [1] - 17:14
equation [1] - 39:20
especially [1] - 64:10
essentially [1] - 25:7
established [1] - 45:16
establishing [2] - 28:23; 34:14
estimate [1] - 60:11
ethic [1] - 63:13
event [1] - 67:22
events [1] - 67:22
evidence [6] - 16:7; 24:21; 60:22; 61:1; 62:6; 68:17
evident [1] - 61:9
evidentiary [2] - 17:21; 30:5
ex [3] - 4:18; 5:7
exactly [1] - 25:11
examine [2] - 30:6; 40:18
examined [1] - 61:19
exception [1] - 59:16
exceptional [2] - 64:20
exceptions [1] - 54:8
excerpted [1] - 10:8
exclusively [1] - 23:3
excuse [6] - 7:4; 12:17; 29:2, 9; 48:25
excuses [1] - 31:18
executive [1] - 57:2
exemplar [1] - 27:13
exercise [1] - 57:5
exercised [1] - 56:18
exhibit [1] - 26:3
Exhibit [4] - 5:1, 3, 10; 68:23
exhibits [3] - 4:16; 5:1; 10:7
existed [1] - 57:15
existence [1] - 59:1
exonerated [1] - 74:23

exonerating [1] - 74:20
expanded [3] - 55:25; 57:6; 66:8
expected [1] - 69:5
expense [1] - 61:16
expenses [1] - 59:16
experience [4] - 11:17; 40:19; 44:8; 50:10
experienced [2] - 27:3; 70:13, 15
expert [3] - 31:19, 22, 25
expired [1] - 26:4
explain [2] - 37:15; 39:17
explanation [7] - 14:21; 25:11; 27:9; 28:13; 30:21; 32:18
exposure [1] - 47:13
express [1] - 43:19
expresses [1] - 65:9
extended [4] - 13:10; 20:22; 58:4
extensive [1] - 6:19; 63:25; 65:24; 70:14
extent [3] - 25:6; 64:1; 72:21
extraordinary [9] - 9:22; 10:18; 12:7; 14:7; 32:25; 33:10; 40:6; 63:11, 15
extremely [2] - 57:10; 58:7
eye [1] - 22:24
eyes [1] - 43:23

F

face [2] - 41:3; 69:25
faced [1] - 28:5
faces [1] - 64:17
facing [1] - 50:16
fact [10] - 11:2; 16:12; 22:6; 45:3; 48:13; 56:8; 59:5; 66:1; 67:2, 8
factor [11] - 35:13; 39:19; 52:1, 16; 53:21; 62:21; 67:18; 69:22; 70:5, 8
factored [1] - 45:19
factors [10] - 11:7; 35:18; 38:3; 51:13; 52:4; 53:19; 64:3; 70:25
facts [16] - 8:11; 16:5; 17:14, 23; 19:12; 26:2; 30:17; 40:22; 45:11, 24; 47:6, 24; 53:17; 67:15; 69:3
factual [5] - 5:25; 8:6, 14; 21:20; 29:22
fails [1] - 61:2
failure [1] - 46:22
fair [2] - 30:20; 41:21
fairness [1] - 58:18
fall [1] - 44:2
false [11] - 49:9; 54:6; 58:22, 24; 59:8, 20-21; 61:8; 65:20; 68:15
falsely [2] - 18:12; 56:5
families [1] - 45:19
family [8] - 13:25; 35:12; 42:11; 43:13; 63:8; 64:9; 65:4; 73:8
far [2] - 8:6; 54:14
fashioning [2] - 53:15; 71:11
fast [1] - 30:7
father [2] - 36:5, 24
father's [1] - 64:11
favor [1] - 31:4

Federal [5] - 38:24; 40:1, 5; 42:3; 71:6
fee [11] - 15:6; 19:11; 22:3; 8-9, 21; 23:22; 55:23; 56:7; 58:3; 62:19
fees [16] - 24:6, 8; 55:14, 22; 58:3, 19; 60:12, 17; 61:5, 15, 19, 22; 62:13, 16, 18; 66:9
few [2] - 54:8
fiduciary [1] - 61:12
field [1] - 31:20
fight [1] - 63:18
fighter [4] - 50:21; 51:1, 4; 69:6
file [6] - 5:9; 55:5, 8, 11; 73:22
filed [3] - 4:11, 16; 6:4, 7; 16:2; 17:1; 26:19; 31:22; 53:23; 54:6, 23; 66:7
filing [3] - 54:6; 61:8; 65:20
filled [2] - 35:7; 37:16
final [3] - 5:13; 60:13; 72:7
finally [2] - 72:24; 74:18
Finally [3] - 6:22; 69:11; 70:1
finances [1] - 29:1
financial [2] - 64:4; 66:23
financially [1] - 63:8
fine [4] - 7:14; 71:16; 72:20
finish [1] - 23:6
finite [1] - 35:2
fire [1] - 49:10
fired [1] - 36:10
firing [1] - 46:6
firm [52] - 12:21; 19:1; 21:1; 28:19; 45:15; 46:3-6, 17-18, 24; 47:2, 5-6, 8-10, 12; 48:25; 49:1, 3, 6, 8-10, 25; 50:3; 53:25; 54:7, 23; 55:3, 5, 12, 22; 56:2, 4, 15, 21; 57:1, 4, 8-9; 59:25; 60:8; 63:7; 64:24; 65:3; 66:7
firm's [5] - 56:12, 16, 20; 59:23; 60:10
firmly [1] - 51:6; 65:12
firms [2] - 56:5; 61:3
first [8] - 18:19; 27:11; 29:4; 31:9; 32:6; 53:21; 68:13
First [5] - 37:14; 44:14; 61:2; 68:6; 69:15
flag [1] - 19:4
flags [1] - 19:7
Florida [1] - 57:16
flourished [1] - 57:8
flying [1] - 28:21
focus [7] - 23:3; 26:7; 32:22; 40:22; 45:7, 9
follow [1] - 33:6
following [4] - 33:6; 71:11, 23; 72:15
follows [3] - 5:20; 6:12; 8:21
footsteps [1] - 49:24
forced [1] - 64:24
foreclosed [1] - 62:3
forehead [1] - 39:9
forfeit [3] - 7:17; 62:16; 71:21
forfeited [2] - 71:22; 72:21
forfeiture [2] - 5:13; 72:7
forgiven [1] - 34:16
format [1] - 20:18
former [6] - 12:20; 27:1; 40:14; 54:11; 63:5; 71:5

forth [6] - 5:8; 6:13; 21; 16:7; 19:15; 70:25
forward [1] - 46:18
fought [1] - 50:21
foundation [2] - 33:24; 63:13
founding [1] - 56:15
four [1] - 27:6
Fourth [1] - 72:11
frankly [4] - 30:8; 50:14; 23; 51:12
fraud [3] - 58:6, 9; 61:25
fraudulent [2] - 56:18; 61:6
free [2] - 30:6; 63:21
friends [1] - 65:4
fronts [1] - 56:10
full [6] - 21:8; 26:20; 29:6; 45:3, 12; 71:17
fully [4] - 44:22; 50:16; 70:25; 71:2
fund [4] - 20:11; 72:1, 4
fundamentally [1] - 12:13
funds [2] - 36:8; 72:5
funnel [1] - 56:11
furtherance [3] - 25:25; 68:8; 69:9
future [1] - 11:24; 52:13; 62:14

G

game [1] - 48:4
gamut [1] - 36:6
gather [1] - 47:5
General [1] - 72:17
generation [2] - 12:8; 14:5
generous [1] - 12:13
genocide [1] - 28:22
genuine [1] - 43:20
giants [1] - 35:23
given [12] - 13:24; 16:25; 17:22; 19:1; 30:1; 41:21; 42:18; 43:7; 57:3; 61:6; 70:11
glad [1] - 30:2
Glen [1] - 34:12
goal [1] - 69:22
goals [2] - 8:25; 9:3
God [1] - 24:19
goodness [2] - 42:18
govern [1] - 73:20
government [44] - 4:22; 7:9, 11; 8:3; 10:1; 13:8, 15; 14:17; 15:25; 16:7; 17:1, 9, 13, 19; 20:4; 22:5; 24:24; 28:9; 29:17; 30:12; 31:1, 4; 37:24; 42:10; 45:11; 46:10; 47:16, 20, 24; 48:6, 11; 49:19; 50:4, 24; 51:16; 62:16; 68:16; 69:10; 73:6, 19; 74:3; 75:6
government's [17] - 4:10, 14; 14:12; 15:8; 16:22; 19:21; 21:18; 27:7; 48:14; 57:22; 60:11; 64:25; 66:25; 68:9, 13, 22
grace [1] - 44:3
graduating [1] - 34:15
grand [7] - 16:9; 19:2; 47:14; 49:17, 20; 50:5; 68:14
Grandchildren [1] - 35:15

grandchildren [1] - 42:14
grandfather [1] - 36:6
granted [1] - 75:14
grave [1] - 17:17
great [13] - 10:24; 13:14; 21:6; 22:3; 23:18; 29:15; 34:18; 41:8; 43:25; 57:11; 69:7; 70:24
greater [11] - 5:18; 9:2; 13:7; 17:2; 38:1; 39:21; 51:7; 67:24; 69:12
greatest [2] - 14:4; 37:1
greatly [1] - 44:3
greedy [2] - 15:15; 61:9
grew [2] - 35:22; 57:8
group [1] - 63:18
grown [1] - 35:14
guest [1] - 53:9
guidance [1] - 64:12
guideline [14] - 5:16, 22, 24; 6:2, 6, 9; 7:5, 20, 23; 8:23; 24:11; 33:7; 67:12
guidelines [12] - 5:15; 7:22; 8:15, 21; 13:3; 33:2, 12-14; 51:15, 17
guilty [2] - 12:7; 21:2; 26:1; 45:13, 15; 46:21; 47:8; 53:23

H

hac [1] - 3:12
half [1] - 7:14
hand [5] - 20:23; 37:9; 39:17
hand-to-hand [1] - 20:23
handful [1] - 42:25
handled [3] - 18:24; 60:23; 62:6
hands [1] - 41:13
handwriting [1] - 27:13
hangs [1] - 11:25
happiest [1] - 41:18
hard [3] - 38:23; 41:4; 63:13
hardship [1] - 38:23
harmed [1] - 60:16
head [1] - 32:3
health [1] - 5:2
Health [1] - 15:7
healthier [1] - 39:1
healthy [1] - 41:3
hear [2] - 9:4, 12
heard [6] - 9:6, 9, 12; 11:3; 43:10; 60:14
hearing [5] - 17:21; 24:10; 30:6; 32:22; 44:11
Hearing [1] - 9:11
heart [6] - 13:13; 21:3; 35:21; 41:9; 42:17; 58:10
heels [1] - 18:9
help [1] - 44:10
helped [2] - 36:13; 63:7
helpful [3] - 16:5; 17:11; 32:19
helping [1] - 42:5
hereby [2] - 71:12; 72:10
hid [1] - 46:3
hiding [1] - 47:2
higher [2] - 13:23; 52:19
highly [2] - 11:15; 40:4
himself [9] - 20:24; 21:10;

41:8; 73:2, 11

**hindsight** [3] - 17:6; 19:19; 23:25

**history** [8] - 7:4; 8:22; 45:8, 18; 46:23; 49:14; 62:22; 68:19

**hit** [1] - 39:9

**hitherto** [1] - 11:23

**Holocaust** [4] - 34:9; 63:5, 16

**home** [2] - 7:13; 67:9

**Honor** [89] - 3:7, 11, 21-22, 25; 4:23; 5:5, 11; 8:2, 5, 17, 19; 9:7, 15-16; 10:5; 11:7; 13:15; 14:1, 8, 12, 24; 16:25; 18:2, 6; 19:14; 20:6, 14; 21:14; 22:7; 23:2, 9; 24:11; 25:3, 18; 26:17; 28:15; 30:6; 31:11; 32:24; 33:20; 35:7, 16; 36:4, 23; 37:4, 13, 24; 39:25; 40:18, 24; 42:22; 43:8, 11-12, 17; 44:6, 11, 13, 20; 45:25; 46:9; 47:3, 19; 48:16, 21; 49:12, 22; 50:13, 19; 51:5, 21, 25; 52:11, 25; 53:10, 14; 73:4, 17, 25; 74:4, 6, 14, 18, 25; 75:10, 15

**Honor's** [2] - 10:10; 73:7

**Honorable** [1] - 11:13

**hope** [6] - 9:25; 10:16; 32:18; 36:16; 37:22; 44:6

**hoping** [1] - 32:21

**hospitals** [1] - 42:20

**House** [1] - 12:21

**Howard** [3] - 20:12; 45:22

**humanitarian** [1] - 44:4

**humble** [1] - 63:12

**humbly** [1] - 43:13

**humiliation** [1] - 38:22

**hundred** [2] - 11:19; 35:8

**hundreds** [6] - 9:23; 34:15; 43:24; 45:4; 66:4, 6

**hurt** [2] - 39:15; 65:6

**hurts** [1] - 30:13

---

**I**

**idea** [1] - 46:10

**identify** [1] - 26:22

**ignore** [1] - 70:19

**ignores** [1] - 61:21

**imagine** [1] - 9:19

**immediate** [2] - 11:22; 60:7

**immediately** [3] - 60:10; 62:11; 71:14

**immunity** [5] - 27:4, 10, 20; 28:9, 11

**impact** [1] - 64:9

**impacted** [1] - 34:20

**impaired** [1] - 44:3

**impart** [1] - 38:2

**impeccable** [1] - 40:5

**impede** [2] - 25:7, 19

**implementation** [1] - 33:7

**important** [6] - 33:6; 40:21; 64:2; 69:22; 70:5; 71:8

**importantly** [5] - 60:9; 62:13; 63:9; 64:4; 66:25

**impose** [14] - 5:18; 7:11; 9:2; 12:5, 10; 13:1, 6; 38:5; 39:20; 67:9, 19, 21, 23;

imposed [11] - 3:19; 17:3; 36:3; 38:11; 39:5, 22; 53:12, 16; 67:11, 24; 69:14

**imposes** [4] - 10:4; 14:2, 6; 37:5

**imposing** [3] - 29:12; 71:1, 4

**imposition** [1] - 3:17

**impressed** [1] - 10:17

**impressive** [3] - 34:4; 35:6; 42:16

**imprisoned** [1] - 72:12

**imprisonment** [3] - 7:14; 37:25; 72:13

**in-person** [2] - 22:6, 11

**incarceration** [3] - 39:4; 64:9, 12

**included** [1] - 50:8

**inconceivable** [1] - 18:19

**increase** [4] - 6:12, 15, 18, 21

**increased** [1] - 6:11

**incurred** [1] - 59:17

**independently** [1] - 47:5

**indicated** [5] - 15:22; 16:15; 54:16; 55:15; 69:2

**indictable** [1] - 54:3

**indicted** [3] - 46:19; 49:6

**Indictment** [1] - 75:11

**indictment** [11] - 30:9, 14; 46:17; 48:7; 49:20, 24-25; 50:6, 9, 14

**indignity** [1] - 38:23

**indirectly** [1] - 36:22

**individual** [5] - 10:7; 11:17; 52:7; 69:8; 71:9

**individualized** [1] - 53:17

**individuals** [4] - 47:23; 54:21; 55:4; 63:21

**infected** [1] - 62:7

**inflicted** [2] - 46:24; 48:25

**influencing** [1] - 54:5

**influential** [1] - 63:5

**Information** [1] - 72:11

**information** [4] - 5:2; 53:23; 68:10, 18

**informed** [1] - 58:16

**inject** [1] - 20:24

**injected** [1] - 28:9

**injecting** [1] - 24:1

**insisted** [1] - 22:6

**Inspection** [1] - 75:5

**Inspector** [2] - 3:10; 75:4

**instead** [1] - 46:3

**Instead** [1] - 64:14

**institution** [4] - 73:2, 12; 74:16, 22

**instructions** [1] - 18:13

**instructs** [1] - 69:13

**intact** [1] - 35:12

**integrity** [1] - 14:1

**intend** [1] - 10:14

**interest** [13] - 14:13; 33:1, 9, 21; 34:17; 39:12, 15; 56:21; 58:13; 59:3; 60:24; 71:17

**interesting** [1] - 17:25

**interests** [2] - 30:22; 47:7

**interference** [1] - 6:13

**intermediaries** [2] - 56:1, 10

intermediary [7] - 18:4; 17, 20; 19:8; 20:4; 56:4; 68:11

**Intermediary** [12] - 15:25; 17:15; 18:5; 20:5; 21:10; 23:18; 30:3; 31:23; 32:1; 69:4

**interview** [3] - 16:2; 21:23; 31:8

**investigated** [1] - 45:14

**investigating** [1] - 45:12

**investigation** [30] - 15:8; 16:9, 12, 22; 19:2; 20:17; 24:19; 25:7, 20; 26:24; 27:19; 31:17; 45:10; 46:11; 47:21-23; 48:14, 19, 22; 49:13, 18; 51:9; 64:25; 66:25; 68:9, 13; 69:10; 70:14

**investment** [1] - 63:23

**invidious** [1] - 62:3

**involve** [1] - 24:15

**involved** [20] - 13:19, 21; 16:19; 23:15; 34:7; 40:4; 41:15; 43:1; 45:4; 46:10; 54:4, 10, 19; 55:7, 19; 59:7; 61:4, 13; 64:6; 66:1

**involvement** [2] - 18:25; 24:16

**involving** [2] - 6:13; 58:2

**iota** [1] - 39:15

**issue** [5] - 17:15, 24; 19:20; 24:24; 27:16, 18, 20; 22; 28:2, 9; 29:3; 30:11; 35:19; 37:19; 73:21

**issues** [13] - 8:7; 14:19; 15:3; 16:10; 17:2; 19:17; 25:1; 32:16; 70:18, 20; 74:1

**item** [1] - 3:4

**itself** [2] - 22:12; 46:18

---

**J**

**January** [2] - 15:9; 56:23

**jeopardized** [1] - 62:14

**job** [1] - 48:15

**joined** [1] - 35:3

**Judge** [24] - 11:13, 20; 12:1; 13:12; 16:24; 20:2; 23:24; 25:9; 30:16; 32:7, 20; 33:17; 35:9, 22; 36:20; 40:12, 14, 16, 23; 41:1, 6, 10, 18; 42:16

**judge** [3] - 40:1, 10; 71:8

**judges** [11] - 40:2, 5; 58:5, 12; 59:9, 13; 61:21; 65:22; 66:6; 71:6

**judging** [1] - 43:21

**judgment** [6] - 3:16, 18; 18:8; 19:19; 23:24; 72:10

**judicial** [4] - 12:21; 58:10; 62:4; 74:7

**judiciary** [1] - 63:4

**July** [1] - 73:3

**June** [1] - 26:2

**JUNE** [1] - 3:1

**jury** [7] - 16:9; 19:2; 47:14; 49:17, 20; 50:5; 68:14

**justice** [21] - 6:14, 23; 12:22; 14:13, 18; 25:4, 10; 39:12, 15, 17; 45:5, 23; 54:4; 58:12, 20; 65:11, 20; 71:1

**Justice** [1] - 18:7

**justify** [1] - 17:2

---

**K**

**Katherine** [2] - 3:10; 75:4

**Kaufman** [8] - 18:10; 21:1; 26:10, 20; 27:25; 28:10, 12

**Kecker** [1] - 16:14

**keep** [1] - 57:24

**kept** [2] - 55:20; 68:4

**key** [1] - 56:17

**kickback** [8] - 15:17; 23:23; 55:16; 56:4, 12; 57:13; 61:3

**kickbacks** [9] - 54:21; 55:7, 10; 57:17; 58:4; 59:2, 24; 61:10; 66:9

**Kim** [1] - 3:10

**kind** [2] - 10:8; 25:11

**kindness** [3] - 33:8; 42:21; 43:6

**kinds** [1] - 67:7

**knees** [1] - 41:13

**knowing** [3] - 36:15; 49:9; 65:21

**knowingly** [1] - 56:11

**knowledge** [4] - 21:2; 22:12; 58:23; 60:23

**known** [8] - 16:16, 23; 45:11-14; 63:19; 69:5

**knows** [1] - 17:7

---

**L**

**laid** [3] - 29:17; 45:20, 22

**large** [2] - 13:9; 42:15

**last** [8] - 31:21; 43:15; 45:9; 53:2-4; 64:6, 23

**lasted** [1] - 45:1

**latched** [1] - 22:5

**late** [2] - 48:4; 57:15

**laud** [1] - 39:18

**law** [38] - 12:21; 14:6; 31:25; 34:14, 16; 38:2; 41:25; 44:1, 9; 47:12; 53:25; 54:7, 11, 23; 55:3, 12; 56:2, 4, 12, 15, 20, 25; 57:4, 8-9; 59:24; 60:8; 61:3; 63:6; 64:24; 65:2, 13; 66:7; 70:3; 71:17

**lawsuit** [1] - 63:22

**lawsuits** [5] - 45:4; 54:6; 55:5, 8

**lawyer** [11] - 11:16; 15:24; 22:23; 23:16; 26:24; 27:1, 4; 31:13, 16; 32:15; 43:18

**lawyers** [7] - 14:5; 23:21; 30:5; 34:15; 39:8; 47:25; 61:13

**Lazar** [5] - 46:16; 49:25; 57:14; 59:8, 22

**lead** [5] - 23:8, 17; 58:16; 62:13

**learned** [1] - 63:12

**least** [7] - 16:11; 21:8; 28:13; 30:10; 31:8; 32:2; 68:7

**leave** [2] - 37:4; 42:11

**led** [5] - 9:21; 10:9; 37:11; 49:12; 55:12

**left** [2] - 52:22; 67:1

**legacy** [2] - 42:10; 64:23

**legal** [6] - 31:5; 34:1; 42:19; 53:11; 63:14; 64:18

**legend** [1] - 35:23

**legitimate** [1] - 36:2

lengthy [4] - 44:24; 72:21

**leniency** [1] - 69:8

**Lerach** [19] - 13:16; 14:10; 16:15, 19; 17:3; 37:23; 38:12; 39:22; 51:23; 54:12; 66:12; 67:24; 68:2, 6, 12, 25

**Lerach's** [4] - 50:15; 52:9; 55:15; 67:18

**less** [3] - 41:5; 52:15; 67:22

**letter** [13] - 5:6; 26:2, 9; 35:6; 36:23; 37:14, 16; 40:2; 60:22; 65:18, 12; 67:5

**letters** [19] - 4:9, 19-20; 5:9; 10:6, 16; 11:19; 12:20; 35:10; 36:6; 39:24; 42:14; 44:15; 51:2; 62:24; 63:3, 10; 66:4; 71:6

**level** [10] - 6:11, 18, 21, 25; 7:1, 3; 8:21

**levels** [1] - 53:19

**liability** [1] - 45:17

**liable** [1] - 47:9

**liberty** [2] - 65:7; 71:9

**license** [1] - 65:1

**lied** [2] - 60:1; 61:23

**lies** [1] - 60:1

**life** [21] - 9:22; 10:8; 11:23; 12:14; 29:1; 34:4; 37:1, 11; 39:19; 43:21; 44:5, 7; 49:12; 50:21; 51:12; 52:13; 63:3, 10, 22; 64:19; 65:24

**life's** [2] - 37:1; 44:1

**lifetime** [1] - 33:25

**light** [1] - 51:8

**likely** [2] - 52:15, 21

**line** [2] - 46:6; 49:10

**linking** [1] - 68:18

**list** [1] - 63:15

**listening** [1] - 31:19

**litigate** [3] - 14:19; 24:4

**litigating** [1] - 28:20

**litigation** [4] - 20:7; 34:9; 63:16, 20

**live** [1] - 44:10

**lived** [1] - 11:4

**lives** [4] - 34:20; 36:12; 41:4; 44:10

**living** [2] - 36:12; 44:2

**loan** [1] - 34:14

**loans** [2] - 34:16

**located** [1] - 73:15

**look** [13] - 11:8; 13:2, 4; 28:15; 30:23; 31:15; 33:18; 35:9; 37:8; 40:7, 10; 43:22

**looked** [5] - 16:1; 21:18-20, 22

**looking** [5] - 17:24; 22:23; 30:22; 32:9; 45:17

**looks** [2] - 35:13, 19

**LOS** [1] - 3:1

**lose** [2] - 10:3; 73:23

**loss** [3] - 65:1, 4, 6

**lost** [1] - 63:22

**love** [2] - 41:17; 63:2

**low** [2] - 51:14, 17

**lucrative** [1] - 60:10

**lying** [1] - 66:5

---

**M**

**M.O.I** [1] - 32:9

**magnificent** [2] - 11:6; 37:11

**maintain** [1] - 50:17

**major** [1] - 12:20
**man** [12] - 11:21; 22:23; 28:19; 35:16; 36:20; 37:6; 38:10; 40:7; 63:11; 69:5
**management** [2] - 56:19, 25
**managing** [1] - 56:23
**mandatory** [3] - 33:2, 13
**manner** [4] - 41:7; 70:17, 21; 71:23
**March** [1] - 53:23
**Married** [1] - 35:13
**Marshal** [3] - 73:15; 74:22
**material** [1] - 4:9
**math** [2] - 12:25; 14:9
**matter** [2] - 16:16; 75:17
**maximize** [1] - 61:15
**maximum** [2] - 67:19; 68:1
**McGahan** [1] - 14:10
**mean** [7] - 19:7; 22:15; 47:13, 17; 48:17, 25; 52:12
**meaningful** [1] - 62:3
**means** [1] - 37:7
**measure** [2] - 43:5
**measured** [1] - 17:5
**medical** [1] - 5:2
**meet** [5] - 14:13; 20:4; 36:18; 38:2
**meeting** [20] - 15:4, 23; 16:18; 17:25; 18:4, 10, 17; 19:5; 21:9, 24; 22:6, 11; 24:13, 18, 20; 32:5; 69:4
**Mel** [4] - 24:12, 18; 35:20; 36:13
**Melvyn** [2] - 3:5; 9:20
**member** [1] - 59:23
**members** [11] - 58:14; 59:4, 18; 60:20, 24; 61:12, 16, 24; 62:1; 63:4; 73:9
**memo** [3] - 10:13; 17:1; 31:8
**memorandum** [8] - 4:9, 11, 14-15; 39:25; 57:23; 60:21; 68:22
**memorialized** [1] - 68:20
**men** [2] - 12:7; 35:17
**mention** [1] - 54:8
**mentioned** [2] - 25:3; 30:2
**mentor** [1] - 44:9
**mentored** [2] - 36:3; 63:7
**mercy** [3] - 12:22; 39:17; 62:1
**message** [3] - 41:24; 42:7; 69:23
**met** [5] - 20:1; 21:3; 22:9; 27:11
**might** [3] - 24:15; 30:19; 73:19
**Milberg** [14] - 28:18; 53:25; 54:7, 20; 55:8, 10; 56:6; 57:4, 15; 59:12; 60:8, 16; 61:22; 62:11
**military** [1] - 35:4
**million** [7] - 22:8, 21; 42:2; 45:22; 60:12; 72:1
**millions** [5] - 9:24; 13:11; 55:13; 61:22; 62:15
**mind** [3] - 16:4; 24:14; 68:4
**mindset** [1] - 23:11
**minimize** [1] - 60:15
**minimum** [2] - 39:3; 74:11

**Minimum** [1] - 7:4:8

**minute** [1] - 39:14
**minutes** [1] - 33:23
**misconduct** [1] - 11:22
**misleading** [2] - 26:12; 58:25
**misrepresentations** [1] - 68:20
**misses** [1] - 61:1
**mistake** [1] - 19:20
**mitigating** [1] - 51:13
**mix** [2] - 44:21; 45:19
**modestly** [1] - 55:16
**moment** [4] - 11:24; 37:15, 19; 53:4
**moments** [1] - 54:9
**MONDAY** [1] - 3:1
**money** [3] - 21:24; 34:1; 36:9
**month** [3] - 35:1; 41:2, 11
**months** [26] - 7:6, 12; 8:23; 13:16, 20; 14:13; 15:14; 18:16; 26:4; 35:2; 41:5, 13, 20; 44:23; 51:7, 14; 52:20; 67:13, 22, 25; 70:9; 72:13
**Moreover** [1] - 69:7
**Morgantown** [1] - 74:9
**morning** [6] - 3:7, 11, 14-15; 5:14; 68:5
**mortality** [1] - 38:20
**most** [14] - 9:18; 10:10; 12:7; 19:23; 22:15; 28:5; 33:10; 37:1; 49:17; 52:21; 54:14; 70:5; 73:19
**Most** [1] - 40:2
**mother** [1] - 64:14
**motion** [2] - 15:14; 75:14
**motivated** [1] - 61:11
**move** [4] - 9:12; 21:11; 28:12; 75:12
**moved** [1] - 10:17
**MR** [68] - 3:7, 11, 20-22, 25; 4:2, 6, 23; 5:5, 11; 8:2, 5, 17, 19; 9:7, 15; 10:23; 14:24; 15:2; 16:24; 17:13; 18:2, 6; 19:14; 20:10, 14; 22:5, 14, 17, 19; 23:5, 6; 26:16; 30:10, 16; 31:5, 10; 32:7; 43:11; 44:13; 47:3, 19; 48:16; 49:22; 50:13; 51:5, 25; 52:11; 53:3, 10, 13-14; 73:4, 6, 17, 25; 74:4, 6, 11, 14, 18, 24-25; 75:8, 10, 15
**multiple** [1] - 54:3
**murder** [1] - 16:20
**must** [11] - 5:16; 8:25; 11:8, 11; 12:5; 31:7; 58:21; 64:14; 68:4; 69:23; 73:22
**muster** [1] - 19:13

**N**

**name** [1] - 30:3
**named** [6] - 20:6; 23:8; 46:17; 50:8; 54:22
**nation** [1] - 57:9
**national** [1] - 54:17
**nationwide** [1] - 54:18
**nature** [5] - 53:22; 61:6; 62:23; 64:1; 70:10, 24
**necessarily** [3] - 15:10; 22:12; 29:22
**necessary** [5] - 5:19; 8:11; 9:3; 13:7, 24; 38:2; 39:21, 23; 69:12

**need** [16] - 7:6; 12:15; 17:21; 19:8; 22:11; 23:9; 27:24; 37:18; 44:10; 64:11; 69:13, 16, 20; 70:1, 4
**needed** [4] - 15:7; 32:17; 64:11; 69:18
**needs** [2] - 8:14; 10:9
**negatively** [1] - 39:13
**negotiate** [7] - 15:16; 19:6, 11; 22:2, 8, 16, 18
**negotiated** [3] - 15:8, 24; 70:13
**negotiation** [1] - 68:11
**negotiations** [1] - 15:19
**negotiators** [1] - 15:21
**never** [17] - 19:24; 20:1, 19:20; 22:9; 24:3; 36:1; 39:25; 41:22; 42:22; 61:17; 62:6, 15; 63:1
**nevertheless** [2] - 32:12; 37:8
**New** [3] - 16:17; 72:6; 73:16
**Newark** [1] - 40:16
**next** [5] - 9:20; 34:25; 35:6; 41:2; 62:21
**Nicholas** [2] - 40:16; 41:6
**Nigeria** [1] - 34:11
**nobody** [3] - 42:9; 44:16
**none** [1] - 27:15
**nonetheless** [1] - 15:23
**nonviolent** [1] - 42:3
**noon** [2] - 73:3, 13
**notable** [1] - 54:8
**note** [2] - 25:18; 40:24
**notes** [3] - 11:9; 32:11; 70:17
**Nothing** [1] - 75:8
**nothing** [9] - 12:16; 19:9; 20:25; 27:9; 36:14, 16; 66:13; 74:25
**Notice** [1] - 73:22
**notwithstanding** [1] - 16:12
**November** [3] - 15:5; 18:2
**Number** [1] - 5:3
**number** [5] - 13:17; 18:17; 33:5; 62:25; 68:11
**nurtured** [1] - 63:7
**nuts** [2] - 28:23; 29:7
**NYU** [1] - 34:14

**O**

**oath** [3] - 43:18; 54:6; 65:18
**object** [2] - 25:5; 29:21
**objection** [4] - 7:21, 24; 8:5; 74:4
**objections** [3] - 5:23; 8:1, 4
**obligation** [3] - 31:2; 48:19; 58:13
**obligations** [1] - 72:21
**observation** [1] - 62:23
**observations** [2] - 37:12; 71:5
**obstruct** [1] - 16:9
**obstructed** [2] - 45:23; 68:13
**obstruction** [14] - 6:23; 14:18; 25:4, 7, 10-11; 26:12; 28:2, 5, 14; 38:6; 54:3; 69:3
**obstructionist** [1] - 38:14

**obtain** [1] - 14:2

**obvious** [4] - 15:12; 16:11; 20:12; 60:1
**Obviously** [1] - 45:1
**obviously** [9] - 12:11; 17:23; 31:2; 39:4; 40:9; 43:2; 48:11; 49:1
**occasional** [2] - 58:3
**odds** [1] - 43:1
**offense** [14] - 6:11, 13, 19, 22, 25; 7:3; 8:21; 38:1; 39:18; 44:25; 53:22; 70:3, 24
**offenses** [2] - 45:13, 16
**offer** [2] - 29:11; 75:6
**offered** [2] - 14:21; 40:2
**Office** [3] - 18:11; 27:2; 72:17
**office** [5] - 19:5; 22:22; 28:24; 29:13; 68:16
**Officer** [6] - 6:9, 17; 7:1, 22; 8:10
**officer** [1] - 65:19
**Officer's** [2] - 7:3; 8:8
**often** [2] - 35:17; 37:1
**old** [2] - 34:25; 64:16
**older** [3] - 38:12, 20; 52:14
**once** [1] - 28:7
**One** [36] - 5:21; 7:14; 9:17; 11:5; 12:7, 19; 14:4; 17:3; 20:15; 27:24; 30:4; 31:25; 32:16; 35:5, 23; 37:9, 22; 39:7; 14:15, 17; 47:3; 52:6; 53:23; 54:14; 56:14, 17, 20; 57:18; 59:6; 60:16; 66:11; 70:5
**One** [2] - 10:19; 38:16
**one's** [3] - 20:15; 38:20; 50:10
**one-count** [1] - 53:23
**one-half** [1] - 7:14
**ongoing** [1] - 16:13
**openly** [1] - 70:17
**operations** [1] - 56:25
**opportunities** [1] - 50:2
**opportunity** [7] - 44:7; 46:1, 12; 61:24; 66:22; 75:2
**opposed** [1] - 14:2; 22:6
**opposition** [1] - 4:21
**option** [4] - 18:12; 26:4; 57:20; 68:19
**Order** [1] - 72:17
**order** [14] - 4:17; 5:10, 13; 27:10; 46:6; 55:24; 56:3; 58:20; 61:15; 72:7; 73:10; 74:5, 20
**ordered** [3] - 71:12, 15; 73:1
**ordinary** [5] - 33:4; 42:5, 20; 63:18
**organization** [2] - 36:7; 43:14
**organizations** [1] - 64:6
**original** [1] - 56:23
**origins** [1] - 54:24
**otherwise** [2] - 30:19; 39:12
**ought** [1] - 50:11
**outpouring** [1] - 63:1
**overall** [2] - 11:23; 49:11
**overlooks** [1] - 61:20
**overriding** [1] - 52:2
**overwhelming** [1] - 62:25
**owed** [1] - 71:2
**own** [12] - 24:14; 27:4;

**owned** [1] - 57:21
**Oxford** [6] - 15:7; 20:6; 24:2-4, 6

**P**

**Page** [1] - 11:21
**paid** [25] - 16:19; 19:10; 20:3, 21; 35:25; 55:2, 17, 21; 56:1, 12; 57:16; 58:22; 59:7, 11, 23-24; 60:6, 18; 61:9, 25; 62:2, 11; 71:17, 23
**pained** [1] - 31:12
**painfully** [1] - 61:9
**painting** [1] - 57:21
**paintings** [1] - 26:7
**papers** [8] - 4:12; 6:7; 21:19; 25:6; 44:21; 45:20; 51:6, 19
**Paragraph** [4] - 6:15, 20, 22, 24
**Paragraphs** [1] - 8:9
**part** [8] - 19:22; 28:16; 29:11; 42:11, 14-15; 44:4
**parte** [3] - 4:18; 5:7
**participate** [4] - 15:23; 16:13; 65:15, 19
**participation** [1] - 69:1
**particularly** [2] - 17:25; 40:21
**parties** [8] - 3:24; 6:7; 53:18; 58:14; 61:7; 70:8, 17; 72:8
**parties'** [4] - 4:8; 67:8, 20; 70:21
**partner** [5] - 12:20; 46:20; 54:12; 55:18; 56:23
**Partner** [1] - 48:6
**partner's** [1] - 54:13
**partners** [17] - 46:19; 47:4; 49:5, 25; 54:20; 55:1, 6, 16, 19; 56:15; 57:7, 11, 24; 58:24; 59:7, 21; 66:15
**partnership** [2] - 49:4; 56:21
**parts** [1] - 28:18
**party** [2] - 7:21; 59:14
**pass** [2] - 18:16; 19:12
**passing** [1] - 27:14
**passion** [1] - 44:1
**past** [1] - 63:3
**patience** [1] - 43:8
**pattern** [1] - 53:25
**pay** [9] - 22:3; 42:2; 54:21; 66:11; 71:12, 15, 25; 72:3, 20
**paying** [5] - 56:6; 58:3; 60:17; 62:18
**payment** [8] - 25:24; 34:14; 55:2; 57:18, 20, 22; 59:14; 60:5
**payments** [9] - 55:17, 24; 56:4, 12; 57:13; 58:18; 60:3, 18; 62:10
**Peace** [1] - 35:3
**pension** [1] - 36:11
**people** [20] - 9:24; 10:1; 11:2; 13:11, 22; 20:24; 23:15; 30:21; 34:12; 35:8; 36:3, 12; 40:19; 42:9, 25; 43:14, 24; 63:2, 5, 18
**percent** [2] - 55:21; 56:21
**perfect** [1] - 29:25
**performed** [1] - 23:18

**performing** [1] - 68:3

**perhaps** [4] - 9:18; 12:23; 33:10; 69:4
**period** [11] - 7:15; 13:23; 20:22; 27:10; 35:2; 45:9; 18; 46:22; 53:7, 9; 72:19
**permit** [1] - 7:10
**permitted** [2] - 55:12; 74:8
**perpetrated** [1] - 58:6
**person** [9] - 11:10; 22:6, 11, 17-18; 24:13; 33:19; 34:4; 41:18
**personal** [14] - 18:14; 19:5; 25:22; 26:9, 11, 15; 27:20; 29:1; 46:6; 64:23; 65:3; 66:22; 73:8
**personally** [3] - 11:4; 57:18; 63:7
**perspective** [1] - 30:24
**persuasive** [4] - 20:9; 22:23; 67:25
**phase** [4] - 5:20; 6:3; 8:25
**philanthropy** [1] - 33:4
**phone** [3] - 19:10; 20:2; 24:13
**phony** [4] - 18:11; 56:5; 57:19; 68:19
**Picasso** [2] - 26:6; 57:20
**pick** [1] - 13:17
**picture** [1] - 49:11
**piece** [1] - 68:17
**pin** [1] - 32:3
**Pio** [1] - 3:10
**pits** [1] - 63:20
**place** [3] - 12:2; 32:6; 42:5
**placed** [1] - 72:14
**plaintiff** [5] - 19:10; 20:3, 6; 23:8, 17
**plaintiff's** [1] - 59:15
**plaintiffs** [25] - 16:19; 20:21; 24:6; 35:25; 54:22; 55:2, 4, 17, 21; 56:1, 13; 57:16; 58:17, 19, 23; 59:8, 11, 17, 24; 60:6, 18; 61:9, 25; 62:2, 11
**plaintiffs'** [1] - 66:19
**plan** [1] - 29:11
**planning** [1] - 6:19
**plate** [1] - 36:13
**played** [1] - 61:4
**players** [1] - 56:17
**plays** [1] - 49:19
**plea** [20] - 6:4; 7:7, 19; 21:20; 48:5; 56:22; 57:12; 59:5, 10; 67:9, 20; 70:10, 12, 16, 21; 72:6; 73:18, 20; 75:13
**plead** [1] - 46:21
**pled** [2] - 26:1; 53:22
**point** [21] - 7:7; 12:4; 18:8; 21:14; 25:21; 27:18; 28:17; 30:16; 36:18, 20; 44:25; 47:2; 48:21; 49:2, 7, 10; 50:7, 18; 56:20; 60:13; 61:1
**pointed** [1] - 44:20
**points** [1] - 52:4
**policy** [2] - 6:1; 18:7
**Politan** [3] - 40:16; 41:6, 10
**pollution** [1] - 63:19
**poor** [1] - 19:19
**portion** [3] - 52:13; 60:17; 67:10
**position** [13] - 4:12, 24; 6:7; 12:5; 17:17; 18:18; 23:21; 36:20; 45:15; 47:25;

48:19; 60:12
**positioned** [1] - 61:13
**possessed** [1] - 56:24
**possession** [1] - 27:7
**possible** [1] - 55:9
**Postal** [3] - 3:10; 75:3, 5
**posture** [1] - 51:14
**power** [1] - 57:5
**powerful** [5] - 19:16; 25:16; 52:7; 63:4
**practical** [1] - 55:24
**practice** [8] - 11:15; 14:5; 15:14; 44:1, 9; 56:17; 65:2; 66:24
**practices** [1] - 57:8
**practicing** [1] - 64:18
**precious** [1] - 41:12
**precise** [1] - 54:24
**premiere** [1] - 57:9
**preparation** [1] - 6:19
**prepared** [3] - 7:23; 10:6; 59:12
**present** [4] - 3:8, 13; 29:5; 63:4
**presentation** [1] - 11:12
**presented** [6] - 33:11, 22; 53:18; 66:13
**Presentence** [7] - 3:23; 4:4, 8; 5:24; 6:15, 20
**presently** [1] - 74:1
**presided** [1] - 58:5
**presiding** [3] - 58:12; 59:9; 65:22
**prestige** [1] - 57:11
**pretty** [2] - 15:12; 18:21
**prevent** [1] - 64:17
**prevented** [1] - 59:2
**previewed** [1] - 21:9
**previously** [2] - 4:16; 20:25
**price** [1] - 66:10
**primarily** [2] - 56:15; 63:16
**principal** [1] - 32:22
**principles** [1] - 45:16
**prison** [11] - 12:10; 38:21, 24; 39:2; 41:17; 42:3; 58:7; 62:19; 64:17; 67:10; 69:25
**Prison** [1] - 74:9
**Prisons** [3] - 72:12; 73:3, 12
**pro** [4] - 3:12; 28:22; 34:8; 59:15
**Probation** [11] - 6:9, 17; 7:1, 3, 22; 8:8, 10; 28:3; 29:20; 72:17
**problem** [5] - 21:3, 25; 26:17; 28:16; 32:7
**proceeding** [1] - 28:10
**proceeds** [1] - 7:17
**process** [6] - 5:21; 14:1; 46:5; 48:23; 49:1; 50:3
**produced** [2] - 18:11; 27:13
**production** [2] - 27:4; 28:11
**productive** [3] - 35:14; 36:12; 40:25
**professed** [1] - 23:19
**profession** [3] - 35:22; 42:19; 64:18
**professional** [3] - 36:25; 43:13; 44:2
**profitable** [1] - 57:10
**profound** [1] - 43:20

**profoundly** [1] - 9:24
**program** [1] - 34:14
**programs** [1] - 28:23
**promise** [1] - 43:19
**promote** [1] - 70:3
**promoted** [1] - 57:6
**pronounce** [1] - 53:8
**pronouncement** [1] - 3:16
**proof** [1] - 50:24
**properly** [2] - 5:1; 58:20
**proposed** [2] - 5:13; 56:24
**prosecutor** [1] - 11:16
**prosecutors** [3] - 67:1; 70:14; 75:2
**protect** [3] - 58:13; 61:24; 69:15
**protecting** [1] - 59:3
**protective** [1] - 4:17
**provide** [3] - 69:18, 21; 70:3
**provided** [4] - 6:18; 11:19; 34:10; 71:17
**provides** [2] - 7:16; 12:20
**pseudonymously** [1] - 46:17
**public** [6] - 13:9; 33:1, 9; 34:6, 17; 42:24; 44:3; 58:11; 69:15
**punish** [1] - 30:18
**punished** [3] - 42:1; 48:10, 20
**punishing** [1] - 51:3
**punishment** [6] - 14:6; 43:25; 48:24; 65:6; 70:4
**purchase** [1] - 57:20
**purposes** [2] - 5:19; 69:13
**Pursuant** [2] - 71:19; 72:9
**pursuant** [7] - 4:16; 5:4; 6:1, 21; 7:8; 72:6; 75:12
**push** [1] - 17:16
**pushed** [2] - 17:1, 13
**put** [6] - 46:5; 49:9; 50:2, 7, 24; 57:5
**putting** [1] - 30:23

---

## Q

**qualified** [1] - 61:3
**quality** [4] - 34:20; 35:25; 36:2; 64:1
**questioned** [1] - 36:1
**questions** [2] - 52:24; 53:1
**quickly** [2] - 55:9, 11
**quite** [3] - 12:18; 30:8; 50:22
**quote** [5] - 11:13, 20; 17:10; 36:24; 41:11
**quoting** [1] - 65:12

---

## R

**race** [1] - 66:20
**racketeering** [3] - 7:18; 53:25; 54:2
**raise** [1] - 15:3
**raised** [3] - 8:7; 14:22; 27:14
**Rakoff** [3] - 11:13, 20; 33:17

**range** [13] - 8:6, 22; 62:2; 9; 7:5, 11; 8:23; 24:11; 67:12, 14; 70:9
**rata** [1] - 59:15
**Rather** [1] - 57:5
**rationalize** [1] - 58:2
**re** [2] - 5:9; 34:14
**re-file** [1] - 5:9
**re-payment** [1] - 34:14
**read** [13] - 4:4, 7; 10:15; 11:3; 15:13; 21:22; 30:3; 31:7, 11; 35:9; 42:14; 51:2; 65:8
**reading** [1] - 11:13
**ready** [2] - 53:6; 55:4
**real** [2] - 37:23; 47:18
**realized** [1] - 66:10
**realizes** [1] - 70:13
**really** [9] - 12:5; 13:13; 16:3; 32:21; 36:1, 24; 37:11; 69:2; 75:3
**reason** [8] - 3:18; 13:5; 18:4; 29:16; 46:9; 52:16; 53:11; 60:1
**reasonable** [1] - 70:20
**reasons** [2] - 51:18; 73:8
**reassess** [1] - 47:25
**receive** [4] - 4:21; 11:21; 38:15; 61:10
**received** [6] - 4:7, 18; 21:18; 55:22; 60:19; 66:4
**receives** [1] - 27:5
**receiving** [1] - 59:22
**recent** [2] - 38:5, 14
**recidivist** [1] - 35:19
**recitation** [2] - 30:17
**recognition** [2] - 44:18; 64:20
**recognize** [9] - 10:2; 12:15; 14:4; 18:22; 21:15; 35:1; 41:1; 64:3; 67:8
**recognized** [1] - 29:6
**recognizing** [3] - 51:17; 71:1
**recollect** [1] - 30:22
**recollection** [1] - 29:25
**recommend** [1] - 39:4
**recommendation** [2] - 74:7, 13
**reconcile** [1] - 65:24
**record** [3] - 23:7; 35:5; 65:23
**recover** [2] - 55:13; 63:22
**recovery** [2] - 60:11; 63:17
**red** [2] - 19:3, 7
**reduce** [2] - 15:17; 22:21
**reduced** [2] - 27:15; 30:1
**reduction** [1] - 7:2
**referral** [7] - 22:8; 23:22; 56:6, 8; 58:3; 62:19
**referred** [1] - 59:9
**referring** [1] - 16:17
**reflect** [1] - 70:2
**reflected** [1] - 66:4
**Reform** [2] - 9:1; 72:9
**reforms** [1] - 66:18
**refundable** [1] - 57:20
**regarded** [1] - 11:15
**regarding** [3] - 8:7; 60:13; 62:23
**regardless** [3] - 10:3; 14:8; 37:4
**regular** [1] - 63:9

**regulations** [1] - 72:17
**rehabilitate** [1] - 69:19
**reimbursement** [1] - 59:16
**relate** [2] - 26:10; 30:12
**relates** [1] - 67:18
**relationship** [1] - 25:23
**release** [4] - 7:15; 72:13, 23
**relevant** [1] - 52:1
**reliable** [1] - 55:3
**relied** [1] - 65:21
**rely** [1] - 30:17
**remain** [1] - 54:12
**remainder** [1] - 44:7
**remaining** [4] - 40:24; 72:3
**remains** [1] - 41:3
**remarkable** [2] - 36:24; 39:19
**remorse** [6] - 37:16; 43:17; 65:9; 67:4, 6
**remove** [1] - 28:14
**removed** [1] - 62:12
**repaid** [1] - 29:6
**repeat** [1] - 10:14
**reply** [8] - 4:14; 14:22; 16:5, 8, 25; 21:19; 31:21
**Report** [7] - 3:23; 4:4, 8; 5:24; 6:16, 20
**report** [3] - 16:1; 21:23; 73:14
**representation** [2] - 29:22; 63:20
**representative** [1] - 59:14
**representatives** [1] - 60:7
**represented** [8] - 18:12; 21:1; 47:11; 50:17, 22; 59:18; 63:21
**representing** [1] - 34:11
**reputations** [1] - 40:6
**request** [2] - 5:4; 9:11
**require** [3] - 5:23; 17:14; 58:14
**required** [1] - 62:20
**requires** [2] - 58:7; 70:2
**researching** [1] - 31:17
**reservations** [1] - 70:12
**Reserve** [1] - 72:6
**resolution** [1] - 8:12
**resolve** [5] - 5:23; 8:15; 17:20; 22:12; 27:24
**resorted** [1] - 57:23
**respect** [23] - 10:25; 13:14; 14:17; 16:6, 8; 17:15; 21:6, 9; 24:20; 29:15; 38:2; 41:8, 14, 16; 47:2, 12; 63:2; 65:4, 11; 68:10; 70:3; 74:6, 25
**respectfully** [4] - 10:10; 19:15, 24; 28:6
**respond** [4] - 16:24; 17:5; 24:23; 29:16
**responded** [1] - 38:7
**response** [6] - 9:10; 12:24; 17:5; 25:4; 37:23
**responsibility** [15] - 7:2; 28:25; 46:2, 7, 15; 47:17; 48:4, 13; 49:2, 7-8; 67:3; 71:3, 10
**responsible** [6] - 29:10; 32:15; 55:18; 56:16; 57:13; 63:16
**rest** [2] - 65:14; 75:4

**result** [6] - 8:12; 25:10, 52:21; 57:7; 61:11; 64:24

**resulted** [3] - 60:7, 5, 7, 11

**resulting** [5] - 6:13, 25; 7:5; 58:9; 65:5

**retain** [1] - 73:21

**retaining** [1] - 7:12

**retired** [2] - 40:1, 5

**retirement** [2] - 20:11

**retiring** [1] - 64:19

**retribution** [1] - 70:1

**return** [7] - 5:4, 8; 36:14, 16:17; 49:20; 50:5

**reviewed** [2] - 4:10, 13

**reward** [1] - 55:20

**rewarded** [1] - 59:24

**Richard** [1] - 3:9

**Robert** [1] - 14:10

**Robinson** [3] - 3:9; 27:11, 14

**role** [2] - 6:22; 59:3

**room** [1] - 31:25

**Rule** [1] - 7:8

**rule** [1] - 65:13

**rules** [2] - 61:4; 72:16

**run** [3] - 36:6; 47:16

**running** [2] - 48:10, 20

## S

**sacred** [1] - 65:18

**sad** [3] - 9:24; 37:5

**safe** [3] - 18:15; 26:15; 55:20

**safeguarded** [1] - 28:8

**sake** [1] - 24:19

**sample** [1] - 72:25

**satisfaction** [1] - 36:15

**satisfied** [1] - 72:22

**save** [1] - 50:3

**saves** [1] - 30:13

**savings** [1] - 63:22

**saw** [1] - 36:5

**scheme** [20] - 25:1; 55:12, 16, 19, 25; 56:9, 18; 57:6, 24; 58:4, 9; 59:7; 60:2; 61:3, 7:8; 62:3; 63:23; 66:8

**school** [3] - 34:14, 16; 35:4

**Schulman** [16] - 15:5, 11, 18, 2:1; 17:18; 18:24; 20:23; 21:5, 2:1; 24:9, 17; 29:24; 47:15; 48:5

**scope** [4] - 6:19; 45:3, 12; 54:16

**scrutinize** [1] - 58:17

**scrutiny** [1] - 62:4

**seal** [3] - 4:15, 19; 16:2

**sealed** [1] - 5:1

**sealing** [1] - 5:10

**seated** [1] - 53:8

**SEC** [1] - 40:15

**Second** [2] - 69:18; 75:11

**second** [3] - 25:21; 26:3; 41:18

**Secondly** [2] - 61:6; 68:12

**secret** [2] - 59:1; 60:4

**secretly** [2] - 54:21; 56:11

**secrets** [1] - 55:2

**Section** [4] - 11:8; 71:19

**secure** [1] - 55:3

**securities** [1] - 58:11

**Security** [1] - 74:9

**security** [2] - 39:3; 74:11

**see** [8] - 16:2; 26:16; 48:3, 9; 49:18, 21, 23; 51:1

**seeks** [1] - 62:16

**seem** [1] - 21:22

**sees** [1] - 26:8

**select** [1] - 54:22

**send** [1] - 69:23

**sends** [1] - 41:24

**senior** [4] - 54:20; 55:1, 6, 18

**sentence** [75] - 3:17; 5:18; 7:11; 9:2, 14; 10:3; 12:5, 10; 13:1, 6; 14:2; 17:2; 23:4; 25:9; 29:12; 33:1; 35:17; 37:4, 19, 25; 38:5, 8, 10-11, 15-16, 18, 2:1, 25; 39:4, 11, 20:2:1; 41:4, 17, 24; 42:8, 23; 44:22; 51:7, 20; 52:8, 12, 23; 53:6, 8, 11, 15; 55:15; 58:8; 62:19; 64:17; 66:16; 67:10, 18-19, 21, 23-24; 68:1; 69:11, 14, 23, 25; 70:2; 71:2, 4, 11; 73:20, 22; 74:8

**sentenced** [3] - 33:20; 43:2; 54:11

**sentences** [2] - 13:23; 67:8

**Sentencing** [2] - 9:1; 72:9

**sentencing** [41] - 4:9, 11-12, 14-15; 5:15, 2:1; 6:7; 7:20; 9:1, 3, 25; 10:5, 16; 11:17, 24; 13:16; 14:10; 16:15; 17:1; 37:23; 39:25; 40:19; 42:8; 44:15; 50:15; 51:24; 57:22; 60:21; 64:2; 66:12; 67:17; 68:4; 69:13; 70:9, 18; 71:7, 18, 24; 72:2; 75:1

**separate** [4] - 11:10; 47:10

**Serafini** [1] - 34:1

**serious** [8] - 10:11; 13:1; 16:10; 34:22; 40:13; 54:14; 58:7; 70:11

**seriously** [1] - 71:11

**seriousness** [9] - 38:1; 39:18; 44:25; 54:10; 60:14; 65:25; 67:4; 70:2

**servant** [1] - 44:4

**serve** [5] - 41:4; 42:2; 52:10; 55:4; 74:8

**service** [4] - 34:6; 35:4; 42:24; 75:5

**serviced** [1] - 20:2

**serving** [5] - 47:14; 52:8; 59:14; 60:6, 8

**set** [9] - 5:17; 6:15; 9:1; 16:7; 24:12; 28:12; 35:18; 70:25; 74:2

**setting** [1] - 19:5

**settled** [3] - 24:2, 6

**settlement** [3] - 24:4, 7; 61:18

**settlements** [3] - 58:18; 61:21; 62:10

**settling** [1] - 28:20

**seven** [6] - 45:9; 46:1; 47:20; 71:18, 24

**seven-year** [1] - 47:20

**several** [4] - 13:16; 18:16; 53:19; 64:23

**severe** [4] - 38:5, 10, 15, 17

**severely** [2] - 30:18; 62:14

**snakes** [1] - 58:11

**shall** [16] - 7:17; 71:12, 15-17, 21, 23, 25; 72:3, 5, 14, 16, 20, 24; 73:11, 14

**sham** [1] - 56:5

**shame** [1] - 37:17

**share** [1] - 59:15

**shareholder** [1] - 54:22

**sharing** [2] - 58:3; 62:18

**Sheehy** [2] - 63:9, 21

**show** [2] - 35:9; 69:7

**showing** [2] - 10:20, 25

**shy** [1] - 3:25

**side** [2] - 9:17; 11:5

**sign** [1] - 72:7

**signed** [2] - 59:11; 68:21

**significant** [3] - 45:25; 51:11; 65:5

**similar** [1] - 69:24

**simple** [2] - 19:10; 22:2

**simplified** [1] - 70:8

**simply** [9] - 12:25; 19:10; 29:17; 34:4, 22; 56:10; 58:2; 60:17; 62:18

**sincere** [2] - 37:17; 48:18

**sit** [3] - 32:20; 37:13; 42:22

**sitting** [2] - 29:13; 31:18

**six** [1] - 35:2

**size** [1] - 61:10

**skills** [1] - 44:8

**slippery** [1] - 14:25

**slope** [1] - 15:1

**smart** [1] - 24:12

**society** [2] - 42:19; 71:3

**softens** [1] - 28:14

**solves** [1] - 29:3

**someone** [28] - 12:6, 12; 13:10; 19:25; 20:1, 18; 22:9, 24; 23:16; 24:12; 29:13; 31:19; 32:10; 33:23; 34:3, 25; 35:3, 20; 37:10; 41:5; 42:23; 52:9; 65:10

**somewhat** [2] - 15:15; 50:23

**son** [1] - 36:23

**soon** [2] - 47:14; 64:16

**sooner** [1] - 50:2

**sorry** [4] - 4:23; 32:9; 73:4; 75:10

**sort** [3] - 48:19; 49:11

**sorts** [1] - 28:23

**source** [1] - 55:3

**Southern** [2] - 11:14; 27:3

**speaks** [2] - 46:23, 25

**special** [5] - 7:15; 40:7; 71:13; 72:20

**specific** [2] - 67:14; 68:20

**specifically** [3] - 16:17; 26:18, 22

**Specifically** [2] - 4:10; 6:10

**spectacular** [1] - 33:9

**specter** [1] - 22:10

**speculation** [2] - 52:12

**spent** [4] - 11:16; 17:24; 42:4; 43:21

**spin** [3] - 30:2, 11; 31:4

**Sporkin** [3] - 40:15, 24; 41:1

**stable** [1] - 56:12

**stage** [1] - 23:13

**stages** [1] - 48:22

**stand** [2] - 39:9; 43:12

**standing** [4] - 9:19; 32:8

**stands** [2] - 10:11; 70:5

**Stanley** [1] - 40:14

**start** [4] - 12:2; 38:18, 21; 52:8

**started** [1] - 47:14

**state** [2] - 3:6; 16:4

**statement** [6] - 16:4; 17:14; 26:2; 28:17; 37:15; 60:25

**statements** [5] - 6:1; 58:25; 59:8, 19; 68:15

**states** [2] - 60:21; 65:11

**States** [18] - 3:5, 8:9; 11:18; 13:12; 18:10; 27:1; 65:14; 68:15; 71:13, 16, 20-23, 25; 72:3; 73:15

**stating** [1] - 59:13

**status** [1] - 55:13

**statute** [2] - 65:18; 69:11

**step** [4] - 5:20; 31:6; 47:4, 23

**stepped** [1] - 36:13

**steps** [1] - 61:7

**Steve** [2] - 27:25; 29:24

**Steven** [1] - 36:23

**still** [3] - 5:16; 26:5; 54:24

**sting** [1] - 39:8

**stipulation** [5] - 5:12; 25:21; 27:25; 28:1; 68:21

**stop** [1] - 57:5

**story** [1] - 21:9

**stress** [1] - 38:22

**strikes** [1] - 58:10

**Stringfellow** [2] - 63:6, 20

**stripped** [1] - 62:12

**stronger** [2] - 15:20; 39:1

**strongest** [1] - 37:22

**strongly** [2] - 15:22; 43:3

**struck** [1] - 18:3

**stuck** [1] - 24:10

**subject** [2] - 13:18; 73:7

**subjectivity** [2] - 13:19, 21

**subjects** [1] - 49:17

**submission** [4] - 10:5, 16; 33:3; 44:15

**submit** [5] - 33:8; 46:9; 49:12; 52:21, 25

**submitted** [5] - 4:19; 31:10; 59:13; 62:24; 72:8

**subordinated** [1] - 60:25

**subpoenaed** [1] - 28:7

**subpoenaing** [1] - 27:25

**subpoenas** [1] - 47:15

**substance** [2] - 27:15; 39:11; 63:1

**substantial** [9] - 6:13; 22:11; 36:8; 55:23; 56:3, 19; 62:19; 66:9

**substantially** [2] - 25:19; 59:22

**substitute** [2] - 7:12; 67:9

**success** [2] - 60:2; 66:23

**successful** [2] - 22:3; 57:10

**suffer** [4] - 13:9, 22; 14:1, 8

**sufficient** [5] - 5:18; 9:2; 28:3; 37:25; 69:12

**Sugarman** [1] - 18:24

**suggest** [2] - 48:17

**suggested** [1] - 29:18

**suggests** [2] - 24:21; 66:16

**Superseding** [2] - 72:11; 75:11

**supervised** [3] - 7:15; 72:14, 22

**supervision** [1] - 72:19

**support** [3] - 35:9; 63:2; 64:12

**supports** [2] - 16:3; 44:22

**supposed** [1] - 30:4

**Surely** [1] - 11:21

**surprised** [1] - 50:23

**surrender** [7] - 73:1, 7, 11; 74:2, 15, 19, 21

**surround** [1] - 38:20

**surrounding** [1] - 57:21

**suspicion** [1] - 15:20

**sweeping** [1] - 66:18

**swindled** [1] - 36:9

**system** [5] - 58:11, 20; 65:11, 21

**systematically** [1] - 66:5

## T

**table** [4] - 3:9, 12; 16:13; 75:4

**tainted** [5] - 19:9; 58:5, 22; 60:12; 62:12

**talented** [1] - 39:10

**talents** [1] - 64:21

**target** [1] - 26:23

**targets** [1] - 49:17

**task** [1] - 70:7

**teacher** [1] - 44:9

**team** [1] - 75:5

**telephone** [4] - 19:4; 22:7, 21, 25

**temper** [2] - 12:22; 39:17

**ten** [2] - 55:21; 73:23

**tendency** [1] - 50:10

**tens** [2] - 13:11; 34:20

**term** [4] - 7:14; 72:13, 22

**terms** [11] - 19:4; 22:12; 23:3; 28:25; 50:11; 51:24; 52:13; 70:22; 72:6, 15; 74:1

**terrible** [4] - 12:11; 42:15; 43:4

**terrific** [1] - 37:6

**terrorist** [1] - 34:10

**test** [1] - 50:7

**testimony** [1] - 31:3

**THE** [62] - 3:4, 15, 23; 4:3, 7, 25; 5:6, 12; 8:3, 6, 18, 20; 9:8, 11; 10:20; 14:22, 25; 15:3; 17:12, 22; 18:3, 9; 20:8, 11, 21:16; 22:13, 15, 18, 20; 23:5; 26:14; 30:8, 15, 25; 31:7; 32:5; 43:9, 12; 44:12; 47:1, 10, 20; 49:16; 50:4, 20; 51:22; 52:3; 53:1, 7, 11, 15; 73:5, 10, 18; 74:5, 10, 12, 17, 21; 75:7, 9, 14

**thereafter** [1] - 57:3

**Thereafter** [1] - 5:25

**therefore** [4] - 30:17; 47:8; 61:23; 62:19

**thereto** [1] - 30:1

**thick** [1] - 45:2

**Third** [2] - 34:2; 69:21

**thirteen** [2] - 26:8; 29:3

**Thomas** [1] - 3:12

**thousands** [2] - 9:23; 34:20

**three** [9] - 4:20; 6:12; 7:1, 15; 26:4; 31:8; 32:9; 67:1; 72:15

**Three** [1] - 35:14

**three-level** [2] - 6:12; 7:1

**three-year** [1] - 7:15

**throughout** [2] - 34:21; 65:20

**timely** [1] - 3:23

**today** [10] - 25:2; 36:13, 16; 44:19, 23; 45:7, 19; 48:18; 51:19; 73:23

**token** [1] - 50:4

**took** [5] - 17:5; 21:5; 29:19; 50:14; 61:7

**total** [3] - 7:3; 8:21; 71:16

**totally** [1] - 65:15

**toxic** [1] - 34:13

**track** [1] - 35:5

**trade** [1] - 41:21

**transaction** [3] - 16:6; 26:11; 29:4

**transcript** [3] - 16:1, 3; 32:11

**transfer** [2] - 72:1, 4

**transfers** [1] - 72:5

**trauma** [1] - 37:2

**treated** [1] - 59:19

**treatment** [1] - 69:19

**tremendous** [2] - 57:23; 64:9

**trial** [1] - 50:25

**tried** [1] - 16:20

**trouble** [1] - 33:23

**troubled** [2] - 21:17; 41:23

**true** [2] - 45:12; 61:1

**truly** [1] - 33:9

**truth** [1] - 31:2

**truthful** [1] - 58:21

**try** [5] - 22:2; 31:3; 39:7; 50:3

**trying** [4] - 19:11; 28:20; 29:13; 48:21

**tuition** [1] - 34:16

**turn** [2] - 27:21; 59:2

**turned** [1] - 25:20; 26:20; 28:8

**twelve** [1] - 38:12

**two** [25] - 4:25; 5:9, 20; 6:3, 18, 21, 23; 8:25; 14:19; 16:10; 17:2; 23:1; 28:18; 32:1, 16-17; 35:8; 38:15; 39:24; 40:1; 68:3, 24; 71:5; 74:1

**Two** [1] - 40:4

**two-level** [2] - 6:18, 21

**two-phase** [1] - 5:20

**two-step** [1] - 5:20

**typically** [1] - 55:21

---

### U

**U.S** [3] - 27:2; 72:17; 73:15

**U.S.C** [1] - 71:19

**ultimate** [1] - 36:18

**ultimately** [2] - 36:19; 70:20

**unable** [2] - 43:25; 61:23

**uncharacteristic** [2] - 50:20; 51:3

**under** [12] - 4:15; 15:9; 16:2; 23:12; 30:19; 33:3,

---

**JT** 46:10; 5:23; 59:18; 72:15; 73:18

**underlying** [1] - 75:11

**understatement** [1] - 16:6

**understood** [2] - 20:17; 27:17

**undertaken** [1] - 11:2

**undoubtedly** [1] - 64:13

**unequivocal** [1] - 67:6

**unequivocally** [1] - 63:10

**unfairly** [1] - 36:10

**unfolded** [1] - 17:23

**unfolds** [1] - 49:18

**unfortunately** [2] - 23:10; 35:25

**unimaginable** [1] - 65:17

**uninvolved** [1] - 29:7

**United** [18] - 3:5, 8-9; 11:18; 13:12; 18:10; 27:1; 65:14; 68:15; 71:13, 16, 19-20, 22-23, 25; 72:3; 73:15

**universities** [1] - 42:20

**unkindly** [1] - 40:10

**unless** [2] - 7:24; 22:21

**Unless** [1] - 5:2

**unlike** [2] - 68:6, 12

**unscrupulous** [1] - 62:2

**unwarranted** [1] - 67:16

**unwillingness** [1] - 48:10

**up** [12] - 12:4; 18:7; 19:5; 24:13; 26:6; 30:9; 31:17, 21; 35:22; 36:13; 39:10; 48:7

**urged** [1] - 37:24

**urges** [1] - 67:21

**USC** [1] - 11:9

**utter** [1] - 69:1

---

### V

**value** [2] - 26:6; 63:12

**various** [4] - 51:2; 54:21; 58:15; 59:19

**verbatim** [1] - 32:11

**versus** [1] - 3:5

**vested** [1] - 30:21

**via** [1] - 68:18

**vicarious** [1] - 45:17

**vicariously** [1] - 47:9

**vice** [1] - 3:12

**victims** [10] - 9:5, 8; 28:22; 34:10, 13; 63:6, 17, 19

**view** [6] - 14:12; 16:11; 58:6; 62:17; 68:24; 71:7

**viewed** [1] - 68:16

**views** [2] - 50:10; 54:9

**vigorously** [1] - 57:6

**violate** [2] - 41:25; 65:18

**violated** [1] - 25:17

**violations** [1] - 43:18

**Virginia** [2] - 74:9, 11

**virtue** [1] - 45:15

**vitiate** [1] - 27:9

**Vogel** [22] - 15:15, 17, 24; 18:4, 22; 19:7; 20:5, 12-13; 21:21; 23:8, 18, 20; 24:20; 45:22; 46:10; 59:8, 22;

---

**Vogel's** [1] - 15:6

**voice** [1] - 23:20

**volumes** [1] - 10:8

**Volumes** [1] - 4:12

**voluntarily** [1] - 66:23

---

### W

**wait** [2] - 49:18, 23

**waived** [2] - 4:1; 73:19

**walks** [1] - 63:3

**waste** [1] - 34:13

**watch** [1] - 64:24

**watching** [1] - 42:9

**water** [1] - 23:12

**ways** [4] - 9:22; 12:6; 31:18; 38:22

**weaker** [1] - 20:22

**wealth** [1] - 57:11

**wealthy** [1] - 34:4

**week** [1] - 41:11

**weight** [1] - 52:5

**Weiss** [132] - 3:5, 13; 4:3; 7:7, 9, 17; 8:9; 9:20; 10:9, 11; 11:11; 12:12, 17; 13:23, 25; 15:10, 20, 23; 16:4, 13; 17:4, 6, 14, 16; 18:20, 25; 19:3, 24; 20:3, 16-17, 20; 22:22; 23:19, 25; 24:12, 20, 22; 25:17, 23-24; 26:3, 5, 7-8; 27:9, 13, 23; 28:10, 18, 25; 29:6; 30:13, 18; 31:18, 22; 32:2; 34:7; 35:12, 20; 36:5, 10, 13, 22-23; 37:6, 14; 38:4, 11, 15, 17; 40:4, 11; 41:2, 17; 42:4, 10, 24; 44:17; 47:15; 48:3, 8-9; 50:6, 20, 24; 51:24; 53:22, 25; 54:2, 7, 20; 55:1, 8, 11, 19; 56:6, 14, 18, 23; 57:4, 12, 16; 58:24; 59:5, 12, 20; 60:3, 8, 16, 21, 23; 61:22; 62:5, 11; 63:7, 12; 64:16; 66:14, 21; 67:3, 5; 68:2, 9, 13, 18, 21; 73:18; 74:7

**Weiss'** [27] - 4:11, 15; 11:5; 16:8, 21; 17:9; 18:13; 19:22; 21:23; 54:11, 13, 23; 58:7; 62:24; 63:24; 64:1, 8, 14; 65:1, 8, 17, 23; 67:21; 68:24; 69:1; 70:11; 74:21

**well-deserved** [1] - 64:20

**well-established** [1] - 45:16

**West** [2] - 74:9, 11

**whatsoever** [1] - 24:21

**White** [1] - 12:21

**white** [2] - 42:3; 70:4

**whole** [2] - 25:1; 35:18

**wife** [1] - 64:10

**willing** [2] - 55:4; 66:11

**win** [1] - 14:20

**wisdom** [1] - 64:11

**wish** [7] - 9:6, 9; 43:9; 53:8; 67:17; 73:22; 75:5

**withdraw** [1] - 68:7

**witness** [4] - 29:23; 31:5, 7; 32:13

**witnesses** [1] - 31:1

**word** [5] - 13:18; 53:2, 4; 67:5

**words** [5] - 27:15; 36:21; 39:11; 40:20; 59:16

**worker** [1] - 36:10

**works** [6] - 47:18; 52:18, 22; 65:23, 25; 66:3

---

**world** [8] - 9:17; 28:21; 34:21; 42:5, 19; 43:1; 47:18; 65:14

**worse** [2] - 32:17

**write** [4] - 11:2-4; 40:2

**writing** [6] - 14:16; 21:13; 27:16; 30:1; 34:5; 37:20

**written** [4] - 40:17; 43:17, 24; 68:20

**wrongdoer** [1] - 43:23

**wrongful** [1] - 43:16

**wrote** [1] - 36:4

---

### Y

**year** [3] - 7:15; 35:3; 47:20

**years** [31] - 9:18; 11:16; 12:3; 13:10; 26:8; 27:6; 28:21; 29:3; 30:1; 32:8; 34:25; 35:14; 38:12; 40:25; 42:5, 18, 23; 43:15; 44:9; 45:9; 46:1, 20; 47:21; 64:7, 10, 16, 23; 66:2; 72:15

**York** [3] - 16:17; 72:6; 73:16

---

### Z

**zoning** [1] - 35:4