1    Thomas N. FitzGibbon (SBN: 169194)
    TNF@ptflaw.com
2    **PFEIFFER THIGPEN & FITZGIBBON LLP**
    233 Wilshire Boulevard, Ste. 220
3    Santa Monica, CA 90401
4    Telephone: (310) 451-5800
    Facsimile: (310) 451-1599
5

6    Luke A. McGrath *(Pro Hac Vice Pending)*
    LZM@bickelbrewer.com
7    James S. Renard *(Pro Hac Vice Pending)*
    JSR@bickelbrewer.com
8    **BICKEL & BREWER**
9    767 Fifth Avenue, 50th Floor
    New York, New York 10153
10    Telephone: 212-489-1400
11    Facsimile: 212-489-2384

12

13    Attorneys for Intervenor
    *Sam Wyly*

14

15          **UNITED STATES DISTRICT COURT**

16          **CENTRAL DISTRICT OF CALIFORNIA**

17

18    UNITED STATES OF AMERICA,     Case No. 2:05-CR-587-JFW-3
                                [Assigned to Hon. John F. Walter]
19         Plaintiff,

20       - against -            **INTERVENOR SAM WYLY'S**
                                **MOTION TO INTERVENE AND**
21                                  **FOR RELIEF FROM PROTECTIVE**
22    MILBERG WEISS BERSHAD &    **ORDER; MEMORANDUM OF**
    SCHULMAN LLP, DAVID J.      **POINTS AND AUTHORITIES IN**
23    BERSHAD, STEVEN G.         **SUPPORT**
    SCHULMAN, SEYMOUR M.
24    LAZAR, and PAUL T. SELZER    [Declaration of Luke McGrath
                                 concurrently filed]
25        Defendants.

26                             Date:    February 9, 2009
                            Time:    9:00 a.m.
27                             Room:    16

28

**Pfeiffer Thigpen & FitzGibbon LLP**
233 Wilshire Blvd., Suite 220
Santa Monica, California 90401

FILED
2009 JAN 20 AM 10: 51

**Pfeiffer Thigpen & FitzGibbon LLP**
233 Wilshire Blvd., Suite 220
Santa Monica, California 90401

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT:** The Motion to Intervene and for Relief from the Stipulated Protective Order (the "Motion") of proposed Intervenor Sam Wyly ("Wyly") will be heard on February 9, 2009, at 9:00 a.m., Courtroom 16 of the above-entitled Court, 321 N. Spring Street, Los Angeles, California. Wyly shall and hereby does move for an order (a) approving his intervention in this action and (b) granting relief from the Protective Order that would otherwise require return or destruction of documents relevant to two pending litigation matters in state and federal court in New York (the "Collateral Litigation").

This Motion is brought pursuant to Federal Rules of Criminal Procedure 16(d) and 47 and Central District of California Local Criminal Rule 57-1, and Federal Rules of Civil Procedure 24(a) and (b) and 26(c) and in accordance with the applicable Local Civil Rules on the grounds that the Court should not require or allow, based on the Protective Order in this action, the destruction of the important evidence held by defendants in this action that is sought by Wyly in the Collateral Litigation. The Motion is made following various conferences of counsel, both on the phone and by letter, pursuant to Civil Local Rule 7.3, which took place in December 2008.

This Motion is based on the facts as stated in this Notice of Motion, in the accompanying Memorandum Of Points And Authorities, the concurrently filed Declaration of Luke McGrath, as well as on all papers, pleadings and records on file in this action, as well as any argument of counsel at the hearing on the Motion.

DATED:  January 15, 2009

PFEIFFER THIGPEN & FITZGIBBON LLP
THOMAS N. FITZGIBBON

By: _____
Thomas N. FitzGibbon
Attorneys for Intervenor
*Sam Wyly*

# TABLE OF CONTENTS

Page

I.   PRELIMINARY STATEMENT ................................................................8

II.  STATEMENT OF FACTS ...................................................................9

A. Background Of The Collateral Litigation:  Wyly Seeks Relief
   From The CA Settlement And Pursues Malpractice Claims
   Against Milberg And Other Class Counsel. ...................................9

   1. Wyly seeks relief from the fraudulently-procured CA
      Settlement. ...............................................................9

      (a) Milberg's role in the CA Class Actions............................10

      (b) The full extent of the fraud and cover-up within CA came to
          light only after the settlement of the Class Actions.............11

      (c) As a result of Milberg's refusal to seek relief from the
          Class Settlement, Wyly pursues Rule 60(b) relief himself. .......12

   2. Wyly brings an action seeking damages for Class
      Counsel's malpractice.................................................13

      (a). This Court Approves The Protective Order In Connection
           With The United States Government's Prosecution Of
           Milberg And Certain Of That Firm's Former Partners
           And Paid Plaintiffs..............................................14

      (b) Milberg's Counsel Places Wyly On Notice That
          Milberg Will Return Or Destroy The Protected Information.........15

III. APPLICABLE LEGAL STANDARDS .........................................16

IV.  SUMMARY OF ARGUMENT ..............................................18

V.   ARGUMENT AND AUTHORITIES .......................................19

A. Wyly Is Entitled To Intervene To Seek Relief From The
   Protective Order. ........................................................19

   1. Intervention as of right..............................................19

   2. Permissive intervention ..............................................20

B. There Is No Immediate Need To Return Or Destroy The
   Protected Information, Which May Be Relevant To The
   Collateral Litigation, Pending A Proper Determination Of The
   Discoverability Of Those Documents. .....................................21

Pfeiffer Thigpen & FitzGibbon LLP
233 Wilshire Blvd., Suite 220
Santa Monica, California 90401

FPDOCS #13638 v2-Final_Version_-_Wyly_Motion_to_Intervene_1-15-09

MOTION OF SAM WYLY TO INTERVENE AND FOR RELIEF FROM PROTECTIVE
ORDER; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

1    1.  Neither the United States nor Milberg can demonstrate good
         cause for the immediate return or destruction of the Protected
2        Information pending a determination of their relevance to the
         Collateral Litigation ................................................................................22
3

4    2.  The Protected Information may be relevant in the Collateral
         Litigation and discoverable therein. .......................................................22
5

6    3.  To the extent that this Court is concerned with the protection
         of privacy or confidentiality interests, it can impose the same (or
7        even greater) restrictions on the use and disclosure of the
         Protected Information as those delineated in the Protective
8        Order.   .....................................................................................................26

9  VI.   CONCLUSION..........................................................................................27

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Pfeiffer Thigpen & FitzGibbon LLP
233 Wilshire Blvd., Suite 220
Santa Monica, California 90401

# TABLE OF AUTHORITIES

## CASES

*Arakaki v. Cayetano*,
 324 F.3d 1078 (9th Cir. 2003) ................................................................. 16, 19

*Beckman Indus., Inc. v. Int'l Ins. Co.*,
 966 F.2d 470 (9th Cir. 1992) ................................................................... *passim*

*Cal. ex rel. Lockyer v. United States*,
 450 F.3d 436 (9th Cir. 2006) .......................................................................... 19

*Davidson Pipe Co. v. Laventhol & Horwath*,
 120 F.R.D. 455 (S.D.N.Y. 1988) .................................................................... 25

*Davis v. Elandem Realty Co.*,
 226 A.D.2d 419 (N.Y. App. Div. 1996) .......................................................... 23

*Foltz v. State Farm Mut. Auto. Ins. Co.*,
 331 F.3d 1122 (9th Cir. 2003) .................................................................. *passim*

*Mattel, Inc. v. Bryant*,
 441 F. Supp. 2d 1081 (C.D. Cal. 2005) .......................................................... 16

*New York v. Wilder*,
 93 N.Y.2d 352 (N.Y. 1999) ............................................................................ 18

*Olympic Refining Co. v. Carter*,
 332 F.2d 260 (9th Cir. 1964) ..................................................................... 17-18

*Pub. Citizen v. Ligget Group, Inc.*,
 858 F.2d 775 (1st Cir. 1988) ........................................................................... 18

*Rojas v. Alexander's Dep't Store, Inc.*,
 924 F.2d 406 (2d Cir. 1990) ........................................................................... 24

*S. Cal. Hous. Rights Ctr. v. Los Feliz Towers Homeowners Ass'n*,
 2005 U.S. Dist. LEXIS 41106 (C.D. Cal. Apr. 25, 2005) ............................... 23

*San Jose Mercury News, Inc. v. United States Dist. Court—N. Dist. (San Jose)*,
 187 F.3d 1096 (9th Cir. 1999) .......................................................... 16, 17, 19-20

Pfeiffer Thigpen & FitzGibbon LLP
233 Wilshire Blvd., Suite 220
Santa Monica, California 90401

PTFDOCS-#15628 v2-Final_Version_-_Wyly_Motion_to_Intervene_1-15-08

MOTION OF SAM WYLY TO INTERVENE AND FOR RELIEF FROM PROTECTIVE
ORDER; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

*Shakur v. Nichols,*
    1990 WL 59548 (E.D.N.Y. May 1, 1990) ........................................................ 22, 24

*Sierra Club v. United States E.P.A.,*
    995 F.2d 1478 (9th Cir. 1993) ....................................................................16

*Torah Soft Ltd. v. Drosnin,*
    2003 WL 22024074 (S.D.N.Y. Aug. 28, 2003) ........................................24

*United Nuclear Corp. v. Cranford Ins. Co.,*
    905 F.2d 1424 (10th Cir. 1990) ...............................................................18

*United States ex. rel. McGough v. Covington Techs. Co.,*
    967 F.2d 1391 (9th Cir. 1992) ............................................................ 16, 19

*United States v. City of Los Angeles, Cal.,*
    288 F.3d 391 (9th Cir. 2002) .............................................................. 16, 20

*United States v. Int'l Bus. Machs. Corp.,*
    66 F.R.D. 215 (S.D.N.Y. 1974) ...............................................................25

*United States v. Or.,*
    913 F.2d 576 (9th Cir. 1990) ...................................................................19

*United States v. Schultz,*
    333 F.3d 393 (2d Cir. 2003) ....................................................................24

*Wilk v. Am. Med. Ass'n,*
    635 F.2d 1295 (7th Cir. 1980) .................................................................23

## FEDERAL STATUTES

Fed. R. Civ. P. 24(a)(2)..................................................................... 16, 19

Fed. R. Civ. P. 24(b)(2) .........................................................................16

Fed. R. Civ. P. 26(c) ..............................................................................22

Fed. R. Civ. P. 60(b) ........................................................................*passim*

Pfeiffer Thigpen & FitzGibbon LLP
233 Wilshire Blvd., Suite 220
Santa Monica, California 90401

Fed. R. Evid. 401 ................................................................................................17-18

## STATE STATUTES

N.Y. C.P.L.R. § 3101................................................................................................23

## OTHER AUTHORITIES

Arthur R. Miller & Richard L. Marcus, Federal Practice & Procedure § 2015 at
208 (2d ed. 1994) ................................................................................................25

Michael A. Perino, *The Milberg Weiss Prosecution: No Harm, No Foul?*, BRIEFLY . . .
PERSPECTIVES ON LEGISLATION, REGULATION AND LITIGATION, Vol. 11, No. 9,
May 2008     ................................................................................................27

Pfeiffer Thigpen & FitzGibbon LLP
233 Wilshire Blvd., Suite 220
Santa Monica, California 90401

MOTION OF SAM WYLY TO INTERVENE AND FOR RELIEF FROM PROTECTIVE
ORDER; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

## MEMORANDUM OF POINTS AND AUTHORITIES

Intervenor Sam Wyly ("Intervenor" or "Wyly"), who is plaintiff in a New York state court action against Milberg Weiss Bershad & Schulman LLP, now known as Milberg LLP ("Milberg"), and a movant for relief pursuant to Rule 60(b) of the Federal Rules of Civil Procedure before the United States District Court for the Eastern District of New York (the "New York Court") and the United States Court of Appeals for the Second Circuit (the state court action and the federal New York Court action are referred to as the "Collateral Litigation") submits this Memorandum Of Points And Authorities in support of his Motion to Intervene and for Relief from the Stipulated Protective Order entered by this Court on August 16, 2006 (the "Protective Order"), as follows:

## I.   PRELIMINARY STATEMENT.

Intervenor seeks relief to maintain the *status quo* to ensure that Milberg remains in possession and custody of documents that Milberg is preparing to "return or destroy" pursuant to the Protective Order (the "Protected Information"). Intervenor believes that such confidential information may be relevant to the Collateral Litigation and, thus, seeks to postpone and prevent the destruction or return of those materials pending a determination of their discoverability in the Collateral Litigation. More specifically, the Protected Information will likely be the subject of discovery requests in the Collateral Litigation related to Computer Associates International, Inc., now known as CA, Inc. ("CA" or the "Company"). The Collateral Litigation is comprised of two actions: (i) a motion for relief from the settlement of securities class actions arising from the accounting scandal at CA; and (ii) a malpractice action alleging that Milberg and the other co-lead counsel who negotiated that settlement sacrificed the best interests of CA's injured shareholders in order to enrich themselves at the shareholders' expense. The facts and circumstances in the CA matter are similar to those underlying the indictments and guilty pleas in this action, the Milberg criminal matter – indicating

Pfeiffer Thigpen & FitzGibbon LLP
233 Wilshire Blvd., Suite 220
Santa Monica, California 90401

**Pfeiffer Thigpen & FitzGibbon LLP**
233 Wilshire Blvd., Suite 220
Santa Monica, California 90401

1   that some or all of the Protected Information may be relevant in the Collateral

2   Litigation.

3   Unfortunately, Milberg has left Wyly to surmise the evidentiary value of the

4   Protected Information without providing him with access thereto.  In that regard, it is

5   significant that Milberg considered the Protected Information sufficiently connected to

6   the Collateral Litigation that it notified Wyly of its plan to return or destroy those

7   materials.  In addition, although the United States has summarily asserted that the

8   Protected Information is not "material" (because Wyly can purportedly rely on

9   publicly-available information concerning Milberg), it failed to describe those

10  documents by topic or subject matter.  The representations from Milberg and the

11  United States fail to answer whether the Protected Information contains information

12  that should be the subject of discovery in the Collateral Litigation.  In light of that

13  unanswered question, Intervenor is forced to seek a judicial determination on the issue

14  so that he may protect his right to full and fair discovery in the Collateral Litigation.

15  Accordingly, Intervenor requests appropriate relief from the Protective Order to ensure

16  that a judicial determination is made with respect to the relevance of the Protected

17  Information to the Collateral Litigation.

18  II.   **STATEMENT OF FACTS.**

19  A.   **Background Of The Collateral Litigation:  Wyly Seeks Relief From The
      CA Settlement And Pursues Malpractice Claims Against Milberg And
20    Other Class Counsel.**

21  *1.   Wyly seeks relief from the fraudulently-procured CA Settlement.*

22  Wyly was a significant investor in CA, having exchanged his interest in a public

23  company (of which he was a founder) to CA in 2000 for CA stock and stock options.

24  (Declaration of Luke McGrath, dated Jan. 14, 2009 (the "McGrath Decl." or "MGD"),

25  Exhibit ("Ex." or "MGDE") 1; MGDE 2, Declaration of Sanjay Kumar, dated Aug.

26  27, 2008 (the "First Kumar Decl.") at ¶¶ 36-46).  Unbeknownst to Wyly, CA had

27  intentionally inflated its securities for more than a decade by engaging in fraudulent

28

Pfeiffer Thigpen & FitzGibbon LLP
233 Wilshire Blvd., Suite 220
Santa Monica, California 90401

1  revenue-recognition practices.  (MGDE 3, Deferred Prosecution Agreement, *United*

2  *States v. Computer Associates Int'l, Inc.*, No. 04-cr-837 (E.D.N.Y. Sept. 22, 2004) (the

3  "DPA"); MGDE 2, First Kumar Decl. at ¶¶ 7, 14-35; MGDE 4-9, MGDE 10, Report

4  of the Special Litigation Committee of CA, Inc., dated Apr. 13, 2007 (the "SLC

5  Report") at 4-9 (discussing how the improper accounting practices at CA started under

6  Wang's leadership).) Ultimately, as a result of the fraud, CA stock and options

7  plummeted in value, and injured shareholders filed class actions in connection with the

8  fraud at the Company (the "Class Actions").1/

9            (a)       Milberg's role in the CA Class Actions.

10           Milberg, along with certain other counsel, represented the named plaintiffs and

11  the class members in the Class Actions. (MGDE 18.) In October 1998, a few months

12  after the first class actions were filed, Robert P. Sugarman, then a partner at Milberg,

13  wrote a letter filed in the CA matter, indicating that he worked on case-starting the CA

14  litigation. (MGDE 11 (demonstrating that Sugarman was an attorney to be noticed in

15  the CA litigation and that on October 29, 1998, he wrote a letter to Laura Giangarra re:

16  the consolidation of the Computer Associates securities actions under Master Docket

17  # 98 CV 4839).) Based upon information and belief, Sugarman is an un-indicted

18  "conspiring former partner" who was the head of Milberg's case-starting department.

19  (MGDE 12-16, 53 (articles and case documents describing how Sugarman, among

20  other illegal acts, provided kickbacks to paid plaintiffs and to stockbrokers for referrals

21  for paid plaintiffs).) This department was separate from the litigation department at the

22  Milberg firm, and instead of performing litigation department duties, the case-starting

23  department apparently identified potential new cases and cultivated relationships with

24  plaintiffs willing to act as lead plaintiffs in class action lawsuits.  Sugarman reportedly

25

26  1/       The Class Actions were styled: *Barroway v. Computer Associates et al.*, No. 98-cv-
27  4839 ("98-4839") (E.D.N.Y. filed July 23, 1998) and *In re Computer Associates (2002)*
    *Class Action Securities Litig.*, No. 02-cv-1226 ("02-1226") (E.D.N.Y. filed Feb. 25, 2002).
28

Pfeiffer Thigpen & FitzGibbon LLP
233 Wilshire Blvd., Suite 220
Santa Monica, California 90401

1  was at the center of Milberg's kickback scheme up to 1999 and was identified as

2  "Partner E" in the second superseding indictment (the "Second Superseding

3  Indictment") and in the case disposition agreement which Milberg entered into with the

4  United States in June 2008 (the "CDA"). (MGDE 12-16, 53.) Sugarman reportedly

5  cooperated with the United States in the Milberg prosecution and is alleged to have:  (i)

6  paid kickbacks to named plaintiffs in class action suits;  (ii) made and caused to be

7  made false and misleading representations in complaints, motions and other pleadings;

8  (iii) prepared paid plaintiffs for their testimony in a manner intended to assure that they

9  would lie when questioned concerning the existence of any payments or payment

10  arrangements; and (iv) paid several stockbrokers for referring their clients and other

11  individuals to serve as named plaintiffs. (MGDE 13-14.)

       (b)   <u>The full extent of the fraud and cover-up within CA came to light</u>
<u>only after the settlement of the Class Actions</u>.

14       In December 2003, the New York Court approved the settlement of the Class

15  Actions (the "Class Settlement"). (MGDE 17.) Milberg, along with Stull, Stull & Brody

16  and Schiffrin & Barroway, acted as co-lead counsel ("Class Counsel") for the settling

17  class of injured shareholders (the "Settlement Class"). (MGDE 18.) Wyly was a

18  member of the Settlement Class and is considered bound by the Class Settlement.

19  (MGDE 19 at 9.) Pursuant to the Class Settlement, the New York Court awarded Class

20  Counsel 1,443,673 shares of CA stock as attorneys' fees, a lion's share of which the

21  New York Court granted to Milberg, which firm reportedly pocketed approximately

22  $40 million in fees. (MGDE 17 at ¶ 13; MGDE 20.)

23       Following the Class Settlement, CA's shareholders learned that the Company's

24  most senior executives (including Charles Wang, CA's founder, and Sanjay Kumar,

25  CA's former CEO and Chairman) perpetrated a fraud and led a massive cover-up of

26  that fraud – all of which tainted the Class Settlement. (MGDE 2-10.) When Wyly

27  became aware that CA executives, directors, and professionals obtained the releases

28  provided by the Class Settlement under false pretenses, he wrote and requested that

1   Milberg file a motion pursuant to Rule 60(b) of the Federal Rules of Civil Procedure

2   ("Rule 60(b)") to relieve the Settlement Class from the final judgment approving the

3   Class Settlement. (MGDE 21-22 (explaining that Wyly learned that, among other

4   misconduct, defendants in the Class Actions improperly concealed and failed to

5   produce numerous boxes of documents that contained crucial evidence demonstrating

6   that executives at CA had engaged in the fraud alleged in the Class Actions.)) At a

7   hearing before the New York Court just ten days earlier, Milberg advised the court that

8   CA's misconduct, "either intentionally or necessarily had the effect of making it more

9   difficult to prosecute [the Class Actions] and therefore recovering less."(MGDE 23 at

10  11:5-25.) Remarkably, despite advising the New York Court that CA's misconduct and

11  fraud on the New York Court lowered the value of the Class Settlement, Milberg

12  refused to seek to set aside the Class Settlement. (MGDE 24.) Of course, by that time,

13  Milberg had already secured approximately $40 million in legal fees and was itself

14  reeling from its own government probe. (MGDE 17, 20, 25 (reporting that the

15  investigation into Milberg first came to light in 2002).) As such, it was loathe to reopen

16  any settlement for which it had already been paid.

        (c)   <u>As a result of Milberg's refusal to seek relief from the Class</u>

17

18  <u>Settlement, Wyly pursues Rule 60(b) relief himself.</u>

19        Undeterred, Wyly and other Wyly family interests (the "Wyly Movants")

20  independently pursued relief from the Class Settlement by filing a motion under

21  Rule 60(b) (the "Rule 60(b) Motion") to vacate the Class Settlement and accompanying

22  releases. (MGDE 26.) The Rule 60(b) Motion asserted that the New York Court should

23  grant relief from the Class Settlement based upon new evidence, misconduct, and fraud

24  upon the court. (MGDE 26 at 16-24.) *See also* FED. R. CIV. P. 60(b). Years later, in April

25  2007, CA's own Special Litigation Committee (the "SLC") "publicly tie[d] Wang to

26  what the government has described as a $2.2 billion accounting fraud." (MGDE 27.)

27  The SLC concluded that Rule 60(b) relief was appropriate and instructed CA to pursue

28

Pfeiffer Thigpen & FitzGibbon LLP
233 Wilshire Blvd., Suite 220
Santa Monica, California 90401

MOTION OF SAM WYLY TO INTERVENE AND FOR RELIEF FROM PROTECTIVE
ORDER; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

1    Rule 60(b) relief to recover at least $500 million from Wang in damages related to his

2    conduct. (MGDE 10, SLC Report at 11.)

3        Notwithstanding the Company's admission that Rule 60(b) relief was justified,

4    on August 2, 2007, the New York Court dismissed all pending Rule 60(b) motions.

5    (MGDE 28.) In its decision, the court stated that the "heart of the issue" was "what

6    was known and not known to counsel who actually negotiated" the Class Settlement.

7    (MGDE 28 at 4.) The Wyly Movants – and CA – appealed the New York Court's

8    decision and that appeal is fully briefed and scheduled for oral argument before the

9    Second Circuit Court of Appeals in March 2009. (MGDE 29-32 (containing Notice of

10   Appeal and three docket sheets).)

11       2.    *Wyly brings an action seeking damages for Class Counsel's malpractice.*

12       On November 23, 2007, the Wyly Movants filed a complaint against Class

13   Counsel and Lerach Coughlin Stoia Geller Rudman & Robbins ("Lerach Coughlin") in

14   the Supreme Court of New York (the "Malpractice Action").  The Malpractice Action

15   asserts, in relation to Class Counsel's representation of the Settlement Class, claims of:

16   (i) breach of fiduciary duty;  (ii) malpractice;  (iii) unjust enrichment;  and (iv) fraud.

17   (MGDE 33-34 (including amended complaint which added a claim of attorney

18   misconduct under Section 487 of the New York Judiciary Law and added Melvyn

19   Weiss, Steven Schulman, Barry Weprin, Jules Brody, Richard Schiffrin, Andrew

20   Barroway, George Bauer III, William Lerach, and Lee Weiss as named defendants).)

21   Specifically, the complaint alleges that at least two plaintiffs in the CA matter, Bruce

22   Montague and Mishal Tehrani, appeared as plaintiffs in multiple class actions in which

23   Milberg or other defendant law firms were co-lead counsel. (MGDE 34 at ¶¶ 49-50.)

24       In addition, the complaint alleges that Milberg filed with the New York Court a

25   request for reimbursement of costs for Walter Martin, a lawyer who acted as a

26   representative plaintiff in the CA matter, in the amount of $23,400, which was more

27   than double any other request and represents 40% of the total $53,910 requested by all

28   lead plaintiffs and class representatives. (MGDE 34 at ¶ 51.) According to Milberg's

Pfeiffer Thigpen & FitzGibbon LLP
233 Wilshire Blvd., Suite 220
Santa Monica, California 90401

request for reimbursement, Martin sought compensation at his hourly rate of $200 for, among other things, reading the newspaper. (MGDE 34 at ¶ 52; MGDE 35.)

    (a)   <u>This Court Approves The Protective Order In Connection With The United States Government's Prosecution Of Milberg And Certain Of That Firm's Former Partners And Paid Plaintiffs.</u>

In May 2006, the United States brought charges against Milberg and other co-conspirators resulting from an illegal kickback scheme through which Milberg paid millions of dollars to individuals in exchange for their serving as named plaintiffs in class and shareholder derivative action lawsuits. (MGDE 36-37.) The Second Superseding Indictment in the Milberg matter described a conspiracy involving obstruction of justice, perjury, bribery, and fraud, and alleged that Milberg used the same plaintiffs in multiple litigations and paid those plaintiffs improper kickbacks, in order to control those litigations. (MGDE 15.) To conceal that illegal scheme from the judges and other parties involved in those numerous lawsuits, Milberg and its senior partners made – and caused plaintiffs who were surreptitiously paid to also make – false and misleading statements in court filings and in sworn depositions. (MGDE 15 at ¶ 27.)

During the prosecution, Milberg and certain of its former partners and paid plaintiffs requested that the United States provide them with information described in Rule 16(a)(1) of the Federal Rules of Criminal Procedure. (MGDE 38 (containing the Protective Order in this action).) Both Milberg and the United States agreed that those materials should be protected from public disclosure and, therefore, deemed them "Protected Information." (MGDE 38.) Accordingly, they stipulated to the Protective Order and sought the Court's approval. (MGDE 38.)

On August 16, 2006, this Court entered the Protective Order. (MGDE 38.) The Protective Order defines "Protected Information" as: (i) grand jury transcripts;  (ii) documents marked as grand jury exhibits;  (iii) "confidential information" (defined as private information relating to third parties such as their dates of birth, Social Security

numbers, residential addresses, telephone numbers, telephone records, bank account information, tax and other financial records, and medical information); and (iv) "witness statements" (defined as witness statements and memoranda of interviews of witnesses). (MGDE 38 at 1-2.) Under the Protective Order, Milberg agreed to return or destroy the Protected Information at the conclusion of the criminal case against Milberg. (MGDE 38 at 5, ¶ 9.)

In June 2008, Milberg entered into the CDA and thus avoided prosecution. (MGDE 14.) Pursuant thereto, Milberg acknowledged that its partners engaged in the illegal kickback scheme alleged in the Second Superseding Indictment and that, once it learned about the United States' investigation into that scheme, it failed to conduct an independent internal investigation and delayed taking steps to ensure that the illegal conduct would stop. (MGDE 14 at Statement of Admitted Facts at ¶¶ 4-26.) Shortly after Milberg entered into the DPA, this Court dismissed the indictments as to Milberg, which concluded the criminal prosecution of the firm. (MGDE 55.)

(b)   Milberg's Counsel Places Wyly On Notice That Milberg Will Return Or Destroy The Protected Information.

On December 1, 2008, Milberg's counsel in the Malpractice Action, Gregory P. Joseph, notified Wyly that Milberg would return or destroy the Protected Information unless Wyly made a motion seeking relief from the Protective Order. (MGDE 39.) Milberg asserted that it could not reveal the substance of the Protected Information, but informed Wyly that Milberg would not take any position on Wyly's application for relief from the Protective Order. (MGDE 40.)

Shortly thereafter, the United States informed Wyly that it did not "see a basis to modify the Protective Order" because it did not "believe that Milberg is in possession of any Protected Information that would be material to your case, particularly in light of the public admissions of the firm and its principles made in the Milberg criminal case that are already available to you." (MGDE 41.) However, the United States did not

Pfeiffer Thigpen & FitzGibbon LLP
233 Wilshire Blvd., Suite 220
Santa Monica, California 90401

1  state whether it would oppose a motion by Wyly to seek relief from the Protective

2  Order. (MGDE 41.)

3      As a result of the foregoing, and in order to prevent the premature return or

4  destruction of the potentially-relevant Protected Information, Wyly files this motion to

5  intervene and for relief from the Protective Order.

6  **III.**  **APPLICABLE LEGAL STANDARDS.**

7      Pursuant to Rule 24(a)(2) of the Federal Rules of Civil Procedure, an applicant

8  establishes intervention as of right by demonstrating that: (i) the application is timely;

9  (ii) a "significantly protectable interest" exists relating to the property or transaction

10  that is the subject of the action; (iii) the disposition of the action may impair or impede

11  the party's ability to protect that interest;  and (iv) the interest is not adequately

12  represented by existing parties in the lawsuit. *Arakaki v. Cayetano*, 324 F.3d 1078, 1083

13  (9th Cir. 2003);  *Mattel, Inc. v. Bryant*, 441 F. Supp. 2d 1081, 1094-95 (C.D. Cal. 2005);

14  Fed. R. Civ. P. 24(a)(2).  A significant protectable interest is an interest "protected

15  under some law" and if the "resolution of the [intervenor's] claims will actually affect

16  the applicant." *United States v. City of Los Angeles, Cal.*, 288 F.3d 391, 398 (9th Cir. 2002).

17  In determining intervention as of right, the court interprets these requirements broadly

18  in favor of intervention, guided primarily by practical and equitable considerations. *See*

19  *United States ex. rel. McGough v. Covington Techs. Co.*, 967 F.2d 1391, 1394 (9th Cir. 1992)

20  ("Generally Rule 24(a)(2) is construed broadly in favor of proposed intervenors . . . .");

21  *see also Sierra Club v. United States E.P.A.*, 995 F.2d 1478, 1481 (9th Cir. 1993);  *City of Los*

22  *Angeles, Cal.*, 288 F.3d at 397-98.

23      When no intervention as of right exists, an applicant establishes permissive

24  intervention pursuant to Rule 24(b)(2) of the Federal Rules of Civil Procedure if the

25  applicant can demonstrate that: (i) the application is timely;  (ii) there is an independent

26  ground for jurisdiction;  and (iii) there is a common question of law and fact between

27  the applicant's claim or defense and the main action. *Beckman Indus., Inc. v. Int'l Ins. Co.*,

28  966 F.2d 470, 473 (9th Cir. 1992);  *San Jose Mercury News, Inc. v. United States Dist.*

Pfeiffer Thigpen & FitzGibbon LLP
233 Wilshire Blvd., Suite 220
Santa Monica, California 90401

MOTION OF SAM WYLY TO INTERVENE AND FOR RELIEF FROM PROTECTIVE
ORDER; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

Pfeiffer Thigpen & FitzGibbon LLP
233 Wilshire Blvd., Suite 220
Santa Monica, California 90401

1    *Court—N. Dist. (San Jose)*, 187 F.3d 1096, 1100 (9th Cir. 1999).  In meeting these

2    requirements, applicants need not establish a jurisdictional basis when they do not seek

3    to litigate a claim on the merits and merely ask a court to modify a protective order.

4    *Beckman Indus., Inc.*, 966 F.2d at 473 ("Intervenors do not ask the district to rule on

5    additional claims or seek to become parties to the action.  They ask the court only to

6    exercise that power which it already has, i.e., the power to modify the protective order.

7    For that reason, no independent jurisdictional basis is needed.").  Furthermore,

8    applicants are not required to show a strong nexus of fact or law when only challenging

9    a protective order.  *San Jose Mercury News*, 187 F.3d at 1100; *Beckman Indus., Inc.*, 966

10   F.2d at 474.

11          Upon establishing a right to intervention, a party to a collateral litigation is

12   entitled to modification of a protective order if:  (i) the requested discovery is relevant

13   to the collateral proceeding and would be generally discoverable therein;  and (ii) no

14   party opposing modification can make a showing of good cause overriding the needs of

15   the parties in the collateral litigation and the interests of justice in avoiding duplicative

16   discovery. *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1131-32 (9th Cir. 2003)

17   (requiring a party opposing modification of a protective order to make a showing of

18   good cause for continued protection when the documents subject to the protective

19   order are relevant to the collateral proceeding because "[t]his court strongly favors

20   access to discovery materials to meet the needs of parties engaged in collateral

21   litigation" in order to avoid "the wasteful duplication of discovery");  *see Beckman Indus.,*

22   *Inc.*, 966 F.2d at 475-76 (9th Cir. 1992);  *Olympic Refining Co. v. Carter*, 332 F.2d 260, 264-

23   66 (9th Cir. 1964). Relevance to the collateral proceeding is determined by analyzing the

24   degree of similarity in facts, parties, and issues between the collateral proceeding and

25   the suit covered by the protective order. *Foltz*, 331 F.3d at 1132 ("[R]elevance hinges on

26   the degree of overlap in facts, parties, and issues between the suit covered by the

27   protective order and the collateral proceedings.") (citations omitted);  *see* FED. R. EVID.

28   401 ("'Relevant evidence' means evidence having any tendency to make the existence

of any fact that is of consequence to the determination of the action more probable or less probable than it would without the evidence."); *see also* Notes to FED. R. EVID. 401 ("The rule uses the phrase 'fact that is of consequence to the determination of the action' . . . it has the advantage of avoiding the loosely used and ambiguous word 'material.'"); *New York v. Wilder*, 93 N.Y.2d 352, 356-57 (N.Y. 1999) ("Evidence is relevant if it has any tendency in reason to prove the existence of any material fact.") (citing PRINCE, RICHARDSON ON EVIDENCE § 4-101, at 136 (Farrell 11th ed. 1995; Cum. Supp. 1997-2008).

Reliance on a blanket protective order and broad allegations of harm – unsubstantiated by specific examples or articulated reasons – cannot justify a refusal to modify a protective order. *Beckman Indus., Inc.*, 966 F.2d at 476; *Foltz*, 331 F.3d at 1133. Blanket protective orders are those protective orders that grant protection to categories of documents without a showing of good cause for the protection as to any individual document. *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427-28 (10th Cir. 1990); *Pub. Citizen v. Ligget Group, Inc.*, 858 F.2d 775, 790 (1st Cir. 1988). Nor does the mere presence of confidential information in documents constitute good cause for refusal to modify a protective order where the confidential information can be redacted or otherwise protected. *Foltz*, 331 F.3d at 1136-37. In those circumstances, the court may protect legitimate interests in privacy or confidentiality by imposing the same restrictions on use and disclosure contained in the original protective order on the party seeking modification of that order. *Olympic Refining Co.*, 332 F.2d at 266; *Beckman Indus., Inc.*, 966 F.2d at 475; *United Nuclear Corp.*, 905 F.2d at 1428.

## IV.   <u>SUMMARY OF ARGUMENT</u>

Wyly is entitled to relief for two reasons. *First*, Wyly is entitled to intervene to seek relief from the Protective Order. *Second*, there is no immediate need to return or destroy the Protected Information, which may be relevant to the Collateral Litigation, pending a proper determination of the discoverability of those documents.

Pfeiffer Thigpen & FitzGibbon LLP
233 Wilshire Blvd., Suite 220
Santa Monica, California 90401

## V.   ARGUMENT AND AUTHORITIES

### A.   Wyly Is Entitled To Intervene To Seek Relief From The Protective Order.

#### 1.   Intervention as of Right

Wyly meets all four of the factors under Rule 24(a)(2) of the Federal Rules of Civil Procedure and is entitled to intervene as of right. Fed. R. Civ. P.  24(a)(2); *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003). *First*, he filed this application for intervention timely—shortly after counsel for Milberg notified Wyly of the Protective Order and prior to the deadline set by the United States for the return or destruction of the Protected Information. (MGDE 39 (notifying counsel for Wyly of the Protective Order and that Milberg must return or destroy the Protected Information by December 19, 2008).  The United States subsequently extended the December 19, 2008 deadline until January 31, 2009); MGDE 41.) *See San Jose Mercury News*, 187 F.3d at 1100-01 (considering three factors to determine whether motion to intervene was timely:  (1) the stage of the proceeding in which intervention is sought;  (2) the prejudice to other parties;  and (3) the reason for and length of any delay);  *see United States ex rel. McGough*, 967 F.2d at 1395 (explaining prejudice to other parties occurs "where intervention would seriously disrupt a delicate or complex settlement") (citing *United States v. Or.*, 913 F.2d 576, 588-89 (9th Cir. 1990)).  To date, neither Milberg nor the United States has asserted any actual or potential prejudice. (MGDE 40-42.) Furthermore, Wyly's motion does not prejudice either Milberg or the United States, and does not disrupt the CDA in any manner.  *United States ex rel. McGough*, 967 F.2d at 1395.

*Second*, Wyly has a significant protectable interest in the Protected Information because those materials may be relevant to, and discoverable in, the Collateral Litigation. *Cal. ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006) ("An applicant has a 'significant protectable interest' in an action if (1) it asserts an interest that is protected under some law, and (2) there is a 'relationship' between its legally protected interest and the plaintiff's claims."). Absent relief from the Protective Order,

Pfeiffer Thigpen & FitzGibbon LLP
233 Wilshire Blvd., Suite 220
Santa Monica, California 90401

1  Milberg will return or destroy this material, relieving itself of possession and custody of

2  any relevant documents that otherwise would be discoverable by Wyly in the Collateral

3  Litigation. (MGDE 39.)

4       *Third*, neither Milberg nor the United States adequately represents Wyly's

5  interests. *See City of Los Angeles*, 288 F.3d at 398 (discussing the factors to determine

6  whether a present party to the litigation adequately represents the intervenor's interest:

7  (1) whether the present party will "undoubtedly" make all the intervenor's arguments;

8  (2) whether the present party is willing to make all such arguments;  and (3) whether the

9  intervenor could offer necessary elements that the other party would neglect). Milberg

10  is adverse to Wyly in the Malpractice Action, and does not take any position as to this

11  motion. (MGDE 33-34, 40.) Likewise, the United States, while not adverse to Wyly

12  here, cannot protect Wyly's interests because it has no interest in the Malpractice

13  Action. (MGDE 33-34, 41.)

14       *Fourth*, without intervention, Wyly's interests will be seriously impaired.  As

15  discussed above, unless this Court grants the requested relief, the Protected

16  Information will either be destroyed or returned to the United States, removing

17  otherwise discoverable materials from Milberg's possession and custody. Accordingly,

18  Wyly may intervene as of right.

19     *2.*   *Permissive Intervention*

20       In the alternative, Wyly is entitled to permissive intervention to seek relief from

21  the Protective Order. As discussed above, Wyly timely filed this application. *See San Jose*

22  *Mercury News*, 187 F.3d at 1100-01. In addition, a common question of law and fact

23  exists between Wyly's claims and the criminal proceedings before this Court. Because

24  Wyly is seeking intervention for the purpose of modifying a protective order, Wyly

25  need not demonstrate an independent jurisdictional basis or a strong nexus of fact or

26  law, but only must show that he timely filed this motion and that a common question

27  of law or fact exists between this action and the Collateral Litigation. *Beckman Indus.,*

28  *Inc.*, 966 F.2d at 473-74; *San Jose Mercury News*, 187 F.3d at 1100.  Milberg acknowledged

Pfeiffer Thigpen & FitzGibbon LLP
233 Wilshire Blvd., Suite 220
Santa Monica, California 90401

MOTION OF SAM WYLY TO INTERVENE AND FOR RELIEF FROM PROTECTIVE
ORDER; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

in the CDA that its partners engaged in an illegal kickback scheme with "professional," paid plaintiffs in class action suits and concealed the illegal scheme by making, and causing to be made, false statements to judges and other parties in those litigations. (*See generally* MGDE 14.) Milberg appears to have used professional, paid plaintiffs in the CA matter as well, and may have paid one plaintiff by falsely applying to the Court for reimbursement of more than $23,000 in inflated costs, as explained above.

Indeed, at the heart of the Malpractice Action are the legal and factual questions of whether: (i) Milberg gained co-lead counsel status by using of professional plaintiffs and/or providing representative plaintiffs with illegal kick-backs, and (ii) such wrongful acts contributed to Class Counsel's breach of the duty of due care and resulted in malpractice in the Class Actions. Those same questions pertain to Milberg's knowledge at the time of the Class Settlement, which is at the heart of the 60(b) Motion. (MGDE 28 at 4.) Accordingly, common questions of law and fact are shared between the Milberg matter and the Collateral Litigation, entitling Wyly to permissive intervention and a right to seek relief from the Protective Order.

**B.   There Is No Immediate Need To Return Or Destroy The Protected Information, Which May Be Relevant To The Collateral Litigation, Pending A Proper Determination Of The Discoverability Of Those Documents.**

The equities favor granting Wyly relief from the Protective Order for three reasons. *First*, neither the United States nor Milberg can demonstrate good cause for the immediate return or destruction of the Protected Information pending a determination of their relevance to the Collateral Litigation. *Second*, the Protected Information may be relevant in the Collateral Litigation and discoverable therein. *Third*, to the extent that this Court is concerned with the protection of privacy or confidentiality interests, it can impose the same (or even greater) restrictions on the use and disclosure of the Protected Information as those delineated in the Protective Order.

**Pfeiffer Thigpen & FitzGibbon LLP**
233 Wilshire Blvd., Suite 220
Santa Monica, California 90401

Pfeiffer Thigpen & FitzGibbon LLP
233 Wilshire Blvd., Suite 220
Santa Monica, California 90401

1    *1. Neither The United States Nor Milberg Can Demonstrate Good Cause For The Immediate Return Or Destruction Of The Protected Information Pending A Determination Of Their Relevance To The Collateral Litigation.*

3    Relief from a protective order is appropriate where no party opposing the motion raises good cause to deny such relief. Fed. R. Civ. P. 26(c); *Beckman Indus., Inc.*, 966 F.2d at 476; *Foltz*, 331 F.3d at 1133. This Court should grant relief from the Protective Order to preserve the *status quo* because neither the United States nor Milberg can articulate any specific reasons to immediately return or destroy the Protected Information. Milberg takes no position on this application, (MGDE 40) and the United States merely asserts its belief that the Protected Information is not "material" to the Collateral Litigation. (MGDE 41.)

11    The United States' position is unclear. It does not appear to have conducted any analysis of the Protected Information to support its assertion and, in fact, the United States does not possess sufficient knowledge of the Collateral Litigation to conduct such an analysis. In any event, assuming *arguendo*, that the United States' position is correct, this Court may nonetheless grant relief from the Protective Order because *relevance*, and not materiality (or admissibility), is the correct standard upon which to base this Court's determination. *See Foltz*, 331 F.3d at 1131-32; *Beckman Indus., Inc.*, 966 F.2d at 475-76; *see also Shakur v. Nichols*, 1990 WL 59548, at *1 (E.D.N.Y. May 1, 1990) (evidence need not be admissible to be relevant).

20    *2. The Protected Information May Be Relevant In The Collateral Litigation And Discoverable Therein.*

22    Until Wyly can confirm that no information included in the Protected Information is relevant to the Collateral Litigation, Wyly requests that this Court maintain the *status quo* by granting relief from the Protective Order. Collateral litigants are entitled to modification of a protective order when they demonstrate the relevance of the protected discovery in the collateral proceeding and its general discoverability therein. *Id.* Discovery is considered relevant to the collateral proceeding based upon the "overlap" of the facts, parties, and issues between the two proceedings. *Id.*

PTFDOCS-#153628-v3-Final_Version_-_Wyly_Motion_to_Intervene_1-15-09

Pfeiffer Thigpen & FitzGibbon LLP
233 Wilshire Blvd., Suite 220
Santa Monica, California 90401

1  Materiality is not a consideration in determining relevance. *Id.* Furthermore, parties may

2  obtain discovery regarding any matter, not privileged, which is relevant to the subject

3  matter involved in the pending action if the information sought appears reasonably

4  calculated to lead to the discovery of admissible evidence. *Wilk v. Am. Med. Ass'n*, 635

5  F.2d 1295, 1300 (7th Cir. 1980); Fed. R. Civ. P. 26(b)(1); *S. Cal. Hous. Rights Ctr. v. Los*

6  *Feliz Towers Homeowners Ass'n*, 2005 U.S. Dist. LEXIS 41106, at *9 (C.D. Cal. Apr. 25,

7  2005); N.Y. C.P.L.R. § 3101 (McKinney 2008); *Davis v. Elandem Realty Co.*, 226 A.D.2d

8  419, 419-20 (N.Y. App. Div. 1996).

9      In this instance, Wyly is at a disadvantage because the subject matter and details

10  of the Protected Information are currently unknown to him.  As discussed above,

11  neither Milberg nor the United States has informed Wyly of the substance of the

12  Protected Information. (MGDE 40-41.) Nonetheless, based upon the parties, facts, and

13  circumstances in the CA matters that are similar to those in the Milberg criminal

14  matter, Wyly believes that the Protected Information is relevant and discoverable in the

15  Collateral Litigation in at least three ways. (*See* MGDE 28 (discussing how Milberg's

16  knowledge at the time of the Class Settlement is at the heart of the 60(b) Motion);

17  MGDE 28 (discussing how the Malpractice Action alleges that at least two plaintiffs in

18  the CA matter appeared as plaintiffs in multiple class actions in which Milberg or other

19  defendant law firms were co-lead counsel and how at least one representative plaintiff

20  appears to be a paid plaintiff, receiving more than $23,000 in compensation at $200 an

21  hour for, among other things, reading the newspaper); MGDE 35; MGDE 15

22  (discussing Milberg's illegal kickback scheme and concealment of that scheme); MGDE

23  14 (aligning the facts, parties, and issues in the 60(b) Motion and the Malpractice

24  Action with the facts, parties, and issues in the investigation and prosecution of

25  Milberg.))

26      *First*, the Protected Information may demonstrate that Milberg provided

27  kickbacks or engaged in other improprieties in the Class Actions.  In the Milberg

28  criminal action, Milberg, its partners, and certain class representatives admitted to: (i)

Pfeiffer Thigpen & FitzGibbon LLP
233 Wilshire Blvd., Suite 220
Santa Monica, California 90401

1  providing illegal kickbacks to paid plaintiffs who acted as class representatives in

2  multiple class actions; and (ii) concealing the illegal scheme by causing paid plaintiffs

3  and others to make false and misleading statements in court filings and depositions.

4  (MGDE 15, 43-49 (containing the Second Superseding Indictment and plea agreements

5  from this case and other related cases, including of Mr. Selzer pleading guilty to tax

6  obstruction charges in relation to his role as an intermediary between Milberg and paid

7  plaintiff Lazar.) In fact, Lerach, a former Milberg partner, has admitted that it was

8  "industry practice" to provide kickbacks to paid plaintiffs in securities class actions.

9  (MGDE 50, 54.) In the Malpractice Action, Wyly alleges that at least two plaintiffs in

10  the Class Actions previously were plaintiffs in numerous class actions in which the CA

11  Class Counsel were involved. (MGDE 34 at ¶¶ 49-50.) Additionally, as alleged in the

12  Malpractice Action, at least one representative plaintiff appears to be a paid plaintiff,

13  receiving more than $23,000 in compensation at $200 an hour for, among other things,

14  reading the newspaper. (MGDE 34 at ¶¶ 51-52; MGDE 35.) Accordingly, the

15  Protected Information may demonstrate that Milberg breached its fiduciary duties and

16  committed legal malpractice in the Class Settlement by engaging in a kickback scheme

17  in the CA matter.  Further, the Protected Information may demonstrate that Milberg

18  paid illegal kickbacks to paid plaintiffs in other litigations in the same manner as

19  Milberg appears to have done in the CA matter. *Shakur*, 1990 WL 59548, at *1 (holding

20  that evidence of habit is relevant and therefore discoverable, even if the evidence would

21  not eventually be admissible at trial under Rule 406 of the Federal Rules of Evidence);

22  *Torah Soft Ltd. v. Drosnin*, 2003 WL 22024074, at *5 (S.D.N.Y. Aug. 28, 2003)

23  (recognizing a trend towards admitting evidence of business transactions between one

24  of the parties and a third person as tending to prove that he made the same bargain or

25  proposal in the litigated situation); *Rojas v. Alexander's Dep't Store, Inc.*, 924 F.2d 406,

26  410 (2d Cir. 1990) (holding record keeping practice of comparable stores was relevant

27  to show defendant followed industry custom);  *United States v. Schultz*, 333 F.3d 393, 416

28  (2d Cir. 2003) (holding testimony from defendant's co-workers as to their own

Pfeiffer Thigpen & FitzGibbon LLP
233 Wilshire Blvd., Suite 220
Santa Monica, California 90401

1   understanding of Egyptian law was relevant to explain the practice of the industry at

2   issue in the case).

3        *Second*, the Protected Information may be relevant because it is evidence of

4   Melvin Weiss' and Milberg's lack of credibility. *See Davidson Pipe Co. v. Laventhol &*

5   *Horwath*, 120 F.R.D. 455, 461 (S.D.N.Y. 1988) ("By its terms, Rule 26(b)(1) of the

6   Federal Rules of Civil Procedure authorizes only that discovery which is relevant to the

7   subject matter involved in the pending actions.  Occasionally courts have construed this

8   language literally to foreclose discovery of information useful only for impeachment.

9   But the far more common and logical analysis is that information showing that a

10  person having knowledge of discoverable facts may not be worthy of belief is always

11  relevant to the subject matter of the action."); *United States v. Int'l Bus. Machs. Corp.,* 66

12  F.R.D. 215, 218 (S.D.N.Y. 1974) ("[O]ne of the purposes of discovery is to obtain

13  information for use on cross-examination and for the impeachment of witnesses.  The

14  credibility of a witness' testimony is of the utmost importance since to evaluate the

15  state of proof one must determine which evidence and what testimony is believable.");

16  8 Charles A. Wright, Arthur R. Miller & Richard L. Marcus, FEDERAL PRACTICE &

17  PROCEDURE § 2015 at 208 (2d ed. 1994).

18       The Protected Information may contain evidence demonstrating that Weiss

19  knew of the discovery misconduct, the withheld evidence, or the greater fraud at CA

20  that CA executives covered up, but lied to the New York Court in order to secure his

21  legal fees before he was indicted in this criminal action. Weiss made or caused to be

22  made numerous representations to the Court. (*See* MGDE  51 at 10:1-5; *see also* MGDE

23  18, 52.) Alternatively, the Protected Information may contain evidence of prior bad

24  acts, which may be used to impeach Weiss and other Milberg witnesses. *See Davidson*

25  *Pipe Co.,* 120 F.R.D. at 461 and related discussion above.

26       *Third*, the Protected Information may be reasonably calculated to lead to the

27  discovery of admissible evidence.  For example, the Protected Information includes

28  interview notes and witness statements from the United States' investigation that likely

Pfeiffer Thigpen & FitzGibbon LLP
233 Wilshire Blvd., Suite 220
Santa Monica, California 90401

1  document Milberg's bad acts during the time period Milberg pursued co-lead counsel

2  status in the CA securities litigation (as well as the time period before and after the

3  Class Action Settlement). (*See* MGDE 38, Protective Order at 2:2-22; see also MGDE

4  14-15.) Those interview notes may contain statements by defendants in the Malpractice

5  Action.  For example, the United States' "jaw dropping" witness, Sugarman, worked on

6  the CA litigation, (*see* MGDE 12-16, 53), and the Protected Information likely contains

7  statements by Sugarman – some of which may relate, directly or indirectly, to CA.

8  Analysis of those and other interview notes will likely lead to the identification of

9  witnesses with knowledge of facts relevant to the Collateral Litigation and to the

10 discovery of admissible evidence such as testimony from lawyers with knowledge of

11 improper conduct relating to the Class Actions (*i.e.* Milberg's use of professional

12 plaintiffs to control the CA litigation and malpractice in connection with the Class

13 Settlement).  In addition, the Protected Information may lead to admissible evidence

14 demonstrating Milberg's knowledge of the fraud and misconduct that form the basis of

15 the Rule 60(b) Motion.  Accordingly, this Court should grant relief from the Protective

16 Order to ensure that Milberg remains in possession and custody of the Protected

17 Information and can produce relevant and responsive documents from the Protected

18 Information pursuant to Wyly's discovery requests in the Collateral Litigation.

19     *3.*    *To The Extent That This Court Is Concerned With The Protection Of Privacy Or*
20             *Confidentiality Interests, It Can Impose The Same (Or Even Greater) Restrictions On*
            *The Use And Disclosure Of The Protected Information As Those Delineated In The*
21             *Protective Order.*

22     The requested relief in no way undermines the protection of legitimate privacy

23 interests in regard to the Protected Information.  Wyly acknowledges that this Court

24 can and likely will place appropriate restrictions governing any use and disclosure of the

25 Protected Information, as set forth in the Protective Order. *See Foltz*, 331 F.3d at 1136-

26 37 (the presence of confidential information in the discovery documents does not

27 constitute good cause for refusal to modify, where the confidential information can be

28

1   redacted). There is, thus, no obstacle to relief that cannot be addressed by this Court in

2   modifying the Protective Order. *Id.* Accordingly, subject to such restrictions, this

3   Court should grant Wyly relief from the Protective Order.

4   **VI.   <u>CONCLUSION</u>.**

5       For all of the foregoing reasons, Wyly respectfully requests that this Court:

6       1.   Grant his motion to intervene;

7       2.   Modify the Protective Order to prohibit Milberg's return or destruction of

8   the Protected Information pending further order of the Court;

9       3.   Establish a procedure for determining the relevance of the Protected

10   Information to the Collateral Litigation and the discoverability of such

11   information with respect thereto; and

12       4.   Award Wyly such other relief to which he may be entitled and which this

13   Court deems just and proper.

14   DATED:  January 15, 2009          **PFEIFFER THIGPEN & FITZGIBBON LLP**

15                                THOMAS N. FITZGIBBON

16                                By: _____

17                                    Thomas N. FitzGibbon

18                                Attorneys for Intervenor

19                                *Sam Wyly*

20

21

22

23

24

25

26

27

28

Pfeiffer Thigpen & FitzGibbon LLP
233 Wilshire Blvd., Suite 220
Santa Monica, California 90401